

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

RECEIVED

2019 JUN 17 PM 4: 54 )
Edith McCurry )
Plaintiff )
 )
 )
v. )
 )
MARS, KENCO Logistics Services, LLC, )
THE HARTFORD FINANCIAL SERVICES GROUP, INC, )
THE REED GROUP, AND Defendant DR. KOEHLER )

**United States District Court**
**Northern District of Illinois**

# RECEIVED

JUN 17 2019 EW

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**COMPLAINT**

SEE ATTACHED

1:19-cv-04067
Judge Sharon Johnson Coleman
Magistrate Judge Gabriel A. Fuentes

TOTAL
8 copies

**NOW COMES PLAINTIFF, EDITH MCCURRY** (hereafter

"MCCURRY") and hereby brings his complaint against defendants **MARS**

**INCORPORATED** is a Virginia Company, (hereafter "MARS"), **KENCO**

**LOGISTICS SERVICES, LLC**, a Tennessee, Limited Liability Company

(hereafter "KENCO"), and **THE HARTFORD aka THE HARTFORD**

**FINANCIAL SERVICES GROUP**, **INCORPORATED** (hereafter

"HARTFORD") is a Connecticut Company, The REED Group and Dr. Koehler the

Independent Medical Expert (hereafter "IME") alleges as follows:

## I.

## <u>NATURE OF THE ACTION</u>

1.      These actions are brought to remedy the violations of MCCURRY'S

civil rights and to redress the unlawful and discriminatory employment practices

of MARS and KENCO. This action arises out of the conduct of MARS and

KENCO'S employees and their agents employment practices of (1) A. Harassment

based in whole or in part upon her race in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §2000e-16 et seq., and the Civil Rights Act of 1866, as

amended by the Civil Rights Act of 1991 and 42 U.S.C. §1981 and (2) B.

Harassment based upon retaliation for making an internal and external

complaints of discrimination and (3) C. Harassment based upon retaliation for

participating in investigations and proceedings before the Equal Employment

Opportunity Commission (hereafter "EEOC), the Illinois Department of Human Rights (hereafter "IDHR") and the Department of Labor.

Additionally, Plaintiff brings this action pursuant to Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a), seeking recovery of Short and Long Term Disability (hereafter "LTD') benefits due pursuant to the terms of an employee benefit plan, which provided short term disability benefits and long term disability benefits under policy GLT-674076 ("the Policy") (a copy of the policy is attached hereto as Exhibit "1") Plaintiff also seeks clarification of her benefits as well. This action is brought pursuant to Sect. 502(a)(1)(B)of ERISA (29 U.S.C. Sect. 1132 (a)(1)(B). Plaintiff also seeks attorney's fees pursuant to 29 U.S.C. Sect. 1132(g) and ERISA Sect. 502(g).

## II.

## JURISDICTION

2.      This in part, an action authorized and instituted pursuant to the Civil Rights of 1964, 42 U.S.C. §2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981; 42 U.S.C. 1981A, 42 U.S.C. §1988 Illinois common law.

3.      The jurisdiction of this court is predicated upon 28 U.S.C. §§1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. 2 §§2201 and 2202

relating to declaratory judgments. This Court may also exercise pendent jurisdiction over Plaintiff's state law claims arising from a common nucleus of operative facts pursuant to 28 U.S.C. 1367.

4.       The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a).

### III.

### VENUE

4.   Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1331, 29 U.S.C.§ 1132(e)(2), and 28 U.S.C. § 1391 wherein Defendants MARS,  KENCO, HARTFORD, The REED Group and Dr. Koehler regularly conducts business.

### IV.

### THE PARTIES

5.   Plaintiff, MCCURRY is a citizen of the United States and is an African American female and at all relevant times herein; she has resided in Illinois, in the County of Kankakee and was an employee of MARS and KENCO within the meaning of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and applicable case law.

6.      KENCO on behalf of KENCO/MARS sponsored an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), which provided short and long-term disability benefits. Incident to her employment with MARS and its management company KENCO, MCCURRY received coverage under the plan as a "participant" as defined by 29 U.S.C. § 1002(7).

7.      Herein at all relevant times, Defendant MARS owned and leased the MARS Manteno Warehouse and Distribution Center located in Manteno, Illinois, who exclusively warehoused and distributed MARS products including raw goods, semi-finished and finished products for human consumption. MARS employed 3rd party management companies such as 4T's and KENCO to manage this facility. MARS currently maintains offices in Chicago, Burr Ridge, Joliet and Manteno, Illinois. Defendant MARS' primary place of business is in Mclean, Virginia and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq.

8.      At all relevant times herein, Defendant KENCO was a 3rd party Logistics management servicing agent for Defendant Mars, Incorporated employing over 3000+ employees nationwide and is a Tennessee and Virginia Limited Liability Company with offices in Bolingbrook, Romeoville and Joliet Illinois. Defendant Kenco does business as Kenco Logistics.

9.      KENCO maintained an office in Manteno, Illinois and currently maintains offices in Bolingbrook, Romeoville, and Joliet Illinois, and conducts business within the State of Illinois. Defendant KENCO'S primary place of business is in

4

Chattanooga, Tennessee and is an employer within the meaning of Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981.

10.     Defendant HARTFORD is a subsidiary of THE HARTFORD FINANCIAL SERVICES GROUP, INCORPORATED.  HARTFORD insures the plan through group insurance policy. The HARTFORD at relevant times has been claim review fiduciary of the plan, insurer of the plan, and is responsible for paying any disability benefits under the plan. Due to its dual role as decision-maker of benefit claims and payer of benefits, HARTFORD is financially incentivized to deny claims for short or long term disability benefits.

11.     Defendants KENCO and HARTFORD have both and various times titled themselves as the plan administrator though pre-litigation claim handling, they are hereinafter collectively referred to as KENCO/HARTFORD.

12.     MCCURRY was employed at the MARS Manteno facility with KENCO and its predecessor, whom at all times acted as agents of Mars, Inc., since on or about June 1999  through various 3rd party management companies; beginning with 4T's Management Company and then with KENCO since April 2013.

13.     Defendant Dr. Koehler at all relevant times was the employee and or consultant of KENCO/HARTFORD providing medical expertise.  Dr. Koehler maintains an office in Tinley Park, IL.

14.     The REED Group at times acted on behalf of defendants KENCO/MARS and KENCO/HARTFORD obtaining information relative to MCCURRY'S medical status.  The REED Group maintains its headquarters in Weistminster, CO.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

MCCURRY has complied with the administrative prerequisites of §506 of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5 as follows:

14.     On or about, April 17, 2018, MCCURRY timely filed a formal charge of discrimination with the Equal Employment Opportunity Commission (hereafter "EEOC") as Charge Number 440-2018-04640.

15.     MCCURRY promptly and diligently accommodated all EEOC requests for information and fully cooperated in the agency's investigation of this matter.

16.     MCCURRY has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and MCCURRY was issued a Notice of Right to Sue from EEOC dated March 13, 2019, metered and postmarked March 14, 2019 and received March 19, 2019; hereto attached as Exhibit 2. No administrative prerequisites are required before a plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981.  No administrative prerequisites are required before a plaintiff files a complaint pursuant to Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) when a participant alleges fraud.

## VI.
## FACTUAL ALLEGATIONS

17.  At all relevant times, Defendants KENCO and MARS, Inc., employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2013, 2014 and 2015.

18.  MCCURRY was employed at the Mars Manteno facility as the HR Administrator for the facility.

19.  At all times MCCURRY was responsible for keeping up with the current employment laws, implementing them and applying them correctly.  These laws included state and federal laws; the relevant laws were the: Fair Labor Standards Act (FLSA), Family Medical Leave ACT (FMLA), The Americans with Disability Act (ADA), Employment Retirement Income Security Act (ERISA), Health Insurance Portability and Accountability Act (HIPAA), Title VII of the Civil Rights Act, Federal Insurance Contributions Act (FICA), Occupational Safety and Health Act (OSHA), Equal Employment Opportunity (EEO) reporting, The Workers Adjustment and Retraining Notification Act and other laws.

20.  MCCURRY was responsible for recruiting, hiring/onboarding of employees, employee's benefits, human resource/employee issues including discipline, on the job injuries, workers compensation, unemployment, disability amongst other things along with her counterpart Leonard "Len" Szplett.

7

21.    MCCURRY was also responsible for the operating budget, invoicing and payroll amongst other accounting duties along with her counterpart Szplett.

22.    At all relevant times MCCURRY possessed the skills, experience and qualifications necessary to work in her employment position and adequately and completely performed all of the functions, duties and responsibilities of her employment with Defendants KENCO/MARS.

23.    At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of MCCURRY'S employment were governed and controlled by Defendant(s) MARS and KENCO.

24.    KENCO was acting as the agent of Mars and in its conduct and actions as alleged herein and was acting in a capacity within the scope of its authority, or, if said conduct was outside the scope of its authority, said conduct was known; authorized and ratified by Mars.

25.    Plaintiff filed charges of discrimination, retaliation and other unlawful acts that were dually filed at the Illinois Department of Human Rights and EEOC charge numbers 2015CA1804 and 21B-2015-01135 and 2015CA2495 and 21B-2015-00670, respectively.

26.    Plaintiff also engaged in other protected activity such as participating in investigations and proceedings before the IDHR, EEOC, Department of Labor (hereafter "DOL") and other agencies and tribunals. i.e in the matters of *re:* Morrison, Henry, Doss, Tyson, Madison, Szplett and others.

27.  As an employee, MCCURRY was entitled to short term disability (hereafter "STD") amongst other benefits from KENCO/MARS. Exhibit 3

28.  Defendant KENCO/MARS short term disability would provide any employee with sixty (60%) of their weekly earnings, after a two (2) week elimination period. Exhibit 4

29.  A benefit that was given to every employee free of charge at the Mars Manteno facility by KENCO/MARS.

30.  Defendants KENCO/MARS did not inform MCCURRY that there would be any offsets or deductions against the short term disability benefit provided by defendants KENCO/MARS.

31.  MCCURRY relied on the benefit of short term disability from KENCO/MARS in the event that she was unable to work due to illness, disability, accident or injury, just as she had relied on the other fringe benefits, compensations, agreements and promises from KENCO/MARS.

32.  MCCURRY relied heavily on the benefits of the company and their ability to perform as stated and to that extent MCCURRY purchased a supplemental long term disability (hereafter "LTD") policy from KENCO/MARS to assure that in the event that illness, disability, accident or injury rendered MCCURRY medically disabled to work MCCURRY income would not be interrupted.

33.  At the time MCCURRY procured the LTD policy the benefit amount of $2,602.00 was established.

9

34.     Specifically, it was determined by defendants that 60% of MCCURRY'S basic earnings were $2,602.00. Exhibit 5

35.     MCCURRY contends that the plain language of the summarized policy provided to her indicates that the short and long term disability is based upon 60% of her basic monthly earnings as stated on page 31 of the employee handbook.

36.     Additionally, the summarized plain language of the policy does not site offsets from "other income" or reduction in benefit amounts from any deductions.

37.     Nor was MCCURRY presented at any time prior to obtaining these benefits or actually receiving these benefits any information or correspondence contrary to the summarized plain language of the policy provided to MCCURRY in the hand book she received from KENCO/MARS.

38.     MCCURRY became disabled on or about January 3, 2015 and was unable to return to work due to uncontrollable High Blood pressure, stress, anxiety and at the time other undiagnosed health conditions.

39.     On or about January 5, 2015, as instructed in MCCURRY'S employee handbook, MCCURRY notified HARTFORD and the MARS Manteno facility of her inability to return to work.

40.     MCCURRY'S physician restricted her from working and ordered several test and made several referrals to other physicians that corroborated that

MCCURRY was precluded from working for a number of debilitating medical conditions.

41. MCCURRY satisfied the two (2) week elimination period.

42. HARTFORD sent out a communication indicating the amount of disability MCCURRY would receive. Exhibit 6

43. MCCURRY began receiving what she thought was sixty (60%) of her weekly earnings.

44. MCCURRY was instructed by defendants to apply for social security disability benefits. Plaintiff also contends that defendants also offered legal assistance to her in obtaining social security disability benefits.

45. After two (2) cycles of short term disability payments, MCCURRY experienced her first interruption of short term benefits that lasted a month. Exhibit 7

46. MCCURRY and MCCURRY'S physician(s) timely cooperated with all request from KENCO/HARTFORD.

47. KENCO/HARTFORD had not received any new information that was in conflict with MCCURRY'S right to receive short term disability.

48. MCCURRY asserts that defendants KENCO/HARTFORD'S denial of MCCURRY'S disability benefits was done arbitrarily, capriciously and in bad faith.

49.    Every three (3) to four (4) weeks defendants KENCO/HARTFORD would come up with some contrived arbitrary and capricious reason to delay and deny MCCURRY her due just benefits.

50.    More precisely it had been recommended on several occasions by defendants KENCO/HARTFORD that MCCURRY'S benefits be denied. Exhibit 8

51.    Effectively over the six (6) month term of short term disability MCCURRY had not been paid for 2, 3, 4, and 5 weeks at time based upon bad faith arbitrary and capricious reasons from paper reviews of MCCURRY'S medical records.

52.    MCCURRY asserts that this vexatious delay in paying the disability benefits was to harass MCCURRY in retaliation for engaging in protected activities.

53.    More precisely, MCCURRY asserts that her first interruption began within days of defendants KENCO/MARS being notified that she had filed formal charges of discrimination against them in January of 2015.

54.    MCCURRY asserts that defendants' actions caused her irreparable harms physically, economically and mentally.

55.    In July of 2015, at the end of MCCURRY'S short term disability benefits, without a change of diagnosis or prognosis in MCCURRY'S medical condition or a release from her physician, MCCURRY was denied long term disability benefits that should have immediately picked up when the short term disability ran out.

56.    Based upon MCCURRY'S medial conditions the transition from short to long term disability should have been seamless, but it was not.

57.    Defendants KENCO/HARTFORD denied MCCURRY'S benefits for more than a year, without any contradicting medical evidence to support that MCCURRY was no longer disabled by the medical condition(s) that afforded her short term disability.

58.    Additionally, defendants KENCO/HARTFORD would not respond to MCCURRY'S appeals until within days of the prescribed time frame for them to respond would be set to expire.

59.    Finally on July 13, 2016 MCCURRY'S benefits were reinstated. Exhibit 9

60.    MCCURRY and her physicians had not provided to defendants KENCO/HARTFORD any new or different information about MCCURRY'S disability.

61.    Sometime later defendants KENCO/HARTFORD request that MCCURRY have an Independent Medical Examination.

62.    MCCURRY met with defendants KENCO/HARTFORD'S Independent Medical Expert (IME) Dr. Koehler.

63.    MCCURRY contends that the IME did not perform any quantitative tests on her.

64.    Defendants KENCO/HARTFORD'S IME indicated in his written report that it had been articulated by numerous physicians throughout MCCURRY'S records and reports that MCCURRY was suffering from anxiety, depression and

a host of other disorders, as well as, commenting on MCCURRY'S perceived physical limitations. Exhibit 10

65. Defendants KENCO/HARTFORD'S employee or agent wrote back to the IME and indicated that she did not ask him about MCCURRY'S mental state but whether or not MCCURRY could physically work. Exhibit 11

66. Defendants KENCO/HARTFORD asked the IME to disregard MCCURRY'S condition on a whole.

67. The IME works for defendants KENCO/HARTFORD.

68. Defendants KENCO/HARTFORD asked the IME to violate his Hippocratic Oath as a medical doctor.

69. Defendants KENCO/HARTFORD coerced the IME into being negligent with regards to MCCURRY and her medical conditions.

70. MCCURRY asserts that defendants KENCO/HARTFORD coerced the IME into giving them a different result from his initial findings.

71. MCCURRY asserts that the IME was incentivized into cooperating with the request of Defendants KENCO/HARTFORD, as IME was their employee/consultant.

72. Furthermore, MCCURRY asserts that the IME was not only negligent was reckless in asserting that MCCURRY could work twenty (20) hours per week without quantitative testing to support such a theory.

14

73. MCCURRY asserts that the IME was complicit in assisting defendants KENCO/HARTFORD in wrongfully terminating MCCURRY'S disability benefits.

74. From July of 2017 until February of 2019, MCCURRY had been on a hamster wheel of appealing defendants KENCO/HARTFORD decision to terminate her benefits.

75. During this time MCCURRY learned that defendants KENCO/HARTFORD and or their employees and or agents in fact had made false misrepresentations about contacting her physicians. Exhibit 12

76. Defendants KENCO/HARTFORD denial letter dated September 24, 2018, was days past the time in which defendants KENCO/HARTFORD were to have responded to MCCURRY'S June 22, 2018 appeal.

77. MCCURRY indicated to defendants KENCO/HARTFORD that their determination was made without her physicians input. Exhibit 13

78. MCCURRY also contends that defendants KENCO/MARS also obtained unauthorized information relative to MCCURRY'S medical condition through the REED Group. Exhibit 14

79. MCCURRY also asked how they planned to correct the issue of failing to contact MCCURRY'S physician and how that would affect their determination. Exhibit 15

80. Defendants KENCO/HARTFORD stated that MCCURRY had to make another appeal. Exhibit 16

81.    MCCURRY raised a number of issues and concerns relative to this gross injustice and misrepresentation.

82.    MCCURRY even supplied correspondence from her physician indicating that he had not been contacted by defendants KENCO/HARTFORD or their employee's agents or assignee's in July and August of 2018 as alleged. Exhibit 17

83.    Dr. Throupe indicated that the only contact made to him was by the REED Group on September 26, 2018 by fax.

84.    MCCURRY contacted the REED Group regarding their request; to date there was no response. Exhibit 18

85.    Eric Lee of the Hartford maintains that the Hartford is not affiliated with the REED Group. Exhibit 19

86.    MCCURRY contends that KENCO/MARS and KENCO HARTFORD were the only persons authorized to obtain information relative to her medical conditions.

87.    MCCURRY further asserts that the REED Group acted on behalf on the defendants either individually or collectively.

88.    MCCURRY further contends that if the REED Group did not act on behalf of the defendants either individually or collectively the REED Group was in violation of her protected rights and HIPPA.

89.    After MCCURRY demanded proof of defendants KENCO/HARTFORD'S alleged communication with her physician, defendants provided documentation that they had failed to contact her physician as stated. Exhibit 20

90. Defendants KENCO/HARTFORD continued to refuse to correct or mitigate this misrepresentation.

91. It was not until MCCURRY filed a complaint with the Illinois Department of Insurance that was forwarded to the Tennessee Department of Insurance did defendants KENCO/HARTFORD move to address MCCURRY'S concerns. Exhibit 21

92. MCCURRY'S complaint addressed issues ranging from not being paid the alleged sixty percent (60%) of her earnings as outlined in defendants KENCO/HARTFORD'S policies, handbook and correspondence, the vexatious delay and the refusal to pay MCCURRY her due benefits.

93. Additionally, throughout the pre-litigation phase of the claim handling defendants have interchangeably used weekly earnings and earnings.

94. More precisely, within days of receiving the complaint, MCCURRY was notified that defendants KENCO/HARTFORD had reversed their decision. Exhibit 22

95. Several days after that MCCURRY was contacted and informed that she had been under paid since she had begun her short term disability and what MCCURRY'S new benefit amount would be. Exhibit 23

96. MCCURRY had been deprived of over $73,000.00 dollars from January of 2015 until February of 2019.

17

97.    MCCURRY also learned that she was expected to pay back her disability when she prevailed in her civil litigation against defendants KENCO/MARS and others.

98.    Defendants KENCO/MARS are the one in the same plan administrator and or insurer during the relevant times.

99.    MCCURRY asserts that this is a conflict of interest and is self-serving to defendants KENCO/MARS and KENCO/HARTFORD.

100.   Effectively, defendants KENCO/MARS and KENCO/HARTFORD want MCCURRY to repay them.

101.   MCCURRY has requested from defendants KENCO/HARTFORD on numerous occasions where it is documented in the policy that they provided this provision as it relates to civil actions arising out of discrimination.

102.   Defendants KENCO/HARTFORD continually intimate that it is within the policy, but fail to specifically point to such.

103.   MCCURRY had repeatedly asked had that term and condition of the policy been disclosed to her obtaining the policy and the defendant Hartford points to defendant KENCO stating that they were the party to have disclosed such.

104.   MCCURRY has indicated to the HARTFORD that as the insurer and the drafter of such policy and its provisions, they should at the very least be in possession of the terms and conditions of the policy that they are trying to invoke  Exhibit 24

105. MCCURRY asserts that this yet another form of retaliatory harassment.

106. MCCURRY also contends that defendants KENCO/MARS and KENCO/HARTFORD have violated ERISA with procedural irregularities and with ambiguity in the interpretation of its policy under the doctrine of *contra proferentem.*

107. More specifically, MCCURRY evidences this in the reversal of defendants' decision in the absences of (new) medical evidence, defendants' arbitrary and capricious denials of MCCURRY'S benefits, repayment, other income and the benefit amount sections of defendants KENCO/MARS and KENCO/HARTFORD'S short and long term disability policies.

108. MCCURRY also contends that defendants KENCO/MARS and KENCO/HARTFORD have committed fraud by failing to pay her sixty percent (60%) of her earnings as outlined.

109. MCCURRY also contends that the failure to have paid MCCURRY correctly contributes to the bottom line of the defendants' assets and profitability by overstating and inflating defendants' bottom line.

110. MCCURRY also contends at first blush that this inflated bottom line can give inference and or rise to violations of Sarbanes-Oxley Act known as (SOX).

111. MCCURRY also contends that defendants KENCO/MARS and KENCO/HARTFORD have retaliated against her for filing formal charges of discrimination and participating in various proceedings and investigations before various governmental agencies and tribunals.

112.   MCCURRY also contends that defendants KENCO/MARS and

KENCO/HARTFORD have intentionally discriminated against her, as no other

non-African American male had been subject to not being paid sixty percent

(60%) of their earnings or had been subjected to arbitrary and capricious

denials and delays of disability payments.

113.   MCCURRY also contends that defendants Dr. Koehler, KENCO/MARS

and KENCO/HARTFORD intentionally inflicted emotional distress upon

MCCURRY, as defendants clearly knew that MCCURRY was disabled and

suffering from uncontrollable hypertension, anxiety, depression, post-traumatic

stress disorder and other various other medical conditions.

114.   MCCURRY also contends that defendants KENCO/MARS and

KENCO/HARTFORD breached their fiduciary obligations to MCCURRY when

they failed to provide MCCURRY with the benefits that they promised and

lulled her into believing was available for every employee at the MARS Manteno

facility. Additionally, MCCURRY asserts that Dr. Koehler breached his duty of

care to her as a patient when he violated his Hippocratic Oath and assisted

defendants into continuing inflict emotional distress upon MCCURRY, as he

knew better than any analyst or agent or employee of defendants

KENCO/MARS and KENCO/HARTFORD that MCCURRY was disabled and

suffering from uncontrollable hypertension, anxiety, depression, post-traumatic

stress disorder and other various other medical conditions and that any adverse

actions could further exacerbate MCCURRY'S medical conditions.

115.    MCCURRY contends that all of the named defendants were negligent in regards to MCCURRY'S health and wellbeing.

116.    MCCURRY also contends that KENCO/MARS and KENCO/HARTFORD actions created a promissory estoppel with regards to the benefits to which MCCURRY was and still are entitled, as well as, the terms and conditions of such benefits.

117.    MCCURRY also contends that KENCO/MARS and KENCO/HARTFORD has yet engaged in another civil conspiracy scheme to harass, retaliate against and violate the protected rights of MCCURRY in an effort to continue to cover up and conceal the truth about the: racially charged hostile work environment; the pervasive and rampant discrimination at the Mars Manteno facility; the adverse employment decisions and retaliatory acts toward Plaintiff and others; the numerous material misrepresentations and mischaracterizations made to various tribunals defendants Kenco/Mars engaged in yet another civil conspiracy to violate McCurry's protected rights by defrauding McCurry out of her due benefits and driving her indigence in hopes to thwart, hinder and delay justice and its administration.

## Harassment

In retaliation for opposing discrimination, participating in EEOC, IDHR and Department of Labor-Whistleblower proceedings and filing informal and formal complaints of discrimination.

1. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

2. Plaintiff has been subjected to more than a "campaign of petty harassment."

3. MCCURRY has continually and consistently been harassed since 2013, after reporting claims of racial discrimination to Kenco Logistics, the then 3rd party management company for the Mars Manteno facility, attorney after formal charges of discrimination had been filed.

4. For example, since 2013 MCCURRY the then HR Administrator for the Mars Manteno facility, has been mischaracterized as a clerk and had also been isolated, forbidden and ostracized from performing her duties as the HR Administrator that she had performed since being hired at the Mars Manteno facility in 1999. Additionally, MCCURRY has suffered retaliatory acts; adverse employment decisions; contrived disciplinary actions; reduction in job responsibilities, changes in fringe benefits; harsher scrutiny; failure to be promoted; failure to be notified on how to apply for continued employment at the Mars Manteno facility; lack of opportunities;

lack of professional standing; economic sanctions; hostile work environment amongst other unlawful actions.

5. The result of this campaign of racially motivated retaliatory harassment and intentional discrimination resulted in MCCURRY being forced to take a constructive discharge from her employment/position by way of a medical leave of absence.

6. MCCURRY would go on to be diagnosed with anxiety, depression, post-traumatic stress disorder, high blood pressure and eventually fibromyalgia amongst other diagnoses.

7. MCCURRY was restricted from working by her physician.

8. MCCURRY then began trying to enjoy the fringe benefits of her Short Term Disability that was offered by KENCO/MARS to the employees of the Mars Manteno facility.

9. This benefit to MCCURRY was to have paid MCCURRY sixty percent (60%) of her weekly earnings.

10. MCCURRY immediately continued to be economically harassed by Kenco/Mars, as MCCURRY was not paid the sixty percent (60%) of her weekly earnings as cited.

11. The decision not to pay MCCURRY sixty percent (60%) of her weekly earnings was in direct conflict with the plain language of the plan.

23

12. After not being paid the sixty percent (60%) of her earnings, MCCURRY began experiencing disruptions in her benefits based on frivolous, arbitrary, and capricious reasons.

13. Specifically, MCCURRY was to be paid a weekly benefit and on several occasions MCCURRY had not been paid for 2, 3, 4, and 5 weeks at time based on paper reviews and the plan and plan's administrator's interpretation of the plan and its requirements for relative to disability.

14. More specifically, it had been recommended on several occasions that MCCURRY should be denied these fringe benefits. Exhibit 8

15. The continued harassment by KENCO/MARS and the Hartford only exacerbated and perpetuated MCCURRY'S conditions that extended her disability from short term to long term.

16. MCCURRY was arbitrarily and capriciously denied long term disability in July of 2015.

17. MCCURRY was paid short term disability benefits the day before MCCURRY'S long term disability was to begin.

18. Nothing had changed from the weeks prior in MCCURRY'S health conditions that qualified her for short term disability that would have disqualified her long term disability.

19. MCCURRY would have to appeal the decision.

20.  The defendants would vexatiously delay reviewing the appeal and
     returning a decision often times waiting to the last day or days of the
     designated time frame to respond; defendants have even exceeded the
     designated time to respond to an appeal.

21.  The decisions that were returned were unfavorable to MCCURRY
     requiring her to begin the appeal process again.

22.  MCCURRY'S reviews by defendants were paper reviews and were
     inconsistent with the various positions of her numerous treating
     physicians.

23.  Finally, a year later in July of 2016, defendants granted MCCURRY
     her long term disability.

24.  Without fail again, defendants once again arbitrarily, capriciously and
     in bad faith denied MCCURRY'S disability benefits against their own
     IME's assessment in July of 2017.

25.  Specifically, defendants IME indicated throughout MCCURRY'S
     records as articulated by a number of physicians that MCCURRY
     suffered depression, anxiety etc... Exhibit 10

26.  The defendants wrote back to their IME and indicated that they did
     not ask him about her mental status, but was MCCURRY physically
     able to work.

27.  Defendants IME along with the analyst(s) on MCCURRY'S claim are
     paid consultant(s) and or employee(s) and or agent(s) of defendants.

28. Consequently, after being instructed to only comment on MCCURRY'S physical capabilities, Dr. Koehler indicated that MCCURRY could work up to twenty (20) hours per week. Exhibit 11

29. Effectively, defendants asked their IME to ignore objective medical data in the file or fail to appreciate that MCCURRY condition(s) had not improved.

30. MCCURRY asserts that defendants and their agents failed to analyze all relevant diagnoses.

31. MCCURRY asserts that Defendants relied on the opinions of non-treating physicians over treating physicians without explanation.

