**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EDITH MCCURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-04067 |
| v. ) | |
| ) | |
| MARS, INC., KENCO LOGISTICS ) | Judge Sharon Johnson Coleman |
| SERVICES, LLC, HARTFORD ) | |
| LIFE AND ACCIDENT INSURANCE ) | |
| COMPANY, THE REED GROUP, ) | |
| AND DR. KOEHLER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER AND OPINION**

Pro se plaintiff Edith McCurry ("McCurry") brings this action against MARS, Inc. ("Mars"),

Kenco Logistics Services, LLC ("Kenco"), The Reed Group ("Reed"), Hartford Life and Accident

Insurance Company ("Hartford"), and Dr. Koehler ("Koehler") for a number of claims, including

retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C § 2000e et seq., 42 U.S.C. § 1981, and violations of the Employee Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. Ch. 18 § 1001 et seq.  She also brings state claims of

intentional infliction of emotional distress, breach of fiduciary duty, negligence, negligent

misrepresentation and promissory estoppel, fraud, and civil conspiracies.  Currently before the Court

are all five defendants' motions to dismiss and motions for sanctions under Rule 11.  For the

reasons below, the Court grants Mars's [24], Reed's [55], Hartford's [50], and Dr. Koehler's [76]

motions to dismiss all claims and denies the motions for sanctions [17, 24, 76].  It partially grants

and partially denies Kenco's [17] motion to dismiss.

**Background**

The Court treats the following facts from McCurry's complaint as true for the purposes of ruling on a 12(b)(6) motion. This information includes facts that the U.S. District Court for the Central District of Illinois established in two earlier cases McCurry brought there, *McCurry v. Kenco et al.*, Case No. 2:16-cv-02273-CSB-EIL ("*McCurry I*") and *McCurry v. Kenco et al.*, 2:18-cv-02093-CSB-EIL ("*McCurry II*"), as well as the Seventh Circuit appeal of *McCurry I*, *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783 (7th Cir. 2019).

*Employment and Benefits*

In April 2013, Kenco began providing logistics services to Mars' Manteno facility. Kenco hired McCurry that same month for an hourly wage plus benefits, including short-term and optional long-term disability coverage, which McCurry elected to purchase. McCurry's contract included short-term and optional long-term disability coverage provided through Hartford, a third-party benefits administrator. Short-term disability benefits were to provide an employee 60% of their basic earnings, capped at $500.00 per week, for a maximum of 26 weeks. Long-term disability benefits, which McCurry elected to purchase, were to provide an employee 60% of their basic earnings, capped at $5,000.00 per month, lasting at most until Social Security retirement age. While under Kenco's employment, McCurry filed a complaint with the Illinois Department of Human Rights (IDHR) in connection with a disciplinary action she received.

McCurry continued to work for Kenco until she became disabled in January of 2015. She notified Hartford about her inability to work, and Hartford informed her of the compensation that she would receive. She began receiving short-term disability payments on January 23, 2015 and ceased working two days later.

On January 29, 2015, Kenco contacted all employees, including McCurry, to inform them that Kenco had lost its contract with Mars and that all Kenco employees at the Manteno facility

2

would be terminated on March 29, 2015. *McCurry I* at 5. McCurry signed up for COBRA coverage after her termination. *Id.* Meanwhile, she faced interruptions and delays of her short-term disability payments over a period of several months, followed by a failure to transition to long-term disability payments when the short-term period ended. McCurry characterizes these irregularities as arbitrary, capricious, and in bad faith.

On April 11, 2017, Hartford employed an independent medical expert, Dr. Koehler, to determine how many hours per week, if any, McCurry could work. After Dr. Koehler issued his findings, Hartford sought clarification about the extent to which McCurry's physical conditions limited her work capabilities. Dr. Koehler stated that McCurry was physically capable of working twenty hours per week. Based on this information, Hartford terminated McCurry's long-term disability benefits on July 20, 2017.