32. Dr. Koehler did not conduct or perform test on MCCURRY to support this theory.

33. Specifically, MCCURRY met with Dr. Koehler on one occasion, as requested by defendants. No quantitative tests were performed.

34. Defendants did not consider MCCURRY'S conditions on a whole and they contradicted their own IME's initial report or opinion.

35. MCCURRY again was without her long term disability benefits.

36. MCCURRY again proffered evidence to support the alleged deficiencies identified by defendants.

37. Once again defendants vexatiously delayed reviewing the appeal; returning the adverse decision on the last day or days of the designated time frame to respond.

38.   Specifically on September 24, 2018, defendants exceeded the
      designated time to respond to an insured's appeal by forty-nine (49)
      days; effectively denying MCCURRY'S appeal.

39.   When defendants eventually returned the unfavorable decision, made
      from the paper review, again denying MCCURRY'S benefits,
      defendants and or their agents indicated that MCCURRY'S
      physician(s) had not responded to their queries.

40.   MCCURRY physician(s), in particular, Dr. Throupe indicated that he
      had not been contacted by the defendants regarding MCCURRY.
      Exhibit 17

41.   MCCURRY confronted defendants and eventually learned from
      defendants that they had not contacted Dr. Throupe as previously
      indicated. Exhibit(s) 15, 19 & 20

42.   Specifically, defendants stated that the communication(s)
      failed to reach Dr. Throupe. Exhibit 20

43.   MCCURRY also asserts that defendants and their agents relied on
      inadequate information or incomplete investigation(s) in making their
      determination.

44.   Despite this negligent and gross error of defendants, defendants
      refused to correct their error and insisted that MCCURRY begin her
      appeal process over again. Exhibit 16

45. It was not until after MCCURRY filed a complaint(s) with the Illinois Department of Insurance who forwarded the matter to the Tennessee Department of Insurance that defendants decided to reverse their decision within days of filing MCCURRY filing the complaint. Exhibit 21

46. It was at that time that MCCURRY'S benefits were being reinstated that she learned that she had been underpaid more than $1, 000.00 per month since her disability began in January of 2015. Exhibit 23

47. MCCURRY had previously questioned defendants about the difference in the monies paid and the monies that defendants stated that she would receive.

48. Defendants continued to present a circular argument that the monies were reduced/offset by other income; but could or would not specifically point to what that offset was.

49. Defendants effectively had defrauded MCCURRY out of over $1,000.00 per month since 2015.

50. At the time of reinstatement, defendants owed MCCURRY more than $73,000.00. Exhibit 23

51. Defendant KENCO/MARS has a history of economically sanctioning employees who oppose discrimination or fail to act in complicity with their race based ideologies.

52. Specifically, Tammi Fowler once indicated to MCCURRY and Leonard Szplett that "hitting them (employees) in the pocket" would get their attention.

53. This was often a strategic tool used to deter employees from opposing discrimination, the hostile work environment or ultimately filing any form of informal or formal complaint about the workplace.

54. This tool was used on African Americans and those who opposed the disparate and disparaging treatment of African Americans.

55. Plaintiff asserts that Wayne Bell and Leonard Szplett both Caucasian men were paid sixty percent (60%) of their weekly earnings as stated.

56. Plaintiff asserts that Wayne Bell and Leonard Szplett both Caucasian men were paid without interruption.

57. Plaintiff also asserts that Wayne Bell and Leonard Szplett both Caucasian men were not paid arbitrarily, capriciously or vexatiously.

58. MCCURRY contends that defendants KENCO/MARS and their agents and subsidiaries, short term and long term plan and its plan administrator(s) acted in concert to harass, hinder, interfere, delay, and defraud MCCURRY out of her benefits during and post her employment.

59. MCCURRY also contends that defendants KENCO/MARS at the relevant times retained control over the payment of benefits to MCCURRY.

60. MCCURRY also contends at the relevant times defendants KENCO/MARS and the Hartford have had dual roles in being the decision makers, claim reviewer, plan administrators, insurer and payers of MCCURRY'S short and long term disability benefits.

61. MCCURRY contends that these dual roles have created a conflict of interest.

62. MCCURRY also contends that she was not afforded a reasonable opportunity to for a full and fair review of her denied claims.

63. It was also learned at that time by MCCURRY that defendants' yet had another contrived scheme to continue to violate MCCURRY'S protected rights, as well as, harass and defraud MCCURRY; and that scheme was that MCCURRY had to repay defendants the disability monies paid to her when she won her law suits against defendants Kenco/Mars.

64. MCCURRY has requested on numerous occasions for defendants to specifically point out this term and condition.

65. To date, once again MCCURRY has been presented with another circular argument that does not specifically and conclusively point to this being an actual term and condition of the policy.

66. Moreover, MCCURRY asserts that a conflict of interest exist in this alleged provision as defendants are one in the same in that they are

the plan and or plan administrator and the defendant(s) in the civil matters.

67. Effectively, when MCCURRY prevails in her lawsuits, defendant(s) in particular KENCO/MARS would receive undue enrichment in the form of a repayment for lost wages and be a wash.

68. MCCURRY contends that the alleged repayment clause incentivizes defendants KENCO/MARS to enforce this ambiguous interpretation of the policy.

69. MCCURRY also asserts that this competing and conflict of interest affected the benefits decision(s).

70. Additionally, even to date defendants continue to pay MCCURRY'S reinstated benefits days after the scheduled date the funds are to be electronically transferred by defendants.

71. Specifically, MCCURRY has been up to five (5) days later receiving the monies that was scheduled to be electronically transferred to MCCURRY.

72. MCCURRY'S financial institution states that it operates its reconciliation practices of its accounts within minutes of a transaction; effectively putting them almost on real time. Moreover, MCCURRY'S financial institution has provided MCCURRY with a history of the transactional transfers.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In retaliation for opposing discrimination, participating in EEOC, IDHR and Department of Labor-Whistleblower proceedings and for filing informal and formal complaints of discrimination.

73. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

74. Defendants were aware that Plaintiff was disabled.

75. Defendants intentionally inflicted emotional distress upon MCCURRY and her family, when defendants intentionally failed to compensate MCCURRY correctly.

76. Specifically, defendants at times intentionally defrauded MCCURRY out of her due benefits by withholding monies due her whenever it disbursed monies to her; and at other times defendants arbitrarily, capriciously and vexatiously refused to pay MCCURRY her due benefits at all.

77. MCCURRY also asserts that this competing and conflict of interest of the defendants being plan administrator, the insurer, the claims reviewer and litigants in other civil matters with plaintiff affected the benefits decision(s).

## Retaliation

In retaliation for opposing discrimination, participating in EEOC, IDHR and Department of Labor-Whistleblower proceedings and filing informal and formal complaints of discrimination.

78. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

79. In retaliation for MCCURRY engaging in a number of protected activities MCCURRY was subject to adverse employment decisions during and post-employment.

80. Specifically, in this instance MCCURRY'S disability monies were reduced from the stated amounts and significantly reduced from her actual earnings during her employment and post her employment with defendant Kenco/Mars.

81. Additionally, MCCURRY'S just due benefits were arbitrarily, capriciously and vexatiously denied during her employment and her post-employment with defendant Kenco/Mars.

82. KENCO/MARS routinely retaliated against African Americans and those who opposed the discriminatory treatment of African Americans causing plaintiff and others to suffer extreme mental, physical and economic harms.

83. Plaintiff asserts that Wayne Bell and Leonard Szplett, both Caucasian men were paid sixty percent (60%) of their weekly earnings as stated.

84. Plaintiff asserts that Wayne Bell and Leonard Szplett, both Caucasian men were paid without interruption.

85. Plaintiff also asserts that Wayne Bell and Leonard Szplett both Caucasian men were not paid arbitrarily, capriciously or vexatiously.

86. MCCURRY also asserts that this competing and conflict of interest of the defendants being plan administrator, the insurer, the claims reviewer and litigants in other civil rights matters with plaintiff affected the benefits decision(s).

87. MCCURRY also asserts that retaliation claims are actionable post-employment.

## INTENTIONAL DISCRIMINATION

In retaliation for opposing discrimination, participating in EEOC, IDHR and Department of Labor-Whistleblower proceedings and filing informal and formal complaints of discrimination.

88. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

89. MCCURRY was treated differently than other non-African American male employees at the Mars Manteno facility, such as Leonard Szplett and Wayne Bell.

90. Plaintiff asserts that Wayne Bell and Leonard Szplett, both Caucasian men were paid sixty percent (60%) of their earnings as stated.

91. Plaintiff asserts that Wayne Bell and Leonard Szplett, both Caucasian men were paid without interruption.

92. Plaintiff also asserts that Wayne Bell and Leonard Szplett, both Caucasian men were not paid arbitrarily, capriciously or vexatiously.

93. MCCURRY also asserts that she was treated differently for opposing the discriminatory treatment and engaging in protected activities such as participating in EEOC and DOL proceedings and filing complaints of discrimination.

94. MCCURRY also asserts that her inequitable and vexatiously delayed disability benefits were a part of defendant KENCO/MARS scheme to continue to intentionally and methodically violate plaintiff's protected rights, as well as, further discriminate and retaliate against plaintiff.

## BREACH OF FIDUCIARY DUTY

In retaliation for opposing discrimination, participating in EEOC, IDHR and Department of Labor-Whistleblower proceedings and filing informal and formal complaints of discrimination.

95. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

96. MCCURRY asserts that defendants had a duty of care to its employees including Plaintiff other protected class persons to which they breached and failed to adhere.

97. MCCURRY further asserts that defendants Kenco and Mars memorialized this fiduciary duty to Plaintiff and other employees when it extended offer letters for employment and required its employees to sign its offer letter according to defendants' policy CP.HR. 1002 as a term and condition of employment.

98. MCCURRY also asserts that the offer letter highlighted benefits to the perspective employee. Exhibit 3

99. MCCURRY further asserts that the benefits were delineated in the employee hand book upon hire. Exhibit 4

100. Specifically, the hand book describes the available benefits and what they entail along with various procedures that are to be followed regarding the benefits and employment.

101. Plaintiff also asserts that Public Policies such as: Title VII, The Civil Rights Act of 1964 as amended in 1991 and other statutes and codified standards also create a duty of care.

102. Plaintiff is to be able to enjoy the fringe benefits of her employment just as other Caucasian employees.

103. MCCURRY asserts that she was underpaid in her benefits as a form of harassment in retaliation for engaging in protected activities and because of her race.

104. MCCURRY also asserts that she was not paid her benefits as a form of harassment in retaliation for engaging in protected activities and because of her race.

105. MCCURRY also contends that defendants and others conspired to breach their duty of care in an effort to harass and retaliate against plaintiff, as well as, hinder, delay and thwart plaintiff's civil actions to continue to violate plaintiff's and others protected rights by concealing the truth about the mischaracterizations and misleading statements made to various governmental agencies and tribunals in an effort to avoid culpability and liability about: 1) the racially charged hostile work environment; 2) the intentional pervasive and rampant discrimination; 3) the adverse employment decisions toward Plaintiff and others and; 4) the blatant breach in their duty of care by: intentionally failing to uphold their fiduciary obligation of failing to investigate claims of discrimination,

collusion, disparity of pay, uneven discipline, and retaliation among other issues raised.

106. Plaintiff asserts that Wayne Bell and Leonard Szplett both Caucasian men were paid sixty percent (60%) of their earnings as stated.

107. Plaintiff asserts that Wayne Bell and Leonard Szplett both Caucasian men were paid without interruption.

108. Plaintiff also asserts that Wayne Bell and Leonard Szplett both Caucasian men were not paid arbitrarily, capriciously or vexatiously.

109. MCCURRY also asserts that this competing and conflict of interest of the defendants being plan administrator, the insurer, the claims reviewer and litigants in other civil rights matters with plaintiff affected the benefits decision(s) and breached their fiduciary obligation to MCCURRY.

## NEGLIGENCE

In retaliation for opposing discrimination, participating in EEOC, IDHR and Department of Labor-Whistleblower proceedings and filing informal and formal complaints of discrimination.

110. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

Case: 1:19-cv-04067 Document #: 1 Filed: 06/17/19 Page 41 of 154 PageID #:41

111. MCCURRY contends that defendants are also negligent for failing to comply with terms and conditions of the short and long term disability policy and plan, as well as, company policies relative to harassment, discrimination, and other employment activities.

112. MCCURRY asserts that defendants KENCO/MARS established a duty of care and fiduciary obligation when it extended a written offer of employment to its employees including plaintiff; in which plaintiff was required to sign and return to accept defendants KENCO/MARS offer of employment.

113. MCCURRY also contends that defendants were negligent in their intentional and willful discrimination of Plaintiff in not paying MCCURRY sixty percent (60%) of her earnings.

114. MCCURRY also contends that defendants were negligent in their intentional and willful retaliation and harassment against plaintiff for filing claims of intentional discrimination, harassment, retaliation, conspiracy and engaging in other forms of protected activity.

115. Defendants were negligent in: 1) failing to give MCCURRY a fair and full review of her claims; 2) failing to timely render decisions regarding MCCURRY'S disability benefits; 3) being unbiased towards MCCURRY; 4) making decisions relative to MCCURRY that were in conflict to the plain language of the plan; 5) failing to consider the information MCCURRY submitted to defendants; 6) disregarding opinions previously relied upon

for determination of MCCURRY'S benefits; 7) the self-serving selectivity in the use of evidence or reliance on self-serving paper reviews of medical files; 8) relying on the opinions of non-treating physicians over treating physicians without explanation; 9) relying on inadequate information or incomplete investigation; 10) failing to analyze all relevant diagnoses; 11) coercing defendants IME to give partial diagnosis or recommendations that terminated MCCURRY'S benefits; and 12) the failure to consider plaintiff's ability to perform actual job requirements and her ability to obtain such employment within those limitations.

116. Defendants are negligent for failing to comply with public policies such as 1) ERISA; 2) Title VII, The Civil Rights Act of 1964 as amended in 1991 as to not be discriminated against and have a workplace free of hostility, animus and racial tension; 3) the Americans with Disability Act; 4) and other statutes and codified standards.

117. MCCURRY also asserts that this competing and conflict of interest of the defendants being plan administrator, the insurer, the claims reviewer and litigants in other civil rights matters with plaintiff contributed to the defendants' negligence.

## NEGLIGENT MISREPRESENTATION AND PROMISSORY ESTOPPEL

118. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein

119. MCCURRY contends that defendants KENCO/MARS intentionally misrepresented that in the event of a short or long term disability that MCCURRY would receive sixty percent (60%) of her earnings.

120. MCCURRY contends that this misrepresentation was made through various forms of written correspondence. Such as, but not limited to the employee handbook and various written correspondences mailed to MCCURRY. Exhibit(s) 3, 4, & 6

121. MCCURRY relied on the fact that in the event of a disability that she would be assured sixty percent (60%) of her earnings.

122. MCCURRY relied on defendants' benefits in that she elected to purchase the defendants' long term disability benefits, as a supplement to defendant KENCO/MARS short term benefits.

123. According to defendants the short and long term benefit amounts were to be the same.

124. To MCCURRY'S detriment defendants did not pay to MCCURRY either the short or long term disability benefits as described.

125. From January 2015 to July 2017, MCCURRY was paid less than the sixty percent (60%) of the stated amount that defendants deemed as her earnings. Exhibit 6 & 7

126. MCCURRY should have been paid sixty percent (60%) of her earnings.

127. MCCURRY was defrauded out of a $1,000.00 per month based upon this erroneous calculation.

128. From July 2017 to February 2019, MCCURRY was not paid any of her benefits. Exhibit 7 & 9

129. MCCURRY was to be afforded a full and fair review to which she did not receive.

130. The failure to afford MCCURRY a full and fair review caused MCCURRY irreparable harms.

131. The failure to correctly and accurately pay MCCURRY her benefits resulted in MCCURRY being unable to afford health insurance that she needed to further seek treatment for her various medical conditions.

132. The failure to correctly and accurately pay MCCURRY forced MCCURRY into indigence.

133. This indigence forced MCCURRY into economic distress and the foreclosure of her home.

134. These actions further exacerbated her various medical conditions.

135. MCCURRY contends that the issues of inadequate and inconsistent disability payments were brought to the defendants' attention on numerous occasions.

136. MCCURRY contends that defendants willfully and intentionally failed to follow the plan and public policy by adequately addressing and/or remediating these issues.

137. MCCURRY contends that the defendants were incentivized to benefit themselves by defrauding plaintiff out of her due benefits.

138. For example, MCCURRY asked the defendants to explain why her weekly stated amount was more than the monies actually received.

139. Defendants refused to give a specific answer, but pointed her to a section related to other income.

140. MCCURRY went so far to as to point out to defendants that this difference was not reflected on her W2 in a letter to them dated November 26, 2018.

141. Defendants still refused to identify why her benefits were reduced and why this amount was not reported to the IRS.

142. Effectively, defendants failed to provide any evidence to support this reduction in benefits.

## **FRAUD**

143. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

144. Plaintiff contends that the defendants have committed fraud.

145. Specifically, Plaintiff contends that defendants have defrauded her out of benefits of receiving sixty percent (60%) of her earnings as a benefit of being an employee of defendants KENCO/MARS and as a benefit of purchasing defendants long term disability policy that promised to also pay sixty percent (60%) of her earnings in the event of a long term disability.

146. More specifically, MCCURRY contends that she was defrauded out of more than $1,000.00 per month.

147. MCCURRY also contends that she paid premiums to defendants in expectation to receive long term disability benefits; to which she did not receive.

148. Essentially, defendants breached the terms and conditions of their contract with MCCURRY.

149. MCCURRY believes that defendants breach was motivated by retaliation and was a form of harassment to deter plaintiff from pursing civil remedies for violations of her civil rights.

150. MCCURRY also contends that these actions were racially motivated and contrived by defendant KENCO/MARS and others.

151. Defendants declined to respond to her questions that they are legally bound to answer relative to the disability plan, policy and payments.

152. Additionally, MCCURRY contends that it was not until MCCURRY'S legal counsel got very proactive that: 1) she learned that defendants had not contacted her physician(s) as stated and that they had made their determination that led to her denial without his evaluation; and 2) defendants reversed their decision without any new medical evidence just days after MCCURRY'S counsel filed complaints at the Illinois Department of Insurance who in turn contacted the Tennessee Department of Insurance.

153. MCCURRY contends that defendants knew that they were intentionally not paying MCCURRY sixty percent (60%) of her earnings.

154. MCCURRY contends that because they knew that they were defrauding MCCURRY, defendants declined to answer a number of questions relative to defendants plan and policy. Exhibit 25

155. MCCURRY contends that because they knew that they were defrauding MCCURRY, defendants declined to supply requested information and written correspondence relative to defendants plan and policy.

156. MCCURRY also asserts that she was induced into obtaining a long term disability policy from defendants that was riddled with ambiguity that would allow interpretations to benefit themselves.

157. More specifically, defendants KENCO/MARS have a history of having facially neutral or fictitious policies that are disproportionately applied to protected class persons. Re: in the matters of Nathan Doss, Jacque Morrison, Scott Marksteiner, Morris Tyson, Vernon Henry and others.

158. MCCURRY also asserts that defendants KENCO/MARS also have a history of failing to follow its policies relative to the employment practices of its employees.

159. MCCURRY also contends that under the initial and previous payment scheme of defendants, MCCURRY would have been defrauded out of the difference that defendants now pays her after her offset from Social Security disability.

160. Specifically, MCCURRY would have been out of over $960.00 per month owed to her by defendants.

## CIVIL CONSPIRACIES

161. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

162. MCCURRY asserts that defendants KENCO/MARS engaged with The Hartford in continuum with a number of other civil conspiracies that KENCO/MARS have engaged in to violate Plaintiff's and others protected rights.

163. MCCURRY further contends that the Defendants in an effort to conceal the truth about the: racially charged hostile work environment; the pervasive and rampant discrimination at the Mars Manteno facility; the adverse employment decisions and retaliatory acts toward Plaintiff and others; the numerous material misrepresentations and mischaracterizations made to various tribunals defendants KENCO/MARS engaged in yet another civil conspiracy to violate MCCURRY'S protected rights by defrauding MCCURRY out of her due benefits and driving her indigence in hopes to thwart, hinder and delay justice and its administration.

## E.R.I.S.A VIOLATIONS

164. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

47

165. Plaintiff contends that the defendants have made a number of ERISA violations.

166. Plaintiff contends that defendants had procedural irregularities, such as: (1) a reversal of a benefits determination without additional evidence, (2) a disregard of opinions previously relied upon, (3) a self-serving selectivity in the use of evidence or reliance on self-serving paper reviews of medical files, (4) a reliance on the opinions of non-treating physicians over treating physicians without explanation, (5) a reliance on inadequate information or incomplete investigation, (6) failure to comply with the notice requirements of Section 504 of ERISA, (7) failure to analyze all relevant diagnoses, and (8) failure to consider plaintiff's ability to perform actual job requirements that were violations of the defendants welfare benefits plan under ERISA.

167. Plaintiff also contends that defendants have violated the doctrine of *contra proferentem*.

168. MCCURRY specifically contends that defendants have ambiguous provisions within disability policies.

169. MCCURRY contends that this ambiguity of these policies was intentional and a way to defraud Plaintiff and others out of there just due benefits.

170. MCCURRY also contends that the Hartford drafted the language used in the policy that it either insured or administered.

171. Plaintiff also contends that none of the defendants disclosed these provisions to her prior to engaging in the contractual agreement to procure disability benefits from the defendants.

172. Plaintiff also contends that the enforcement of such ambiguous language was created by a contract of adhesion.

173. Plaintiff also contends that the interchangeable roles of the defendants KENCO/MARS and The Hartford as plan administrator, claim reviewer and payer created a conflict of interest and incentivized them to arbitrarily and capriciously deny MCCURRY'S claims in bad faith.

174. MCCURRY also contends that this conflict of interest also incentivized defendants to make decisions that were in conflict with plain language of the policy, when it defrauded MCCURRY by paying MCCURRY less than the sixty percent (60%) of her earnings.

175. MCCURRY also contends that she was not made aware prior to procuring her disability policy that a requisite of obtaining benefits was for MCCURRY to apply for Social Security Benefits to offset her long term disability benefits purchased from defendants.

176. MCCURRY contends that if MCCURRY had not sought legal assistance and filed claims with the various state insurance regulators, MCCURRY would have never received the additional monies due her that equated to over an additional $1,000.00 per month.

177. MCCURRY contends that this was another way to defraud her out of her due just benefits.

178. MCCURRY contends that the monies disbursed through the disability policies affected the bottom economic lines of the defendants.

179. MCCURRY also contends that defendants' failure to disburse the monies due her timely also contribute to a positive bottom line for defendants and a detriment to her, as MCCURRY does not have the use of the funds and from month to month does not know when she will have use of these funds.

180. MCCURRY contends that this is yet another deceptive tool used by defendants to defraud MCCURRY out of her just due benefits.

181. More specifically, when defendants withhold the monies of plan participants they have use of a large pool of funds to invest and to gain a greater return of interest on their investment.

182. Even more specifically, for example, the reduction of MCCURRY'S benefits allegedly was to have been a result a provision the policy relative to other income amount. To date, defendants have failed to specifically point to where this provision is found or produce said correspondence to support this theory. Other examples are the miscalculation of the amount of benefits due MCCURRY and the refusal to pay that totaled over $73,000. Plaintiff asserts that defendants invested this money earning interest while MCCURRY suffered from not having the use of her funds.

183. Plaintiff also contends that Plaintiff was never made whole from having the use of her funds, as MCCURRY was not paid interest on the monies that were withheld from her.

184. Plaintiff also contends that even if Plaintiff had been paid interest on the monies withheld from her, MCCURRY would still not have been made whole, as MCCURRY had to expend a good portion of the monies she recovered on legal cost and fees associated with her legal counsel assisting in the recovery of the monies due MCCURRY.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendants: and award Plaintiff all past due STD benefits and; a declaratory judgment that Defendant KENCO LOGISTIC SERVICES, LLC and MARS, Inc. violated MCCURRY'S protected rights of race discrimination, harassment and retaliation pursuant to TITLE VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981; 42 U.S.C. §1981 and;

B. That the Court order the Defendant to pay Plaintiff prejudgment interest at the highest rate allowed by law on all benefits that have accrued prior to the date of judgment and;

C.    An award to MCCURRY for compensatory damages in an
      amount to be shown at trial for past and future economic and
      non-economic losses, including extreme emotional distress
      and mental anguish, impairment of the quality of life; and
      consequential loses;

D.    An award to MCCURRY for exemplary and/or punitive
      damages in an amount shown at trial;

E.    That the Court award Plaintiff her reasonable attorney's fees
      pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

F.    That the Plaintiff recovers any and all other relief to which he may be
      entitled.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL 60958
815.735.4281


Submitted June 17, 2019

# YOUR
# BENEFIT
# PLAN

KENCO



EXHIBIT

Long Term Disability

The Plan Described in this Booklet
is Insured by the

Hartford Life and Accident Insurance Company
Simsbury, Connecticut
Member of The Hartford Insurance Group

## Questions or Complaints about Your Coverage

**In the event You have questions or complaints regarding any aspect of Your coverage, You should contact Your Employee Benefits Manager or You may write to us at:**
The Hartford
Group Benefits Division, Customer Service
P.O. Box 2999
Hartford, CT 06104-2999

**Or call Us at:** 1-800-523-2233
When calling, please give Us the following information:
1) the policy number; and
2) the name of the policyholder (employer or organization), as shown in Your Certificate of Insurance.

**Or You may contact Our Sales Office:**
Hartford Life and Accident Insurance Company
Group Sales Department
1125 Sanctuary Parkway
Suite 450
Alpharetta, GA 30009
TOLL FREE: 888-560-9632
FAX: 770-475-1404

**If you have a complaint, and contacts between you and the insurer or an agent or other representative of the insurer have failed to produce a satisfactory solution to the problem, the following states require we provide you with additional contact information:**

| For residents of: | Write | Telephone |
|---|---|---|
| Arkansas | Arkansas Insurance Department<br>Consumer Services Division<br>1200 West Third Street<br>Little Rock, AR 72201-1904 | 1(800) 852-5494<br>1(501) 371-2640 (in the Little Rock area) |
| California | State of California Insurance Department<br>Consumer Communications Bureau<br>300 South Spring Street, South Tower<br>Los Angeles, CA 90013 | 1(800) 927-HELP |
| Idaho | Idaho Department of Insurance<br>Consumer Affairs<br>700 W State Street, 3rd Floor<br>PO Box 83720<br>Boise, ID 83720-0043 | 1-800-721-3272 or www.DOI.Idaho.gov |
| Illinois | Illinois Department of Insurance<br>Consumer Services Station<br>Springfield, Illinois 62767 | Consumer Assistance: 1(866) 445-5364<br>Officer of Consumer Health Insurance:<br>1(877) 527-9431 |
| Indiana | Public Information/Market Conduct<br>Indiana Department of Insurance<br>311 W. Washington St. Suite 300<br>Indianapolis, IN 46204-2787 | Consumer Hotline: 1(800) 622-4461<br>1(317) 232-2395 (in the Indianapolis Area) |
| Virginia | Life and Health Division<br>Bureau of Insurance<br>P.O. Box 1157<br>Richmond, VA 23209 | 1(804) 371-9741 (inside Virginia)<br>1(800) 552-7945 (outside Virginia) |
| Wisconsin | Office of the Commissioner of Insurance<br>Complaints Department<br>P.O. Box 7873 | 1(800) 236-8517 (outside of Madison)<br>1(608) 266-0103 (in Madison)<br>to request a complaint form. |

Madison, WI 53707-7873

**The following states require that We provide these notices to You about Your coverage:**

**For residents of:**

**Arizona**          This certificate of insurance may not provide all benefits and protections provided by law in Arizona. Please read This certificate carefully.

**Florida**           The benefits of the policy providing you coverage are governed primarily by the laws of a state other than Florida.

## STATE OF DELAWARE
## The Civil Union and Equality Act of 2011
## Effective January 1, 2012

In accordance with Delaware law, insurers are required to provide the following notice to applicants of insurance policies issued in Delaware.

The Civil Union and Equality Act of 2011 ("the Act") creates a legal relationship between two persons of the same sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Delaware to spouses in a legal marriage. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Delaware law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of same sex civil unions or marriages legally entered into in other jurisdictions.

For more information regarding the Act, refer to Chapter 2 of Title 13 of the Delaware Code or the State of Delaware website at www.delaware.gov/CivilUnions.

### Georgia

The laws of the state of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family abuse.

## STATE OF ILLINOIS
## The Religious Freedom Protection and Civil Union Act
## Effective June 1, 2011

In accordance with Illinois law, insurers are required to provide the following notice to applicants of insurance policies issued in Illinois.