Concerned that the denial of her benefits had been determined without consulting her regular physician, McCurry asked her physician if Hartford or Kenco had contacted him about her medical information. After McCurry's investigation, she allegedly discovered that on September 26, 2018, Reed had reached out to her physician, who had provided the requested information. She asserts that only Kenco, Mars, and Hartford had authorization to access her medical information.

McCurry filed a complaint with the Illinois Department of Insurance, drawing attention to the delays and denials of her benefits. On February 5, 2019, Hartford notified McCurry that it had reversed its decision and that McCurry had been underpaid by a total of $73,156.11 since July 20, 2015. Hartford began paying her at an adjusted rate to compensate for this discrepancy.

*Previous Lawsuits*

In August of 2016, McCurry filed her first lawsuit, *McCurry I*, against Mars, Kenco, and various Kenco supervisors. McCurry claimed that, among other wrongdoing, different combinations of defendants discriminated against her based on race, sex, disability, and age during

3

her time working for Kenco in violation of Title VII, 42 U.S.C. § 1981, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and 42 U.S.C. § 1985. The amended pleading deadline was March 21, 2017.

Two days after this deadline, and shortly before the close of discovery, McCurry filed a second lawsuit, *McCurry II*, against Mars, Kenco, and another defendant named Jay Elliott. She alleged that the defendants repeatedly changed her COBRA premium and medical coverage in retaliation for protected activity while she was employed. The Central District of Illinois found that *McCurry II* was "brought in a bad faith attempt to restart the discovery process in McCurry I" and dismissed the case as malicious pursuant to 42 U.S.C. § 1915(e)(2)(B)(i).

In August of 2018, *McCurry I* ended in summary judgment for Kenco and Mars. The court noted that "[a] third-party benefits administrator, not Kenco, handled COBRA notices and any communications related to changes in COBRA costs" and that for ERISA and COBRA-related disputes, the administrator is the proper defendant. *McCurry I* at 15. McCurry appealed this decision; the Seventh Circuit rules against her for "shameful waste of judicial resources." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019).

Meanwhile, on April 20, 2018, McCurry filed a complaint with the Department of Labor (DOL) regarding the denial of her benefits. On May 3, 2019, the DOL determined that the Hartford Life and Accident Insurance Company made the benefits decisions in McCurry's case, not Kenco, and dismissed the complaint. An appeal is currently pending.

On July 19, 2019, McCurry brought the present suit against defendants. She alleged that the irregularities in her disability benefits were discriminatory and retaliatory in violation of Title VII and § 1981 and that they violated ERISA. She also alleged intentional infliction of emotional distress, breach of fiduciary duty, negligence, negligent misrepresentation and promissory estoppel, fraud,

and civil conspiracies under state law. All five defendants subsequently filed motions to dismiss the complaint against them in its entirety.

**Legal Standard**

When considering dismissal of a complaint pursuant to Rule 12(b)(6), the Court accepts all well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in order to "state a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court may consider "information that is properly subject to judicial notice" when ruling on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court may also consider information in the public record. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012); *Clark & Leland Condo., LLC v. Northside Cmty. Bank*, 110 F. Supp. 3d 866, 868-69 (N.D. Ill. 2015) (Durkin, J.).

**Analysis**

**I. State Law Claims**

First, the Court addresses whether McCurry's state law claims are preempted by ERISA. While ERISA does not preempt every state law claim which takes place in the mere "context" of a benefits plan, *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 779 (7th Cir. 2002), McCurry's state law claims are impermissible attempts to enforce ERISA using state law. ERISA § 514(a) preempts state laws which "relate to" an employee benefit plan, which includes "hav[ing] a connection with or reference to" a plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (citation omitted). One method by which a state law may relate to a plan is if it "provides an

alternative enforcement mechanism to ERISA." *Biondi*, 303 F.3d at 775. If the existence of a benefits plan is a "critical element" of the state-law claims, those claims must give way to ERISA's preemption provisions. *Id.* at 776 (citation omitted).