The Religious Freedom Protection and Civil Union Act ("the Act") creates a legal relationship between two persons of the same or opposite sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Illinois to spouses. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Illinois law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of civil unions or same sex civil unions or marriages legally entered into in other jurisdictions.

For more information regarding the Act, refer to 750 ILCS 75/1 *et seq*. Examples of the interaction between the Act and existing law can be found in the Illinois Insurance Facts, Civil Unions and Insurance Benefits document available on the Illinois Department of Insurance's website at www.insurance.illinois.gov.

## Maine

1.    The benefits under this policy are subject to reduction due to other sources of income.

This means that your benefits will be reduced by the amount of any other benefits for loss of time provided to you or for which you are eligible as a result of the same period of disability for which you claim benefits under this policy.

Other sources of income are plans or arrangements of coverage that provide disability-related benefits such as Worker's Compensation or other similar governmental programs or laws, or disability-related benefits received from your employer or as the result of your employment, membership or association with any group, union, association or other organization. Other sources of income include disability-related benefits under the United States Social Security Act or an alternate governmental plan, the Railroad Retirement Act, and other similar plans or acts. Other sources of income may also include certain disability-related or retirement benefits that you receive because of your retirement unless you were receiving them prior to becoming disabled.

What comprises other sources of income under this policy is determined by the nature of the policyholder. Therefore, we strongly urge you to **Read Your Certificate Carefully.** A full description of the plans and types of plans considered to be other sources of income under this policy will be found in the definition of "Other Income Benefits" located in the Definitions section of your certificate.

2.    The laws of the State of Maine require notification of the right to designate a third party to receive notice of cancellation, to change the designation and, policy reinstatement if the insured suffers from organic brain disease and the ground for cancellation was the insured's nonpayment of premium or other lapse or default on the part of the insured.

Within 10 days after a request by an insured, a Third Party Notice Request Form shall be mailed or personally delivered to the insured.

## Maryland

**The group insurance policy providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.**

## Montana

Conformity with Montana statutes: The provisions of this certificate conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the insured resides on or after the effective date of this certificate.

## North Carolina

UNDER NORTH CAROLINA GENERAL STATUTE SECTION 58-50-40, NO PERSON, EMPLOYER, FINANCIAL AGENT, TRUSTEE, OR THIRD PARTY ADMINISTRATOR, WHO IS RESPONSIBLE FOR THE PAYMENT OF GROUP LIFE INSURANCE, GROUP HEALTH OR GROUP HEALTH PLAN PREMIUMS, SHALL:
1) CAUSE THE CANCELLATION OR NONRENEWAL OF GROUP LIFE INSURANCE, GROUP HEALTH INSURANCE, HOSPITAL, MEDICAL, OR DENTAL SERVICE CORPORATION PLAN, MULTIPLE EMPLOYER WELFARE ARRANGEMENT, OR GROUP HEALTH PLAN COVERAGES AND THE CONSEQUENTIAL LOSS OF THE COVERAGES OF THE PERSON INSURED, BY WILLFULLY FAILING TO PAY THOSE PREMIUMS IN ACCORDANCE WITH THE TERMS OF THE INSURANCE OR PLAN CONTRACT; AND
2) WILLFULLY FAIL TO DELIVER, AT LEAST 45 DAYS BEFORE THE TERMINATION OF THOSE COVERAGES, TO ALL PERSONS COVERED BY THE GROUP POLICY WRITTEN NOTICE OF THE PERSON'S INTENTION TO STOP PAYMENT OF PREMIUMS. VIOLATION OF THIS LAW IS A FELONY. ANY PERSON VIOLATING THIS LAW IS ALSO SUBJECT TO A COURT ORDER REQUIRING THE PERSON TO COMPENSATE PERSONS INSURED FOR EXPENSES OR LOSSES INCURRED AS A RESULT OF THE TERMINATION OF THE INSURANCE.

## IMPORTANT TERMINATION INFORMATION

**YOUR INSURANCE MAY BE CANCELLED BY THE COMPANY. PLEASE READ THE TERMINATION PROVISION IN THIS CERTIFICATE.**

**THIS CERTIFICATE OF INSURANCE PROVIDES COVERAGE UNDER A GROUP MASTER POLICY. THIS CERTIFICATE PROVIDES ALL OF THE BENEFITS MANDATED BY THE NORTH CAROLINA INSURANCE CODE, BUT YOU MAY NOT RECEIVE ALL OF THE PROTECTIONS PROVIDED BY A POLICY ISSUED IN NORTH CAROLINA AND GOVERNED BY ALL OF THE LAWS OF NORTH CAROLINA.**

### PRE-EXISTING LIMITATION
### READ CAREFULLY
**NO BENEFITS WILL BE PAYABLE UNDER THIS PLAN FOR PRE-EXISTING CONDITIONS WHICH ARE NOT COVERED UNDER THE PRIOR PLAN. PLEASE READ THE LIMITATIONS IN THIS CERTIFICATE.**

### READ YOUR CERTIFICATE CAREFULLY.

**Texas**

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call The Hartford's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de The Hartford para informacion o para someter una queja al: |
| 1-800-523-2233 | 1-800-523-2233 |
| You may also write to The Hartford at:<br>P.O. Box 2999<br>Hartford, CT 06104-2999 | Usted tambien puede escribir a The Hartford:<br>P.O. Box 2999<br>Hartford, CT 06104-2999 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| 1-800-252-3439 | 1-800-252-3439 |
| You may write the Texas Department of Insurance at:<br>P.O. Box 149104<br>Austin, TX 78714-9410<br>Fax # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us | Puede escribir al Departamento de Seguros de Texas:<br>P.O. Box 149104<br>Austin, TX 78714-9410<br>Fax # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:**<br>Should you have a dispute concerning your premium or about a claim you should contact the agent or The Hartford first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:**<br>Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o The Hartford primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:**<br>This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:**<br>Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

**Group Disability Income Insurance**



**THE HARTFORD**

## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
**200 Hopmeadow Street**
**Simsbury, Connecticut 06089**
**(A stock insurance company)**

### CERTIFICATE OF INSURANCE

**Policyholder:** KENCO
**Policy Number:** GLT-674076
**Policy Effective Date:** June 1, 2001
**Policy Anniversary Date:** January 1, 2015

We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under The Policy. The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.

Signed for the Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

---

*A note on capitalization in this certificate:*
Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

## TABLE OF CONTENTS

SCHEDULE OF INSURANCE ................................................................................................................9
    Cost of Coverage ...........................................................................................................................9
    Eligible Class(es) For Coverage ...................................................................................................9
    Eligibility Waiting Period for Coverage .........................................................................................9
    Monthly Benefit .............................................................................................................................9
ELIGIBILITY AND ENROLLMENT .....................................................................................................10
    Eligible Persons ..........................................................................................................................10
    Eligibility for Coverage ...............................................................................................................10
    Enrollment ...................................................................................................................................10
    Evidence of Insurability ..............................................................................................................10
PERIOD OF COVERAGE ...................................................................................................................11
    Effective Date ..............................................................................................................................11
    Deferred Effective Date ..............................................................................................................11
    Changes in Coverage .................................................................................................................11
    Termination .................................................................................................................................12
    Continuation Provisions ..............................................................................................................12
BENEFITS ..........................................................................................................................................13
    Disability Benefit ..........................................................................................................................13
    Mental Illness and Substance Abuse Benefits ...........................................................................13
    Calculation of Monthly Benefit ...................................................................................................14
    Termination of Payment ..............................................................................................................14
    Family Care Credit Benefit ..........................................................................................................15
    Survivor Income Benefit ..............................................................................................................15
    Workplace Modification Benefit ..................................................................................................16
EXCLUSIONS AND LIMITATIONS .....................................................................................................16
    Pre-existing Condition Limitation ................................................................................................16
GENERAL PROVISIONS ....................................................................................................................17
DEFINITIONS ......................................................................................................................................21
AMENDATORY RIDER ........................................................................................................................25
ERISA ..................................................................................................................................................32

# SCHEDULE OF INSURANCE

The Policy of long term Disability insurance provides You with long term income protection if You become Disabled from a covered injury, sickness or pregnancy.

**The benefits described herein are those in effect as of January 1, 2015.**

**Cost of Coverage:**
You must contribute toward the cost of coverage.

**Disclosure of Fees:**
We may reduce or adjust premiums, rates, fees and/or other expenses for programs under The Policy.

**Disclosure of Services:**
In addition to the insurance coverage, We may offer noninsurance benefits and services to Active Employees.

**Eligible Class(es) For Coverage:** All Full-time Active Employees who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees.

Full-time Employment: at least 30 hours weekly

**Eligibility Waiting Period for Coverage:**
90 day(s)

The time period(s) referenced above are continuous. The Eligibility Waiting Period for Coverage will be reduced by the period of time You were a Full-time Active Employee with the Employer under the Prior Policy.

**Elimination Period:** 180 day(s)

**Maximum Monthly Benefit:** $5,000

**Minimum Monthly Benefit:** The greater of:
1) $100; or
2) 10% of the benefit based on Monthly Income Loss before the deduction of Other Income Benefits.

**Benefit Percentage:** 60%

## Maximum Duration of Benefits

### Maximum Duration of Benefits Table

| Age When Disabled | Benefits Payable |
| --- | --- |
| Prior to Age 63 | To Normal Retirement Age or 48 months, if greater |
| Age 63 | To Normal Retirement Age or 42 months, if greater |
| Age 64 | 36 months |
| Age 65 | 30 months |
| Age 66 | 27 months |
| Age 67 | 24 months |
| Age 68 | 21 months |
| Age 69 and over | 18 months |

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by Your date of birth as follows:

| Year of Birth | Normal Retirement Age |
| --- | --- |
| 1937 or before | 65 |
| 1938 | 65 + 2 months |
| 1939 | 65 + 4 months |

9

| 1940 | 65 + 6 months |
|------|---------------|
| 1941 | 65 + 8 months |
| 1942 | 65 + 10 months |
| 1943 thru 1954 | 66 |
| 1955 | 66 + 2 months |
| 1956 | 66 + 4 months |
| 1957 | 66 + 6 months |
| 1958 | 66 + 8 months |
| 1959 | 66 + 10 months |
| 1960 or after | 67 |

### Additional Benefit:

**Family Care Credit Benefit**
see benefit

**Survivor Income Benefit**
see benefit

**Workplace Modification Benefit**
see benefit

## ELIGIBILITY AND ENROLLMENT

**Eligible Persons:** *Who is eligible for coverage?*
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**Eligibility for Coverage:** *When will I become eligible?*
You will become eligible for coverage on the later of:
1) the Policy Effective Date; or
2) the date on which You complete the Eligibility Waiting Period for Coverage shown in the Schedule of Insurance, if applicable.

**Enrollment:** *How do I enroll for coverage?*
To enroll for coverage You must:
1) complete and sign a group insurance enrollment form which is satisfactory to Us; and
2) deliver it to Your Employer.

If You do not enroll within 31 days after becoming eligible under The Policy, or if You were eligible to enroll under the Prior Policy and did not do so, and later choose to enroll:
1) You must give Us Evidence of Insurability satisfactory to Us; and
2) You may enroll at any time.

**Evidence of Insurability:** *What is Evidence of Insurability and what happens if Evidence of Insurability is not satisfactory to Us?*
Evidence of Insurability must be satisfactory to Us and may include, but will not be limited to:
1) a completed and signed application approved by Us;
2) a medical examination, if requested;
3) attending Physicians' statements; and
4) any additional information We may require.

All Evidence of Insurability will be furnished at Our expense. We will then determine if You are insurable under The Policy.

If Your Evidence of Insurability is not satisfactory to Us:
1) Your Monthly Benefit will equal the amount for which You were eligible without providing Evidence of Insurability, provided You enrolled within 31 days of the date You were first eligible to enroll; and

10

2) You will not be covered under The Policy if You enrolled more than 31 days after the date You were first eligible to enroll.

# PERIOD OF COVERAGE

**Effective Date:** *When does my coverage start?*
Your coverage will start on the earliest of:
1) the date You become eligible, if You enroll or have enrolled by then;
2) the date on which You enroll, if You do so within 31 days after the date You are eligible; or
3) the date We approve Your Evidence of Insurability, for benefit amounts requiring Evidence of Insurability.

**Deferred Effective Date:** *When will my effective date for coverage or a change in my coverage be deferred?*
If You are absent from work due to:
1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy;
on the date Your insurance, or increase in coverage, would otherwise have become effective. Your insurance, or increase in coverage will not become effective until You are Actively at Work one full day.

**Changes in Coverage:** *Can I change my benefit options?*
You may change Your benefit option at any time. You may decrease coverage, or increase coverage to a higher option. An increase in coverage will be subject to Your submission of an application that meets Our approval.

Any such increase in coverage is subject to the following provisions:
1) Deferred Effective Date; and
2) Pre-existing Conditions Limitations.

*Do coverage amounts change if there is a change in my class or my rate of pay?*
Your coverage may increase or decrease on the date there is a change in Your class or Pre-disability Earnings. However, no increase in coverage will be effective unless on that date You:
1) are an Active Employee; and
2) are not absent from work due to being Disabled. If You were so absent from work, the effective date of such increase will be deferred until You are Actively at Work for one full day.

No change in Your Pre-disability Earnings will become effective until the date We receive notice of the change.

*What happens if the Employer changes The Policy?*
Any increase or decrease in coverage because of a change in The Policy will become effective on the date of the change, subject to the following provisions:
1) the Deferred Effective Date provision; and
2) Pre-existing Conditions Limitations.

**Continuity From A Prior Policy:** *Is there continuity of coverage from a Prior Policy?*
If You were:
1) insured under the Prior Policy; and
2) not eligible to receive benefits under the Prior Policy;
on the day before the Policy Effective Date, the Deferred Effective Date provision will not apply.

*Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy on the day before the Policy Effective Date, the Pre-existing Conditions Limitation will end on the earliest of:
1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.

11

The amount of the Monthly Benefit payable for a Pre-existing Condition in accordance with the above paragraph will be the lesser of:

1) the Monthly Benefit which was paid by the Prior Policy; or
2) the Monthly Benefit provided by The Policy.

The Pre-existing Conditions Limitation will apply after the Policy Effective Date to the amount of a benefit increase which results from a change from the Prior Policy to The Policy, a change in benefit options, a change of class or a change in The Policy.

*Do I have to satisfy an Elimination Period under The Policy if I was Disabled under the Prior Policy?*
If You received monthly benefits for disability under the Prior Policy, and You returned to work as a Full-time Active Employee before the Policy Effective Date, then, if within 6 months of Your return to work:

1) You have a recurrence of the same disability while covered under The Policy; and
2) there are no benefits available for the recurrence under the Prior Policy;

the Elimination Period, which would otherwise apply, will be waived if the recurrence would have been covered without any further elimination period under the Prior Policy.

**Termination:** *When will my coverage end?*
Your coverage will end on the earliest of the following:

1) the date The Policy terminates;
2) the date The Policy no longer insures Your class;
3) the date premium payment is due but not paid;
4) the last day of the period for which You make any required premium contribution;
5) the date Your Employer terminates Your employment; or
6) the date You cease to be a Full-time Active Employee in an eligible class for any reason;

unless continued in accordance with any of the Continuation Provisions.

**Continuation Provisions:** *Can my coverage be continued beyond the date it would otherwise terminate?*
Coverage can be continued by Your Employer beyond a date shown in the Termination provision, if Your Employer provides a plan of continuation which applies to all employees the same way. Continued coverage:

1) is subject to any reductions in The Policy;
2) is subject to payment of premium by the Employer; and
3) terminates if:
   a) The Policy terminates; or
   b) coverage for Your class terminates.

In any event, Your benefit level, or the amount of earnings upon which Your benefits may be based, will be that in effect on the day before Your coverage was continued. Coverage may be continued in accordance with the above restrictions and as described below:

Leave of Absence: If You are on a documented leave of absence, other than Family and Medical Leave, Your coverage may be continued until the last day of the month following the month in which the leave of absence commenced. If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

Layoff: If You are temporarily laid off by the Employer due to lack of work, Your coverage may be continued until the last day of the month following the month in which the layoff commenced. If the layoff becomes permanent, this continuation will cease immediately.

Family and Medical Leave: If You are granted a leave of absence, in writing, according to the Family and Medical Leave Act of 1993, or other applicable state or local law, Your coverage may be continued for up to 12 weeks, or 26 weeks if You qualify for Family Military Leave, or longer if required by other applicable law, following the date Your leave commenced. If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

**Coverage while Disabled:** *Does my insurance continue while I am Disabled and no longer an Active Employee?*
If You are Disabled and You cease to be an Active Employee, Your insurance will be continued:

1) during the Elimination Period while You remain Disabled by the same Disability; and
2) after the Elimination Period for as long as You are entitled to benefits under The Policy.

**Waiver of Premium:** *Am I required to pay premiums while I am Disabled?*
No premium will be due for You:

1) after the Elimination Period; and
2) for as long as benefits are payable.

**Extension of Benefits for Disability:** *Do my benefits continue if The Policy terminates?*
If You are entitled to benefits while Disabled and The Policy terminates, benefits:
1) will continue as long as You remain Disabled by the same Disability; but
2) will not be provided beyond the date We would have ceased to pay benefits had the insurance remained in force.
Termination of The Policy for any reason will have no effect on Our liability under this provision.

## BENEFITS

**Disability Benefit:** *What are my Disability Benefits under The Policy?*
We will pay You a Monthly Benefit if You:
1) become Disabled while insured under The Policy;
2) are Disabled throughout the Elimination Period;
3) remain Disabled beyond the Elimination Period; and
4) submit Proof of Loss to Us.
Benefits accrue as of the first day after the Elimination Period and are paid monthly. However, benefits will not exceed the Maximum Duration of Benefits.

**Mental Illness and Substance Abuse Benefits:** *Are benefits limited for Mental Illness or Substance Abuse?*
If You are Disabled because of:
1) Mental Illness that results from any cause;
2) any condition that may result from Mental Illness;
3) alcoholism; or
4) the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance;
then, subject to all other provisions of The Policy, We will limit the Maximum Duration of Benefits.

Benefits will be payable:
1) for as long as You are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
2) if not confined, or after You are discharged and still Disabled, for a total of 24 months for all such disabilities during Your lifetime.

**Recurrent Disability:** *What happens if I Recover but become Disabled again?*
Periods of Recovery during the Elimination Period will not interrupt the Elimination Period, if the number of days You return to work as an Active Employee are less than one-half (1/2) the number of days of Your Elimination Period.

Any day within such period of Recovery, will not count toward the Elimination Period.

After the Elimination Period, if You return to work as an Active Employee and then become Disabled and such Disability is:
1) due to the same cause; or
2) due to a related cause; and
3) within 6 months of the return to work;
the Period of Disability prior to Your return to work and the recurrent Disability will be considered one Period of Disability, provided The Policy remains in force.

If You return to work as an Active Employee for 6 months or more, any recurrence of a Disability will be treated as a new Disability. The new Disability is subject to a new Elimination Period and a new Maximum Duration of Benefits.

**Period of Disability** means a continuous length of time during which You are Disabled under The Policy.

**Recover or Recovery** means that You are no longer Disabled and have returned to work with the Employer and premiums are being paid for You.

**Calculation of Monthly Benefit: Return to Work Incentive:** *How are my Disability benefits calculated?*

If You remain Disabled after the Elimination Period, but work while You are Disabled, We will determine Your Monthly Benefit for a period of up to 12 consecutive months as follows:

1) multiply Your Pre-disability Earnings by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.

The result is Your Monthly Benefit. Current Monthly Earnings will not be used to reduce Your Monthly Benefit. However, if the sum of Your Monthly Benefit and Your Current Monthly Earnings exceeds 100% of Your Pre-disability Earnings, We will reduce Your Monthly Benefit by the amount of excess.

The 12 consecutive month period will start on the last to occur of:

1) the day You first start work; or
2) the end of the Elimination Period.

If You are Disabled and not receiving benefits under the Return to Work Incentive, We will calculate Your Monthly Benefit as follows:

1) multiply Your Monthly Income Loss by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.

The result is Your Monthly Benefit.

**Calculation of Monthly Benefit:** *What happens if the sum of my Monthly Benefit, Current Monthly Earnings, and Other Income Benefits exceeds 100% of my Pre-disability Earnings?*

If the sum of Your Monthly Benefit, Current Monthly Earnings, and Other Income Benefits exceeds 100% of Your Pre-disability Earnings, We will reduce Your Monthly Benefit by the amount of the excess. However, Your Monthly Benefit will not be less than the Minimum Monthly Benefit.

If an overpayment occurs, We may recover all or any portion of the overpayment, in accordance with the Overpayment Recovery provision.

**Minimum Monthly Benefit:** *Is there a Minimum Monthly Benefit?*
Your Monthly Benefit will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

**Partial Month Payment:** *How is the benefit calculated for a period of less than a month?*
If a Monthly Benefit is payable for a period of less than a month, We will pay 1/30 of the Monthly Benefit for each day You were Disabled.

**Termination of Payment:** *When will my benefit payments end?*
Benefit payments will stop on the earliest of:

1) the date You are no longer Disabled;
2) the date You fail to furnish Proof of Loss;
3) the date You are no longer under the Regular Care of a Physician;
4) the date You refuse Our request that You submit to an examination by a Physician or other qualified medical professional;
5) the date of Your death;
6) the date You refuse to receive recommended treatment that is generally acknowledged by Physicians to cure, correct or limit the disabling condition;
7) the last day benefits are payable according to the Maximum Duration of Benefits Table;
8) the date Your Current Monthly Earnings:
   a) are equal to or greater than 80% of Your Indexed Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation; or
   b) are greater than the lesser of the product of Your Indexed Pre-disability Earnings and the Benefit Percentage or the Maximum Monthly Benefit if You are receiving benefits for being Disabled from Any Occupation;
9) the date no further benefits are payable under any provision in The Policy that limits benefit duration;
10) the date You refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
    a) modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
    b) adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;

14

     c) modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation; or

     d) adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation;

    provided a qualified Physician or other qualified medical professional agrees that such modifications, Rehabilitation program or adaptive equipment accommodate Your medical limitation; or

11) the date You receive retirement benefits from any employer's Retirement Plan, unless:

     a) You were receiving them prior to becoming Disabled; or

     b) You immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.

**Family Care Credit Benefit:** *What if I must incur expenses for Family Care Services in order to participate in a Rehabilitation program?*

If You are working as part of a program of Rehabilitation, We will, for the purpose of calculating Your benefit, deduct the cost of Family Care from earnings received from work as a part of a program of Rehabilitation, subject to the following limitations:

1) Family Care means the care or supervision of:

     a) Your children under age 13; or

     b) a member of Your household who is mentally or physically handicapped and dependent upon You for support and maintenance;

2) the maximum monthly deduction allowed for each qualifying child or family member is:

     a) $350 during the first 12 months of Rehabilitation; and

     b) $175 thereafter;

    but in no event may the deduction exceed the amount of Your monthly earnings;

3) Family Care Credits may not exceed a total of $2,500 during a calendar year;

4) the deduction will be reduced proportionally for periods of less than a month;

5) the charges for Family Care must be documented by a receipt from the caregiver;

6) the credit will cease on the first to occur of the following:

     a) You are no longer in a Rehabilitation program; or

     b) Family Care Credits for 24 months have been deducted during Your Disability; and

7) no Family Care provided by someone Related to the family member receiving the care will be eligible as a deduction under this provision.

Your Current Monthly Earnings after the deduction of Your Family Care Credit will be used to determine Your Monthly Income Loss. In no event will You be eligible to receive a Monthly Benefit under The Policy if Your Current Monthly Earnings before the deduction of the Family Care Credit exceed 80% of Your Indexed Pre-disability Earnings.

**Survivor Income Benefit:** *Will my survivors receive a benefit if I die while receiving Disability Benefits?*

If You were receiving a Monthly Benefit at the time of Your death, We will pay a Survivor Income Benefit, when We receive proof satisfactory to Us:

1) of Your death; and

2) that the person claiming the benefit is entitled to it.

We must receive the satisfactory proof for Survivor Income Benefits within 1 year of the date of Your death.

The Survivor Income Benefit will only be paid:

1) to Your Surviving Spouse; or

2) if no Surviving Spouse, in equal shares to Your Surviving Children.

If there is no Surviving Spouse or Surviving Children, then no benefit will be paid.

However, We will first apply the Survivor Income Benefit to any overpayment which may exist on Your claim.

If a minor child is entitled to benefits, We may, at Our option, make benefit payments to the person caring for and supporting the child until a legal guardian is appointed.

The Survivor Income Benefit is calculated as 3 times the lesser of:

1) Your Monthly Income Loss multiplied by the Benefit Percentage in effect on the date of Your death; or

2) The Maximum Monthly Benefit.

**Surviving Spouse** means Your wife or husband who was not legally separated or divorced from You when You died.

**Surviving Children** means Your unmarried children, step children, legally adopted children who, on the date You die, are primarily dependent on You for support and maintenance and who are under age 24.

The term Surviving Children will also include any other children related to You by blood or marriage and who:
1) lived with You in a regular parent-child relationship; and
2) were eligible to be claimed as dependents on Your federal income tax return for the last tax year prior to Your death.

**Workplace Modification Benefit:** *Will the Rehabilitation program provide for modifications to my workplace to accommodate my return to work?*
We will reimburse Your Employer for the expense of reasonable Workplace Modifications to accommodate Your Disability and enable You to return to work as an Active Employee. You qualify for this benefit if:
1) Your Disability is covered by The Policy;
2) the Employer agrees to make modifications to the workplace in order to reasonably accommodate Your return to work and the performance of the Essential Duties of Your job; and
3) We approve, in writing, any proposed Workplace Modifications.

Benefits paid for such Workplace Modification shall not exceed the amount equal to the amount of the Maximum Monthly Benefit.

We have the right, at Our expense, to have You examined or evaluated by:
1) a Physician or other health care professional; or
2) a vocational expert or rehabilitation specialist;
of Our choice so that We may evaluate the appropriateness of any proposed modification.

We will reimburse the Employer's costs for approved Workplace Modifications after:
1) the proposed modifications made on Your behalf are complete;
2) We have been provided written proof of the expenses incurred to provide such modification; and
3) You have returned to work as an Active Employee.

**Workplace Modification** means change in Your work environment, or in the way a job is performed, to allow You to perform, while Disabled, the Essential Duties of Your job. Payment of this benefit will not reduce or deny any benefit You are eligible to receive under the terms of The Policy.

## EXCLUSIONS AND LIMITATIONS

**Exclusions:** *What Disabilities are not covered?*
The Policy does not cover, and We will not pay a benefit for, any Disability:
1) unless You are under the Regular Care of a Physician;
2) that is caused or contributed to by war or act of war, whether declared or not;
3) caused by Your commission of or attempt to commit a felony;
4) caused or contributed to by Your being engaged in an illegal occupation; or
5) caused or contributed to by an intentionally self-inflicted injury.

If You are receiving or are eligible for benefits for a Disability under a prior disability plan that:
1) was sponsored by Your Employer; and
2) was terminated before the Effective Date of The Policy;
no benefits will be payable for the Disability under The Policy.

**Pre-existing Condition Limitation:** *Are benefits limited for Pre-existing Conditions?*
We will not pay any benefit, or any increase in benefits, under The Policy for any Disability that results from, or is caused or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled:
1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under The Policy; or
2) You have been continuously insured under The Policy for 12 consecutive month(s).

16

**Pre-existing Condition** means:
1) any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
2) any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;

for which You received Medical Care during the 3 consecutive month(s) period that ends the day before:
1) Your effective date of coverage; or
2) the effective date of a Change in Coverage.

**Medical Care** is received when a Physician or other health care provider:
1) is consulted or gives medical advice; or
2) recommends, prescribes, or provides Treatment.

**Treatment** includes but is not limited to:
1) medical examinations, tests, attendance or observation; and
2) use of drugs, medicines, medical services, supplies or equipment.

## GENERAL PROVISIONS

**Notice of Claim:** *When should I notify the Company of a claim?*
You must give Us written notice of a claim within 30 days after Disability or loss occurs. Failure to give notice within such time shall not invalidate or reduce any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. Such notice must include Your name, Your address and the Policy Number.

**Claim Forms:** *Are special forms required to file a claim?*
We will send forms to You to provide Proof of Loss, within 15 days of receiving a Notice of Claim. If We do not send the forms within 15 days, You may submit any other written proof which fully describes the nature and extent of Your claim.