The benefits plan is the lifeblood of McCurry's state law claims. She claims that she has suffered emotional distress because "defendants intentionally failed to compensate [her] correctly" under the terms of the plan; that "defendants" breached their fiduciary duty by "fail[ing] to adhere" to the benefits plan; "that defendants were negligent in failing to comply with" the terms of the plan; that "Kenco/Mars" negligently misrepresented the terms of the plan to her and that she relied on those terms; that "defendants have defrauded her out of" the benefits agreed upon; and that "Kenco/Mars engaged in yet another civil conspiracy to violate [her] protected rights by defrauding [her] out of her just due benefits." McCurry's claims of intentional infliction of emotional distress, breach of fiduciary duty, negligence, negligent misrepresentation, promissory estoppel, and civil conspiracy all restate the same allegations of wrongdoing—failing to disburse benefits in accordance with the provisions of the plan—all require the Court to interpret the terms of the plan in order to know whether McCurry's benefits were, in fact, disbursed in an illegal manner. *See Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018) (ERISA preempts claims that require the Court to interpret the terms of the benefits plan). The Court therefore dismisses McCurry's state law claims.

## II. Mars

*Res Judicata*

Mars moves to dismiss on the basis of res judicata, or claim preclusion, which bars re-litigation of claims. For the benefit of plaintiff, the following are benefits of res judicata: "[it] promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). Res judicata is an affirmative defense, which

6

normally must be made in an answer rather than a motion. FED. R. CIV. P. 8(c). However, if a plaintiff discloses the elements for an affirmative defense in her complaint, she may "plead [herself] out of court" and face dismissal under Rule 12(b)(6). *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

The elements of claim preclusion are "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013) (citation omitted). Mars was a party in *McCurry I* and *II*, satisfying the second prong. For the third prong, final judgments on the merits exist for *McCurry I*, which resolved in summary judgment and was affirmed on appeal, and *McCurry II*, which was dismissed as malicious. *See Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) ("The test [for finality] is whether the district court has finished with the case.").

The first element is less obvious in this case. To determine identity of claims, courts ask "whether the claims arise out of the same set of operative facts or the same transaction." *Bernstein*, 733 F.3d at 226 (citation omitted). Rather than relying on a formal test, courts look to the "totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds" to determine whether the causes of action are identical. *Id.* at 227 (citation omitted). In *McCurry I*, McCurry claimed to have faced retaliation and discrimination in pay, when she received a disciplinary write-up, when Kenco chose not to call her as a witness in an IDHR case, and when Kenco hired another employee rather than promoting McCurry, which led to a minor reduction in McCurry's job duties. In *McCurry II*, McCurry claimed to have faced retaliation when "Defendants" (Mars, Kenco, and Jay Elliott) raised her COBRA premium five times.

Despite her frequent litigation, McCurry does not face claim preclusion based on the content of *McCurry I* and *McCurry II*. The core of McCurry's present allegations is not a promotion, her job duties, her COBRA premiums, or any other factual matter already addressed in detail in a previous

lawsuit. Instead, her allegations center on irregularities in her disability benefits payments, which she

characterizes as discriminatory and retaliatory. Although she alleged discrimination and retaliation in

her previous lawsuits, "each discrete discriminatory act produces one claim." *Horia v. Nationwide*

*Credit & Collection, Inc.*, 944 F.3d 970, 974 (7th Cir. 2019). Therefore, for example, the alleged act of

disbursing her benefits in a retaliatory manner is a different claim from the alleged act of changing

her COBRA premiums in a retaliatory manner. The facts supporting her current claims differ

meaningfully enough from the facts supporting *McCurry I* and *II* for her to avoid claim preclusion on

those grounds. Because McCurry's claims are not precluded, the Court addresses them below.