**Proof of Loss:** *What is Proof of Loss?*
Proof of Loss may include but is not limited to the following:
1) documentation of:
   a) the date Your Disability began;
   b) the cause of Your Disability;
   c) the prognosis of Your Disability;
   d) Your Pre-disability Earnings, Current Monthly Earnings or any income, including but not limited to copies of Your filed and signed federal and state tax returns; and
   e) evidence that You are under the Regular Care of a Physician;
2) any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;
3) the names and addresses of all:
   a) Physicians or other qualified medical professionals You have consulted;
   b) hospitals or other medical facilities in which You have been treated; and
   c) pharmacies which have filled Your prescriptions within the past three years;
4) Your signed authorization for Us to obtain and release:
   a) medical, employment and financial information; and
   b) any other information We may reasonably require;
5) Your signed statement identifying all Other Income Benefits; and
6) proof that You and Your dependents have applied for all Other Income Benefits which are available.

You will not be required to claim any retirement benefits which You may only get on a reduced basis. All proof submitted must be satisfactory to Us.

**Additional Proof of Loss:** *What Additional Proof of Loss is the Company entitled to?*
To assist Us in determining if You are Disabled, or to determine if You meet any other term or condition of The Policy, We have the right to require You to:
1) meet and interview with Our representative; and
2) be examined by a Physician, vocational expert, functional expert, or other medical or vocational professional of Our choice.

Any such interview, meeting or examination will be:

1) at Our expense; and
2) as reasonably required by Us.

Your Additional Proof of Loss must be satisfactory to Us. Unless We determine You have a valid reason for refusal, We may deny, suspend or terminate Your benefits if You refuse to be examined or meet to be interviewed by Our representative.

**Sending Proof of Loss:** *When must Proof of Loss be given?*
Written Proof of Loss must be sent to Us within 90 days following the completion of the Elimination Period. If proof is not given by the time it is due, it will not affect the claim if:
1) it was not reasonably possible to give proof within the required time; and
2) proof is given as soon as reasonably possible; but
3) not later than 1 year after it is due, unless You are not legally competent.
We may request Proof of Loss throughout Your Disability, as reasonably required. In such cases, We must receive the proof within 30 day(s) of the request.

**Claim Payment:** *When are benefit payments issued?*
When We determine that You;
1) are Disabled; and
2) eligible to receive benefits;
We will pay accrued benefits at the end of each month that You are Disabled. We may, at Our option, make an advance benefit payment based on Our estimated duration of Your Disability. If any payment is due after a claim is terminated, it will be paid as soon as Proof of Loss satisfactory to Us is received.

Benefits may be subject to interest payments as required by applicable law.

**Claims to be Paid:** *To whom will benefits for my claim be paid?*
All payments are payable to You. Any payments owed at Your death may be paid to Your estate. If any payment is owed to:
1) Your estate;
2) a person who is a minor; or
3) a person who is not legally competent;
then We may pay up to $1,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.

**Claim Denial:** *What notification will I receive if my claim is denied?*
If a claim for benefits is wholly or partly denied, You will be furnished with written notification of the decision. This written notification will:
1) give the specific reason(s) for the denial;
2) make specific reference to The Policy provisions on which the denial is based;
3) provide a description of any additional information necessary to perfect a claim and an explanation of why it is necessary; and
4) provide an explanation of the review procedure.

**Claim Appeal:** *What recourse do I have if my claim is denied?*
On any claim, You or Your representative may appeal to Us for a full and fair review. To do so You:
1) must request a review upon written application within:
    a) 180 days of receipt of claim denial if the claim requires Us to make a determination of disability; or
    b) 60 days of receipt of claim denial if the claim does not require Us to make a determination of disability; and
2) may request copies of all documents, records, and other information relevant to Your claim; and
3) may submit written comments, documents, records and other information relating to Your claim.

We will respond to You in writing with Our final decision on the claim.

**Social Security:** *When must I apply for Social Security Benefits?*
You must apply for Social Security disability benefits when the length of Your Disability meets the minimum duration required to apply for such benefits. You must apply within 45 days from the date of Our request. If the Social Security Administration denies Your eligibility for benefits, You will be required:
1) to follow the process established by the Social Security Administration to reconsider the denial; and
2) if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**Benefit Estimates:** *How does the Company estimate Disability benefits under the United States Social Security Act?*
We reserve the right to reduce Your Monthly Benefit by estimating the Social Security disability benefits You or Your spouse and children may be eligible to receive.

When We determine that You or Your dependent may be eligible for benefits, We may estimate the amount of these benefits. We may reduce Your Monthly Benefit by the estimated amount.
Your Monthly Benefit will not be reduced by estimated Social Security disability benefits if:
1) You apply for Social Security disability benefits and pursue all required appeals in accordance with the Social Security provision; and
2) You have signed a form authorizing the Social Security Administration to release information about awards directly to Us; and
3) You have signed and returned Our reimbursement agreement, which confirms that You agree to repay all overpayments.

If We have reduced Your Monthly Benefit by an estimated amount and:
1) You or Your dependent are later awarded Social Security disability benefits, We will adjust Your Monthly Benefit when We receive proof of the amount awarded, and determine if it was higher or lower than Our estimate; or
2) Your application for Social Security disability benefits has been denied, We will adjust Your Monthly Benefit when You provide Us proof of final denial from which You cannot appeal from an Administrative Law Judge of the Office of Hearing and Appeals.

If Your Social Security benefits were lower than We estimated, and We owe You a refund, We will make such refund in a lump sum. If Your Social Security benefits were higher than We estimated, and if Your Monthly Benefit has been overpaid, You must make a lump sum refund to Us equal to all overpayments, in accordance with the Overpayment Recovery provision.

**Overpayment:** *When does an overpayment occur?*
An overpayment occurs:
1) when We determine that the total amount We have paid in benefits is more than the amount that was due to You under The Policy; or
2) when payment is made by Us that should have been made under another group policy.

This includes, but is not limited to, overpayments resulting from:
1) retroactive awards received from sources listed in the Other Income Benefits definition;
2) failure to report, or late notification to Us of any Other Income Benefit(s) or earned income;
3) misstatement;
4) fraud; or
5) any error We may make.

**Overpayment Recovery:** *How does the Company exercise the right to recover overpayments?*
We have the right to recover from You any amount that We determine to be an overpayment. You have the obligation to refund to Us any such amount. Our rights and Your obligations in this regard may also be set forth in the reimbursement agreement You will be required to sign when You become eligible for benefits under The Policy.

If benefits are overpaid on any claim, You must reimburse Us within 30 days.

If reimbursement is not made in a timely manner, We have the right to:
1) recover such overpayments from:
    a) You;
    b) any other organization;
    c) any other insurance company;
    d) any other person to or for whom payment was made; and
    e) Your estate;
2) reduce or offset against any future benefits payable to You or Your survivors, including the Minimum Monthly Benefit, until full reimbursement is made. Payments may continue when the overpayment has been recovered;
3) refer Your unpaid balance to a collection agency; and
4) pursue and enforce all legal and equitable rights in court.

**Subrogation:** *What are the Company's subrogation rights?*
If You:

1) suffer a Disability because of the act or omission of a Third Party;
2) become entitled to and are paid benefits under The Policy in compensation for lost wages; and
3) do not initiate legal action for the recovery of such benefits from the Third Party in a reasonable period of time;

then We will be subrogated to any rights You may have against the Third Party and may, at Our option, bring legal action against the Third Party to recover any payments made by Us in connection with the Disability.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Reimbursement:** *What are the Company's Reimbursement Rights?*
We have the right to request to be reimbursed for any benefit payments made or required to be made under The Policy for a Disability for which You recover payment from a Third Party.

If You recover payment from a Third Party as:
  a) a legal judgment;
  b) an arbitration award; or
  c) a settlement or otherwise;
You must reimburse Us for the lesser of:
  a) the amount of payment made or required to be made by Us; or
  b) the amount recovered from the Third Party less any reasonable legal fees associated with the recovery.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Legal Actions:** *When can legal action be taken against Us?*
Legal action cannot be taken against Us:
  1) sooner than 60 days after the date Proof of Loss is given; or
  2) more than 3 years after the date Proof of Loss is required to be given according to the terms of The Policy.

**Insurance Fraud:** *How does the Company deal with fraud?*
Insurance Fraud occurs when You and/or Your Employer provide Us with false information or file a claim for benefits that contains any false, incomplete or misleading information with the intent to injure, defraud or deceive Us. It is a crime if You and/or Your Employer commit Insurance Fraud. We will use all means available to Us to detect, investigate, deter and prosecute those who commit Insurance Fraud. We will pursue all available legal remedies if You and/or Your Employer perpetrate Insurance Fraud.

**Misstatements:** *What happens if facts are misstated?*
If material facts about You were not stated accurately:
  1) Your premium may be adjusted; and
  2) the true facts will be used to determine if, and for what amount, coverage should have been in force.

No statement, except fraudulent misstatements, made by You relating to Your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during Your lifetime. In order to be used, the statement must be in writing and signed by You.

All statements made by the Policyholder, the Employer or You under The Policy will be deemed representations and not warranties. No statement made to affect this insurance will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary or Your representative.

**Policy Interpretation:** *Who interprets the terms and conditions of The Policy?*
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy. This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

**Physical Examinations and Autopsy:** *Will I be examined during the course of my claim?*
While a claim is pending We have the right at Our expense:
  1) to have the person who has a loss examined by a Physician when and as often as reasonably necessary; and
  2) to make an autopsy in case of death where it is not forbidden by law.

## DEFINITIONS

**Actively at Work** means at work with the Employer on a day that is one of the Employer's scheduled workdays. On that day, You must be performing for wage or profit all of the regular duties of Your Occupation:

1) in the usual way; and
2) for Your usual number of hours.

We will consider You Actively at Work on a day that is not a scheduled work day only if You were Actively at Work on the preceding scheduled work day.

**Active Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. This must be at least the number of hours shown in the Schedule of Insurance.

**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:

1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
2) the Maximum Monthly Benefit.

**Current Monthly Earnings** means monthly earnings You receive from:

1) Your Employer; and
2) other employment;

while You are Disabled.

However, if the other employment is a job You held in addition to Your job with Your Employer, then during any period that You are entitled to benefits for being Disabled from Your Occupation, only the portion of Your earnings that exceeds Your average earnings from the other employer over the 6 month period just before You became Disabled will count as Current Monthly Earnings.

Current Monthly Earnings also includes the pay You could have received for another job or a modified job if:

1) such job was offered to You by Your Employer, or another employer, and You refused the offer; and
2) the requirements of the position were consistent with:
   a) Your education, training and experience; and
   b) Your capabilities as medically substantiated by Your Physician.

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:

1) Your Occupation during the Elimination Period;
2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:

1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

**Elimination Period** means the longer of the number of consecutive days at the beginning of any one period of Disability which must elapse before benefits are payable or the expiration of any Employer sponsored short term Disability benefits or salary continuation program, excluding benefits required by state law.

**Employer** means the Policyholder.

**Indexed Pre-disability Earnings** means Your Pre-disability Earnings adjusted annually by adding the lesser of:
   1) 10%; or
   2) the percentage change in the Consumer Price Index (CPI-W).

The percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W. The adjustment is made January 1st each year after You have been Disabled for 12 consecutive month(s), provided You are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, We may use another nationally published index that is comparable to the CPI-W.

**Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:
   1) Mental Retardation;
   2) Pervasive Developmental Disorders;
   3) Motor Skills Disorder;
   4) Substance-Related Disorders;
   5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; or
   6) Narcolepsy and Sleep Disorders related to a General Medical Condition.

**Monthly Benefit** means a monthly sum payable to You while You are Disabled, subject to the terms of The Policy.

**Monthly Income Loss** means Your Pre-disability Earnings minus Your Current Monthly Earnings.

**Other Income Benefits** means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits that are paid to You or Your family, or to a third party on Your behalf, pursuant to any:
   1) temporary, permanent disability, or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
   2) governmental law or program that provides disability or unemployment benefits as a result of Your job with Your Employer;
   3) plan or arrangement of coverage, whether insured or not, which is received from Your Employer as a result of employment by or association with Your Employer or which is the result of membership in or association with any group, association, union or other organization;
   4) mandatory "no-fault" automobile insurance plan;
   5) disability benefits under:
      a) the United States Social Security Act or alternative plan offered by a state or municipal government;
      b) the Railroad Retirement Act;
      c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
      d) similar plan or act;
      that You, Your spouse and/or children, are eligible to receive because of Your Disability; or
   6) disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
      a) that begins after You become Disabled; or
      b) that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

22

Other Income Benefits also means any payments that are made to You or to Your family, or to a third party on Your behalf, pursuant to any:
1) disability benefit under Your Employer's Retirement Plan;
2) temporary, permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
3) portion of a judgment or settlement, minus associated costs, of a claim or lawsuit that represents or compensates for Your loss of earnings; or
4) retirement benefits under:
    a) the United States Social Security Act or alternative plan offered by a state or municipal government;
    b) the Railroad Retirement Act;
    c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
    d) similar plan or act;
    that You, Your spouse and/or children receive because of Your retirement, unless You were receiving them prior to becoming Disabled.

If You are paid Other Income Benefits in a lump sum or settlement, You must provide proof satisfactory to Us of:
1) the amount attributed to loss of income; and
2) the period of time covered by the lump sum or settlement.

We will pro-rate the lump sum or settlement over this period of time. If You cannot or do not provide this information, We will assume the entire sum to be for loss of income, and the time period to be 24 month(s). We may make a retroactive allocation of any retroactive Other Income Benefit. A retroactive allocation may result in an overpayment of Your claim.

The amount of any increase in Other Income Benefits will not be included as Other Income Benefits if such increase:
1) takes effect after the date benefits become payable under The Policy; and
2) is a general increase which applies to all persons who are entitled to such benefits.

**Physician** means a person who is:
1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
2) licensed to practice in the jurisdiction where care is being given;
3) practicing within the scope of that license; and
4) not You or Related to You by blood or marriage.

**Pre-disability Earnings** means Your regular monthly rate of pay from Your Employer based on Your Statement of Wages Earned and Taxes Withheld (Form W-2) for:
1) the one full tax year immediately prior to the last day You were Actively at Work before You became Disabled; or
2) the total number of calendar months You worked for Your Employer as an Active Employee, if less than the above period.

**Prior Policy** means the long term disability insurance carried by the Employer on the day before the Policy Effective Date.

**Regular Care of a Physician** means that You are being treated by a Physician:
1) whose medical training and clinical experience are suitable to treat Your disabling condition; and
2) whose treatment is:
    a) consistent with the diagnosis of the disabling condition;
    b) according to guidelines established by medical, research, and rehabilitative organizations; and
    c) administered as often as needed;
    to achieve the maximum medical improvement.

**Rehabilitation** means a process of Our working together with You in order for Us to plan, adapt, and put into use options and services to meet Your return to work needs. A Rehabilitation program may include, when We consider it to be appropriate, any necessary and feasible:
1) vocational testing;
2) vocational training;
3) alternative treatment plans such as:
    a) support groups;
    b) physical therapy;
    c) occupational therapy; or

    d)  speech therapy;
4)  work-place modification to the extent not otherwise provided;
5)  job placement;
6)  transitional work; and
7)  similar services.

**Related** means Your spouse, or other adult living with You, or Your sibling, parent, step-parent, grandparent, aunt, uncle, niece, nephew, son, daughter, or grandchild.

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for Your retirement and which is not funded wholly by Your contributions. It does not include:
1)  a profit sharing plan;
2)  thrift, savings or stock ownership plans;
3)  a non-qualified deferred compensation plan; or
4)  an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan, 403(b) plan or 457 deferred compensation arrangement.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1)  impairments in social and/or occupational functioning;
2)  debilitating physical condition;
3)  inability to abstain from or reduce consumption of the substance; or
4)  the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**The Policy** means the policy which We issued to the Policyholder under the Policy Number shown on the face page.

**We, Our, or Us** means the insurance company named on the face page of The Policy.

**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

**You or Your** means the person to whom this certificate is issued.

**Amendatory Rider**



THE
HARTFORD

## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
### 200 Hopmeadow Street
### Simsbury, Connecticut 06089
### (A stock insurance company)

This rider is attached to a certificate given in connection with The Policy.

This rider becomes effective on the certificate effective date.

This rider is intended to amend Your certificate, as indicated below, to comply with the laws of Your state of residence. Only those references to benefits, provisions or terms actually included in Your certificate will affect Your coverage. However, if Your policy is governed under the laws of Maryland, any of the benefits, provisions or terms that apply to the state you reside in as shown below will apply only to the extent that such state requirements are more beneficial to You.

For Alaska residents:
    1) The provision titled **Policy Interpretation** is deleted in its entirety.
    2) The following provision is added to the **General Provisions** section of Your certificate:
    **Eligibility Determination**: How will We determine Your eligibility for benefits?
    We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your eligibility or Your Spouse's or Your beneficiaries for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy. We will:
    1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;
    2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;
    3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;
    4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.
    In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

For Arkansas residents:
    The provision titled **Policy Interpretation** is deleted in its entirety.

For Colorado residents:
1) The **Change in Family Status** provision is amended to read as follows:
   **Change in Family Status:** *What constitutes a Change in Family Status?*
      1) You get married or enter a civil union or You execute a domestic partner affidavit;
      2) You or Your spouse divorce or terminate a civil union or You terminate a domestic partnership;
      3) Your child is born or You adopt or become the legal guardian of a child;
      4) Your spouse or party to a civil union or domestic partner dies;
      5) Your child is emancipated or dies;
      6) Your spouse or party to a civil union or domestic partner is no longer employed, which results in a loss of group insurance; or
      7) You have a change in classification from part-time to full-time or from full-time to part-time.
2) The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
   **Surviving Spouse** means Your wife or husband who was not legally separated or divorced from You when You died. Spouse will include Your partner in a civil union.
   "Spouse" will include Your domestic partner provided You:
      1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
      2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
   You will continue to be considered domestic partners provided You continue to meet the requirements described in the domestic partner affidavit or required by law.
3) The definition of **Surviving Children** in the **Survivor Income Benefit** is amended to read as follows:
   **Surviving Children** means Your unmarried children, step children, legally adopted children who, on the date You die, are primarily dependent on You for support and maintenance and who are:
      1) under age 19; or
      2) between the ages of age 19 and 23, inclusive, and in full-time attendance at an institution of learning.
   The term Surviving Children will also include any other children related to You by blood or marriage or civil union or domestic partnership and who:
      1) lived with You in a regular parent-child relationship; and
      2) were eligible to be claimed as dependents on Your federal income tax return for the last tax year prior to Your death.

For Delaware residents:
The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
**Surviving Spouse** means Your spouse who was not legally separated or divorced from You when You died.
"Spouse" will include Your domestic partner provided You:
   1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
   2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit or required by law.

For Indiana residents, the following sentence is added to the **Policy Interpretation** provision:
This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

For Louisiana residents, the following provision is added:
**Reinstatement after Military Service**: *Can my coverage be reinstated after return from active military service?*
If Your coverage terminates because You enter active military service, coverage for You may be reinstated, provided You request such reinstatement upon Your return to work from active military service.

The reinstated coverage will:
   1) be the same coverage amounts in force on the date coverage terminated; and
   2) not be subject to any Waiting Period for Coverage, Evidence of Insurability or Pre-existing Conditions Limitations; and be subject to all the terms and provisions of The Policy Reference.

For Massachusetts residents,
1) The following is added to the **Continuation Provisions**:

In accordance with Massachusetts state law, if Your insurance terminates because Your employment terminates or You cease to be a member of an eligible class, Your insurance will automatically be continued until the end of a 31 day period from the date Your insurance terminates or the date You become eligible for similar benefits under another group plan, whichever occurs first.

Additionally, if Your insurance terminates because Your employment is terminated as a result of a plant closing or covered partial closing, Your insurance may be continued. You must elect in writing to continue insurance and pay the required premium for continued coverage. Coverage will cease on the earliest to occur of the following dates:
   1) 90 days from the date You were no longer eligible for coverage as a Full-time Active Employee;
   2) the date You become eligible for similar benefits under another group plan;
   3) the last day of the period for which required premium is made;
   4) the date the group insurance policy terminates; or
   5) the date Your Employer ceases to be a Participant Employer, if applicable.
Continued coverage is subject to all other applicable terms and conditions of The Policy.
   2) The **Surviving Children** definition in the **Survivor Income Benefit** will also include a child in the process of adoption.

For Maine residents, the following provision is added:
   **Reinstatement:** *Can my coverage be reinstated after it ends?*
   We will reinstate The Policy upon receipt of all current and late premiums if:
      1) You, any person authorized to act on Your behalf, or any of Your dependents may request reinstatement of The Policy within 90 days following cancellation of The Policy for nonpayment of premium provided You suffered from cognitive impairment or functional incapacity at the time the contract cancelled; and
      2) all current and late premium payments are received within 15 days of Our request.

We may request a medical demonstration, at Your expense, that You suffered from cognitive impairment or functional incapacity at the time of cancellation of The Policy.

For Minnesota residents:
   1) the definition of **Any Occupation** is amended by the addition of the phrase "or may reasonably become qualified" to the first line;
   2) The first two paragraphs of the **Pre-Existing Conditions Limitation** provision are deleted and replaced by the following:
   No benefit will be payable under The Policy for any Disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability or loss is incurred:
      1) After the lesser of the last day of:
         a) the number of days stated in Your certificate; or
         b) 730 consecutive days;
         while insured, during which you receive no medical care for the Pre-Existing Condition; or
      2) After the lesser of the last day of:
         a) the number of days stated in Your certificate; or
         b) 730 consecutive days;
         during which you have been continuously insured under The Policy.
   The amount of a benefit increase, which results from a change in benefit options, a change of class or a change in The Policy, will not be paid for any disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability begins:
      1) After the lesser of the last day of :
         a) the number of days stated in Your certificate; or
         b) 730 consecutive days;
         while insured for the increased benefit amount during which you receive no medical care for the Pre-Existing Condition; or
      2) After the lesser of the last day of :
         a) the number of days stated in Your certificate; or
         b) 730 consecutive days;
         during which you have been continuously insured for the increased benefit amount.
   3) The definition of **Pre-existing Condition** in the **Pre-Existing Conditions Limitation** provision is deleted and is replaced by the following:
   **Pre-existing Condition** means any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse for which You received Medical Care during the lesser of:

1) the period of time stated in Your certificate; or
2) the 730 day period;
that ends the day before:
1) Your effective date of coverage; or
2) the effective date of a Change in Coverage.

For Missouri residents, the **Exclusion** related to intentionally self-inflicted Injury is replaced by the following:
intentionally self-inflicted Injury, suicide or attempted suicide, while sane; or

For Montana residents, pregnancy will be covered, the same as any other Sickness, anything in the Policy to the contrary notwithstanding.

For New Hampshire residents:
1) The **Policy Interpretation** provision is deleted and replaced by the following:
Under ERISA, We are hereby designated by the plan sponsor as a claim fiduciary with discretionary authority to determine eligibility for benefits and to interpret and construe the terms and provisions of The Policy. As claim fiduciary, We have a duty to administer claims solely in the interest of the participants and beneficiaries of the employee benefit plan and in accordance with the documents and instruments governing the plan. This assignment of discretionary authority does not prohibit a participant or beneficiary from seeking judicial review of Our benefit eligibility determination after exhausting administrative remedies. The assignment of discretionary authority made under this provision may affect the standard of review that a court will use in reviewing the appropriateness of Our determination. In order to prevail, a plan participant or beneficiary may be required to prove that Our determination was arbitrary and capricious or an abuse of discretion.
2) The time periods stated in the **Claim Appeal** provision are changed to 180 days, if less than 180 days.

For New York residents, the definition of **Surviving Spouse** in the **Survivor Income Benefit** deleted and replaced by the following:
**Surviving Spouse** means Your wife, husband or partner in a same-sex marriage who was not legally separated or divorced from You when You died. "Spouse" will include Your domestic partner, provided You have executed a Domestic Partner Affidavit acceptable to us, establishing that You and Your partner are domestic partners for purposes of The Policy. You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit.

For all North Carolina residents:
1) The definition of **Other Income Benefits** is amended by the deletion of mandatory "no-fault" automobile insurance plan;
2) The following is added to the definition of **Regular Care of a Physician:**
You are not required to be under the Regular Care of a Physician if qualified medical professionals have determined that further medical care and treatment would be of no benefit to You.
3) The exclusion regarding Workers' Compensation benefits is replaced by the following in the **Exclusions** provision:
for which the final adjudication of a Workers' Compensation claim determines that benefits are paid, or may be paid, if duly claimed;
4) The **Subrogation** provision is deleted.
5) The **Reimbursement** provision is deleted.

For North Carolina residents covered under a policy issued to a Trust:
1) The **Misstatement** provision is amended by the deletion of the phrase except fraudulent misstatements.
2) The **Sending Proof of Loss** provision is amended as follows:
Written Proof of Loss must be sent to Us within 180 days following the completion of the Elimination Period.
3) The **Claims to be Paid** provision is amended as follows:
We may pay up to $3,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.
4) The **Notice of Claim** provision is amended to require the phrase or Our representative in the first sentence.

For Oregon residents:
1) The following is added to the definition of **Surviving Spouse** in the **Survivor Income Benefit:**
Spouse will include Your domestic partner provided You have registered as domestic partners with a government agency or office where such registration is available.
2) The definition of **Surviving Children** in the **Survivor Income Benefit** is amended to include children related to

You by domestic partnership.

3) The following is added to the **Continuation Provisions** for Employers with 10 or more employees:
Jury Duty: If You are scheduled to serve or are required to serve as a juror, Your coverage may be continued until the last day of Your Jury Duty, provided You:
1) elected to have Your coverage continued; and
2) provided notice of the election to Your Employer in accordance with Your Employer's notification policy

For Rhode Island residents:
1) The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
**Surviving Spouse** means Your spouse who was not legally separated or divorced from You when You died. "Spouse" will include Your domestic partner provided You:
1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit or required by law.
2) The provision titled **Policy Interpretation** is deleted in its entirety.

For South Carolina residents:
1) The second paragraph of the **Continuity from a Prior Policy** provision is replaced by the following:
*Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy within 30 days of being covered under The Policy, the Pre-existing Conditions Limitation will end on the earliest of:
1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.
2) The following is added to the **Physical Examinations and Autopsy** provision: "Such autopsy must be performed during the period of contestability and must take place in the state of South Carolina."

For South Dakota residents:
1) The definition of **Physician** is deleted and replaced by the following:
**Physician** means a person who is:
1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
2) licensed to practice in the jurisdiction where care is being given;
3) practicing within the scope of that license; and
4) not You or Your Spouse or Related to You or Your Spouse by blood or marriage, unless such physician is the only one in the area and is acting within the scope of their normal employment.
2) The definition of **Other Income Benefits** is amended by the deletion of all references to Your family, Your spouse and/or children.
3) The provision titled **Policy Interpretation** is deleted in its entirety.

For Utah residents:
1) The **Policy Interpretation** provision is replaced by the following:
**Policy Interpretation:** *Who interprets the terms and conditions of The Policy?*
**Benefits under this plan will be paid only if We decide in Our discretion that You are entitled to them. We also have discretion to determine eligibility for benefits and to interpret the terms of conditions of the benefit plan. Determinations made by Us pursuant to this reservation of discretion do not prohibit or prevent You from seeking judicial review in federal court of Our determinations.**

**The reservation of discretion made under this provision only establishes the scope of review that a federal court will apply when You seek judicial review of Our determination of eligibility for benefits, the payment of benefits, or interpretation of the terms and conditions applicable to the benefit plan.**

**We are an insurance company that provides insurance to this benefit plan and the federal court will determine the level of discretion that it will accord to Our determinations.**

2) Item 3 of the second paragraph of the **Sending Proof of Loss** provision is deleted.

For Vermont residents:

**Purpose**: Vermont law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to married persons.

**Definitions, Terms, Conditions and Provisions**: The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

1) Terms that mean or refer to a marital relationship, or that may be construed to mean or refer to a marital relationship, such as "marriage", "spouse", "husband", "wife", "dependent", "next of kin", "relative", "beneficiary", "survivor", "immediate family" and any other such terms, include the relationship created by a civil union established according to Vermont law.

2) Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage", "divorce decree", "termination of marriage" and any other such terms include the inception or dissolution of a civil union established according to Vermont law.

3) Terms that mean or refer to family relationships arising from a marriage, such as "family", "immediate family", "dependent", "children", "next of kin", "relative", "beneficiary", "survivor" and any other such terms include family relationships created by a civil union established according to Vermont law.

4) "Dependent" means a spouse, a party to a civil union established according to Vermont law, and a child or children (natural, stepchild, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.

5) "Child or covered child" means a child (natural, step-child, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.

**CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE**

Vermont law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA", controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under COBRA for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights under this contract.

For Washington residents:

1) The following is added to the **Continuation Provisions** provision:

General Work Stoppage (including a strike or lockout): If Your employment terminates due to a cessation of active work as the result of a general work stoppage (including a strike or lockout), Your coverage shall be continued during the work stoppage for a period not exceeding 6 months. If the work stoppage ends, this continuation will cease immediately.