*Section 1981 and Title VII Claims*

Mars argues that it is an improper defendant for § 1981 and Title VII purposes because it is

neither McCurry's direct employer nor her indirect or joint employer. An entity other than an

individual's direct employer may be liable under § 1981 if that entity is a "joint employer." *Whitaker*

*v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 810 (7th Cir. 2014). Similarly, and using the same test, an

indirect employer may face Title VII liability. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783,

790 (7th Cir. 2019) (using a Title VII test to examine employment in a § 1981 matter); *Armour v.*

*Homer Tree Servs., Inc.*, No. 15 C 10305, 2017 WL 4785800 at *7 (N.D. Ill. Oct. 24, 2017) (Lee., J.).

The Seventh Circuit has already determined that Mars was not McCurry's joint or indirect employer.

As a result, this issue is precluded. Courts may raise the matter of issue preclusion *sua sponte*. *Sanchez*

*v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (citation omitted).

Issue preclusion, unlike claim preclusion, prohibits re-litigation of a resolved issue of law or

fact. *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). When the earlier

litigation took place in federal court, the federal common law of issue preclusion applies. *Id.* at 891.

The standard for federal issue preclusion is "1) the issue sought to be precluded must be the same as

that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination

of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action." *Washington Grp. Int'l, Inc. v. Bell, Boyd & Lloyd, LLC*, 383 F.3d 633, 636 (7th Cir. 2004).

In *McCurry I* and its appeal, McCurry fully litigated the issue of whether Mars was McCurry's joint employer for § 1981 purposes. In fact, this issue was the basis for the Seventh Circuit's determination that Mars was not liable for the § 1981 allegations in that case. *See McCurry*, 942 F.3d at 790. Accordingly, this issue is precluded here. Mars is not McCurry's joint employer and cannot be liable for any alleged violations of § 1981.

The issue of whether Mars is a joint employer is also determinative of McCurry's current Title VII claim against Mars, even if McCurry did not bring this claim against Mars in *McCurry I*. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148, 135 S.Ct. 1293, 191 L.Ed.2d 222 (2015) (issue preclusion applies even when the subsequent claim is different). The test for a joint employer under § 1981 is the same as the test for an indirect employer under Title VII. *See Armour*, 2017 WL 4785800 at *7. The Seventh Circuit's conclusion that Mars is not a joint employer therefore bars McCurry's Title VII claims as well.

*ERISA*

Mars argues that it is an improper defendant for ERISA purposes. McCurry's claim is for benefits due under ERISA § 502(a)(1)(B), in which the defendant is the obligor—the party which allegedly owes the benefits due. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013). The obligor may be the benefits plan, a third-party insurer, or some other entity. *Id.* at 915-16. McCurry does not allege that Mars is the obligor. Instead, McCurry alleges that a respondeat superior relationship between Mars and Kenco subjects Mars to liability for Kenco's purported wrongdoing. The question of whether respondeat superior applies to ERISA claims is still unsettled in the Seventh Circuit. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011). Nonetheless,

even if respondeat superior does apply here, the Central District of Illinois has already established facts sufficient for this Court to determine that no respondeat superior relationship existed between Mars and Kenco. The Court will address that analysis here because McCurry repeatedly brings it up in her briefing.