2) The provision titled **Policy Interpretation** is deleted in its entirety.

3) The following provision is added to the **General Provisions** section of Your certificate:

**Eligibility Determination**: *How will We determine Your eligibility for benefits?*

We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your or Your Spouse's or Your beneficiaries' eligibility for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy. We will:

1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of

Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;

2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;

3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;

4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.

In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

In all other respects the certificate remains the same.

Signed for Hartford Life and Accident Insurance Company

**Terence Shields, *Secretary***       **Michael Concannon, *Executive Vice President***

**ERISA INFORMATION**
**THE FOLLOWING NOTICE**
**CONTAINS IMPORTANT INFORMATION**

This employee welfare benefit plan (Plan) is subject to certain requirements of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA requires that you receive a Statement of ERISA Rights, a description of Claim Procedures, and other specific information about the Plan. This document serves to meet ERISA requirements and provides important information about the Plan.

The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan. The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

A copy of the Plan is available for your review during normal working hours in the office of the Plan Administrator.

1. **Plan Name**

   Group Long Term Disability Plan for employees of KENCO.

2. **Plan Number**

   LTD - 504

   LTD - 505

3. **Employer/Plan Sponsor**

   KENCO
   2001 Riverside Drive
   Chattanooga, TN 37406

4. **Employer Identification Number**

   62-0799523

5. **Type of Plan**

   Welfare Benefit Plan providing Group Long Term Disability.

6. **Plan Administrator**

   KENCO
   2001 Riverside Drive
   Chattanooga, TN 37406

7. **Agent for Service of Legal Process**

For the Plan

KENCO
2001 Riverside Drive
Chattanooga, TN 37406

For the Policy:

Hartford Life and Accident Insurance Company
200 Hopmeadow St.
Simsbury, CT 06089

In addition to the above, Service of Legal Process may be made on a plan trustee or the plan administrator.

---

8. **Sources of Contributions**   The Employer pays the premium for the insurance, but may allocate part of the cost to the employee, or the employee may pay the entire premium. The Employer determines the portion of the cost to be paid by the employee. The insurance company/provider determines the cost according to the rate structure reflected in the Policy of Incorporation.

---

9. **Type of Administration**   The plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan.

---

10. The Plan and its records are kept on a Policy Year basis.

---

11. **Labor Organizations**

None

---

12. **Names and Addresses of Trustees**

None

---

13. **Plan Amendment Procedure**

The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

The Employer also reserves the right to adjust your share of the cost to continue coverage by the same procedures.

## STATEMENT OF ERISA RIGHTS

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA provides that all Plan participants shall be entitled to:

### 1. Receive Information About Your Plan and Benefits

a) Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

b) Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary Plan description. The administrator may make a reasonable charge for the copies.

c) Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### 2. Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

### 3. Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If the Plan requires you to complete administrative appeals prior to filing in court, your right to file suit in state or Federal court may be affected if you do not complete the required appeals. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

### 4. Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration (formerly known as the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## CLAIM PROCEDURES

The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

### Claim Procedures for Claims Requiring a Determination of Disability

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 45 days after receipt of your properly filed claim. The time for decision may be extended for two additional 30 day periods provided that, prior to any extension period, the Insurance Company notifies you in writing that an extension is necessary due to matters beyond the control of the Plan, identifies those matters and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim, the time for decision may be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to our request. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

Any adverse benefit determination will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary, 4) a description of the review procedures and time limits applicable to such procedures, 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal, and 6) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the denial, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the denial and that a copy will be provided free of charge to you upon request, or (B) if denial is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial. As part of your appeal:

1. you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2. you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request.

The individual reviewing your appeal shall give no deference to the initial benefit decision and shall be an individual who is neither the individual who made the initial benefit decision, nor the subordinate of such individual. The review process provides for the identification of the medical or vocational experts whose advice was obtained in connection with an initial adverse decision, without regard to whether that advice was relied upon in making that decision. When deciding an appeal that is based in whole or part on medical judgment, we will consult with a medical professional having the appropriate training and experience in the field of medicine involved in the medical judgment and who is neither an individual consulted in connection with the initial benefit decision, nor a subordinate of such individual. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a statement that you have the right to bring a civil action under section 502(a) of ERISA, 4) a statement that you may request, free of charge, copies of all documents, records, and other information relevant to your claim; 5) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the decision on appeal, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the decision on appeal and that a copy will be provided free of charge to you upon request, or (B) if the decision on appeal is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the decision on appeal, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request, and 6) any other notice(s), statement(s) or information required by applicable law.

## Claim Procedures for Claims Not Requiring a Determination of Disability

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 90 days after receipt of your properly filed claim. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 90 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 180 days after your claim was received. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

However, any adverse benefit determination will be in writing and include: 1) specific reasons for the decision; 2) specific references to Policy provisions on which the decision is based; 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary; 4) a description of the review procedures and time limits applicable to such, and 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 60 days from the date you received your claim denial. As part of your appeal:

1. you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2. you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 60 days after it receives your timely appeal. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 60 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 120 days after your appeal was received. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision and specific references to the Policy provisions on which the decision is based, 2) a statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and

other information relevant to the claim, 3) a statement of your right to bring a civil action under section 502(a) of ERISA and 4) any other notice(s), statement(s) or information required by applicable law.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| X | EEOC | 440-2018-04640 |

Illinois Department of Human Rights and EEOC

| NAME (Indicate Mr., Mrs., Ms.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mrs. Edith Mc Curry | 888.958.4529 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
|---|---|---|---|
| 2711 E. New York St. | Aurora, IL 60502 | C/o J. T. Hoffman, Esquire | 08.26.62 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

RECEIVED EEOC

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Kenco Logistics manager for Mars, Inc. | 3000+ | 423.643.3398 |

APR 17 2018

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2001 Riverside Drive | Chattanooga, TN 37406 | |

CHICAGO DISTRICT OFFICE

| NAME | | | TELEPHONE (Include Area Code) |
|---|---|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [X] OTHER (Specify) harassment
Whistleblower

| DATE DISCRIMINATION TOOK PLACE |
|---|
| June 2017 |

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed attach extra sheet(s))

In retaliation for filing informal and formal complaints of discrimination beginning in 2013 to 2017, relative to race, sex, age disability, unequal pay and involuntary conspiracy to aid and abet the violation of the protected rights of other employees, as well as, being a witness in a number of formal complaints of discrimination and whistle-blower actions filed by various employees, with in a relative time Mc Curry's disability was terminated (denial of benefits), despite her doctors not releasing her to return to work or work of any kind, as well as, being subjected to a reduction in overtime, duties, responsibilities, failure to promote, disciplinary actions taken on non-effectuated policies, harassment, ostracism, humiliation, in addition to changes in the terms, conditions and fringe benefits of Mc Curry's employment.

Furthermore, Mc Curry contends that no other disabled non-black or non black male was terminated from disability while still under their doctors care or disability non-black, or non-black male terminated for filing informal and formal charges of discrimination. These persons would include and not be limited to: Leonard Szplett and Wayne Bell.

The respondent was self-insured and therefore controlled all the terms, conditions, and actions of its third (3rd) party administrator the Hartford, although the Hartford still has a fiduciary obligation in this matter to operate lawfully.

| I also want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 4/17/2018 *Edith McCurry* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date  Charging Party (Signature) | |

EEOC FORM 5 (REV. 1991)

EXHIBIT 2

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Edith McCurry**<br>**c/o Jordan T. Hoffman, Esq.**<br>**THE LAW OFFICE OF JORDAN TRAVAILLE HOFFMAN, P.C.**<br>**2711 E. New York St.**<br>**Aurora, IL 60502** | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2018-04640** | **Ana Alza,**<br>**Investigator** | **(312) 869-8038** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| **X** | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

**Julianne Bowman,**
**District Director**

3/13/19
(Date Mailed)

cc: **KEMCO LOGISTICS**
**c/o Jay Elliott**
**VP of Legal**
**2001 Riverside Drive**
**Chattanooga, TN 37406**

**CHICAGO DISTRICT OFFICE**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**500 WEST MADISON STREET, SUITE 2000**
**CHICAGO, ILLINOIS 60661**

**OFFICIAL BUSINESS**

S SUBURBAN
TL 804
14 MAR '19
FN 5 L



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 60661 $ 000.50⁰
02 4W
0000361500 MAR 14 2019

60502-944399

P.O. Box 1607
2001 Riverside Drive (37406)
Chattanooga, TN 37401

Phone 423-622-1113
Fax 423-643-3325
www.kencogroup.com



April 2, 2013

EDITH MCCURRY
6239 S. 13110 E. Rd
Pembroke Township, IL 60958

Dear EDITH:

It is a pleasure to confirm our offer of employment to you. You will be employed at our KENCO MARS facility in Manteno, IL as a Clerk on the 1st Shift.

Below are the details of the offer:

- Your start date is April 21, 2013
- Your starting base pay will be $15.81, per hour, paid weekly
- You are eligible for a transition bonus of $1300.00, to be paid out in $433.33 increments following your 30th, 60th and 90th day of employment. If your employment ends within 90 days, the increments that the transition bonus is paid will not be paid in a prorated amount.
- You will begin accruing PTO under Kenco's PTO policy on April 21, 2013.
- The rate that you will accrue PTO under Kenco's PTO Policy will be based off of your 4Ts anniversary date of 6/14/1999.
- Based on completion of defined goals, objectives, and overall financial performance of the Company you may receive an increase in your wage. This will be determined through annual performance evaluations with your manager.

Kenco will be paying for temporary health coverage during the first 90 days of employment through Starbridge. You will have 30 days to elect the coverage level, but regardless of when you enroll, both the coverage and the premium are retroactive to your start date. Enrollment in Starbridge will take place during your new hire orientation. Your temporary health care coverage will end on your 90th day of employment.

You are eligible for the company benefit program on your 91st day of employment. The company's benefit program includes medical, dental and prescription drug coverage, an employer-matched 401(k) plan, short and long-term disability coverage, group life insurance and PTO.

The offer of employment is contingent upon the completion of a successful pre-employment drug screen analysis and criminal background check. We reserve the right to withdraw this offer if the drug screen analysis result or the background check is unfavorable. Your employment with Kenco is at-will and either party can terminate the relationship at any time, with or without cause and with or without notice.



**EXHIBIT**

tabbies

**3**



# KENCO

# NEW HIRE KIT

EXHIBIT
4



**KENCO**

**2013 EMPLOYEE BENEFITS**

## Life Insurance
*The Hartford* - 800-549-6514

Kenco provides, **at no cost to you**, a Base Life Plan for eligible employees.

- Each Employee has coverage in the amount of **1 times your annual earnings,** max $300,000

Kenco provides, **at no cost to you**, a Dependent Life Plan for eligible employees. This is a plan with a $2,000 benefit for spouse and each enrolled dependent child.

## Optional Life
*The Hartford* - 800-549-6514

You have the opportunity through payroll deduction, to purchase Term Life insurance that can supplement the employer paid Base Life coverage. The cost is based on your age and tobacco usage.

Benefit Amounts: Each eligible **employee** may elect coverage up to $500,000 or 5x annual salary in $10,000 increments. Your **spouse** may elect coverage in $10,000 increments, not to exceed 50% of the employee's coverage amount, max $250,000. Guaranteed Issue Amount for employee is $150,000 and their spouse is $50,000 if applied for when first eligible. Supplemental life insurance is also available for dependent children.

## Short Term Disability
*The Hartford* - 800-549-6514

Kenco provides **at no cost to you**, a Short Term Disability policy. This plan will provide you with 60% of your basic monthly earnings to a maximum benefit of $500 per week.

- Benefits are paid for a period of 26 weeks or until no longer disabled
- Elimination Period* is 14 days for injury and 14 days for illness
- Maternity leave is covered as any other illness

## Long Term Disability
*The Hartford* - 800-549-6514

Kenco offers a Long Term Disability plan. This plan will provide you with 60% of your basic monthly earnings to a maximum benefit of $5,000 per month.

- Benefits are payable to Social Security retirement age or until you are no longer disabled
- Elimination Period* is 90 days
- Partial disabilities are covered
- Refer to your booklet for "Other Income Benefits" that may reduce your monthly benefit, but in no event will the monthly benefit be less than $100
- Refer to your booklet for pre-existing exclusions

*Elimination period—a period of continuous disability, which must be satisfied before an employee is eligible to receive benefits.*

This Guide is only intended to offer an outline of benefits. All details and contract obligations of plans are stated in the group contract/insurance documents, including any disclosures (whether regarding "grandfathering" of plans or others) required by the new health reform law, the Patient Protection and Affordable Care Act (PPACA). In the event of conflict between this guide and the group contract/insurance documents, the group contract/insurance documents will prevail. Please contact your Human Resources Department for further information.

12/11/2014 11:18 FAX                                                            ☑002



# PERSONAL HEALTH APPLICATION

Thank you for choosing The Hartford. All sections of this form must be completed and received by The Hartford within 30 days of the signature date.

Employers: Please completely fill out Section 1 and Section 2 on this page and forward the entire form to the employee. Refer to your Policy and employee records for this information. These records are your property and are not on file with The Hartford. An incomplete form will result in a delay in processing your employee's request for insurance.

**Section 1: Employer Details** *(to be completed by Employer)*                 **PLEASE PRINT CLEARLY**

Employer Name: KENCO                                          Policy Number: 874078

Division *(if applicable):*

Employer Mailing Address (Street, City, State, Zip Code): 2001 Riverside Drive, Chattanooga, TN 37406

Benefits Contact Name (First, Last): Cherie Davis

Benefits Contact Email Address: cherie.davis@kencogroup.com        Benefits Contact Phone: ( 423  ) 643   - 3240

**Section 2: Employee Details** *(to be completed by Employer)*               **PLEASE PRINT CLEARLY**

Employee Name (First, MI, Last): Edith McCurry

Base Annual Earnings*: $34,200        Social Security Number        Date of Hire (mm/dd/yyyy): 06 / 14 / 1999
* Base annual earnings as described in the contract with The Hartford.

### Coverage Details
- Check the applicable box(es) in each row to reflect the applicant's current coverage and new election.
- Enter the amount of any existing coverage (including Guarantee Issue (GI)**) in Current Coverage. Please include the current amount of Basic Life coverage even if the applicant is not requesting Basic Life coverage at this time.
- Enter the amount of Additional Coverage Requested that requires medical underwriting.
- Enter the Total Coverage Amount that will be in force if the additional coverage requested is approved.
- If the applicant is enrolling after his/her initial eligibility period and does not have current coverage they will be responsible for all fees incurred during the medical underwriting process.

| Life Insurance Coverage | Current Coverage (including GI Amount) | Additional Coverage Requested | Total Coverage Amount |
|---|---|---|---|
| | *Enter all amounts as dollars. Include Basic Life Current Coverage Amount even if not requesting this coverage type.* | | |
| ☐ Employee Basic Life | $ | $ | $    0.00 |
| ☐ Employee Supplemental or Voluntary Life | $ | $ | $    0.00 |
| ☐ Spouse Basic Life | $ | $ | $    0.00 |
| ☐ Spouse Supplemental or Voluntary Life | $ | $ | $    0.00 |
| **Disability Insurance Coverage** | *Enter all amounts as dollars* | | |
| ☐ Short Term Disability | | | $0.00 |
| ☑ Long Term Disability | $0.00 | $2,602.00 | $2,602.00 |

** Guarantee Issue (GI) is the maximum amount of coverage, as defined in the contract with The Hartford, which does not require evidence of good health.

**Employees: Please complete pages 2 thru 5.** It should take you about 10 minutes to complete this form.

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including issuing companies Hartford Life Insurance Company and Hartford Life and Accident Insurance Company. Policies in New York are underwritten by Hartford Life Insurance Company.
PA-9199
(Rev. 3/07)                                    1 of 5


EXHIBIT
5

12/11/2014 11:19 FAX                                                                    ☒003

**Applicant Section:** Please answer all questions on this page completely and accurately and certify your answers on page 4.
Leaving information blank will result in delays and may result in your file being closed.

**Section 3: Employee Information** *(Complete even if employee is not applying for coverage)*       **PLEASE PRINT CLEARLY**

First Name: Edith               Last Name: McCurry            Social Security #
Home Mailing Address (Street, Apt. #):                         City:
6239 South 13110 East Road                                    Pembroke Township

State: IL     Zip Code:60958    Employer: KENCO

Daytime Phone: (815) 735    4281    Evening Phone: (815) 735    4281    Height: 5 Ft. 4 In.   Weight: 227 lbs.

Gender:     Date of Birth: 08 / 26 / 1962    Email Address: remccurry@aol.com
☐ M ☑ F

**Section 4: Spouse Information** *(Complete only if applying for this coverage)*                 **PLEASE PRINT CLEARLY**

First Name:                     Last Name:                     Social Security # :         -      -

Daytime Phone: (    )           Evening Phone: (    )           Height: ___ Ft. ___ In.   Weight: _____ lbs.

Gender:     Date of Birth:      /      /        Email Address:
☐ M ☐ F

**Section 5 – Medical Information** *(to be completed only by applicants required to provide evidence of good health)*

If you or anyone proposed for coverage can answer **Yes** to any of the Questions below, check the appropriate box and provide **additional details in Section 6.** If you are a **resident of one of the following states:** Connecticut, Florida, Kentucky, Maine, Maryland, Minnesota, New York, North Carolina, Vermont, or Wisconsin then please go to the State Variable Question section on page 3 and answer or review the appropriate question for your state. **After you have read that information, proceed with completing this section.**

| | Employee | Spouse |
|---|---|---|
| 1. Within the past 5 years, with the exception of a past pregnancy, have you lost time from work for more than 10 work days for the same physical, mental, or emotional condition, disability, injury, or sickness? | ☐ Employee | ☐ Spouse |
| 2. Within the past 5 years, have you used any controlled substances, with the exception of those prescribed by your physician, received medical advice or sought treatment for drug or alcohol abuse, or been charged with operating a motor vehicle under the influence of drugs or alcohol? | ☐ Employee | ☐ Spouse |
| 3. Are you currently undergoing any diagnostic testing for symptoms without a final diagnosis or resolution? | ☐ Employee | ☐ Spouse |
| 4. Are you currently pregnant?   If yes, what was your pre-pregnancy weight?_____ lbs. | ☐ Employee | ☐ Spouse |
| 5. During the past 5 years have you been diagnosed with or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC), or any other immune deficiency disorder? | ☐ Employee | ☐ Spouse |

6. During the past 5 years have you been diagnosed with, treated for, treated with, or had any symptoms due to any of the following conditions or treatments listed below?  **Please check all that apply:**

| | Employee | Spouse | | Employee | Spouse |
|---|---|---|---|---|---|
| Heart-Related Surgery or Heart Attack | ☐ | ☐ | Crohn's Disease | ☐ | ☐ |
| Stroke | ☐ | ☐ | Kidney Failure/Dialysis | ☐ | ☐ |
| Heart Disease (excluding high blood pressure & heart murmur) | ☐ | ☐ | Hepatitis (excluding Hepatitis A) | ☐ | ☐ |
| Blocked Arteries (including arteriosclerosis, atherosclerosis, aneurysm, or deep vein blood clot) | ☐ | ☐ | Diabetes | ☐ | ☐ |
| Chronic Obstructive Pulmonary Disorder (COPD) | ☐ | ☐ | Knee Disorder, Injury, or Surgery | ☐ | ☐ |
| Emphysema | ☐ | ☐ | Back or Neck Disorder, Injury, or Surgery | ☐ | ☐ |
| Adjustment Disorder | ☐ | ☐ | Joint/Ligament Disorder, Injury, or Surgery | ☐ | ☐ |
| Bipolar Disorder | ☐ | ☐ | Osteoporosis or Osteopenia | ☐ | ☐ |
| Depression (single episode) | ☐ | ☐ | Multiple Sclerosis (MS) | ☐ | ☐ |
| Depression (multiple episodes) | ☐ | ☐ | Amyotrophic Lateral Sclerosis (ALS) | ☐ | ☐ |
| Psychotic/Personality Disorders | ☐ | ☐ | Muscular Dystrophy | ☐ | ☐ |
| Other Mental/Nervous/Psychiatric Disorders (including Anxiety) | ☐ | ☐ | Arthritis | ☐ | ☐ |
| Cancer (excluding Basal Cell Carcinoma) | ☐ | ☐ | Fibromyalgia | ☐ | ☐ |
| Cirrhosis | ☐ | ☐ | Chronic Fatigue Syndrome | ☐ | ☐ |
| Ulcerative Colitis | ☐ | ☐ | Sleep Apnea | ☐ | ☐ |

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including issuing companies Hartford Life Insurance Company and Hartford Life and Accident Insurance Company. Policies in New York are underwritten by Hartford Life Insurance Company.
PA-9199
(Rev. 3/07)                                2 of 5

12/11/2014 11:18 FAX                                                          ☐004

Employee: First Name _____Edith_____        Last Name _____McCurry_____

### Section 5 Continued: State Variable Questions
For residents of Connecticut, Florida, Kentucky, Maine, Maryland, Minnesota, New York, North Carolina, Vermont, and Wisconsin review or answer, where applicable, the question listed below instead of the corresponding question listed in the Medical Information section on page 2. Any "Yes" responses can be explained in the Additional Details section of this form. Once you have reviewed/answered these questions, please return to Section 5 and proceed with completing the rest of the form.

### Information to be Reviewed
**Florida, Kentucky, and Maryland Residents- Please review this question prior to answering Question 6 in the Medical Information Section on Page 2:**
Question 6: During the past 5 years have you been diagnosed with, treated for, or treated with any of the following conditions or treatments listed below? Please check all of the conditions on page 2 that apply.

**Maine Residents- Please review this statement prior to answering the medical questions in Section 5 on Page 2:**
You are not required to disclose whether you have been tested for HIV, if you have not developed symptoms of the disease AIDS or ARC, in your answer to any of the questions in the Medical Information section.

**Minnesota Residents- Please review this statement prior to answering the medical questions in Section 5 on Page 2:**
You need not disclose an HIV (aids virus) test which was administered: (1) to a criminal offender or criminal victim as a result of a crime that was reported to the police; (2) to a patient who received the services of emergency medical services personnel at a hospital or medical care facility; (3) to emergency medical personnel who were tested as a result of performing emergency medical services.
Please review this question prior to answering Question 6 in the Medical Information Section on Page 2:
Question 6: During the past 5 years have you been diagnosed by a physician with, treated for, or treated with any of the following conditions or treatments listed below? Please check all of the conditions on page 2 that apply.

### Questions to be Answered
**Connecticut and Minnesota Residents; Do not answer Question 2 in the Medical Information section. Answer the following question below.**
Question 2: Within the past 5 years, have you used any controlled substances, with the exception of those prescribed by your physician, received medical advice or sought treatment for drug or alcohol abuse, or been convicted of operating a motor vehicle under the influence of drugs or alcohol?   ☐ Employee   ☐ Spouse

**Florida residents: Do not answer Question 5 in the Medical Information section. Answer the following question below.**
Question 5: Have you ever tested positive for exposure to the HIV infection or been diagnosed as having ARC or AIDS caused by the HIV infection or other sickness or condition derived from such infection or had unexplained weight loss or enlarged lymph nodes?
☐ Employee   ☐ Spouse

**New York Residents: Do not answer Question 5 in the Medical Information section. Answer the following question below.**
Question 5: During the past 5 years have you been diagnosed with or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC), or any other immune deficiency disorder excluding HIV?
☐ Employee   ☐ Spouse

**North Carolina Residents: Do not answer Question 5 in the Medical Information section. Answer the following question below.**
Question 5: Have you ever been diagnosed or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) or any other immune deficiency disorder? AIDS Related Complex (ARC) is a condition with signs and symptoms which may include generalized lymphadenopathy (swollen lymph nodes), loss of appetite, weight loss, fever, oral thrush, skin rashes, unexplained infections, dementia, depression, or other psychoneurotic disorders with no known cause. "Disorder of the Immune System" includes the hyperimmune conditions, disorders of gammaglobulin synthesis (hypogammaglobulinemia), of white blood cell production and maturation, and the immune-deficiency disorders both congenital and acquired. Also included in disorders of immunity are lupus erythematosus, Grave's Disease, rheumatoid arthritis, primary biliary cirrhosis, and others.
☐ Employee   ☐ Spouse

**Vermont Residents: Do not answer Questions 3 or 5 in the Medical Information section. Answer the following questions below.**
Question 3: Are you currently undergoing any diagnostic testing (excluding prior HIV related testing) for symptoms without a final diagnosis or resolution?   ☐ Employee   ☐ Spouse

Question 5: Have you been diagnosed as having or been treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) by a licensed medical physician?
☐ Employee   ☐ Spouse

**Wisconsin Residents: Do not answer Question 3 in the Medical Information section. Answer the following question below.**
Question 3: Are you currently undergoing any diagnostic testing, excluding AIDS or HIV tests, for symptoms without a final diagnosis or resolution?   ☐ Employee   ☐ Spouse

**Please proceed with completing the rest of the medical questions on Page 2 once you have completed/reviewed this page.**

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including issuing companies Hartford Life Insurance Company and Hartford Life and Accident Insurance Company. Policies in New York are underwritten by Hartford Life Insurance Company.
PA-9199
(Rev. 3/07)                                    3 of 5

12/11/2014 11:20 FAX                                                                                      ☑005

**Employee: First Name** Edith _____    **Last Name** McCurry _____

**Section 6: Additional Details:** If you or anyone proposed for coverage checked any box related to Questions 1 – 6, please provide details in the space below. If you need more space, please attach, sign and date an additional sheet. The Hartford may contact you for additional or missing information.

| Question # or Condition | Applicant Name | Medications/ Treatment | Date of Diagnosis | Date of Last Symptom | Current Status of Condition | Physician's Name, Address, and Phone # |
|---|---|---|---|---|---|---|
| | | | | | | |

**Section 7: Health Question Certification Statement** *(To be completed by all applicants)*

By checking this box:        ☑ Employee        ☐ Spouse

**I hereby certify that I have reviewed each of the above questions and conditions.
I also certify that I have checked all of the questions and conditions that apply to my health history.**

**Section 8: Authorization** *(To be reviewed by all applicants)*

**New York Residents:** I understand the Medical Information Bureau, Inc. will release records or information only to The Hartford. I authorize The Hartford to give information about me to: its reinsurer(s); the Medical Information Bureau, Inc.; any other insurance company to whom I may apply for Life or Health Insurance; or other persons or organizations handling a claim, underwriting coverage applied for or administering coverage issued as a result of this application; or as required by law.

I understand that upon written request I may revoke this authorization except to the extent that action has already been taken in reliance on this authorization. This authorization expires 24 months from the date of this application. I understand that a photocopy of this form is as valid as the original and that I have a right to receive a copy of this form upon request.

**Residents of All States Except New York:** I understand the Medical Information Bureau, Inc. will release records or information only to The Hartford. I authorize The Hartford to give information about me to: its reinsurer(s); the Medical Information Bureau, Inc.; any other insurance company to whom I may apply for Life or Health Insurance; or other persons or organizations handling a claim, underwriting coverage applied for or administering coverage issued as a result of this application; or as required by law.

I understand that upon written request I may revoke this authorization except to the extent that action has already been taken in reliance on this authorization. This authorization expires 24 months from the effective date of my coverage or, if no coverage has been issued, one (1) year from the date of this application. I understand that a photocopy of this form is as valid as the original and that I have a right to receive a copy of this form upon request.

**Additional Language for Maine Residents:** This authorization excludes disclosure of the result of a test for HIV if the applicant has not developed symptoms of the disease AIDS. Such test results shall not be discovered or published. Nothing in this caveat will prohibit this authorization from including the fact that the applicant has AIDS or ARC. I understand that my failure to sign this authorization may impair the ability of The Hartford to process this application or evaluate claims and may be a basis for denying this application or a claim for benefits.

**Additional Language for Minnesota Residents:** This authorization excludes the release of information about HIV (AIDS Virus) tests which were administered (1) to a criminal offender or criminal victim as a result of a crime that was reported to the police; (2) to a patient who received the services of Emergency Medical Services personnel at a hospital or medical care facility; or (3) to emergency medical personnel who were tested as a result of performing emergency medical services. The term "Emergency Medical Personnel" includes individuals employed to provide pre-hospital emergency services; crime lab personnel, correctional guards, including security guards at the Minnesota security hospital, who experience a significant exposure to an inmate who is transported to a facility for emergency medical care; and other persons who render emergency care or assistance at the scene of an emergency, or while an injured person is being transported to receive medical care and would qualify for immunity under the Good Samaritan Law.