No respondeat superior relationship can exist between Mars and Kenco when Kenco was an independent contractor that did its job, which included managing employees like McCurry, under its own exclusive authority. Respondeat superior provides that "[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment." RESTATEMENT (THIRD) OF AGENCY § 2.04 (AM. LAW INST. 2006); *see also Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 792 (7th Cir. 2014). When the principal, or employer, does not have the right to control the actions of its agent, or employee, respondeat superior is inapplicable. RESTATEMENT (THIRD) OF AGENCY § 2.04 cmt. b (AM. LAW INST. 2006). *McCurry I* states in pertinent part, "Kenco operated as an independent contractor, providing warehouse management services at Mars' Manteno facility. Under the terms of the agreement, Kenco had exclusive authority with respect to its employment policies, promotions, discipline, and termination. Under the written agreement, Kenco itself was not an employee of Mars, nor were Kenco's employees. Kenco was responsible for the day-to-day operations of the warehouse." *McCurry I* at 3. Mars clearly did not have the right to control Kenco with respect to management of Kenco employees; accordingly, no respondeat superior relationship existed between the two. It follows that McCurry's ERISA claim with respect to Mars must fail, since respondeat superior was her only rationale for including Mars as a defendant for that claim. Mars' motion to dismiss the ERISA claim is granted.

**III. Kenco**

*Res Judicata*

Just as with Mars, discussed above, the facts supporting McCurry's current claims differ meaningfully enough from the facts supporting *McCurry I* and *II* for her to avoid claim preclusion based on those cases.

Where McCurry did already rely on the current set of operative facts, however, is in her DOL complaint. The DOL issued its finding on May 3, 2019 that 1) McCurry had filed her complaint in the incorrect forum within the DOL and 2) "the evidence supports that the plan administrator (Hartford Group) was the decision maker in this case." [Kenco MTD Exhibit F.] Consequently, the DOL dismissed the complaint. McCurry has appealed this dismissal, and the appeal is still pending.

Federal agency decisions, such as that of the DOL, can bar re-litigation when the agency (1) acted in a judicial capacity, (2) resolved disputed issues of fact properly before it, and (3) the parties have had an opportunity to litigate the issues. *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226–27, 92 L.Ed.2d 635 (1986). "An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992). While the parties were represented by counsel before the DOL and both had an opportunity to present at least some form of evidence and memoranda supporting their position, it is unclear from the briefing and evidence to what extent. Based on the DOL letter containing its findings, it appears that the parties did not have a hearing, which means no opportunity to cross examine

witnesses, present exhibits, and object.  The Court finds, therefore, that the DOL was not acting in a judicial capacity when it dismissed McCurry's complaint.  Therefore, her claims against Kenco are not precluded.  Kenco's motion to dismiss McCurry's claims pursuant to Section 1981, Title VII and ERISA against it is denied.

## IV. Hartford

*Section 1981 and Title VII Claims*

Hartford argues that it is an improper defendant for § 1981 and Title VII purposes because it is neither McCurry's direct employer nor her joint or indirect employer.  An entity other than an individual's direct employer may be liable under § 1981 if that entity is a "joint employer." *Whitaker v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 810 (7th Cir. 2014).  Similarly, and using the same test, an indirect employer may face Title VII liability.  *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019) (using a Title VII test to examine employment in a § 1981 matter); *Armour,* 2017 WL 4785800 at *7.

The five-factor test to determine whether a purported employer qualifies for Title VII and § 1981 purposes is "(1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015).  The most important factor is the first.  *Id.* at 703.

McCurry has put forth no argument that Hartford controlled or supervised her during her employment.  It merely disbursed benefits to Kenco's employees.  Accordingly, by the most important measure of the *Love* test, Hartford is not McCurry's joint or indirect employer. *See also Klassy v. Physicians Plus Ins. Co.*, 276 F. Supp. 2d 952, 958–960 (W.D. Wis. 2017) (insurer is not

12

employer for Title VII purposes). Hartford's motion to dismiss is therefore granted with respect to McCurry's Title VII and § 1981 claims.

*ERISA and Venue*

Hartford has moved to dismiss or transfer venue to the Central District of Illinois under 28 U.S.C. § 1406(a). Either result is mandatory when venue is improper. ERISA venue is proper in "the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2) (2014). Because ERISA has its own venue provision, 28 U.S.C. § 1391 does not apply. 28 U.S.C. § 1391(a) (applicability of section). Therefore, if venue is improper under ERISA's venue provision, 28 U.S.C. § 1406(a) mandates dismissal or transfer.