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including issuing companies Hartford Life Insurance Company and Hartford Life and Accident Insurance Company. Policies in New York are underwritten by Hartford Life Insurance Company.
PA-9199
(Rev. 3/07)

Case: 1:19-cv-04067 Document #: 1 Filed: 06/17/19 Page 102 of 154 PageID #:102

12/11/2014 11:20 FAX                                                             ☒006

**Employee: First Name** Edith                              **Last Name** McCurry

**Section 9: Certification** *(To be reviewed by all applicants)*

Residents of All States: I hereby certify ("represent" for Kansas residents) that all statements and answers contained herein, are full, complete, and true to the best of my knowledge and belief.

Residents of All States Except New York: I also understand that any misrepresentation contained herein or relied upon by the company may be used to contest the validity of the coverage, within the contestable period if such misrepresentation materially affects acceptance of the risk. This information may be used by The Hartford for plan administration purposes to decide if the person(s) is/are eligible for coverage.

I understand that coverage will not become effective until) The Hartford grants it's underwriting approval. I do not receive temporary or conditional insurance coverage just because I submit an application and pay the first premium.

I agree that this document and all its contents shall form a part of my request for group benefits.

**Section 10: Fraud Statement** *(To be completed by all applicants)*

Residents of All States Except California, Pennsylvania, and New York: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

California Residents: For your protection, California law requires the following to appear on this form: any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

Pennsylvania Residents: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects a person to criminal and civil penalties.

New York Residents: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Notice: To the best of their knowledge, an Applicant is required to notify The Hartford in writing of any changes in any applicant's medical condition between the date the Applicant signs this form and the date the coverage is approved.

*Edith McCurry*                    *12/11/14*
**Employee's Signature**            **Date Signed**            **Spouse's Signature**                   **/  /**
or Legal Representative/ Relationship to                   or Legal Representative/Relationship to Spouse   **Date Signed**
Employee (Required)                                        (Required only if applying for coverage)

Please return the completed Employer and Employee sections to:
The Hartford, Medical Underwriting
P.O. Box 2999
Hartford, CT 06104-2999

After submitting this application, you can check your status on line at www.TheHartfordAtWork.com.

If you have any questions or concerns, please call The Hartford Customer Service Department toll-free at
1-800-331-7234, Monday through Friday, 8:00 a.m. to 6:00 p.m., Eastern Time, or email us at medical.uw@hartfordlife.com.

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including issuing companies Hartford Life Insurance Company and Hartford Life and Accident Insurance Company. Policies in New York are underwritten by Hartford Life Insurance Company.
PA-9199
(Rev. 3/07)                                     5 of 5



**THE HARTFORD**

01/27/2015

Edith Mccurry
6239 S. 13110 E. Rd
Pembroke Township, IL 60958

Re: Insured ID 9004534048
Re:  Leave ID 929338914060
Kenco

Dear Edith Mccurry:

Thank you for recently contacting The Hartford. This letter contains information regarding the approval of your request for a Leave of Absence as well as your Short Term Disability Benefits (STD). Please review this letter thoroughly as the approval dates and additional information needed may vary between Leave of Absence and STD. Family and Medical Leave Act (FMLA), state leaves and/or company specific leaves may run concurrently with an approved STD claim.

## Leave of Absence Information

The table below provides information regarding the approval status of your Leave of Absence under the Family and Medical Leave Act (FMLA), state leaves, and/or company specific leave plans and STD. The approval dates as well as the amount of time counted against your leave entitlement are noted in the table.

The determination of your request is as follows:

| Company Policy and/or State/ Federal Law | Leave Type | From | Through | Status | Denial Reason | Hours as of today* | | Hours as of the leave end date** | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Used | Remaining | Used | Remaining |
| Family Medical Leave Act | Continuous Leave | 01/05/2015 | 02/01/2015 | Approved | | 136 hour(s) / 3.4 week(s) | 344 hour(s) / 8.6 week(s) | 160 hour(s) / 4 week(s) | 320 hour(s) / 8 week(s) |
| Short Term Disability | Continuous Leave | 01/05/2015 | 02/01/2015 | Approved | | | | | |

*"Hours as of today" Used and Remaining include absence hours reported through the date of this letter. Please note that for any future approved leaves, the time shown will reflect the amount of time used as of the leave start date. "Hours as of today" exclude absences reported during leave exhaust, ineligible, denied, and suspend periods. This means hours remaining as of the leave end date are available for approved leaves.

**"Hours as of the leave end date" Used and Remaining include hours for absences that have been requested (approved and pending determination) as of the date of this letter. "Hours as of the leave end date" exclude absences reported during leave exhaust, ineligible, denied, and suspend periods. This means hours remaining as of the leave end date are available for approved leaves.

**What you need to do:**
Communication requirements:

207746_929338914060_20150127_0000058460.pdf

**EXHIBIT**

tabbies®

Determination EE

07/2014
KENCO001482

Kenco will receive a notice that advises them of your request for a leave of absence. You will need to keep in contact with your employer and The Hartford and notify both of us if the dates of your leave change, you need to extend your time out of work, or if there are any other changes to your leave status.

Leave recertification:

You may be required to re-certify your leave as appropriate. If recertification is needed, we will send you an additional form for your health care provider to complete and return to our office to certify additional time away from work.

Return to Work Requirements:

Please note in order to be restored to employment, you will be required to provide a simple written statement from your health care provider to your employer indicating your fitness for duty.

What happens to your pay:

You will be required to substitute paid sick time or vacation time for unpaid FMLA. Paid sick time or vacation time will run concurrent with your FMLA and will not extend the length of your FMLA. Your supervisor can verify the amount of sick or vacation time available.

## Short Term Disability (STD) Information:

Based on review of the information submitted, your date of disability is 01/05/2015. After satisfying your plan's elimination period, your disability benefits begin on 01/19/2015 and have been approved through 02/01/2015.

Our records indicate you are eligible for 60% of your current weekly earnings, which is a gross benefit of $394.62 per week. Other income benefits such as State Disability, Workers' Compensation and Salary Continuance can impact your net benefit. Please refer to your employer's group plan for a complete listing of Other Income Benefits. Your payment will be sent separately.

If your disability extends beyond 02/01/2015, we will need an update from your healthcare provider ("provider"). To submit an update, your provider can call us directly or we can send a request to your provider on your behalf. Let us know if you need our assistance by calling our toll free number.

You also have the option to access medical update forms directly. To access forms, follow these instructions:
- Go to: https://www.thehartfordatwork.com/thaw/.
- Register as a new user or enter your secure user ID and password.
- Select Access Forms.
- Download and print an Attending Physician's Statement of Continued Disability.*
- Follow the contact information on the form to return the update to us once completed by your provider.

*Use the Attending Physician's Statement of Continued Disability for Mental Health if applicable.

For your STD the medical update should explain what prevents you from working, including but not limited to specific restrictions, limitations, exam findings, test results and your ongoing treatment plan. To avoid delays, please be aware that an *out of work* note generally does not provide enough detailed information to allow an extension of disability benefits.

Additionally, The Hartford has dedicated clinical resources to help employees return to work with accommodations while recovering from a disability. They can partner with you, your provider(s) and your employer to attempt to assist with a medically safe return to work plan. If at any time you feel capable of performing some of your job demands, please contact us.

For specific details regarding your rights under the Family and Medical Leave Act (FMLA), please review the "Kenco Notice of FMLA Rights & Responsibilities," which is enclosed.

As part of your Hartford Disability and Leave program you are entitled to **HealthChampion^SM** which is a service that offers unlimited access to Benefit Specialists and nurses for administrative support to address medical care and health insurance claims concerns. Service includes: guidance on health insurance claims and billing support, explanation of benefits, cost estimates/fee negotiation, information related to conditions and available treatments, and support to help prepare for medical visits. Best of all, you can access the GuidanceConsultants 24 hours a day, seven days a week via a toll-free line: 1-800-96-HELPS (1-800-964-3577). Administrative and clinical specialists may also refer employees to EstateGuidance, EAP services and other work-life resources.

If you have any questions regarding this information, please contact The Hartford at 800-863-5166, Monday through Friday from 8:00 a.m. to 8:00 p.m. Central Time. Hearing impaired employees should use the state relay service. For your convenience, you may visit us online at www.thehartfordatwork.com to report intermittent absences, request a new leave, and check your leave status and balance of time remaining for your leave.

Sincerely,

The Hartford
Hartford Comprehensive Employee Benefit Services Company and/or
Hartford Life and Accident Insurance Company
Administrator of the Kenco Employee Benefit Plan


The Hartford Disability Claim Office
PO Box 14306
Lexington, KY 40512-4306

Enclosures:
No Enclosures


THE
HARTFORD

If this employee has returned to work, please contact the claim office at the number indicated below.

## Claims Status

| | | | |
|---|---|---|---|
| Employee Name: | EDITH MCCURRY | | Leave of Absence Status |
| Employee SSN: | 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 | | |
| Claim Office #: | -- | | Claim Notes |
| Claim Handler: | | | |
| Claim Appealed: | No | | |

| Type of Claim | Employee Group | Insured ID | Date of Disability | Benefit Effective Date | Benefits Approved Through |
|---|---|---|---|---|---|
| STD - NST | KLS101-MARS | 9004534048 | 01/05/2015 | 01/19/2015 | 07/19/2015 |

| Status | Effective Date of Status | Status Reason |
|---|---|---|
| TERMINATE | 07/20/2015 | BENEFITS EXPIRE |
| APPROVED | 05/16/2015 | OTHER |
| TERMINATE | 05/16/2015 | NO LONGER MEETS DEFINITION OF DISABILITY |
| APPROVED | 05/01/2015 | OTHER |
| TERMINATE | 05/01/2015 | RELEASED TO RETURN TO WORK |
| APPROVED | 02/02/2015 | OTHER |
| TERMINATE | 02/02/2015 | NO LONGER MEETS DEFINITION OF DISABILITY |
| APPROVED | 01/23/2015 | N/A |
| PENDING | 01/13/2015 | N/A |
| PAPERLESS INTAKE | 01/05/2015 | N/A |

Definitions: AP = attending physician

## Claims Payment

| Check Number | Payee | Payment Date | Amount* | Payment From | Payment Through |
|---|---|---|---|---|---|
| EFT | EDITH MCCURRY | 07/17/2015 | $364.43 | 07/13/2015 | 07/19/2015 |
| EFT | EDITH MCCURRY | 07/10/2015 | $364.43 | 07/06/2015 | 07/12/2015 |
| EFT | EDITH MCCURRY | 07/01/2015 | $364.43 | 06/29/2015 | 07/05/2015 |
| EFT | EDITH MCCURRY | 06/26/2015 | $364.43 | 06/22/2015 | 06/28/2015 |
| EFT | EDITH MCCURRY | 06/16/2015 | $1,822.15 | 05/16/2015 | 06/21/2015 |
| EFT | EDITH MCCURRY | 06/01/2015 | $801.75 | 05/01/2015 | 05/15/2015 |
| EFT | EDITH MCCURRY | 04/30/2015 | $291.55 | 04/27/2015 | 04/30/2015 |
| EFT | EDITH MCCURRY | 04/24/2015 | $364.43 | 04/20/2015 | 04/26/2015 |
| EFT | EDITH MCCURRY | 04/14/2015 | $1,093.29 | 03/29/2015 | 04/19/2015 |
| EFT | EDITH MCCURRY | 03/27/2015 | $364.43 | 03/23/2015 | 03/28/2015 |
| EFT | EDITH MCCURRY | 03/20/2015 | $364.43 | 03/16/2015 | 03/22/2015 |
| EFT | EDITH MCCURRY | 03/13/2015 | $364.43 | 03/09/2015 | 03/15/2015 |
| EFT | EDITH MCCURRY | 03/06/2015 | $364.43 | 03/02/2015 | 03/08/2015 |
| EFT | EDITH MCCURRY | 02/25/2015 | $1,457.72 | 02/02/2015 | 03/01/2015 |
| EFT | EDITH MCCURRY | 01/30/2015 | $364.43 | 01/26/2015 | 02/01/2015 |
| EFT | EDITH MCCURRY | 01/23/2015 | $364.43 | 01/19/2015 | 01/25/2015 |

Cancel

© 2017 The Hartford

Terms of Use     Security     Privacy Policy     About Us


EXHIBIT
tables*
7



**THE HARTFORD**

## Claim Notes

Employee Name: EDITH MCCURRY
Employee SSN: 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
Coverage: STD
Date of Disability: 01/05/2015
Claim Office #: --

| Notes | Date/Time | Category | Subcategory |
|---|---|---|---|
| | 01/06/2017 02:01:00 AM | Absence Management | FMLA HLI |
| | 01/06/2017 02:01:00 AM | Absence Management | FMLA HLI |
| | 06/23/2015 10:35:25 AM | Claim Management | Examiner Claim Management Plan |
| | 06/16/2015 11:08:49 AM | Phone Call | Claimant (Outbound / Unsuccessful) |
| | 06/16/2015 11:07:23 AM | Claim Management | Examiner Claim Management Plan |
| | 06/16/2015 08:52:50 AM | Claim Management | CCM Functional Assessment / Pre-Ex |
| | 06/12/2015 04:16:04 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 06/12/2015 02:42:41 PM | Phone Call | Claimant (Outbound) |
| | 06/12/2015 02:18:41 PM | Phone Call | Physician (Outbound / Unsuccessful) |
| | 06/11/2015 11:32:13 AM | Claim Management | CCM Case Management Plan |
| | 06/11/2015 11:09:46 AM | Claim Management | CCM Case Management Plan |
| | 06/10/2015 08:58:26 AM | Claim Management | Examiner Claim Management Plan |
| | 06/08/2015 11:37:29 AM | Phone Call | Claimant (Outbound) |
| | 06/08/2015 11:30:38 AM | Claim Management | Examiner Claim Management Plan |
| | 06/05/2015 03:33:57 PM | Phone Call | Medical Examiner (Inbound) |
| | 06/02/2015 11:22:49 AM | Faxreceipt-EDM | Medical Records-EDM |
| | 06/01/2015 07:04:00 PM | General | MRC Fax Successful |
| | 06/01/2015 01:31:28 PM | Phone Call | Claimant (Outbound) |
| | 06/01/2015 01:30:42 PM | Claim Management | Examiner Claim Management Plan |
| | 05/31/2015 11:08:49 PM | Absence Management | FMLA HLI |
| | 05/31/2015 11:04:05 PM | Claim Management | Examiner Approval/Denial Recommendation |
| | 05/27/2015 05:19:43 PM | Claim Management | CCM Functional Assessment / Pre-Ex |
| | 05/23/2015 09:45:08 PM | Claim Management | CCM Functional Assessment / Pre-Ex |
| | 05/21/2015 09:52:19 AM | Claim Management | Examiner Claim Management Plan |
| | 05/15/2015 12:18:46 PM | Phone Call | Claimant (Outbound / Unsuccessful) |
| | 05/15/2015 11:52:33 AM | Claim Management | Examiner Claim Management Plan |
| | 05/13/2015 04:09:19 PM | Phone Call | Medical Provider (Inbound) |
| | 05/13/2015 01:30:18 PM | General | MRC Fax Successful |
| | 05/11/2015 05:11:21 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 05/11/2015 02:45:46 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 05/11/2015 02:38:18 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 05/11/2015 02:38:18 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 05/11/2015 12:19:12 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 05/11/2015 10:59:40 AM | Faxreceipt-EDM | Medical Records-EDM |
| | 05/08/2015 10:16:58 AM | General | MRC Fax Successful |
| | 05/08/2015 09:23:34 AM | Phone Call | Claimant (Outbound) |
| | 05/08/2015 09:07:05 AM | Phone Call | Physician (Inbound) |
| | 05/08/2015 09:06:04 AM | Phone Call | Physician (Outbound) |
| | 05/08/2015 09:00:07 AM | Claim Management | Examiner Claim Management Plan |
| | 05/05/2015 06:30:49 AM | Faxreceipt-EDM | Correspondence-EDM |
| | 05/04/2015 03:56:05 PM | Phone Call | Claimant (Inbound) |
| | 04/16/2015 04:20:18 PM | Phone Call | Claimant (Outbound) |
| | 04/14/2015 04:59:59 PM | Phone Call | Claimant (Outbound) |
| | 04/14/2015 02:14:14 PM | Phone Call | Claimant (Inbound) |
| | 04/14/2015 08:37:23 AM | Claim Management | Examiner Approval/Denial Recommendation |
| | 04/14/2015 08:36:39 AM | Absence Management | FMLA HLI |
| | 04/14/2015 07:20:30 AM | Claim Management | CCM Functional Assessment / Pre-Ex |
| | 04/09/2015 03:55:53 PM | Phone Call | Claimant (Outbound) |
| | 04/09/2015 03:46:52 PM | Claim Management | Examiner Claim Management Plan |
| | 04/03/2015 04:34:57 PM | Faxreceipt-EDM | Medical Records-EDM |
| | 04/03/2015 10:41:08 AM | General | MRC Fax Successful |
| | 04/03/2015 09:43:19 AM | Phone Call | Claimant (Inbound) |
| | 04/03/2015 09:32:52 AM | Phone Call | Claimant (Outbound / Unsuccessful) |

**EXHIBIT**

**8**

KENCO001479

| Notes | Date/Time | Category | Subcategory |
|-------|-----------|----------|-------------|
| | 04/03/2015 09:32:47 AM | Claim Management | Examiner Claim Management Plan |
| | 04/03/2015 09:30:33 AM | Phone Call | Physician (Outbound) |
| | 03/30/2015 06:30:56 AM | Faxreceipt-EDM | APS-EDM |
| | 03/27/2015 05:27:38 PM | Faxreceipt-EDM | APS-EDM |
| | 03/27/2015 02:49:09 PM | Absence Management | FMLA HLI |
| | 03/27/2015 02:48:22 PM | Phone Call | Claimant (Inbound) |
| | 03/25/2015 11:51:49 AM | Claim Management | Examiner Claim Management Plan |
| | 03/23/2015 02:48:54 PM | Phone Call | Claimant (Inbound) |
| | 03/20/2015 02:10:57 PM | Phone Call | Claimant (Inbound) |
| | 03/20/2015 01:30:02 PM | Phone Call | Claimant (Inbound) |
| | 03/20/2015 01:21:13 PM | Phone Call | Claimant (Inbound) |
| | 03/19/2015 10:53:15 AM | Faxreceipt-EDM | Correspondence-EDM |
| | 03/19/2015 10:43:20 AM | Claim Management | Examiner Claim Management Plan |
| | 03/19/2015 10:42:47 AM | Phone Call | Claimant (Outbound) |
| | 03/18/2015 11:43:35 AM | Phone Call | Claimant (Inbound) |
| | 03/18/2015 08:21:01 AM | Claim Management | Examiner Claim Management Plan |
| | 03/17/2015 06:32:00 AM | Faxreceipt-EDM | Correspondence-EDM |
| | 03/17/2015 06:32:00 AM | Faxreceipt-EDM | Correspondence-EDM |
| | 03/17/2015 06:32:00 AM | Faxreceipt-EDM | Correspondence-EDM |
| | 03/17/2015 06:31:56 AM | Faxreceipt-EDM | Correspondence-EDM |
| | 03/16/2015 04:32:25 PM | Phone Call | Claimant (Inbound) |
| | 03/16/2015 09:44:10 AM | Phone Call | Claimant (Inbound) |
| | 02/25/2015 09:41:21 AM | Claim Management | Examiner Approval/Denial Recommendation |
| | 02/25/2015 09:40:37 AM | Phone Call | Claimant (Outbound) |
| | 02/25/2015 09:38:49 AM | Absence Management | FMLA HLI |
| | 02/24/2015 03:17:27 PM | Phone Call | Claimant (Inbound) |
| | 02/19/2015 09:24:39 AM | Claim Management | CCM Functional Assessment / Pre-Ex |
| | 02/18/2015 04:52:46 PM | Phone Call | Claimant (Outbound) |
| | 02/18/2015 01:52:35 PM | Claim Management | CCM Functional Assessment / Pre-Ex |
| | 02/18/2015 01:23:46 PM | Phone Call | Claimant (Outbound) |
| | 02/18/2015 12:30:15 PM | Claim Management | Examiner Claim Management Plan |
| | 02/17/2015 05:49:04 PM | Phone Call | Claimant (Inbound) |
| | 02/16/2015 02:35:37 PM | Phone Call | Claimant (Inbound) |
| | 02/16/2015 06:31:07 AM | Faxreceipt-EDM | Medical Records-EDM |
| | 02/12/2015 08:59:31 AM | Claim Management | Examiner Claim Management Plan |
| | 02/11/2015 09:12:19 AM | Claim Management | Examiner Claim Management Plan |
| | 02/06/2015 05:09:16 AM | General | MRC Fax Successful |
| | 02/03/2015 10:37:55 AM | Phone Call | Claimant (Inbound) |
| | 02/03/2015 10:35:14 AM | General | MRC Fax Successful |
| | 02/03/2015 10:17:04 AM | Phone Call | Claimant (Outbound) |
| | 02/03/2015 10:16:14 AM | Claim Management | Examiner Claim Management Plan |
| | 01/30/2015 05:13:18 PM | Phone Call | Claimant (Inbound) |
| | 01/29/2015 07:45:59 PM | Phone Call | Claimant (Outbound) |
| | 01/29/2015 10:33:34 AM | Claim Management | Examiner Claim Management Plan |
| | 01/23/2015 04:43:17 PM | Phone Call | Claimant (Outbound) |
| | 01/23/2015 09:10:28 AM | Absence Management | FMLA HLI |
| | 01/23/2015 09:10:14 AM | General | Initial Decision Tracker |
| | 01/23/2015 09:02:13 AM | Claim Management | Examiner Approval/Denial Recommendation |
| | 01/20/2015 04:46:51 PM | Phone Call | Claimant (Inbound) |
| | 01/20/2015 09:57:41 AM | Phone Call | Claimant (Outbound / Unsuccessful) |
| | 01/20/2015 09:51:54 AM | Claim Management | Examiner Claim Management Plan |
| | 01/19/2015 02:42:04 PM | Faxreceipt-EDM | APS-EDM |
| | 01/19/2015 11:00:10 AM | Phone Call | Claimant (Inbound) |
| | 01/19/2015 10:40:33 AM | Phone Call | Claimant (Inbound) |
| | 01/13/2015 04:27:23 PM | Phone Call | Claimant (Outbound) |
| | 01/13/2015 08:58:42 AM | Claim Management | Examiner Claim Management Plan |
| | 01/12/2015 05:06:20 PM | Claim Management | Clinical Impression |
| | 01/12/2015 05:04:04 PM | General | Initial Decision Tracker |
| | 01/12/2015 05:04:02 PM | Telephonic | Physician |
| | 01/12/2015 01:23:11 PM | Faxreceipt-EDM | APS-EDM |
| | 01/12/2015 01:23:07 PM | Faxreceipt-EDM | APS-EDM |
| | 01/12/2015 11:19:39 AM | Phone Call | Claimant (Inbound) |
| | 01/09/2015 03:08:01 PM | Phone Call | Claimant (Outbound / Unsuccessful) |
| | 01/05/2015 08:46:29 AM | Telephonic | Employer |
| | 01/05/2015 08:46:07 AM | Absence Management | FMLA HLI |
| | 01/05/2015 08:46:07 AM | Telephonic | Employee |
| | 01/05/2015 08:46:06 AM | General | Causality |

| Notes | Date/Time | Category | Subcategory |
|-------|-----------|----------|-------------|
| | 01/05/2015 08:39:17 AM | Claim Management | Financial Management |

Cancel

© 2017 The Hartford

Terms of Use    Security    Privacy Policy    About Us

7/24/2017

Employer View: Claims Inquiry - Detailed Claim Status


**THE HARTFORD**

If this employee has returned to work, please contact the claim office at the number indicated below.

**Claims Status**

| | | | |
|---|---|---|---|
| Employee Name: | EDITH MCCURRY | | Claim Notes |
| Employee SSN: | 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 | | |
| Claim Office #: | -- Ext. 2308955 | | |
| Claim Handler: | ERIC LEE | | |
| Claim Appealed: | No | | |

| Type of Claim | Employee Group | Insured ID | Date of Disability | Benefit Effective Date | Benefits Approved Through |
|---|---|---|---|---|---|
| LTD - ABIL | KLS101-MARS | 9004534048 | 01/05/2015 | 07/20/2015 | 07/19/2017 |

| Status | Effective Date of Status | Status Reason |
|---|---|---|
| APPROVED | 07/13/2016 | N/A |
| PENDING | 04/17/2016 | OTHER |
| DENIED | 11/13/2015 | LACK OF ATTENDING PHYSICIAN INFORMATION |
| PENDING | 06/19/2015 | N/A |
| FIRST NOTICE | 06/16/2015 | N/A |

Definitions: AP = attending physician

**Claims Payment**

| Check Number | Payee | Payment Date | Amount* | Payment From | Payment Through |
|---|---|---|---|---|---|
| EFT | EDITH MCCURRY | 07/18/2017 | $966.89 | 07/01/2017 | 07/19/2017 |
| EFT | EDITH MCCURRY | 06/16/2017 | $1,526.68 | 06/01/2017 | 06/30/2017 |
| EFT | EDITH MCCURRY | 05/17/2017 | $1,526.68 | 05/01/2017 | 05/31/2017 |
| EFT | EDITH MCCURRY | 04/18/2017 | $1,526.68 | 04/01/2017 | 04/30/2017 |
| EFT | EDITH MCCURRY | 03/16/2017 | $1,526.68 | 03/01/2017 | 03/31/2017 |
| EFT | EDITH MCCURRY | 02/16/2017 | $1,526.68 | 02/01/2017 | 02/28/2017 |
| EFT | EDITH MCCURRY | 01/18/2017 | $1,526.68 | 01/01/2017 | 01/31/2017 |
| EFT | EDITH MCCURRY | 12/16/2016 | $1,526.68 | 12/01/2016 | 12/31/2016 |
| EFT | EDITH MCCURRY | 11/16/2016 | $1,526.68 | 11/01/2016 | 11/30/2016 |
| EFT | EDITH MCCURRY | 10/18/2016 | $1,526.68 | 10/01/2016 | 10/31/2016 |
| EFT | EDITH MCCURRY | 09/16/2016 | $1,526.68 | 09/01/2016 | 09/30/2016 |
| EFT | EDITH MCCURRY | 08/17/2016 | $1,526.68 | 08/01/2016 | 08/31/2016 |
| EFT | EDITH MCCURRY | 07/13/2016 | $18,930.83 | 07/20/2015 | 07/31/2016 |

Cancel

© 2017 The Hartford

Terms of Use   Security   Privacy Policy   About Us

**EXHIBIT 9**

KENCO001498



1301 5th Avenue, Suite 2900
Seattle, WA 98101
mcn.com | national@mcn.com

t: 800.636.3926
t: 206.621.9097
f: 206.623.4956

Medical
Consultants
Network

April 20, 2017

Priscilla McKinney
Hartford Life Insurance Companies - DCO Claim Office
5600 West American Boulevard
Minneapolis, MN 55437

**Re:** Edith Mccurry
**Claim Number:** 9004534048
**Date of Injury:** 01/05/2015
**MCN Number:** 1-C229136

Dear Priscilla McKinney,

Here is a clarification regarding an independent medical evaluation performed on the above referenced claimant on April 11, 2017.

## DISCUSSION

Regarding the primary and secondary diagnoses: I noted 27 diagnoses. Depression and psychomotor retardation are the primary reasons. Secondarily, arthralgia, chronic pain, and morbid obesity.

Regarding my recommended restrictions: I originally listed them in a PAA form (referenced in the original report). The restrictions below replace those recommendations.

To clarify the number of hours the claimant can work: In my opinion, the claimant can sustain functionality for a total of 4 hours per day and 20 hours per week.

The claimant can sit for 2 hours at a time for a total of 4 hours per 4-hour day.

The claimant can stand for 1 hour at a time for a total of 4 hours per 4-hour day.

The claimant can walk for 1 hour at a time for a total of 4 hours per 4-hour day.

The claimant can lift/carry up to 10 pounds constantly, up to 20 pounds frequently, and up to 50 pounds occasionally.

The claimant can push/pull 30 pounds frequently.

The claimant can reach above shoulder level constantly.

The claimant can reach at waist level constantly. The claimant can reach below waist level constantly.

The claimant can perform fingering/handling/feeling constantly.



**EXHIBIT**

10

MCN

Claim Number: 9004534048
Re: Edith Mccurry
April 20, 2017 | Page 2

No climbing ladders and no crawling.

Stooping, kneeling, and crouching can be done occasionally.