McCurry's benefits plan was not administered in the Northern District of Illinois. The attachments to McCurry's complaint and Hartford's responsive pleadings indicate that McCurry's benefits were administered out of Minnesota (Compl. Ex. 12, 19, 20, and 23), Florida (Compl. Ex. 24), and Connecticut (Compl. Ex. 12 and 23). Furthermore, to the extent Kenco's conduct may be relevant given its designation as the Plan Administrator in the Group Policy document, Kenco's mailing address is in Tennessee. (Hartford Motion to Dismiss, Dkt. No. 51, Ex. B, pg. 44.) The location of benefits administration cannot justify venue in the Northern District of Illinois.

The breaches McCurry alleges did not occur in the Northern District of Illinois. A breach for ERISA purposes occurs in the "place of performance"—that is, the place where McCurry was to receive her benefits, which is her residence in the Central District of Illinois. *See Ingalls Mem'l Hosp. v. Ne. Cent., Inc. Emp. Benefits Plan*, No. 90 C 3283, 1991 WL 24505, at *2 (N.D. Ill. Feb. 20, 1991) (Holderman, J.); *Foster G. McGaw Hosp. of Loyola Univ. of Chicago v. Pension Tr. Dist. #9 Welfare Tr. I.A. of M.A.W.*, No. 92 C 4361, 1992 WL 309571, at *3–4 (N.D. Ill. Oct. 22, 1992) (Kocoras, J.); *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 833 (N.D. Ill. 1999) (Alesia, J.) (identifying the place where the

13

decision not to pay was made and the place of citizenship of the beneficiary as the two possible locations of the breach). The one action McCurry attributes to Hartford in the Central District of Illinois—Dr. Koehler's medical assessment—is not itself a breach. Rather, it is Hartford's communications with Dr. Koehler, from Hartford's Minneapolis office to Dr. Koehler in Seattle, to which McCurry objects. (Compl. Ex. 10–11.) Any alleged breach on Hartford's part did not happen in the Northern District of Illinois.

Hartford cannot "be found" in the Northern District of Illinois. McCurry asserts that because Hartford could be served in the Northern District of Illinois, venue is appropriate. (Response, Dkt. No. 60, pg. 5.) However, ERISA service of process does not automatically establish venue. *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 808 (7th Cir. 2002). To determine whether an entity can "be found" in a district under ERISA, the Court uses the "minimum contacts" test from *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Waeltz*, 301 F.3d at 810. Minimum contacts may lead to specific or general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014).

McCurry fails to draw a clear enough connection between Hartford's conduct that gave rise to the lawsuit and the Northern District of Illinois to support a finding of specific jurisdiction. Specific jurisdiction applies to suits "arising out of or related to the defendant's contacts with the forum." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The only overlaps McCurry identifies between Hartford and the Northern District of Illinois are that Dr. Koehler performed a medical examination of McCurry in this district and that Kenco, with whom Hartford had a business relationship, conducted business there. McCurry's ERISA allegations are that Hartford improperly disbursed and denied her benefits claims. Even Hartford's inquiry about Dr. Koehler's findings involves Hartford's communications from Minneapolis to Dr. Koehler in

14

Seattle. (Compl. Ex. 10–11). The link between Hartford's conduct related to the lawsuit and the Northern District of Illinois is too attenuated to support specific jurisdiction.

Likewise, Hartford's contacts with the Northern District of Illinois are insufficient to support a finding of general jurisdiction. McCurry asserts that Hartford is incorporated in Connecticut but does business in the Northern District of Illinois. (Pl.'s Resp. No. 60 at 6). Regularly doing business in a district is insufficient to establish general jurisdiction unless the connections to that state are so "continuous and systematic" that the corporation can fairly be considered "at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citation omitted). McCurry makes no allegations of this sort, and Hartford denies having any such connections, so general jurisdiction is inappropriate here.