John Koehler, MD
Occupational Medicine, Board Certified
License Number: 036072658



1301 5th Avenue, Suite 2800          t: 800.636.3926     Medical
Seattle, WA 98101                    t: 206.623.9087     Consultants
mcn.com | national@mcn.com           f: 206.623.4956     Network

May 3, 2017

Priscilla McKinney
Hartford Life Insurance Companies - DCO Claim Office
5600 West American Boulevard
Minneapolis, MN 55437

**Re:** Edith Mccurry
**Claim Number:** 9004534048
**Date of Injury/Disability:** 01/05/2015
**Diagnoses:** HA; HTN, Obesity (256 pounds), Adjustment Disorder, MOD, Pain in Fingers/Arms, Back, Bilateral Ankles with Paresthesia in Ankles
**Coverage:** Disability-Long Term
**MCN Number:** 1-C229136

Dear Priscilla McKinney,

This letter is in response to your request for clarification regarding an independent medical evaluation performed on the above referenced claimant on April 11, 2017.

The file was sent to me with a cover sheet from The Hartford and sent to me by your company, Medical Consultants Network.

*This is a clarification request for the 4/11/17 Occ Med IME report and 4/20/17 clarification report per Dr. John Koehler; the vendor is MCN.*

*Dr. Koehler indicates the primary diagnoses are depression and psychomotor retardation. Secondary diagnoses are arthralgia, chronic pain, and morbid obesity.*

*We appreciate the holistic assessment, but we requested a review of physical functionality, not mental health functionality. To be noted, Dr. Koehler is assessing limitations of part-time function in the workplace at 4 hours per day, 20 hours per week.*

1)   *From strictly a physical medical perspective (arthralgia, chronic pain and morbid obesity), would the claimant require any functional limitations? If yes, please explain and provide the specific restrictions as outlined per the 4/20/17 clarification report.*

   Yes. As I noted, on all the documentation previously provided, that she should work a four-hour workday and a 20-hour workweek. She may perform sedentary duty as outlined. She is perfectly capable of performing sedentary duty as noted, as I have outlined previously, regarding work restrictions.

   From a strictly physical medical perspective (arthralgia, morbid obesity, and chronic pain), Ms. McCurry can work sedentary work for 4 hours per day and 20 hours per week.



EXHIBIT

tabbies

*11*



Claim Number: 9004534048
Re: Edith Mccurry
May 3, 2017 | Page 2

2)  *You note that you anticipate if Ms. Mccurry is treated aggressively for her depression, she would experience improvement in 3 to 6 months. However, from strictly a physical medical perspective, (arthralgia, chronic pain, and morbid obesity) is she functionally limited and what is her prognosis for these diagnoses?*

Yes, she is functionally limited. Her morbid obesity creates excessive weight on the joints resulting in pain. Furthermore, she was noted by Dr. Wu, her family doctor, an elevated erythrocyte sedimentation rate and elevated C-reactive protein. Ms. Mccurry has an inflammatory condition which has created chronic pain for her, which additionally complicates her ability to work along with the morbid obesity. Therefore, the limitations I have provided already at sedentary duty stand, based on these findings.

3)  *Do the medical records you reviewed indicate that Depression has consistently been the primary issue limiting function from the date of 1/05/15 to present date and ongoing?*

Depression was consistently present throughout the entire medical record. Dr. Wu repeatedly referred to depression. She was treating under the care of Dr. Mehta for psychiatric issues and has been on psychiatric medications. It is very clear from the medical record and throughout the medical record she has a significant depression condition.

Thank you for the opportunity to advise you further regarding this case. If you have any further questions, please do not hesitate to contact me.

John J. Koehler, MD
Board Certified in Occupational Medicine
License Number: 036072658

Please call if questions: 206.621.9097
You may comment on your experience online at http://www.mcn.com/contact-us/surveys



**THE HARTFORD**
*Fax Cover Page*

Date:            09/24/18 11:03:58 AM

To:              Jordan Hoffman Esq
Fax Number:      8889584529
Subject:         9004534048, Edith McCurry

From:            Eric Lee
                 Minneapolis Regional Office

Company:         The Hartford
Address:         PO BOX 14305
                 Lexington, KY 40512-4305

Phone:           860-547-5000

Fax:             1-877-454-7217

Total Pages:     8  including cover page

This electronic communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify sender immediately by phone, destroy this communication and all copies.

The Hartford® is underwriting companies Hartford Life and Accident Insurance Company and Hartford Life Insurance Company and administrator Hartford-Comprehensive Employee Benefit Service Company

Memo:

Eric Lee
Specialty Analyst, Long Term Disability
Group Benefit Claims

[The Hartford]<http://www.thehartford.com/>

The Hartford Financial Services Group, Inc.
One Hartford Plaza | (Building/Floor)
Hartford, Connecticut 06155
W: 800-549-6514, ext 2308955
F: 866-411-5613



**EXHIBIT**
*tables*
**12**

Case: 1:19-cv-04067 Document #: 1 Filed: 06/17/19 Page 116 of 154 PageID #:116

Eric.Lee@TheHartford.com<mailto:Eric.Lee@TheHartford.com>
www.thehartford.com<http://www.thehartford.com/>
www.facebook.com/thehartford<http://www.facebook.com/thehartford>
www.twitter.com/thehartford<http://www.twitter.com/thehartford>


The Hartford(r) is underwriting companies Hartford Life and Accident Insurance Company and Hartford
Life Insurance Company.



**THE HARTFORD**

September 24, 2018

Edith Mccurry
C/O Jordan Hoffman. P.C.
2711 East New York Street
Aurora, IL 60502

| | |
|---|---|
| Policy Holder: | Kenco |
| Claimant: | Edith Mccurry |
| Insured ID: | 9004534048 |
| Policy Number: | GLT674076 |
| RE: | Long Term Disability |

Dear Ms. Mccurry:

Based on our review of the information currently contained in your claim file, we have determined that you do not meet the policy definition of Disability beyond 7/19/17. Because of this, Long Term Disability (LTD) benefits are not payable to you as of 7/20/17.

Please refer to page 14 of the Policy which states:

**"Termination of Payment:** *When will my benefit payments end?*
Benefit payments will stop on the earliest of:
  1) the date You are no longer Disabled;
  2) ..."

Please refer to page 21 of the Policy which states:

**"Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
  1) Your Occupation during the Elimination Period;
  2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
  3) after that, Any Occupation.

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job

Benefit Management Services
Minneapolis Disability Claim Office
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613

was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:
  1) accidental bodily injury;
  2) sickness;
  3) Mental Illness;
  4) Substance Abuse; or
  5) pregnancy.
Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled."

Please refer to page 21 of the Policy which states:

"**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
  1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
  2) the Maximum Monthly Benefit."

Please refer to page 22 of the Policy which states:

"**Indexed Pre-disability Earnings** means Your Pre-disability Earnings adjusted annually by adding the lesser of:
  1) 10%; or
  2) the percentage change in the Consumer Price Index (CPI-W).

The percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W. The adjustment is made January 1st each year after You have been Disabled for 12 consecutive month(s), provided You are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, We may use another nationally published index that is comparable to the CPI-W."

We based our decision to deny your claim on policy language. All the papers contained in your file were viewed as a whole. This included:

- Eligibility feed completed by your Employer;
- The Long Term Disability Income Benefits Questionnaire completed by you on June 27, 2015;
- The Attending Physician's Statements completed by Dr. Darrell Troupe dated 11/21/16, Dr. Simon Wu on 1/5/15, 1/15/15, 3/27/15, 2/5/16, 4/4/16, 1/5/17 and Dr. Shital Mehta on 2/13/15, 5/1/15, 10/21/15, 11/10/15, 1/29/16 ;

- Office notes and medical records from Dr. Simon Wu, Dr. Shital Mehta, Dr. Darrell Troupe, Yolanda Casey and Carol Kruse from 1/2015 through 6/15/18;
- Response letter from Ms. Kruse received on 7/11/18;
- The Independent Medical Evaluation of Dr. John Koehler on 4/11/17;
- Medical records review and addendum by Dr. Lawrence Schloss (Psychiatry, Board Certified) dated 8/15/18 and 8/29/18;
- Employability Analysis Report completed by The Hartford on 6/14/17.

Our records indicate that on 1/2/15, you ceased work as an Administrative Assistant for Kenco due to depression. You were Disabled from Your Occupation on 1/5/15 and became entitled to LTD benefit payments on 7/20/15. Accordingly, pursuant to the Policy's definition of Disability, you are entitled to LTD benefits during the first 24 months of Disability if your condition prevents you from performing the Essential Duties of Your Occupation. As of 7/19/17, you had received 24 months of LTD Disability benefits. To remain eligible for benefits beyond 7/19/17, you need to be prevented by Disability from performing Any Occupation for which you are qualified by education, training, or experience

The medical information provided by Dr. Troupe dated 11/21/16 (and received 1/17/17) indicated that you suffer from Adjustment Disorder with depressed mood and that you were incapable of occupational functioning due to poor mood, perception and judgment.

We requested and ultimately received office notes and medical records from Dr. Troupe, Ms. Kruse and Ms. Casey and your file was referred to a Behavioral Health Case Manager who reviewed the information and sent a letter of clarification to Dr. Troupe and Ms. Casey on 7/5/18. Ms. Casey responded on 7/11/18 indicating that she was counseling and Ms. Casey did not answer the question of whether she was placing any restrictions and limitations on you. Ms. Casey did indicate that you had difficulty with focus and concentration. Dr. Troupe did not respond to the inquiry.

All of the medical records on file were referred to an outside medical professional for review. Dr. Lawrence Schloss reviewed the records and attempted to contact Dr. Troupe on 8/1/18, 8/2/18 (twice), and 8/3/18. Dr. Troupe's office called back on 8/2/18 but otherwise did not respond. Dr. Schloss also attempted to contact Dr. Casey who advised that she needed a release of information before she would speak to Dr. Schloss. A release was provided and Dr. Schloss attempted to reach her again on 8/27/18, 8/28/18 and 8/29/18 without response. Dr. Schloss spoke with Ms. Kruse on 8/21/18 and was advised that he should discuss your condition with Dr. Casey.

Dr. Schloss reviewed the records on file and in response to our inquiry as to your level of function from and after 7/20/17, Dr. Schloss opined that:

"John Koehler, MD completed an IME on 4/20/17 and gave the recommendation that the claimant could work 4-hour days and 20 hours per week. From a psychiatric perspective, the claimant had a similar presentation of depressive and anxiety phenomena as compared to her most current status. With reasonable medical certainty, I give the opinion that she can have a degree of occupational functioning that would allow for 20-hours of work per week. She would have limitations of no more than four hours per day. As for accommodations in the workplace, the claimant would have a

greater chance for occupational success if she were given a supportive, quiet environment with concrete, simple guidelines/expectations."

Using this information, a Vocational Rehabilitation Clinical Case Manager performed an employability analysis which showed that there are a number of occupations for which you are qualified that are within your physical and psychiatric capabilities. The following jobs were identified as appropriate job matches based upon skill transferability. Salaries for these occupations are above 60% of your Indexed Pre-disability earnings ($1,532.78), as required by the definition of Any Occupation. This listing of occupations is a sample of the occupations for which you are qualified:

- Administrative Assistant, Monthly Median Wage $2,2223.87;
- Claim Examiner, Monthly Median Wage $2,624.27;
- Agent-Contract Clerk, Monthly Median Wage $1,587.73;

Based on this information, we have concluded that you are not prevented from performing Any Occupation. Because of this, you did not meet the policy definition of Disability as of 7/20/17 and your LTD benefits will terminate on that date.

Below are guidelines that were relied upon in making this determination.

**Not Disabled Any Occupation Standard:**

On an ongoing basis, the Analyst should compare the:
- Policy definition of Disability; and
- Medical and vocational information

No earlier than **six (6) months** prior to the Test Change date, the Analyst should recommend a claim be terminated at or beyond Test Change when an:

- Employability Analysis Review (EAR) identifies occupation(s) that the employee is qualified to perform that are within the confirmed restrictions and limitations.

All claims and appeals for disability benefits are to be adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision.

The role of the Ability Analysts, Team Leaders, and Appeals Specialists is to undertake fair and accurate claims assessments with the goal of paying all valid claims. Financial self-interest, either the company's or that of the Claims or Appeals staff, must not influence individual claim management.

The Employee Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send to us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your

claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from the later of receipt of the letter or the end of benefits. Your appeal letter should be signed, dated and clearly state your position. Please include your printed or typed full name, Policyholder, and at least the last four digits of your Social Security Number with your appeal letter (i.e. xxx-xx-1234). Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim. If you would like us to consider information pertaining to your Social Security Disability claim, please provide it to us as soon as possible.

Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will advise you of our determination. Should the claim decision be upheld on appeal, you will then have the right to bring a civil action under Section 502(a) of ERISA, and the appeal decision will include notification of the date on which your right to bring a civil action expires under the Policy.

Please send your appeal letter to:

The Hartford
P.O. Box 14087
Lexington, KY 40512-4087

Hartford Life and Accident Insurance Co. has policies and procedures in place to insulate the claims and appeals processes from any financial interest. Claims and appeals administrators are segregated from the financial department and do not have access to its financial information. The compensation of claims and appeals adjudicators has no relation to denial or termination rates, and Hartford Life and Accident Insurance Co. contracts with third-party vendors to engage experts to perform peer reviews of medical evidence and independent medical examinations rather than utilizing Hartford Life and Accident Insurance Co. employees in this capacity.

Si necesita ayuda con esta carta en español, póngase en contacto conmigo en 800-549-6514, x2308955.

如果您阅读本信函需要中文普通话协助，请联系我，电话为 800-549-6514, x2308955。

若您閱讀此信件時需要廣東話協助，請撥打 800-549-6514, x2308955 聯絡我。

Kung kailangan mo ng tulong sa sulat na ito sa Tagalog, paki contact mo ako sa 800-549-6514, x2308955.

Díí ak'iashchíníí doo nił beehózingoo nika'adeeswoł. Shí nabo éí 800-549-6514, x2308955. Shich'į' hwidííl'ní.

If you have any questions, please feel free to contact our office at 800-549-6514, x2308955. Our office hours are 8:00 AM - 8:00 PM CST, Monday through Friday.

Sincerely,

*Eric Lee*

Eric Lee, Senior Ability Analyst
Hartford Life and Accident Insurance Co.

Benefit Management Services
Minneapolis Disability Claim Office
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613

 LAW OFFICE OF
*Jordan TraVaille Hoffman, P.C.*
"Balancing the Scales of Justice"

October 10, 2018

The Hartford
3rd Party Administrator for Kenco Logistics
C/o Eric Lee
P.O. Box 14305
Lexington, KY 40512-4305

RE:    Policy Holder:    Kenco
          Claimant:        Edith McCurry
          Insured ID:      9004534048
          Policy Number:   GRH674076

Good Day Mr. Lee,

This is a follow up to my September 5, 2018 correspondence regarding the disposition of Edith McCurry's long term disability and your September 24, 2018 denial letter.

After reading the denial letter, there were several inconsistencies such as, Ms. McCurry's job title. You have her listed as an administrative assistance. Ms. McCurry is a HR Administrator there is a difference. Additionally, if that is how you based Ms. McCurry partial return to work on previously that was incorrect. Furthermore, despite several requests, it has not been communicated to us why Ms. McCurry was not in receipt of the partial payment, as it was indicated by Kenco that the benefits had been reduced not discontinued.

Additionally, Dr. Throupe received a physician's statement to fill out from the Reed Group in the late afternoon of September 26, 2018, after your denial letter of September 24, 2018. It is attached for your review. Dr. Throupe indicated that Ms. McCurry had been under his care and unable to work since 2016 to date.

**2711 E. New York St., Suite 205 • Aurora, Illinois 60502 • 888.958.4529 Fax and Phone**
jthoffmanlaw@gmail.com


EXHIBIT
13

We are taken aback that Dr. Throupe was not included in your analysis that led to the denial letter that you issued on September 24, 2018. Records from Dr. Throupe were forwarded to you back in June of 2018. We believe that this was intentional harassment and a vexatious delay in making good on Ms. McCurry's claim; a claim to a benefit that she has a right to.

Ninety (90) days had gone past since Ms. McCurry had made her appeal, without any written notification as to the status, until September 24, 2018. This action goes against your very own policy of claim adjudication.

Consequently, we are demanding that you release Ms. McCurry's benefits immediately, as well as an explanation as to why the benefits were cut off as opposed to being reduced as stated by Kenco your insured.

Thanks in advance.

The Law Office of
Jordan T. Hoffman, P.C.
"Balancing the Scales of Justice"
www.attyjthoffman.com


Cc:     Edith McCurry
        Ashley Thrasher

Fax Server          9/26/2018 3:01:48 PM   PAGE   2/003   Fax Server

**ReedGroup**

## Attending Physician's Statement of Work Capacity and Impairment

Return completed form to Leave of Absence and Accommodations team, P.O. Box 8278, Broomfield, CO 80021 or Fax to 1-847-554-1812.

Note: If your patient has informed ReedGroup that you would be willing to submit clinical information to support his/her disability claim. In accordance with the federal law, GINA, (Genetic Information Nondiscrimination Act of 2008), please do not provide us with any genetic information. More information about GINA is included on the Authorization form (employee/patient) presented to you.

| Patient Information | First Name: Edith | Last Name: McCurry | Claim Number: |
| | Date of Birth: 8/26/62 | Gender: Male ☑Female | Record Number: |
| Vocational Information | Employer: Kenco Mars | Job Title: HR AA | Date of Hire: /  / 2015 |
| | Physical Demand Level per maximum pounds of exertion: Sedentary (10 lbs.)  Light (20 lbs.)  Medium (50 lbs.)  Heavy (100 lbs.)  Very Heavy (greater than 100 lbs.) | | |
| | Intellectual Skill Demand: ☐ Unskilled ☐ Semi-skilled ☐ Skilled ☐ Highly Skilled | | |
| Claim Information | First day of absence: / 4/16 | Definition of Disability: ☑Own Job ☐ Own Occupation ☐ Any Occupation | |
| | Claim Manager: | Phone Number & Ext: | Fax Number: |

**1. Nature of Treatment & Work Capacity Evaluation**

Primary Diagnosis: Major Depression        ICD-9 or DSM code(s): 296.32
Secondary/Co-morbid Diagnosis impacting work: _____   ICD-9 or DSM code(s): 300.02
Tertiary/Co-morbid Diagnosis impacting work: _____   ICD-9 or DSM code(s): _____

Onset of primary condition: / 4/16

- Hospital stay: ☐ Not applicable   Admitted on: /  /  Discharged from Hospital on: /  /
- Recent Surgery Date: /  /        Type of Surgery: _____

Name and Address of Hospital: _____

- Medications-name/dosage/frequency: _____
- Other treatment methods: _____

1) Is the patient's primary condition due to injury or illness arising out of the patient's employment? ☐ No ☑Yes ☐ Unknown
Contact information for other health care providers treating this patient: ☑ Not applicable

Name: _____   Phone: _____   Address: _____
Name: _____   Phone: _____   Address: _____

2) Did you recommend that your patient stay home from work? ☐ No ☑Yes, on the following date / 4/16

If no, please complete sections 2-3 and provide a work release per section 5, question 6

If yes, please provide your rationale for recommending disability leave by referencing the patient's signs and symptoms and their relation to functional impairment(s) that precluded work. Please be sure to explain how this patient's impairment impacted his capacity to perform the physical and/or intellectual demands of his/her job per the definition of disability noted above. If the disability 'test' is noted to be the "Any Occupation" please explain how impairment was determined to preclude any work which would include work at the sedentary and unskilled levels

_____
_____
_____

**2. Treatment Plan**

Date of first office visit: / 4/2016      Date of last office visit: 10/4/2018      Next office visit: / in 2 months

Expected Treatment Frequency: ☐ Weekly ☐ Monthly ☐ Other (specify)

(a) Is the patient still under your care for the primary disabling condition?
☑Yes ☐ No, indicate date service terminated: /  / or referred /  /

(b) If patient has been referred to a specialist please list the Provider's Name and Phone number
D. Boyd m.d.

Is surgery planned? ☑No ☐ Yes, on /  / Procedure(s): _____
Procedure Code

Health Care Provider's Initials: _____      Date: 10-4-18

EXHIBIT
14

Scanned by CamScanner

Fax Server          9/26/2018 3:01:48 PM   PAGE   3/003   Fax Server

LOAA team, P.O. Box 6278, Broomfield, CO 80021 or Fax to 1-847-554-1812.

| Patient Information | Name | | Claim Number | |
|---|---|---|---|---|

| | Height: _____ Weight _____ Pulse: _____ | Blood Pressure: ___/___ | Date Measured: ___/___/___ | |
|---|---|---|---|---|

**3. Medical Signs and Symptoms**

Patient's Complaints (symptoms) _____

Physical Examination Findings: _____
_____
_____

Diagnostic Test/Study Findings (imaging studies, lab values, functional testing, e.g. pulmonary function tests, cardiac tests, etc.): _____
_____

If work absence is due to pregnancy, the expected date of delivery is: ___/___/___

**4. Mental or Psychiatric Impairment (if applicable)**

Please provide your formal Mental Status Exam results and Behavioral Observations

Affect/Emotional Appropriateness and Control:
☐ WNL  ☒ Impaired as evidenced by *Depression / Anxiety*

Behavioral Appropriateness/Control, Pace & Stamina:
☐ WNL  ☒ Impaired as evidenced by *Anxiety / Depression.*

Cognitive Processing/functioning:
☐ WNL  ☒ Impaired as evidenced by *Anxiety / Depression*

Do you believe the patient is competent to endorse checks and direct the use of proceeds thereof? ☒ Yes  ☐ No
If no, please explain: _____

**5. Return to Work Status**

1.) Do you **currently** consider your patient to be totally impaired from working? ☐ No  ☒ Yes
If yes, as of what date? _/_ *9* _/_ *16* If yes, as supported by the following rationale citing medical facts documenting my patient's functional impairments and or stage of recovery from a medical procedure which at this time precludes work
_____

2. What is the estimated date of the patient's release to modified duty *indefinite* and to full duty ___/___/___

3. Are there **currently** any temporary work restrictions and/or accommodations which would allow this patient to return to work?
☐ No  ☒ Yes, please specify by providing objective quantification e.g. no lifting greater than 20 lbs.
*May not work*

4. When do you anticipate your patient will reach maximum medical improvement? *Condition is chronic*

5. Do you anticipate, or currently recommend, permanent work restrictions? *No work*

6. Regarding my care of this patient return to work status is as follows:
☐ Released to full duty on ___ *DWA*
☐ Released to temporary modified duty as describe above on *DWA* and to full duty as of ___/___/___
☐ Unable to release patient at the time. I anticipate significant clinical improvement in my patient's functional capacity by the following date: ___/___/___

| Health Care Provider's Name (print) *D Trousa md* | Specialty *Psychiatry* | Degree *M.D.* | Tax ID # |
|---|---|---|---|
| Address (No., Street, City, State, Zip Code) *24407 Locaport Street* | | Phone *630-621-9844* | Fax *815 230-3652* |
| Signature | | Date | |

Updated 7-16-11 v 1.5

Scanned by CamScanner



LAW OFFICE OF
### *Jordan TraVaille Hoffman, P.C.*
"Balancing the Scales of Justice"

November 11, 2018

The Hartford
3rd Party Administrator for Kenco Logistics
C/o Shelley Scheidel
P.O. Box 14305
Lexington, KY 40512-4305

RE:  Policy Holder:    Kenco
      Claimant:         Edith McCurry
      Insured ID:       9004534048
      Policy Number:  GRH674076

Good Day Ms. Scheidel:

This is a follow up to your November 9, 2018 correspondence.

My request was written, simple and straight forward with regards to the November 5, 2018 correspondence constituting an appeal for Ms. McCurry. Conversely, it is not clear what constitutes a completed appeal submission, as you have not outlined what that contains.

Attached you will find Eric Lee's correspondence dated October 19, 2018 **Exhibit A** that specifically states that written correspondence was sent to Dr. Throupe on July 11, 2018.

Likewise you have stated that you cannot find confirmation of this July 11, 2018 correspondence to Dr. Throupe in your records. Therefore, we must conclude that your company did not contact Dr. Throupe on that day as previously stated.

**2711 E. New York St., Suite 205 • Aurora, Illinois 60502 • 888.958.4529 Fax and Phone**
jthoffmanlaw@gmail.com

EXHIBIT
15

SA-168

Consequently, Dr. Throupe was not afforded an opportunity to communicate his assessment of Ms. McCurry to your company at that time.

Additionally, your November 9, 2018 correspondence goes on to say that three (3) pages were successfully faxed to 815-230-3652 on August 31, 2018, of which you attached two (2) pages dated August 31, 2018, in which you have entitled the letter. Verify that the attachments to your November 9, 2018 letter dated August 31, 2018 were two (2) of the three pages faxed to 815-230-3652.

However, the report referenced in the October 19, 2018 correspondence and in your November 9, 2018 correspondence is not attached to your November 9, 2018 correspondence that was allegedly sent to Dr. Throupe, along with presumably, the August 31, 2018 letter that you attached. Please produce the report sent to Dr. Throupe upon receipt of this correspondence. To date this is the third (3) request for the information sent to Dr. Throupe.

While I do appreciate the additional information that you furnished that was not requested, I am unclear why the report was not sent as requested, as it was a clear and concise request. Please state specifically why you did not send the report as requested.

In addition, I am requesting clarification as to the specific reason why you cannot comment on the information that was sent on August 31, 2018.

Thanks for your prompt cooperation in this matter.

The Law Office of
Jordan T. Hoffman, P.C.
"Balancing the Scales of Justice"
www.attyjthoffman.com


Cc:    Edith McCurry
        Eric Lee



**THE HARTFORD**

November 28, 2018

Jordan Hoffman
Law Office Of Jordan Travaille Hoffman P.C.
2711 E New York St. Suite 205
Aurora, IL 60502

| Policy Holder: | Kenco |
|---|---|
| Claimant: | Edith Mccurry |
| Insured ID: | 9004534048 |
| Policy Number: | GLT674076 |

Dear Attorney Hoffman:

This letter is about your client's claim for Long Term Disability (LTD) benefits. We are writing to you in response to your letters dated 11/20/2018, 11/26/2018, and 11/27/2018.

Your 11/20/2018 letter demands the immediate release of benefits. We are unable to consider this request; however your client is entitled to receive a full and fair appeal review. Please refer to the letter dated 09/24/2018 which outlined her appeal rights.

Your letters also pose several questions regarding Ms. McCurry's claim, and you have requested a copy of Ms. McCurry's LTD claim file. Please be advised that a copy of the complete claim file will be sent to you under separate cover within 10-15 business days. Receipt of this information should provide you with the information you were requesting. Should you still have additional concerns, we will address such information upon written request, after the appeal decision has been rendered if the adverse determination is upheld.

You may submit any documentation or evidence you feel is appropriate regarding your client's claim. Please confirm when your appeal submission is complete and you'd like for us to move forward with an appeal review. We will not begin the evaluation of your client's appeal until you instruct us to proceed or as of 03/23/2019.

If you have any questions, please feel free to contact our office at 916-294-1322. Our office hours are 8:00 AM - 8:00 PM CST, Monday through Friday.

Sincerely,

*Shelley Scheidel*

Shelley Scheidel, Appeal Specialist
Hartford Life and Accident Insurance Co.

The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613

EXHIBIT



**Agor Behavioral Health Services, Inc.**
24402 W Lockport Street, Suites 223 & 224 ♦ Plainfield, Illinois 60544

Phone: 630-621-5824 ♦ Fax: 815-230-3652
www.DoctorAgor.com

12/27/18

Re: Edith McCurry

To whom it may concern:

1/4/16 is the date of her first visit to this psychiatrist. Since that time she has been unable to work.

I personally have no recollection of any direct communications from the Hartford company or, that I know of, or recall, personally receiving telephony from the Hartford company.

*D. Troupe, m.d.*

Dr. D. Troupe, m.d.

EXHIBIT

17



LAW OFFICE OF

*Jordan TraVaille Hoffman, P.C.*
"Balancing the Scales of Justice"

October 22, 2018

Certified Mail 70141200000104003317 & Facsimile 847-554-1812

RE:     Edith McCurry

Reed Group
C/o Legal Department
10355 Westmar Dr.
Westminster, CO 80021

Good Day,

I am Ms. McCurry's legal counsel and we just became apprised of the fact that on September 26, 2018 an attending physician's statement of work capacity and impairment was sent from your company to Ms. McCurry's physician.

The form was filled out and returned to you by her doctor as requested. However, the issue is that McCurry did not authorize your company to have access to this information. Ms. McCurry indicated as of recent that the entity that she thought this form was associated with declined having any knowledge or affiliation with this group.

Hence we are requesting that in the next three (3) business days that you produce an authorization form for this information and disclose the entity that you are representing.

We are further instructing you to cease and desist obtaining information, whether it is personal or medical or any other type of information, as you are not authorized to do so, until we can resolve this matter.

Respectfully,

Jordan T. Hoffman
Enclosure

Cc: Edith McCurry

2711 East New York St. • Aurora, Illinois 60502 • (888) 958-4529 PH & FAX
jthoffmanlaw@gmail.com



EXHIBIT
18

# USPS Tracking® FAQs > (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 70141200000104003317                    Remove ✕

**Expected Delivery by**

# THURSDAY

**25** OCTOBER 2018 ⓘ | by **8:00pm** ⓘ

Feedback

## ✅ Delivered

October 25, 2018 at 1:05 pm
Delivered, Front Desk/Reception/Mail Room
BROOMFIELD, CO 80021

**Get Updates** ⌄

---

**Text & Email Updates**                                       ⌄

---

**Tracking History**                                           ⌃

**October 25, 2018, 1:05 pm**
Delivered, Front Desk/Reception/Mail Room
BROOMFIELD, CO 80021
Your item was delivered to the front desk, reception area, or mail room at 1:05 pm on October 25, 2018 in BROOMFIELD, CO 80021.

**October 25, 2018**
In Transit to Next Facility

**October 24, 2018, 10:05 pm**
Departed USPS Regional Destination Facility
DENVER CO DISTRIBUTION CENTER

**October 24, 2018, 11:59 am**
Arrived at USPS Regional Destination Facility
DENVER CO DISTRIBUTION CENTER

**October 22, 2018, 11:42 pm**
Departed USPS Regional Origin Facility
BEDFORD PARK IL DISTRIBUTION CENTER

**October 22, 2018, 10:17 pm**
Arrived at USPS Regional Origin Facility
BEDFORD PARK IL DISTRIBUTION CENTER

**October 22, 2018, 5:30 pm**
USPS in possession of item
EVERGREEN PARK, IL 60805


Feedback

**Product Information**    ∨

See Less ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**



**THE HARTFORD**

October 19, 2018

Jordan T. Hoffman, Esquire
Law Office Of Jordan Travaille Hoffman Pc
2711 East New York St
Aurora, IL 60502

Policy Holder:    Kenco
Claimant:         Edith Mccurry
Insured ID:       9004534048
Policy Number:    GLT674076

Dear Mr. Hoffman:

This letter is regarding your client's Long Term Disability (LTD) benefits.

In response to your letter dated 10/10/18:

The information provided by Kenco detailed that Ms. McCurry's job title was Administrative Assistant and that is why it was communicated that way in the denial letter. I have attempted to contact Kenco to clarify her position but have received no response. I have reviewed the Vocational Case Manager's employability analysis and it was actually prepared using Ms. McCurry's stated position of HR Administrator. As such, the determination was made based on Ms. McCurry's stated job title of HR Administrator rather than Administrative Assistant.

As detailed in the denial letter, Dr. Troupe was very much included in the overall analysis of Ms. McCurry's claim. Our Behavioral Health Case Manager sent Dr. Troupe a letter on 7/11/18 seeking to clarify Ms. McCurry's restrictions. No response was received. The independent outside medical professional reviewed the entire file, including Dr. Troupe's office visit notes. That professional also attempted to contact Dr. Troupe on 8/1/18, 8/2/18 (twice) and 8/3/18. Dr. Troupe did call back on 8/2/18 and leave a voice message but did not respond otherwise. A copy of the independent peer report was sent to Dr. Troupe on 8/31/18 for comment. Dr. Troupe did not respond. All of this information just recited (except for the last line detailing that the report was sent to Dr. Troupe) was detailed in the denial letter.

As to reduced benefits, there is no provision in the Policy that calls for reduced benefits unless Ms. McCurry is paid an Other Income Benefit (such as Social Security Disability) or if she is working and has Current Monthly Earnings. As set forth in the denial letter, the determination is that Ms. McCurry is capable of a level of work that would allow her to earn more than the sum of her Indexed Pre-disability Earnings and the Benefit Percentage as detailed in the definitions of Disability and of Any Occupation. As she does not meet the definition of Disability, she is not entitled to benefits as of 7/20/17.

Benefit Management Services
Minneapolis Disability Claim O
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613



**EXHIBIT** *19*

SA-172

As set forth in the letter, if you disagree with the determination, you may appeal the decision and submit any additional medical information you wish to have considered and our appeals department will evaluate it.

Finally, the Attending Physician Statement sent from the Reed Group was not sent by the Hartford. The Reed Group is a different company. It would normally be sent to initiate a period of Disability from work. If Ms. McCurry is or has been working during the last 2 years, please provide details of her work including employer, job title and paystubs.

If you have any questions, please call Customer Service at 800-549-6514. Our hours are Monday through Friday, between 8:00 AM - 8:00 PM CST.

Sincerely,

*Eric Lee*

Eric Lee, Senior Ability Analyst
Hartford Life and Accident Insurance Co.

Benefit Management Services
Minneapolis Disability Claim Office
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613



November 9, 2018

Jordan Hoffman
Law Office Of Jordan Travaille Hoffman P.C.
2711 E New York St. Suite 205
Aurora, IL  60502

Policy Holder:     Kenco
Claimant:          Edith Mccurry
Insured ID:        9004534048
Policy Number:     GLT674076

Dear Attorney Hoffman:

This letter is about your client's claim for Long Term Disability (LTD) benefits. We are writing to you in response to your notice of appeal letter dated 11/05/2018.

I have reviewed your request for the 07/11/2018 correspondence to Dr. Troupe. However, I find no confirmation that the correspondence was successfully faxed or mailed to Dr. Troupe.

With regards to the 08/31/2018 correspondence, there was a successful fax transmission to 815-230-3652. However only 3 pages were sent, and I cannot comment on what information was sent. Additional information is enclosed, including the 08/31/2018 letter, and 08/31/2018 and 09/04/2018 comments.

**Please confirm when your appeal submission is complete and you'd like for us to move forward with an appeal review.**

If you have any questions, please feel free to contact our office at 916-294-1322. Our office hours are 8:00 AM - 8:00 PM CST, Monday through Friday.

Sincerely,

*Shelley Scheidel*

Shelley Scheidel, Appeals Specialist
Hartford Life and Accident Insurance Co.

Enclosure
McCurryAug31

Benefit Management Services
Minneapolis Disability Claim Office
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613







ILLINOIS DEPARTMEN

## DOI Message Center

## Main Menu

The current status and history for all Assistance Requests filed by you are listed below.

To file a new request choose the type of claim and click the "New Assistance Request" button.

## Assistance Request History for Jordan Hoffman

 Refresh

| Request Number | Company | Status | Analyst |
|---|---|---|---|
| **IL19-00179** +add documentation | Hartford Life & Accident Insurance Company | Closed | Olivia Salako |
| + documentation | Hartford correspondence and plan.pdf | | |
| + documentation | EDITH MCCURRY autho DOI.pdf | | |
| + documentation | McCURRY AWARD LETTER.pdf | | |
| + correspondence | IL19-00179 Authorization to Release 01-23-2019.pdf | | |
| **IL19-00179-02** +add documentation | Hartford Life & Accident Insurance Company | Closed | Melissa Lovelace |
| + documentation | McCURRY AWARD LETTER.pdf | | |
| + documentation | McCURRY AWARD LETTER.pdf | | |
| + correspondence | IL19-00179-02 consumer acknowledgement 1-29-2019.pdf | | |
| + correspondence | IL19-00179-02 Closing Letter to Consumer 02-04-2019.pdf IL19-00179-02 Company Response - hoffman 02-04-2019.pdf | | |

To add information to an existing assistance request, simply open the request by clicking on the worksheet number (ex: "IL17-00000") then click the "Add Information" link below the worksheet details.

Active Only | Show All


EXHIBIT
21



# The Hartford
# FAX COVER PAGE

To:         Attorney Hoffman
Fax Number: 8889584529
Company:

From:       "Scheidel, Shelley (GB and WC Claims)" <Shelley.Scheidel@thehartford.com>

Date:       02/05/19 11:40:54 AM
Subject:    Edith McCurry [CONFIDENTIAL]
Total Pages: 3 including cover page

PRIVILEGED AND CONFIDENTIAL: This electronic communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify sender immediately by phone, destroy this communication and all copies.

Memo:

Shelley Scheidel
Appeals Specialist



The Hartford Appeals                                Business Insurance
PO Box 14087                                        Employee Benefits
Lexington, KY 40512-4087                            Auto
Phone 916-294-1322                                  Home

Fax: 866-411-5613

www.thehartford.com
www.facebook.com/thehartford
www.twitter.com/thehartford

The Hartford® is underwriting companies Hartford Life and Accident Insurance Company and Hartford Life Insurance Company.

This email including any attachments is intended only for the use of the entity or individual to whom it is addressed, and may contain information that is confidential. Any unauthorized review, use, disclosure or distribution is prohibited. The Hartford does not provide tax advice to our customers.

**EXHIBIT**

tabbies®

22

Case: 1:19-cv-04067 Document #: 1 Filed: 06/17/19 Page 139 of 154 PageID #:139



**THE HARTFORD**

February 5, 2019

Jordan Hoffman
Law Office Of Jordan Travaille Hoffman P.C.
2711 E New York St. Suite 205
Aurora, IL 60502

| | |
|---|---|
| Policy Holder: | Kenco |
| Claimant: | Edith Mccurry |
| Insured ID: | 9004534048 |
| Policy Number: | GLT674076 |
| RE: | Long Term Disability |

Dear Attorney Hoffman:

Following a comprehensive review of the information in your client's claim file by our Appeals Unit, we have reversed our prior decision dated 09/24/2018. The claim file has been forwarded to the claim department to reinstate and determine benefits. You should expect to be contacted by a representative of that office shortly. Please allow at least 5-10 business days.

Please be advised that the decision to reverse the prior determination does not guarantee payment of benefits indefinitely. All Policy provisions must be satisfied to remain eligible.

If you have any questions, please feel free to contact our office at 916-294-1322. Our office hours are 8:00 AM - 8:00 PM CST, Monday through Friday.

Sincerely,

*Shelley Scheidel*

Shelley Scheidel, Appeal Specialist
Hartford Life and Accident Insurance Co.

The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613



**THE HARTFORD**

## *Fax Cover Page*

Date:           02/14/19 12:52:54 PM

To:             Jordan Hoffman Esq
Fax Number:     8889584529
Subject:        9004534048, Edith Mccurry

From:           Eric Lee
                Minneapolis Regional Office

Company:        The Hartford
Address:        PO BOX 14305
                Lexington, KY  40512-4305

Phone:          860-547-5000

Fax:            1-877-454-7217

Total Pages:    9   including cover page

This electronic communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify sender immediately by phone, destroy this communication and all copies.

The Hartford® is underwriting companies Hartford Life and Accident Insurance Company and Hartford Life Insurance Company and administrator Hartford-Comprehensive Employee Benefit Service Company

Memo:

Eric Lee
Specialty Analyst, Long Term Disability
Group Benefit Claims

[The Hartford]<http://www.thehartford.com/>

The Hartford Financial Services Group, Inc.
One Hartford Plaza | (Building/Floor)
Hartford, Connecticut 06155
W: 800-549-6514, ext 2308955
F: 866-411-5613



**EXHIBIT**

**23**

Case: 1:19-cv-04067 Document #: 1 Filed: 06/17/19 Page 142 of 154 PageID #:142

Eric.Lee@TheHartford.com<mailto:Eric.Lee@TheHartford.com>
www.thehartford.com<http://www.thehartford.com/>
www.facebook.com/thehartford<http://www.facebook.com/thehartford>
www.twitter.com/thehartford<http://www.twitter.com/thehartford>

The Hartford(r) is underwriting companies Hartford Life and Accident Insurance Company and Hartford Life Insurance Company.



February 14, 2019

Edith Mccurry
C/O Jordan Hoffman. P.C.
2711 East New York Street #205
Aurora, IL 60502

Policy Holder:    Kenco
Claimant:         Edith Mccurry
Insured ID:       9004534048
Policy Number:    GLT674076

Dear Ms. Mccurry:

We are writing to you concerning your client's claim for Long Term Disability (LTD) benefits.

Pursuant to a review of your client's file by our appeals department, we have re-opened your client's claim and LTD benefits are payable from and after 7/20/17 as your client meets the definition of Disability.

Also, your client's Policy limits benefits for certain disabilities. According to the medical documentation in your client's file, the condition that has caused her period of Disability falls within this limitation. Her LTD benefits due to a Mental Illness condition commence on 7/20/17. The maximum duration of benefits payable for her Disability is 24 months, or through 7/19/19. If she is hospitalized for this condition which has caused her current period of Disability, the maximum duration of benefits may be extended by the period of hospitalization. Please refer to the following policy language.

Your client's policy states on page 13:

"**Mental Illness And Substance Abuse Benefits:** *Are benefits limited for Mental Illness or Substance Abuse?*
If You are Disabled because of:
      1) Mental Illness that results from any cause;
      2) any condition that may result from Mental Illness;
      3) alcoholism; or
      4) the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance;
then, subject to all other provisions of The Policy, We will limit the Maximum Duration of Benefits.

Benefits will be payable:

Benefit Management Services
Minneapolis Disability Claim Office
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613

1) for as long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or

2) if not confined, or after you are discharged and still Disabled, for a total of 24 month(s) for all such disabilities during your lifetime."

In addition, a review of your client's Pre-disability Earnings by our appeals department has indicated that we have used an incorrect figure. Pre-disability Earnings is based on your client's prior year W-2 which is $51,052.21 annually, or $4,254.35 monthly rather than the previous figure of $2,544.46 . As a result, your client's LTD benefit amount is $4,254.35 x 60% = $2,552.61.This has resulted in an underpayment on already paid benefits as follows:

7/20/15 – 7/31/15
Amount you were paid:                  $ 610.67  (($2,544.46 x 60%) x 12/30 days)
Amount you should have been paid:  $1,021.04  (($4,254.35 x 60%) x 12/30 days)
Underpayment:                          $ 410.37

8/1/15 – 6/30/17 (23 months)
Amount you were paid:                  $1,526.68  ($2,544.46 x 60%)
Amount you should have been paid:  $2,552.61  ($4,254.35 x 60%)
Underpayment:                          $1,025.93 x 23 months = $23,596.39

7/1/17 – 7/19/17
Amount you were paid:                  $ 966.89  (($2,544.46 x 60%) x 19/30 days)
Amount you should have been paid:  $1,616.65  (($4,254.35 x 60%) x 19/30 days)
Underpayment:                          $ 649.76

In addition, benefits from 7/20/17 to the present will be paid based on the corrected Pre-disability Earnings as follows:

| 7/20/17 – 7/31/17 | $ 1,701.74  ($2,552.61 x 12/30 days) |
| 8/1/17 – 2/28/19 (19 months) | $48,499.59  ($2,552.61 x 19 months) |
| Total underpayment: | $73,156.11 ($410.37+$23,596.39 + $649.76 + $1,701.74 + $48,499.59) |

Please note that the final retroactive benefit amounts are subject to confirmation when your client's claim is recalculated in our system once the information at the end of this letter is returned.

In addition, you have asked about prior benefits paid, including for Short Term Disability (STD). Short Term Disability has a different definition of Pre-disability Earnings as follows:

On page 19 of the Policy:

"**Pre-disability Earnings** means Your regular weekly rate of pay not counting bonuses, commissions and tips and tokens, overtime pay or any other fringe benefits or extra compensation, in effect on the last day You were Actively at Work before You became Disabled."

Based on information on file, your client's regular weekly rate of pay as of 1/5/15 when she stopped working was $657.70, therefore STD benefits are $657.70 x 60% = $394.62 weekly. STD is payable on the 15th day of Disability, or 1/19/15, and is payable for 26 weeks, or through 7/19/15. Your client was paid a gross benefit of $394.62 per week from 1/19/15 through 7/19/15. We are required to withhold FICA taxes for the 1st 6 months after your client's date of Disability. This left her a net STD benefit of $364.43. All LTD benefits were paid more than 6 months after her date of Disability in 1/2015 so there was no FICA withheld from the LTD benefits.

In order to re-open Ms. Mccurry's LTD claim and pay retroactive and ongoing LTD benefits, please provide the following:

- A written update on the status of your client's Social Security Disability claim as our last information on file is that she filed a Request for Reconsideration on 4/14/17.
- An update on the status of her wrongful termination claim against her employer
- Clarification on whether retroactive and ongoing benefits are to be paid directly to Ms. Mccurry or if they are to be paid to your office. If they are to be paid to your office, please provide an authorization from Ms. Mccurry stating the same. If they are to be paid directly to Ms. Mccurry, please have her complete an EFT form detailing her current direct deposit information.

No benefits can be paid without this information.

Please return all information that we asked for within thirty (30) days in order to avoid any delays in processing your client's claim for benefits.

If you have any questions, please feel free to contact our office at 800-549-6514, x2308955. Our office hours are 8:00 AM - 8:00 PM CST, Monday through Friday.

Sincerely,

*Eric Lee*

Eric Lee, Senior Ability Analyst
Hartford Life and Accident Insurance Co.

Enclosure

2019_LTD_Payment_Schedule

Benefit Management Services
Minneapolis Disability Claim Office
The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613

Case: 1:19-cv-04067 Document #: 1 Filed: 06/17/19 Page 146 of 154 PageID #:146

# Electronic Funds Transfer (EFT) Request Form



**THE HARTFORD**

| **Instructions** | |
|---|---|
| 1. Read the Terms and Conditions listed below. | Name: _____ |
| | Address: _____ |
| 2. Enter your name, address, home telephone number and Employee ID. | Telephone Number: ( ) - _____ |
| | Employee ID: _____ |
| | Name of Bank: _____ |
| 3. Complete the bank and account information for your Electronic Funds Transfer request. | Bank Address: _____ |
| | Bank Telephone Number: ( ) - _____ |
| | **Type of Account (select one):** |

**Instructions**

1. Read the Terms and Conditions listed below.

2. Enter your name, address, home telephone number and Employee ID.

3. Complete the bank and account information for your Electronic Funds Transfer request.

4. You and all other parties to the account specified must sign this form.

5. Return the completed form to The Hartford Claims Office.

**Note:** Failure to provide the requested information may affect the processing of this form and may delay or prevent the receipt of payments through the EFT Program.

Name: _____

Address: _____

Telephone Number: ( ) - _____

Employee ID: _____

Name of Bank: _____

Bank Address: _____

Bank Telephone Number: ( ) - _____

**Type of Account (select one):**

| Checking: | Saving: |
|---|---|
| Account Number: _____ | Account Number: _____ |

Bank Routing Number: _____

Attach a voided blank personal check.

Indicate any other names on the account selected:

_____

**AUTHORIZATION**

I / We authorize ( _____ )
and affiliated companies (herein after called The Hartford), to initiate credit entries (and to initiate, if necessary, debit entries and adjustments for credit entries made in error) to my (our) account indicated above and the Depository named above, hereinafter called Depository, to credit and/or debit the same to such account. I (we) acknowledge that the origination of A C H transactions to my (our) account must comply with the provisions of U.S. law. This authorization is to remain in full force and effect until The Hartford has received written notice from me (us) of its termination in such time and in such manner as to afford The Hartford and Depository a reasonable opportunity to act on it. I (we) understand I (we) should allow at least (# ) days for the first CREDIT to occur.

Signature(s): _____     Date: _____

10/2013

**TERMS AND CONDITIONS**

The Hartford will not be responsible for any banking fees charged for direct deposit or electronic funds transfer.

I understand that this agreement may be terminated by me upon written notice to The Hartford.

The cancellation will be processed for the time period following receipt of the notice.

I understand that a change in the title of this account which alters the interest of any party terminates this authorization and that a new authorization must then be submitted to continue direct deposit/EFT.

I understand that it is my responsibility to inform The Hartford of any address changes immediately.

I further understand that any benefit payment forwarded to the financial institution covering a period of time after my death will be refunded to The Hartford. I agree that the financial institution shall have the right of offset for such a refund.

I authorize the financial institution specified in this authorization to provide The Hartford with my home address and the names of any joint account holders for the account specified herein.

I understand that I am responsible for verifying the accuracy of my account data and for promptly notifying The Hartford of any errors or changes including termination of my EFT request.

**SPECIAL NOTICE TO OTHER PARTIES TO THIS ACCOUNT.**



As a party to this account, I understand that I am personally liable, both individually and as a member of the group of parties to this account, for the full amount of all benefit payments covering any period after the death of the disability benefit recipient. This is a liability to The Hartford. If I am entitled to any benefit as the beneficiary of the disability benefit recipient, the amount of my liability may be deducted from the amount payable to me. I agree that the financial institution shall have the right of offset for such a refund, and I authorize the financial institution to provide The Hartford with my home address.

**THE HARTFORD**

**CANCELLATION**

The agreement represented by this authorization remains in effect until cancelled by the recipient by notice to The Hartford or by the death or legal incapacity of the recipient. Upon cancellation by the recipient, the recipient should notify the receiving financial institution that he/she is doing so. The agreement represented by this authorization may be cancelled by the financial institution by providing the recipient a written notice 30 days in advance of the cancellation date. The recipient must immediately notify The Hartford if the authorization is cancelled by the financial institution. The financial institution can not cancel the authorization by advice to The Hartford.

_____          _____
Signature:                                                                             Date:

I certify that I have read and understand the Terms and Conditions of this EFT Agreement, including the SPECIAL NOTICE TO OTHER PARTIES TO THIS ACCOUNT

_____          _____
Signature(s) of Other Persons on Account:                              Date

_____          _____
                                                                                         Date:

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries.

10/2013



Jordan Hoffman <jthoffmanlaw@gmail.com>

## Edith McCurry - 9004534048 [HIGHLY RESTRICTED]

2 messages

**Macko, Marsha (Claims Solutions and Analytics)** <Marsha.Macko@groupclaims.com>    Tue, Jun 11, 2019 at 7:06 AM
To: Jordan Hoffman <jthoffmanlaw@gmail.com>

Good morning Attorney Hoffman. Of course, all communication between us has/will become part of the claim file.

As I have previously answered all of your questions/concerns fully, your recent inquiries have been escalated for review. We will provide you with further response as soon as possible. Thank you.



Marsha L. Macko

Marsha Macko, Subrogation Specialist

**NEW PHONE:** 407-871-4720  |  Direct Fax: 866-597-7261  |  E-mail: Marsha.Macko@GroupClaims
*Mailing Address:*

Hartford Central Recovery Office – Group Benefits TPR
200 Colonial Center Parkway, Suite 500, Lake Mary FL  32746

This email including any attachments is intended only for the use of the individual or entity to whom it is addressed, and may contain information that is confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, please contact the sender and destroy all copies of this message and attachments. Any unauthorized review, use, disclosure or distribution is prohibited.

**From:** Jordan Hoffman [mailto:jthoffmanlaw@gmail.com]
**Sent:** Monday, June 10, 2019 10:57 PM
**To:** Macko, Marsha (Claims Solutions and Analytics)
**Subject:** Re: RESPONSE: Edith McCurry - 9004534048 [HIGHLY RESTRICTED]

Good day,



EXHIBIT
24

An additional query to your response to the role of Kenco and The Hartford.

Can you clarify the specific roles of the Plan Administrator and the insured?

Also, in this particular instance who funds the plan Kenco or the Harford?

Last but not least, are these correspondence being placed in Ms. McCurry's file, if not please add our email chains to the file.

Thanks

The Law Office of

Jordan T. Hoffman, P.C.

2711 East New York St., Suite 205

Aurora, IL 60502

888.958.4529 Phone and Facsimile

jthoffmanlaw@gmail.com

**"Balancing the Scales of Justice"**

www.attyjthoffman.com

- CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

On Fri, Jun 7, 2019 at 3:16 PM Jordan Hoffman <jthoffmanlaw@gmail.com> wrote:

Dear Ms. Macko,

I have reviewed all of the files and have not found the answers to some questions.

The files do not indicate or define what other income is, as you stated in your previous communication. Specifically, you stated "Other Income Benefits includes, but is not limited to, "The portion of a judgment or settlement, minus associated costs, of a claim or lawsuit that represents or compensates for your loss of earnings.""

More specifically, this verbiage is not found in any correspondence that has been given to Ms. McCurry or this office at any time nor have you pointed to where it is specifically stated as you pointed out in your other responses relative to Kenco being the plan administrator. i.e. page 27 of the STD and page 32 of the LTD policy.

Additionally, the Plan Administrator typically administers the plan and does not craft any of the terms and conditions of the plan. Moreover and typically, any terms and conditions of the plan (policy) would come from the plan; and in this case it would be the Hartford. Therefore, the communication that had been previously suggested that Ms. McCurry should have received from Kenco should have been given to Kenco by the Hartford for Kenco to disseminate.

Additionally, even if Kenco failed to disseminate this information to Ms. McCurry the Hartford should be in possession of this information and easily be able to provide it. Essentially, Kenco in this instance is an agent for the Hartford acting as the plan administrator and the fiduciary obligations are inextricably linked. Consequently, it is both parties responsibility to ensure clear communication to plan participants, including siting the unambiguous terms.

Another matter is regarding the effective date of the policy, while I do appreciate you acknowledge our position on the effective date and assured that the policy was effective at that time, no quantifiable or tangible proof has been submitted to support that position. Please provide that documentation to substantiate your contention.

Last but not least, Ms. McCurry has at no time been presented with a copy of the STD policy. We request a copy of the policy that was effective at the relevant time.

We also contend that Ms. McCurry has not been apprised or agreed to the repayment terms mentioned in your correspondence. Additionally, if you contend that Kenco has caused Ms. McCurry's disability then please outline or define how Kenco is the third 3rd party and how their actions have caused Ms. McCurry's disability in order to trigger this reimbursement.

Thanks

On Wed, May 22, 2019 at 9:12 AM Jordan Hoffman <jthoffmanlaw@gmail.com> wrote:

Good day,

I will respond to your correspondence after reviewing all the records in my possession.

Thanks

The Law Office of

Jordan T. Hoffman, P.C.

2711 East New York St., Suite 205

Aurora, IL 60502

888.958.4529 Phone and Facsimile

jthoffmanlaw@gmail.com

"Balancing the Scales of Justice"

www.attyjthoffman.com

- CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

On Mon, May 20, 2019, 1:04 PM Macko, Marsha L (Claims Solutions and Analytics) <Marsha.Macko@groupclaims.com> wrote:

Good afternoon Attorney Hoffman. This is in response to your inquiry of 05/03/19. Please see below.

1. The question was whether or not McCurry was made aware of the repayment provision prior to her obtaining the LTD policy. Hence it is noted that correspondence of information would have occurred between McCurry and Kenco; however, it begs the question that if you are the insurer that information should have ultimately come from your institution to be disseminated to the end user-the employee . To date that information has not been furnished. Please do so for the relevant time that McCurry elected that coverage in 2014.



**THE HARTFORD**

001102 2/2

December 21, 2018

Jordan Hoffman
Law Office Of Jordan Travaille Hoffman P.C.
2711 E New York St. Suite 205
Aurora, IL 60502

| | |
|---|---|
| Policy Holder: | Kenco |
| Claimant: | Edith Mccurry |
| Insured ID: | 9004534048 |
| Policy Number: | GLT674076 |

Dear Attorney Hoffman:

This letter is about your client's claim for Long Term Disability (LTD) benefits. We are writing to you in response to our letters dated 12/07/2018 and 12/14/2018.

Your written correspondence posed questions regarding your client's benefit amounts and the adverse decision dated 09/24/2018. A complete copy of the complete claim file was sent to you on 12/05/2018 and 12/11/2018. No additional questions will be addressed at this time.

We acknowledge receipt of your notice of appeal. You may submit any documentation or evidence you feel is appropriate regarding your client's claim. We will not begin the evaluation of your clients appeal until you instruct us to proceed or as of 03/23/2019.

Upon receipt of your complete appeal submission, we will complete a full and fair review. We will address any issues or questions in scope of the 09/24/2018 determination upon request after the appeal decision has been rendered if the adverse determination is upheld.

The Policy states under the General Provision section, on page 18:

"**Claim Appeal:** *What recourse do I have if my claim is denied?*
On any claim, You or Your representative may appeal to Us for a full and fair review. To do so You:
1) must request a review upon written application within:
   a) 180 days of receipt of claim denial if the claim requires Us to make a determination of disability; or
   b) 60 days of receipt of claim denial if the claim does not require Us to make a determination of disability; and
2) may request copies of all documents, records, and other information relevant to Your claim; and
3) may submit written comments, documents, records and other information relating to Your claim.

The Hartford
P.O. Box 14305
Lexington, KY 40512-4305
800-549-6514
Fax (866) 411-5613



**EXHIBIT**
**25**

Claim ID: 18206161