Because the Northern District of Illinois is not a proper venue by any standard described in 29 U.S.C. § 1132(e)(2), the Court grants Hartford's motion to dismiss the ERISA claim against it.[1]

**VI. Reed**

*Title VII*

Reed argues that to the extent that McCurry has alleged a Title VII claim against it, it must be dismissed for failure to exhaust administrative remedies. A plaintiff generally cannot bring a claim in a Title VII lawsuit that was not previously alleged in an Equal Employment Opportunities Commission ("EEOC"). *See Miller v. Am. Airlines, Inc.,* 525 F.3d 520, 525 (7th Cir.2008). This requirement serves to give the Commission a chance to investigate the charge and decide whether to sue, and to encourage the complainant and the employer to resolve their dispute informally. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). "The charge and complaint must, at minimum, describe the same conduct and implicate the same individuals." *Chaidez v. Ford Motor Co.*, 937 F.3d

---

[1] If McCurry insists on going forward with this long-running dispute, she may re-file her ERISA claim against Hartford in the Central District of Illinois, where venue is proper.

998, 1004 (7th Cir. 2019).  Here, McCurry brought an EEOC charge against various defendants, but did not mention Reed.  Accordingly, McCurry has failed to meet the Title VII administrative exhaustion requirement and its Title VII claim against Reed is dismissed.

*HIPPA*

To the extent that McCurry brings a HIPPA violation claim against Reed, it is dismissed because HIPAA does not furnish a private right of action.  *See Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011).

## V. Dr. Koehler

*Section 1981 and Title VII*

Dr. Koehler argues that to the extent that McCurry alleges Section 1981 and Title VII claims against him, they should be dismissed because he is nether he employer nor her joint employer.  As discussed previously, this is a requirement for liability.  McCurry has not alleged any facts indicating that Dr. Koehler was her employer or joint employer.  She indicates he was acting as an agent of her employer, but he did not exert any control or supervision of her employment.  He simply provided Hartford (which was also not her employer) with an opinion as to her ability to work.  Thus, McCurry's Section 1981 and Title VII claim against Dr. Koehler is dismissed.

*ERISA*

Dr. Koehler argues that he is an improper defendant for ERISA purposes.  The proper defendant for McCurry's ERISA claim is the party which allegedly owes the benefits due.  *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013).  McCurry has not alleged that Dr. Koehler is a trustee or an administrator of her benefits plan.  He has no administrative, fiduciary, or other role with respect to it.  His only involvement in her benefits distribution was that he was hired by

16

Hartford to conduct an evaluation of McCurry to report whether she was able to work. McCurry's complaint does not explain the basis for naming Dr. Koehler as a defendant, and there is no legal authority to do so. The ERISA claim against Dr. Koehler is dismissed.

## II. Sanctions

Mars, Kenco, and Koehler have requested sanctions against McCurry for repeated baseless filing in either their memorandum in support of their motion to dismiss or the reply brief thereof. However, sanctions are inappropriate here because defendants did not comply with the procedural requirements of Rule 11(c)(2). A party seeking sanctions must make a separate motion rather than attaching the request to another motion or responsive pleading. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998). Nonetheless, the Court notes that pro se plaintiffs are not beyond the reach of Rule 11 sanctions. *See, e.g., Ochs v. Hindman*, 984 F. Supp. 2d 903, 912 (N.D. Ill. Nov. 25, 2013) (Castillo, J.).

## Conclusion

For the foregoing reasons, all of McCurry's state law claims against all defendants are dismissed with prejudice. All federal claims against Defendants Mars, Reed, and Dr. Kohler are dismissed with prejudice. The Section 1981 and Title VII claims against Hartford are dismissed with prejudice. The ERISA claim against Hartford is dismissed without prejudice. The federal claims against Kenco remain.

**IT IS SO ORDERED.**

Date: 10/15/2020

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge