1    IN THE UNITED STATES DISTRICT COURT
2    FOR THE NORTHERN DISTRICT OF ILLINOIS
     EASTERN DIVISION

3    EDITH McCURRY,                              ) No. 19 C 4067
                                                 )
4                    Plaintiff,                  )
                                                 )
5           v.                                   )
                                                 )
6    MARS, INC., KENCO LOGISTICS SERVICES,       ) September 14, 2020
     LLC., THE HARTFORD FINANCIAL SERVICES,      ) Chicago, Illinois
7    INC., THE REED GROUP, and DR. KOEHLER,      ) 1:40 p.m.
                                                 )
8                    Defendants.                 ) Oral Argument

9              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SHARON JOHNSON COLEMAN
10

11   APPEARANCES:

12   Pro se Plaintiff:         MS. EDITH McCURRY
                               6239 S. 13110 E. Road
13                             Pembroke Township, Illinois  60958

14   For Defendant Mars:       HARMON & DAVIES, P.C.
                               2306 Columbia Avenue
15                             Suite 2800
                               Lancaster, Pennsylvania  17603
16                             BY:  MR. THOMAS R. DAVIES

17   For Defendant Kenco:      JACKSON LEWIS, P.C.
                               150 North Michigan Avenue
18                             Suite 2500
                               Chicago, Illinois  60601
19                             BY:  MS. JULIA P. ARGENTIERI

20   For Defendant             SMITH, von SCHLEICHER & ASSOCIATES
     Hartford Financial:       180 North LaSalle Street
21                             Suite 3130
                               Chicago, Illinois  60601
22                             BY:  MR. WARREN SEBASTIAN von SCHLEICHER

23          TRACEY DANA McCULLOUGH, CSR, RPR
               Official Court Reporter
24             219 South Dearborn Street
                     Room 1232
25             Chicago, Illinois  60604
                   (312) 435-5570

1    APPEARANCES CONTINUED:

2    For Defendant Reed        GORDON & REES
     Group:                    One North Franklin Street
3                              Suite 800
                               Chicago, Illinois  60606
4                              BY:  MS. JORDAN LANE MATTHIS

5
     For Defendant            RENO & ZAHM, LLP
6    Dr. Koehler:             2902 McFarland Road
                              Suite 400
7                             Rockford, Illinois  61107
                              BY:  MR. SCOTT A. CALKINS
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  19 CV 4067, McCurry versus Mars.

2          THE COURT:  All right.  Good afternoon everyone.  I'm

3    going to -- unfortunately we have to be like this, so I have

4    counsel all in my sight virtually, and I believe plaintiff who

5    represents herself, is by phone only because she's having

6    issues with her internet.  Is that correct, Miss McCurry?

7          MS. McCURRY:  Yes, Your Honor, that's correct.

8          THE COURT:  All right.  And you are fine proceeding,

9    understanding that you are the one that has -- you have the

10   technological issues, but the plaintiff's -- I mean, defense

11   counsel can all be seen by this Court.  The Court will be able

12   to handle this situation without giving any favor for that

13   reason alone.  And, in fact, you might be at a benefit as to

14   the ones who are on, on video.  They have to be on their P's

15   and Q's to make sure they don't do something that throws me

16   off.

17         So go ahead and state your name for the record,

18   Miss McCurry.

19         MS. McCURRY:  Yes.  Thank you, Your Honor.  Edith

20   McCurry, plaintiff.

21         THE COURT:  All right.  Thank you.  All right.

22   Counsel, begin representing your -- stating your name for your

23   clients.  Starting with Mars.

24         MR. DAVIES:  This is Thomas R. Davies representing

25   Mars.

1          THE COURT:  All right.  Thank you.  And Kenco.

2          MS. ARGENTIERI:  Yes.  Good afternoon, Your Honor.

3    Julia Argentieri on behalf of defendant Kenco.

4          THE COURT:  All right.  Thank you.  And also for

5    Hartford.

6          MR. von SCHLEICHER:  Good afternoon, Your Honor.

7    This is Warren von Schleicher for Hartford.

8          THE COURT:  All right.  Thank you.  Reed.

9          MS. MATTHIS:  Good morning, Your Honor.  Jordan

10   Matthis on behalf of The Reed Group.

11         THE COURT:  All right.  Thank you, Miss Matthis.  And

12   then for Dr. Koehler.

13         MR. CALKINS:  Your Honor, Scott Calkins on behalf of

14   Dr. John Koehler.

15         THE COURT:  All right.  Thank you very much.  Did you

16   hear everyone, Miss McCurry?

17         MS. McCURRY:  Yes, Your Honor, I heard everyone.

18         THE COURT:  All right.  And we're going to -- they

19   all have -- as is well known from all of the filings, they all

20   have motions to dismiss that are -- and maybe some with a few

21   other motions included, but motions to dismiss, which you have

22   responded all -- responded to.  Since they have the motions,

23   each defendant gets to present their motion first, then you get

24   to respond, and then they get a brief reply because they have

25   the burden of presenting the motion.  Do you understand?

1        MS. McCURRY:  Yes, Your Honor.

2        THE COURT:  So we're going to go in segments.  So you

3   will respond only to that particular defendant, and only that

4   defendant will present, and then we move on to the next one.

5   There will be no ruling today.  The Court has been preparing

6   for this.  It will not be too shortly after this, but obviously

7   the Court was going to need time to review the arguments that

8   have been presented in light of the previous filings that have

9   been presented before reaching a decision.  And the time is

10  going to be fairly strict on this since we have so many people

11  involved.  All right?  Miss McCurry, do you understand?

12       MS. McCURRY:  Yes, Your Honor, I do.

13       THE COURT:  Counsel, do you understand?

14       MS. ARGENTIERI:  Yes.

15       MR. DAVIES:  Yes, Your Honor.

16       THE COURT:  All right.

17       MS. MATTHIS:  Yes, Your Honor.

18       THE COURT:  Everyone says yes.  So what I'm looking

19  at here is about 10 minutes each side, and the Court would

20  caution the defendants to try to -- if you think you may have a

21  lot that you'd rather say for rebuttal, I would suggest you

22  tell me that up front because I'm not going to be giving much

23  time on the other side.  All right.  And so let's start with --

24  the Court would actually like to start out with defendant

25  Kenco.

 1          MS. ARGENTIERI:  Okay.

 2          THE COURT:  All right.

 3          MS. ARGENTIERI:  Thank you, Your Honor.

 4          THE COURT:  You're welcome.  And state your name

 5    again, Counsel.

 6          MS. ARGENTIERI:  Yes.  This is Julia Argentieri on

 7    behalf of defendant Kenco.

 8          THE COURT:  All right.  And proceed with your motion.

 9          MS. ARGENTIERI:  Thank you.  So we filed a motion to

10    dismiss --

11          THE COURT:  Oh, I'm sorry.  One more -- excuse me.

12    One more thing.  Also, just so you can also know, Miss McCurry,

13    the Court has reviewed all of the different filings, and so I

14    would suggest to make best use of everyone's time and this

15    Court's time, you focus on what you believe is your strongest

16    argument.  And as opposed to -- as, as for any sanctions

17    request, leave that to the Court.  I would suggest you not

18    spend time arguing that, and the Court will make that

19    determination later.

20          All right.  Go ahead, counsel for Kenco.

21          MS. ARGENTIERI:  Thank you, Your Honor.  We are here

22    this afternoon on Kenco's motion to dismiss Miss McCurry's

23    complaint with prejudice on grounds of res judicata.  The issue

24    here is that multiple prior Court determinations have already

25    ruled that Kenco is not the proper defendant in the claims that

1  Miss McCurry is now bringing before the Court, which allege

2  claims related to causes of action involving post-termination

3  benefits, including long-term disability.

4           Miss McCurry actually has not worked for Kenco since

5  early 2015.  So claims related to her employment at Kenco are

6  long since time barred, and they have actually already been

7  fully litigated in other litigation, including 16 CV 2273 in

8  the Central District of Illinois, which was litigated through

9  summary judgment and through appeal at the Seventh Circuit

10  Court of Appeals, where our summary judgment was affirmed.

11           THE COURT:  Counsel, I do have a question.  I do have

12  a question.  Could her benefits claim have been litigated

13  earlier at the beginning?  Could it?

14           MS. ARGENTIERI:  Yes.  So even, even if the point in

15  time at which she is alleging decisions about post-termination

16  benefits may be at differing points in time, the fundamental

17  issue here is the question of who is the proper defendant who

18  made determinations surrounding Miss McCurry's post-termination

19  benefits.  And the Central District of Illinois' original

20  summary judgment ruling in 16 CV 2273 was the first instance

21  where the Court actually concluded that her disability

22  discrimination claim failed because Kenco was not the

23  administrator of post-termination benefits, and as a result,

24  was not the proper defendant for claims arising from

25  post-termination benefits.

1    Subsequent to that, she actually -- Miss McCurry

2    actually then tried to relitigate post-termination benefits

3    claims and, she actually filed a second Central District

4    Illinois lawsuit, which is 18 CV 2093.  Miss McCurry's response

5    to the Mars and Kenco motion to dismiss appears to acknowledge

6    that that lawsuit arose from the same facts as this lawsuit,

7    which is claims related to changes in her long-term disability

8    benefits.  And the Central District of Illinois dismissed that

9    lawsuit on its own accord with prejudice as a malicious attempt

10   to restart discovery when she already had an overlapping

11   lawsuit, 16 CV 2273, pending against Kenco and Mars.

12   Just as one additional related point, the U.S.

13   Department of Labor, OSHA is another forum where McCurry has

14   additionally tried to litigate this same issue of whether Kenco

15   discriminated against her by making changes to her long-term

16   disability benefits, and OSHA issued a ruling, which is

17   attached to Kenco's motion to dismiss, where they determined

18   that The Hartford at all times was the decision maker for

19   post-termination, long-term disability benefits and not Kenco.

20   Given this, you know, as stated in our motion to

21   dismiss, it's our position that res judicata applies because

22   there is an identity of parties, there's an identity of the

23   facts, and there's a prior conclusive determination.  And not

24   only -- not only is there a prior conclusive determination that

25   Kenco is not a correct defendant here, but there actually --

1    there's a prior determination, and then on top of that

2    Miss McCurry has attempted to litigate this point in numerous

3    other forums and relitigate it, and has already been instructed

4    by the Central District that she cannot relitigate this point

5    at least as to defendant Kenco.

6              THE COURT:  So in some sense --

7              MS. ARGENTIERI:  So --

8              THE COURT:  So in some sense the res judicata

9    question itself is barred by a previous ruling on res judicata.

10   That's what you're saying.

11             MS. ARGENTIERI:  Exactly.  You know, our, our

12   position here would be that not -- not only that res judicata

13   applies because there's already been a factual and legal

14   determination that Kenco is the incorrect defendant, but on a,

15   on a separate layer there's, there's already been a

16   determination that she cannot relitigate this made by Judge

17   Bruce in the Central District of Illinois in 18 CV 2093.

18             THE COURT:  All right.

19             MS. ARGENTIERI:  So just, you know, to conclude and

20   to briefly summarize, it's our position that Miss McCurry is

21   not entitled to another bite at the apple on the question of

22   whether Kenco oversaw the post-termination benefits, when

23   numerous federal courts and other forums have determined that

24   Kenco was not the decision maker for those benefits.

25             THE COURT:  All right.  Thank you.  All right.  It's

1    your turn, Miss McCurry, to respond to Kenco.

2              MS. McCURRY:  Thank you, Your Honor.  First of all,

3    everything she's saying is not true.  They are the proper

4    defendant, and they acted interchangeably with The Hartford and

5    they hired The Reed Group in September 2018.  So -- and they

6    have -- and I show on my -- on some of my documents that they

7    have the -- that Kenco has access to my disability records.

8              Also, as far as res judicata, the events surrounding

9    the case were, were not the issues that were raised in the

10   previous court.  For example, the issues for that case, case

11   No. 02273 that she's stating, that was for failure to promote,

12   for example, one thing.  And then COBRA for one of the other

13   issues.  So COBRA is what Judge Bruce said that I could not

14   relitigate anymore.  These events that occurred happened after,

15   after this case.  And, no, I could not amend that case to

16   include these issues because they had not occurred, first of

17   all.  And another, in March of 2017, I was not allowed to add

18   anything else to that case.

19             So these -- that is what she's saying, again, is

20   not -- is not along with the issues that are being stated.  In

21   May of 2018 Kenco responded to the EEOC regarding these issues

22   that are current today.  The allegations -- their allegations

23   failed to, failed to raise the issue that current issues were

24   being litigated.  If you look at docket No. 69 on page 21,

25   you'll see, you'll see about, about that May 2018 for Kenco.

1    That they didn't respond to the EEOC in regards to that.  Kenco

2    did not exhaust its administrative remedies and should not be

3    allowed to prevail on, on a theory that it failed to raise at

4    the administrative level.

5           Kenco does not point to any specific evidence to

6    support that it has discharged itself of its burden of claiming

7    res judicata.

8           THE COURT:  All right.

9           MS. McCURRY:  So --

10          THE COURT:  That's your argument?

11          MS. McCURRY:  One second, Your Honor.  I want to look

12   at something else that I had wrote down.

13          THE COURT:  All right.  Go ahead, as long as it's not

14   pertaining to one of the other cases.

15          MS. McCURRY:  Okay.  May I, Your Honor, may I talk

16   about the Department of Labor, the overlap in that Department

17   of Labor?  I reject this theory that the cases are overlapping,

18   as it is, it is a different statute altogether.  And it, it has

19   its own administrative process under FISMA, and --

20          THE COURT:  You're speaking of the OSHA?  You're

21   speaking of OSHA?

22          MS. McCURRY:  Yes.

23          THE COURT:  All right.  And what are you --

24          MS. McCURRY:  Yes.

25          THE COURT:  And what are you trying to argue on that?

1        MS. McCURRY:  I'm arguing that it, it isn't

2   overlapping with that case.  That's a completely different

3   case, a completely different statute.  It has nothing --

4        THE COURT:  So my record can be clear, Miss McCurry,

5   when you say, it's overlapping with that case, you need to be a

6   little more specific.

7        MS. McCURRY:  It is not overlapping.  This is not

8   overlapping --

9        THE COURT:  I'm sorry.

10        MS. McCURRY:  -- with the --

11        THE COURT:  With what case?  You've got a lot of

12   cases here.  With what case?

13        MS. McCURRY:  Yes.  Yes.

14        THE COURT:  Be specific for the record, please.

15        MS. McCURRY:  With my whistle -- with my

16   whistleblower case.

17        THE COURT:  All right.

18        MS. McCURRY:  The, the one that she spoke of at the

19   Department of Labor.

20        THE COURT:  Oh.

21        MS. McCURRY:  She said that it was overlapping.  No,

22   it is not.  So --

23        THE COURT:  All right.  That's your position on that?

24        MS. McCURRY:  Yes.  They, they -- you know, they,

25   they failed -- Kenco failed to raise issues that the, that the

1  case was overlapping.  So --

2          THE COURT:  All right.  Anything further --

3          MS. McCURRY:  So, so that's -- that's it.

4          THE COURT:  All right.  Nothing further on this point

5  with Kenco, is that correct?  Is that correct?

6          MS. McCURRY:  No.  That's correct.  That's correct.

7          THE COURT:  All right.  Thank you.  Is there any

8  further argument to make, Counsel, for Kenco?  If so, it should

9  be extremely brief.

10          MS. ARGENTIERI:  Yes.  Just very briefly, Your Honor.

11  Just to direct the Court to our exhibits to the motion to

12  dismiss, which were at the exhibits to docket 18.  Exhibit F is

13  the determination from the U.S. Department of Labor where it

14  actually states, The evidence supports that complainant

15  received long-term disability benefits from The Hartford Group,

16  which is a third party benefits administrator.

17          This determination from the U.S. Department of Labor

18  in addition to the determinations that we've already referenced

19  in our opening argument where Kenco was granted summary

20  judgment and then the attempts to relitigate were also denied,

21  they all reach the same conclusion, that whether -- whether or

22  not Kenco had access to McCurry's disability records is of no

23  consequence.  That Kenco did not make any determination related

24  to McCurry's post-termination benefits, including her long-term

25  disability.  So they are not a proper defendant in these types

1  of claims.  And her causes of action as to Kenco should be

2  dismissed with prejudice.

3         THE COURT:  All right.  Thank you.  Anything else to

4  point the Court's attention to?

5         MS. ARGENTIERI:  No, not unless the Court has any

6  other questions.

7         THE COURT:  No more questions at this point.  The

8  matter will be taken under advisement.  Thank you.

9         MS. ARGENTIERI:  Thank you.

10         THE COURT:  All right.  Let's go onto Mars.

11         MR. DAVIES:  Good afternoon, Your Honor.  This is

12  Thomas R. Davies on behalf of Mars.  Not surprisingly, most of

13  my arguments are in line with the arguments that have already

14  been made to you this afternoon by counsel for Kenco, in that

15  except that the Mars' connection to the post-termination

16  benefits claim is even more attenuated than that of Kenco.

17  Mars had a contract with Kenco wherein Kenco employed personnel

18  to operate a warehouse that supplied Mars' product.  The

19  Seventh Circuit has already looked at the memorandum of

20  agreement between Kenco and Mars and have determined that it

21  (unintelligible).

22         THE COURT:  I'm sorry.  Wait.  Wait.  Wait.  Wait.

23  Sorry, Mr. Davies.  Start that part of your argument again.

24  You're sort of going in and out to the point that the court

25  reporter couldn't take it down.  So we are at --

1        MR. DAVIES:  I'm sorry, Your Honor.

2        THE COURT:  All right.  Let's try it again.  It just

3  starts -- we can just -- sometimes we can see when it's going

4  off the rails because you start -- your image starts to

5  disintegrate.  So let's try again.

6        MR. DAVIES:  Certainly.  Well, as I indicated at the

7  very beginning, our arguments are substantially in line with

8  those already made by counsel for Kenco, in that Mars and Kenco

9  have been parties along the same journey for many years now

10  with multiple filings by Miss McCurry.

11        THE COURT:  Either -- excuse me one second, Mr.

12  Davies.  So the Court has this question to -- and maybe it's

13  just for clarification for the plaintiff or just for the

14  record:  That even though you've been along this journey, are

15  you saying that there is no respondeat superior relationship

16  between you all?

17        MR. DAVIES:  Absolutely, Your Honor.  We think we've

18  addressed that well in our, in our memorandum to the Court.  We

19  think the Seventh Circuit opinion dealt with that issue in its

20  analysis of the warehouse management agreement.  That was the

21  document in place establishing the relationship between Kenco

22  and Mars for the operation of the warehouse.

23        THE COURT:  I'm sorry?

24        MR. DAVIES:  Miss McCurry was --

25        THE COURT:  Go ahead.

1    MR. DAVIES:  Miss McCurry was never an employee of

2  Mars.  Mars did not have any control over or provide any

3  benefits to her either during her employment, and certainly not

4  subsequent to her employment.  We believe that res judicata, as

5  Miss Argentieri said, completely deals with all of the claims

6  to the extent they are being presented against both Kenco and

7  Mars.  And I don't think there's a need to spend more time.  I

8  think that the papers as well as Miss Argentieri's argument set

9  forth our position adequately.

10    THE COURT:  All right.  Thank you, Counsel.  All

11  right.  Once again, Miss McCurry, you can address counsel Mr.

12  Davies' argument on behalf of his client Mars.

13    MS. McCURRY:  Thank you, Your Honor.  First of all,

14  the Department of Labor is still an ongoing issue, and

15  post-termination issues are actionable.  And again, COBRA was

16  the issue that was litigated in that 02273 case.  Not the

17  current benefits I am -- and my issues that I have here with

18  you today.  You cannot lump all issues in one and say that I

19  can't come, come and litigate this in -- I mean, this had not

20  even happened when the COBRA and the other issues were going

21  on.  That case is now closed.  This is -- the current issue

22  with my short and long-term disability, which it had not

23  happened yet, and that is still ongoing right today.

24    THE COURT:  Miss McCurry, the Court's going to have

25  to interrupt a second and just still try to find out where it

1    is that you see -- how is Mars an employer for purposes of your

2    lawsuit here?  Where is that from?

3              MS. McCURRY:  Mars, Mars is the employer, and I say

4    this because Mars paid for everything.  It was Mars' warehouse.

5    I was in existence at -- I came into existence at that Mars'

6    facility since its inception.  In 1999 June I was there even

7    before the doors opened, and I left in January 2015.  I worked

8    in accounting.  I worked in HR.  And --

9              THE COURT:  Excuse me.  With all due respect, you are

10   saying what you did.  The question is, and hasn't there been a

11   legal determination that --

12             MS. McCURRY:  Well, I say what I did because --

13             THE COURT:  -- Mars was not your employer?

14             MS. McCURRY:  -- Mars, Mars did not -- used a pass

15   through system to Kenco to pay all of its employees, to pay all

16   of, of everything, equipment.  They paid for the building.

17   They paid for everything, Your Honor.  Mars hired Kenco.  Mars,

18   Mars is -- if Mars does not exist, nothing here exists.  So

19   they dictated the work flow.

20             THE COURT:  Once again, I asked -- I just asked the

21   question, ma'am.  Excuse me.

22             MS. McCURRY:  Oh, I'm sorry.

23             THE COURT:  I just asked the question about whether

24   or not there has been a legal determination that goes against

25   your claim about Mars' involvement here.  Hasn't there already

1 | been a Court ruling?

2 |     MS. McCURRY:  About Mars' involvement?

3 |     THE COURT:  Yes, about the status that you say Mars

4 | has, that they are in charge of everything.  Without Mars there

5 | is no case with anyone, that's your claim?  That's what you

6 | just said.

7 |     MS. McCURRY:  That, yes, they, they are responsible

8 | for everything.  Now, I'm not sure about a ruling, but I am

9 | sure that I know for a fact that Mars paid for everything.  I

10 | mean, I have, I have -- I mean, I think I -- if I'm not

11 | mistaken, their contract even say they have a pass through

12 | system through to Ken -- through to Kenco.  And I, I -- I know

13 | that I should be able to give you this information through

14 | discovery.

15 |     THE COURT:  Through what?

16 |     MS. McCURRY:  Through discovery.  Because Mars gave

17 | it to me in past, in past discovery.  And I have contracts.  I

18 | have the evidence to prove what I'm saying.  Everything that

19 | I'm saying here today I have proof that I, I am telling you the

20 | truth.

21 |     THE COURT:  All right.  Well, actually whatever you

22 | have presented has been presented.  The Court's not allowing

23 | any additional arguments.  I have a lot of paperwork on this,

24 | and if it's there, the Court will find it.  All right.  Is

25 | there anything else, argument you'd like to make to respond to

1  counsel?

2      MS. McCURRY:  No, Your Honor.  I stick by what I said

3  according to what res judi -- the res judicata, and --

4      THE COURT:  Okay.  All right.

5      MS. McCURRY:  And that's it.

6      THE COURT:  All right.  Thank you very much.  You

7  stand on your papers and your argument.  All right.  Anything

8  else, Mr. Davies, based on that?

9      MR. DAVIES:  Just very briefly, Your Honor.

10  Miss McCurry in her, in her comments just a moment ago made it

11  clear that these facts and underlying issues are the same as in

12  the previous cases when she said that she went through the

13  litany of her past employment history and said that Mars gave

14  documents to her in the past cases.  You know, that -- those

15  were documents that were all presented to Judge Bruce to the

16  extent they were relevant to those claims.  He entered

17  (unintelligible) previously entered --

18      THE COURT:  I'm sorry.  We lost you.  Counsel, Mr.

19  Davies, we lost you after you said Judge Bruce.  And then go

20  on.  They were presented to Judge Bruce.

21      MR. DAVIES:  Yes, Judge Bruce.  And he resolved those

22  issues against Miss McCurry when he granted Mars' summary

23  judgment.  The Seventh Circuit on appeal not only affirmed

24  Judge Bruce's ruling, but said that the appeal itself was

25  utterly frivolous and that it was a waste of judicial

1  resources.  And I would submit that, you know, the fact that

2  we're here again on a fourth separate case filed by

3  Miss McCurry is a further example of that.

4       THE COURT:  All right.  Thank you very much.  We'll

5  let it stay there.  All right.  Thank you for your arguments on

6  the Mars case, part of the case.  All right.  Next the Court is

7  going to go to -- I'd like to go to Reed.

8       MS. MATTHIS:  Yes.  Hi.  Good morning -- or good

9  afternoon I should state, Your Honor.  How are you?

10      THE COURT:  I'm fine, Miss Matthis.  Proceed.

11      MS. MATTHIS:  Thank you.  So I wanted to keep things

12  very brief as well and pretty straightforward today.  You said

13  to present your strongest argument that the parties have, and

14  our strongest argument here is that Miss McCurry's complaint

15  simply fails to state any cause of action against The Reed

16  Group.  As Your Honor is well aware, this was a complaint that

17  contained over 300 paragraphs and several causes of action, I

18  think about 10 different causes of action.  Not one of those is

19  directed towards The Reed Group.

20           There are a number of allegations contained in the

21  complaint that are directed to Kenco slash The Hartford and

22  Mars slash Kenco.  Again, none of those allegations or claims

23  are directed to The Reed Group.  So our motion to dismiss is

24  pretty straightforward in that it's simply a failure to state a

25  claim for which relief could be granted.  The Reed Group is

1   simply unaware of the allegations that may be presented against

2   it.

3        To the extent, again, there's some Title -- possible

4   Title VII claims, there are further arguments that can be made

5   with respect to that.  But at this time we're just unable to

6   make that determination because it's simply unclear.  So I will

7   leave things relatively brief there, Your Honor.  And I can

8   certainly elaborate with respect to certain claims, but The

9   Reed Group was only referenced eight times within Miss

10  McCurry's complaint.  And the extent to which any allegations

11  are presented against The Reed Group, it appears that it's some

12  sort of disclosure of her health or medical information.  But

13  again, we're just unclear.  So we would rest on that argument

14  with respect to our motion today, Your Honor.

15       THE COURT:  Well, first of all, I just want to start

16  right there with her claims basically to bring a HIPAA type of

17  violation against your client.  Is there even such a right for

18  her to bring it forth?

19       MS. MATTHIS:  There's not, Your Honor.  And I did

20  address that in the motion.  There's no private right or cause

21  of action with respect to any sort of HIPAA claim.  So to the

22  extent that is alleged, that's not something -- or this is not

23  the proper forum that she should present or bring forth that

24  particular argument.  And again, as we went through the

25  complaint, that is the only possible cause of action that we

1    were able to sort of extract from the paragraphs in her claim.

2            THE COURT:  All right.  And also that there was --

3    your claim is that she failed to exhaust any administrative

4    remedies, is that correct?

5            MS. MATTHIS:  That was to the extent -- again, we're

6    not quite certain.  But to the extent she's presenting some

7    sort of Title VII claims, I see some discrimination, some

8    harassment claims, none of those were directly tied to The Reed

9    Group.  They were again very loosely.  But to the extent any of

10   those are presented towards The Reed Group, again, we would

11   allege that that's not clear, but also she failed to exhaust

12   her administrative remedies.

13           I don't have the exact exhibit right now, but

14   Miss McCurry attached to her complaint an exhibit containing a

15   charge of discrimination that was filed in the EEOC.  The Reed

16   Group was not a respondent in any sort of charge of

17   discrimination that was brought forth in the EEOC.  And as a

18   result of that, she has failed to exhaust her administrative

19   remedies to bring forth any sort of Title VII claim against The

20   Reed Group.

21           THE COURT:  All right.  Thank you very much,

22   Miss Matthis.  Again, as to the Reed Group, Miss McCurry, the

23   floor is yours.

24           MS. McCURRY:  Thank you, Your Honor.  Your Honor, if

25   you look at Exhibit 14, you will see that The Reed Group --

1    Exhibit 14 in, in my complaint, docket No. 1.  You will see

2    that --

3              THE COURT:  In your complaint, correct?

4              MS. McCURRY:  Yes, in my complaint.

5              THE COURT:  All right.

6              MS. McCURRY:  You will see that The Reed Group acted

7    as the agent of Kenco/Mars.

8              THE COURT:  All right.

9              MS. McCURRY:  So --

10             THE COURT:  When you say I will see it in your

11   complaint, I think there --

12             MS. McCURRY:  Yes.

13             THE COURT:  -- needs to be a little bit more than

14   that.  You can say I can see it because you said it.  What else

15   do we -- what else are you putting your finger on to support

16   you?  You said again, what -- you said it's document number --

17             MS. McCURRY:  My document --

18             THE COURT:  Tell me again where or paragraph.

19             MS. McCURRY:  My document No. 1, my complaint.

20             THE COURT:  Right.

21             MS. McCURRY:  It's Exhibit 14.  Exhibit 14 is --

22   Exhibit 14 is my -- it came from The Reed Group -- attending

23   physician statement with work capacity and impairment.  That

24   sheet.

25             THE COURT:  Hold on.

1    MS. McCURRY:  And Kenco/Mars --

2    THE COURT:  Hold on one second.  Hold on one second.

3  I'd like to turn to what you're, what you're speaking of.  You

4  said document -- that's document 14.  Hold on one second.  One

5  second, please.

6    (Brief pause.)

7    THE COURT:  All right.  Go on with your argument.  As

8  to the document.

9    MS. McCURRY:  So -- okay.  So if you look at the

10 document, Your Honor, you'll see Kenco/Mars is the employer up

11 at the top left of this document.

12    THE COURT:  Again, are you saying document or Exhibit

13 14?

14    MS. McCURRY:  The exhibit.  I'm sorry.

15    THE COURT:  All right.

16    MS. McCURRY:  Exhibit No. 14.

17    THE COURT:  Okay.  Hold on a second.

18    MS. McCURRY:  Yes.

19    THE COURT:  You've got a lot going on here.  You have

20 documents as well as exhibit titles at the top, so it makes it

21 confusing for the Court.  I just want to make sure I'm looking

22 at what you're referring to.  Hold on.

23    (Brief pause.)

24    THE COURT:  All right.  I'm on 14 now.  Go ahead,

25 Miss McCurry.

1    MS. McCURRY:  So if you will see up in the upper

2  left-hand corner where it says employer, Kenco/Mars is there.

3  And they requested this in September of 2018.  If they -- why

4  would they request it if they did not have an interest or

5  participate in the decision making of my benefits?

6    THE COURT:  So again, this is The Reed Group

7  document?

8    MS. McCURRY:  Yes.  And that's what --

9    THE COURT:  And where it has your name and it has

10  employer Kenco/Mars handwritten by someone?

11    MS. McCURRY:  Yes.

12    THE COURT:  All right.

13    MS. McCURRY:  And this is what connects Kenco/Mars

14  and The Reed Group, this document.

15    THE COURT:  All right.  Do you have anything else?

16    MS. McCURRY:  And the date, the date was in September

17  of 2018 after my case was closed.  The 2273 case.

18    THE COURT:  Actually it says October.

19    MS. McCURRY:  Okay.  I'm sorry.  You're correct.

20    THE COURT:  Okay.  And so this is the document you're

21  linking to support Reed's connection to the case?

22    MS. McCURRY:  Well, I'm -- yes.  And I'm looking at

23  it when the fax was sent.  It says 9/26/2018.  That's, that's

24  probably where I got that date from.  I know what the document

25  says.  It says 10/4/2018, but the fax says -- the fax stamp

1    says 9 -- at the top 9/26/2018.

2              THE COURT:  Okay.  But the form is dated with the

3    signature of October 2018.

4              MS. McCURRY:  Yes.

5              THE COURT:  And an office visit of October 4th, 2018,

6    correct?

7              MS. McCURRY:  Yes.

8              THE COURT:  So what is this -- what are you

9    presenting this document to me in support of?

10             MS. McCURRY:  This is the connection for Kenco/Mars

11   and The Reed Group, and, and the fact that they requested it

12   from The Reed Group.

13             THE COURT:  Well, when you say the fact that they

14   requested it?

15             MS. McCURRY:  Kenco hired -- Kenco/Mars hired the --

16   The Reed Group, and The Reed Group contacted my doctor.

17             THE COURT:  All right.  All right.  Anything else

18   that you want to argue?

19             MS. McCURRY:  Now, mind you -- mind you, Your Honor,

20   this was after that case that they all are complaining about

21   was closed.

22             THE COURT:  And so that's why you're saying that they

23   should be brought in even though it's after the fact?

24             MS. McCURRY:  Absolutely, Your Honor.  And further,

25   The Hartford even said that they had -- they had nothing --

1   they weren't aware of The Reed Group at all.  So I know it had

2   to be Kenco and Mars, because it says so on this document.

3   And, and further of what The Hartford said, that they had no

4   knowledge of The Reed Group.

5           THE COURT:  All right.  Thank you.  All right.  Would

6   you like to respond, Miss Matthis?

7           MS. MATTHIS:  Your Honor, just briefly.  And in

8   looking at this particular document, it, it simply is outlining

9   Miss McCurry's employer as Kenco/Mars.  And I don't think we

10  can take anything further from this document other than the

11  fact that they were listing her employer as Kenco/Mars in the

12  vocational information section.  So as Miss McCurry alleges

13  that this particular document shows some sort of joint action

14  between Kenco/Mars and The Reed Group, first I would disagree;

15  but secondly, there's absolutely nothing contained within this

16  particular document to establish that.  And we would ask that

17  this Court dismiss Miss McCurry's complaint with prejudice.

18          THE COURT:  I guess, I guess, Miss Matthis, the

19  question would be just on the surface, why would there be a

20  document with her information being sent with The Reed

21  Group's -- obviously either on their stationery, their fax, or

22  something.  She's saying there's a connection.  How do you

23  respond?

24          MS. MATTHIS:  I just don't -- there is no way to

25  determine it.  There is no connection.  This is something that

1    they're simply outlining her employer as, as Kenco/Mars with

2    respect to initiating her disability benefits. But at this

3    particular stage there's no way to make that determination, and

4    we simply can't.

5          THE COURT: So would you say -- would you then say

6    that, of course, because it's all handwritten and it's on the

7    form, that it could be somebody from Reed who's just getting

8    her information from someplace and filling it in, is that

9    correct?

10         MS. MATTHIS: Exactly, Your Honor. And that's what

11    I --

12         THE COURT: As opposed to it coming from Kenco/Mars?

13         MS. MATTHIS: Exactly, Your Honor. I have no --

14    there's -- again, there's no indication that there is any sort

15    of joint relationship between the two. It's merely listing her

16    employer in the vocational information section. And I don't

17    think we can take anything more from, from this particular

18    document at all.

19         THE COURT: And what about the difference in the

20    dates? You've got the fax date that says September 2018, but

21    then you have the healthcare provider's initials and

22    signature -- or initials dated October 4th, 2018, which is a

23    bit of an oddity, that you would have that on a document that

24    was faxed prior to the signature date.

25         MS. MATTHIS: And I'm not certain if it was maybe

1    faxed to someone and then it was filled out and then faxed

2    back, or if the blank form was faxed in some way.  I am not

3    quite sure, and there is no way to really authenticate this

4    particular document at this stage.  But, Your Honor, I really

5    can't speak to that particular time stamp.  Again, it could

6    mean that it was faxed to someone blank, completed, and then

7    faxed to someone else.  But I don't even know who this

8    particular document was sent to.  And again, like I said,

9    there's, there's no real way to authenticate this document.

10              THE COURT:  All right.  Thank you.  But you do

11   understand why it might cause a red flag, especially from a

12   layperson looking at something who already has some skepticism,

13   and then all of a sudden you have a document stamped across the

14   top saying one thing, and then the same document has

15   information and an official so-called signature that is a month

16   later.  That raises red flags, particularly if somebody's

17   already on a path that has them skeptical about all the goings

18   on.

19              MS. MATTHIS:  I, I understand, Your Honor.  But

20   again, I'm not sure if this document was faxed to someone blank

21   and then completed and then signed with that particular date.

22   I'm, I'm just not sure at this stage.  But again, it, it

23   doesn't necessarily go to the allegations of Miss McCurry's

24   complaint.  So I think that's the biggest argument that we have

25   presented here today.

1      THE COURT:  All right.  Thank you very much.  It's

2  something that the Court will keep in mind.  All right.  And

3  then let's go to, let's go to Dr. -- I'm sorry, to Hartford.

4      MR. von SCHLEICHER:  Yes, Your Honor.  Excuse me.

5  This is Warren von Schleicher.  I represent Hartford.  Hartford

6  is the insurer of the group policy.  Hartford did make the

7  decision with regard to Miss McCurry's long-term disability

8  claim.  The decision, as we indicate in our, our brief, was

9  ultimately one to approve her claim and pay benefits.

10  Miss McCurry continues to be paid benefits to this day on a

11  monthly basis under the group policy issued by Hartford.

12      ERISA itself -- and ERISA governs the group policy.

13  ERISA itself provides for a claim and an appeal review

14  procedure.  The appeal review is 180 days, and Miss McCurry's

15  claim went through that procedure.  It's a result of that

16  procedure that on appeal Miss McCurry's claim was approved.

17  I'd like to take one step back.

18      Miss McCurry initially filed the claim under what's

19  called the own occupation, when one cannot work in their own

20  occupation.  That was approved and paid.  The -- after 24

21  months, to qualify for benefits, one must prove that they

22  cannot work in any occupation.  That ultimately is the claim

23  that was denied in 2017 by Hartford.  During the appeal

24  procedure, Hartford reversed its decision and approved her

25  claim and found Miss McCurry was entitled to payment of

1   disability benefits.

2          So ultimately under ERISA one can get a -- sue under

3   ERISA for benefits due for a declaration of their rights under

4   the terms of the ERISA plan, in this case the group policy, or

5   to enforce their rights under the terms of an ERISA plan.  And

6   Miss McCurry received what she's entitled to receive and

7   continues to receive, which is disability benefits through a

8   process that ultimately resulted in the approval and payment of

9   benefits to, to Miss McCurry.

10          Focusing again on, on ERISA, we do maintain that,

11  that ERISA venue is not proper in this district.  Miss McCurry

12  under the various -- Miss McCurry in her brief addresses venue

13  from the perspective of, of general venue, and there's actually

14  a specific venue statute that applies here, which is 1132 (e).

15  And Section 1406 (a) is our request, which is a mandatory

16  dismissal or transfer.  It's our position that venue would be

17  proper in the Central District of Illinois.  The plan is

18  administered in Tennessee.  The breach occurred, which under

19  ERISA, the breach occurs where benefits are to be paid.  That

20  was in the Central District of Illinois.

21          THE COURT:  It was never in the Northern District, is

22  that correct?

23          MR. von SCHLEICHER:  It was never in the, never in

24  the Northern District, Your Honor.  Always in the Central

25  District.  Miss McCurry resides in the Central District.

32

1  Benefits have always been paid to her in the Central District
2  of Illinois.
3          THE COURT:  How do you respond to that, Miss McCurry?
4  Miss McCurry.
5          MS. McCURRY:  First, Your Honor -- I'm sorry, Your
6  Honor.  First, if you --
7          THE COURT:  I need you to, I need you -- I'm sorry,
8  Miss McCurry.  I sort of cut off counsel because that's such an
9  important point.  You know, how are you saying that this should
10 not be in the Central District, if it should be at all?  It's
11 got to be in the right venue.
12         MS. McCURRY:  It is in the right venue, Your Honor.
13         THE COURT:  Well, wait.  Wait.  How do you get
14 past -- Miss McCurry, how do you get past the fact that under
15 ERISA you have -- the matter has to be dismissed if you're not
16 in the right venue.  And it appears you're in the Central
17 District.  The group policy was in Tennessee, and any breach
18 that you're claiming occurred in the Central District.  How is
19 it in the Northern District of Illinois?
20         MS. McCURRY:  The action didn't occur in the Central
21 District.  It occurred in the Northern District.
22         THE COURT:  How?  Be very specific with it.
23         MS. McCURRY:  Dr. Koehler examined me.  Dr. Koehler,
24 their independent medical examiner, examined me, which caused
25 my benefits to be denied.

1    THE COURT:  Ah.

2    MS. McCURRY:  Yes.

3    THE COURT:  Okay.  I understand your argument.  It's

4  not correct, I will tell you that right now on this one.  But I

5  understand the argument.  Once again, there is a way when

6  people are pro se versus lawyers, sometimes you look at things

7  straight on in a way that might not make sense to you; but this

8  aspect of the law is pretty clear.  That doesn't mean your case

9  necessarily goes away.  It's just are you in the right place.

10  And you're pinning all your hopes on what Dr. Koehler did as

11  part of the -- as part of his role as an independent examiner,

12  is that correct?

13    MS. McCURRY:  Dr. Koehler was the independent

14  examiner.

15    THE COURT:  Right.

16    MS. McCURRY:  But --

17    THE COURT:  And you're pinning your argument on that,

18  is that correct?

19    MS. McCURRY:  Well, not solely, no.  Kenco and The

20  Hartford have acted interchangeably.  The Hartford claim office

21  is in Minneapolis, Minnesota.  And, and Kenco had been the plan

22  administrator.  Kenco had said that they was the plan

23  administrator, and The Hartford had said they were the plan

24  administrator, and Mars had said that, that Kenco is the plan

25  administrator.  These, these -- these companies are acting

34

1    interchangeably, Your Honor.  And, and when it -- and when it

2    happened, when all my issues occurred, Kenco was not, was not

3    downstate.  They were up north in the Northern District.

4    Everyone is in the Northern District.

5         THE COURT:  I'm talking about Hartford right now.

6    Ma'am, I'm talking about Hartford right now.

7         MS. McCURRY:  Yes.  The Hartford.

8         THE COURT:  And Hartford's the insurance company.

9    Kenco is the employer issue.  They're not the same.

10         MS. McCURRY:  Yes.

11         THE COURT:  They're not -- you can't -- they are not

12    interchangeable.  I'm sorry.  They're just not.

13         MS. McCURRY:  Well, Your Honor, that's what they

14    said.  They, they said this.  And they were up north when it

15    all occurred.

16         THE COURT:  All right.  They said what?  That they're

17    interchangeable?

18         MS. McCURRY:  That they're the plan administrator.

19         THE COURT:  All right.  Anything further that you

20    want to say on this argument that Hartford needs to respond to?

21    Because I'd like you to go ahead -- you're, you're sort of --

22    we're sort of already in the wheelhouse of the argument with

23    Dr. Koehler.  And so, you know, they sort of may connect, may

24    not connect.  I think it would be easier, and I'll even allow

25    you if you have something additional to say on Hartford once we

```
 1   get into Dr. Koehler.  Would that be, would that be helpful?
 2            MS. McCURRY:  Yes.  But I also just want to make the
 3   statement again that both, both cannot be the plan
 4   administrator.  And they both have been said to be that.  And
 5   also if you could also look, too, looking back, if you would
 6   looking at Exhibit 9 -- 19.  I'm sorry, Your Honor.  Exhibit
 7   19.  Next to the last paragraph.
 8            THE COURT:  Exhibit 19 of your complaint, ma'am?
 9            MS. McCURRY:  Yes.  Of my complaint, yes.
10            THE COURT:  All right.  Exhibit, not document.
11   Exhibit, correct?
12            MS. McCURRY:  Yes, exhibit.
13            THE COURT:  Okay.  Go ahead.
14            MS. McCURRY:  I wanted to make note that the
15   attending physicians -- that The Reed Group -- I'm sorry.  That
16   The Reed Group starting with that paragraph there, that The
17   Reed Group comes up again in that paragraph --
18            THE COURT:  You're talking -- excuse me one second.
19   One second.  Are you talking about on October 19th, 2018?
20            MS. McCURRY:  Yes.
21            THE COURT:  The Hartford sheet that has the Hartford
22   stationery, that one?
23            MS. McCURRY:  Yes.  Yes.
24            THE COURT:  All right.  To Mr. Hoffman?
25            MS. McCURRY:  Yes.
```

1          THE COURT:  All right.  Go ahead.

2          MS. McCURRY:  If you look at that second page, again,

3     The Reed Group comes up again there in that paragraph from The

4     Hartford.  These companies are connect -- are connected, Your

5     Honor.

6          THE COURT:  It just says was not sent by the

7     Hartford.

8          MS. McCURRY:  Yes.

9          THE COURT:  Yes, what?  It says The Reed Group is a

10    different company.  This does not prove your point.  It

11    specifically says, The attending physician statement sent from

12    The Reed Group was not sent by The Hartford.  The Reed Group is

13    a different company.

14         MS. McCURRY:  Because Kenco had to send this, Your

15    Honor.

16         THE COURT:  Okay.

17         MS. McCURRY:  This document, my Exhibit 14.  And, and

18    because I'm just showing that my Exhibit 14, that Kenco had to

19    send that.  And that it -- again, they're brought up on my

20    Exhibit 19 in that paragraph.  So --

21         THE COURT:  All right.  You're correct.  You're

22    correct --

23         MS. McCURRY:  Okay.

24         THE COURT:  -- that The Reed Group's name comes up,

25    but not in the way that helps you.  I'm going to move on to

1  the -- unless, Mr. von Schleicher, is there anything else about

2  your client that you needed to add real quickly before we move

3  on to Mr. Calkins for, for the doctor?

4          MR. von SCHLEICHER:  Your Honor, just very briefly.

5  The, the only time that Hartford is mentioned with regard to a

6  specific count is ERISA violations or a category of the

7  complaint called harassment, which also seems to relate to

8  ERISA.  So Hartford's role in this really is with respect to

9  ERISA.  Under ERISA venue, venue must be proper with respect to

10 each defendant.  That would mean that it must be correct as to

11 Dr. Koehler.  And aside from Dr. Koehler, it must also be

12 correct with, with respect to Hartford.

13         Because the breach occurred in the Central District

14 of Illinois, we maintain that there is not ERISA venue here

15 with respect to Hartford.  And the case should be either

16 dismissed so that Miss McCurry can refile, or it should be

17 transferred to the Central District in order for the Courts

18 there to address the ERISA issues.

19         THE COURT:  All right.

20         MR. von SCHLEICHER:  In my brief I did address some

21 other issues.  I don't think that I need to stress those points

22 now.  But I did want to stress the issue regarding ERISA venue.

23         THE COURT:  All right.  Well, that was the only one

24 that would be appropriate to respond to on rebuttal, and the

25 Court's glad I gave you that opportunity.  And we're going to

1    move on to Dr. Koehler.  Mr. Calkins.

2         MR. CALKINS:  Thank you, Your Honor.  Scott Calkins

3    representing Dr. John Koehler, who's named in the complaint as

4    Dr. Koehler.  I'm in a position that I think is similar to what

5    Miss Matthis described with respect to The Reed Group.  Dr.

6    Koehler is referenced tangentially in the complaint, but the

7    allegations in the complaint in terms of the way they're

8    presented as causes of action are difficult to understand how

9    Dr. Koehler is an appropriate defendant.  And I want to break

10   those really down, Judge, into the two categories of causes of

11   action.

12        So the first six each appear to be brought under

13   Title VII, near as I can tell.  And they each are prefaced with

14   the, with the statement in retaliation for opposing

15   discrimination, participating in EEOC, IDHR, Department of

16   Labor-Whistleblower proceedings and for filing informal and

17   formal complaints.  The defendants each somehow harassed Miss

18   McCurry or intentionally inflicted emotional distress on her,

19   retaliated against her, et cetera.

20        Those all appear to be under the general ambit of

21   Title VII.  And to the extent that they are, there's four

22   reasons why they should be dismissed as to Dr. Koehler.  He's

23   not a proper Title VII defendant under any circumstance.  Miss

24   McCurry didn't exhaust her administrative remedies against Dr.

25   Koehler.  She hasn't pled facts indicating that Dr. Koehler

1   individually retaliated against her or caused these companies

2   to retaliate against her. And then lastly, the complaints are

3   really founded upon false premises or false understandings on

4   the part of the plaintiff that the documents that she attaches

5   themselves bear out.

6           So, Judge, I don't think there's an argument that,

7   that individuals are generally not proper Title VII defendants.

8   And the relief is limited to an employer as defined in the

9   statute. And Dr. Koehler is certainly not an employer. He was

10  retained to provide an independent medical examination.

11  According to the plaintiff, he was retained by Hartford.

12  According to Hartford and I think the other records in the

13  case, he was retained through a third party consulting service,

14  Medical Consultants Network, to provide an independent medical

15  examination. So he just doesn't fit within the idea of, of

16  being an employer. I don't find any exception to that that

17  would apply.

18          As to the concept that Dr. Koehler somehow

19  retaliated, if there's going to be individual liability in a

20  Title VII claim, some individual with retaliatory motive must

21  cause the plaintiff's employer to retaliate against the

22  plaintiff. There's nothing in the complaint indicating that

23  Dr. Koehler had any type of retaliatory motive against the

24  plaintiff. That he even knew her in any way, shape, or form

25  prior to his independent medical examination. And certainly

1    nothing indicative of any type of retaliatory or discriminatory

2    motive on his behalf.  So the retaliation concept just fails

3    for lack of pleading.

4         In terms of exhaustion of administrative remedies,

5    you have attached to the plaintiff's complaint the EEOC charge.

6    That appears as Exhibit 2.  Kenco Logistics as manager for Mars

7    are named in that.  Dr. Koehler's not named in that, nor is

8    there any indication that would put him on notice of any type

9    of claim under Title VII against him.  So the exhaustion of

10   administrative remedies does not appear to be there.

11        And lastly, it really came up in the plaintiff's

12   reply brief, and, and maybe that was a clarification of what's

13   in her complaint; but she asserts that Dr. Koehler is liable

14   for conspiring with other defendants to violate her civil

15   rights.  And specifically that he initially opined that she was

16   incapable of working, and thereafter apparently at the behest

17   of Hartford according to the plaintiff rendered the contrary

18   opinion that she was capable of working, and that he also --

19   she also cites the doctor's respondeat superior.

20        So if we look at, at the first allegation, it's just

21   simply discredited by the, by the documents in this case.  Dr.

22   Koehler rendered three written opinions.  The first on

23   April 11th, 2017.  That appears at docket 81.  Hartford's

24   response to the motion to dismiss at Exhibit A.  And he clearly

25   cites in that opinion it's my opinion that Miss McCurry may

1    work 20 hours per work.  He's then asked to supplement that

2    written opinion on April 20th.  That supplemental opinion is

3    Exhibit 10 to Miss McCurry's complaint.  And again you'll find

4    that she can sustain functionality for a total of 4 hours per

5    day and 20 hours per weeks.

6           He supplemented again on May 3rd, 2017.  And again he

7    opined that she can work at a sedentary work level for 4 hours

8    per day and 20 hours a week.  So the concept that somehow Dr.

9    Koehler conspired with one or more of the other defendants to

10   alter his opinion is just not borne out by the documents that

11   Miss McCurry has presented and is supplemented by the documents

12   that Hartford presented.

13          Further, if we get to the respondeat superior

14   argument, her argument is that Hartford was acting as a

15   defendant -- as an agent for the defendants because Hartford

16   hired Dr. Koehler to perform an independent medical evaluation.

17   The case law in Illinois is very clear on this.  Taylor versus

18   Kohli is the, the leading case on it.  And it just says an

19   expert witness is not an agent of a party that retains the

20   expert.  It's an independent contractor.  So respondeat

21   superior as a matter of Illinois law cannot apply.  And even if

22   it did apply, that wouldn't give any individual liability to

23   Dr. Koehler.  So I just don't see any Title VII claim against

24   Dr. Koehler that, that could reasonably be asserted by Miss

25   McCurry.

1          The remainder of the claims all are kind of ERISA

2     based claims.  There's no plausible claim against Dr. Koehler

3     under ERISA.  He's clearly not an employer.  Again, there's a

4     lot of authority under the ERISA body of case law that says a

5     physician engaged to conduct an IME isn't a proper defendant

6     for purposes of ERISA.  That negligent misrepresentation,

7     promissory estoppel, fraud are all preempted by ERISA.  I think

8     I've covered that in my brief.

9          But, you know, again Miss McCurry's argument is that

10    Hartford failed to correctly and accurately pay benefits due

11    under the plan and did so because of Dr. Koehler's opinion.

12    Well, again, that doesn't, that doesn't get liability to Dr.

13    Koehler; and it certainly encompasses all her claims under

14    ERISA as being preempted.

15         And I guess the last argument, Judge, and I set it

16    forth in the brief is, Dr. Koehler as an independent medical

17    examiner is not her physician.  He doesn't owe her any

18    independent duty.  There's no physician/patient relationship.

19    And on that basis he's immune from civil liability for opinions

20    rendered in connection with the IME.  So based on all that, I

21    just don't find any claims that can be asserted rationally

22    against Dr. Koehler under the circumstances.

23         THE COURT:  All right.  Thank you very much,

24    Mr. Calkins.  All right.  Your turn, Miss McCurry, to address

25    the issue of the motion to dismiss as to Dr. Koehler.

1          MS. McCURRY:  Thank you, Your Honor.

2          THE COURT:  My question -- I'm going to ask a

3    question.  I'm going to ask a question right off the bat.  And

4    again forgive me, but this is --

5          MS. McCURRY:  Yes.

6          THE COURT:  This is the way we do things.  And we

7    don't do a lot of oral arguments, but since we can read all the

8    documents and all the cases in the privacy of our own chambers,

9    if we have somebody in orally to argue, really we want to ask

10   questions about what is important from our vantage point at

11   least right now.

12         And so my question for you is, first of all, do you

13   understand that Dr. Koehler was not your doctor for purposes of

14   treatment?  Do you understand that?

15         MS. McCURRY:  Yes, I do.

16         THE COURT:  All right.

17         MS. McCURRY:  But --

18         THE COURT:  Good.  All right.  So he was more of a

19   consultant to the insurance company, would that be correct?

20         MS. McCURRY:  Yes.

21         THE COURT:  All right.  So --

22         MS. McCURRY:  He rendered an opinion about me.

23         THE COURT:  Right.  Right.  To the company, correct?

24   To The Hartford, correct?

25         MS. McCURRY:  Yes.  Yes.  Yes.  Yes, Your Honor.

1     THE COURT:  All right.  And so why is it -- under

2 what theory do you believe you have a right to sue him?

3     MS. McCURRY:  Because his -- because he gave an

4 initial opinion, and the Hartford came back to him and said,

5 which is in Exhibit 11, that he -- let's see.  Exhibit 11, No.

6 1.  Now, this is -- I'm sorry.  This is in my complaint.  I

7 keep forgetting to say that.  In my complaint Exhibit 11, No. 1

8 at the bottom.

9     THE COURT:  Is that dated May 3rd, 2017?

10     MS. McCURRY:  Yes.

11     THE COURT:  And it has -- it's to Priscilla McKinney

12 of the Hartford, is that correct?

13     MS. McCURRY:  Yes.  At the top, yes.

14     THE COURT:  All right.  And so this is from Dr.

15 Koehler, correct?  Or is it from Dr. Koehler?

16     MS. McCURRY:  From John J. Koehler, MD.  Yes.

17     THE COURT:  All right.  And who is it -- who is it

18 sent by, though?

19     MR. CALKINS:  Your Honor, I believe it was sent --

20 this is Mr. Calkins again.  This was, this was sent by Dr.

21 Koehler.  I don't think there's any question about that.

22     THE COURT:  Okay.  It was sent directly by Dr.

23 Koehler.  It's sort of written in a weird way, because it says

24 Dr. Koehler indicates.  Almost like he's talking in third

25 person the way it's written.  Do you see that?

1     MR. CALKINS:  Right.  It's --

2     THE COURT:  All right.

3     MR. CALKINS:  Yes, it's through the Medical

4 Consultants Network, but it's signed -- the letter appears to

5 be signed by Dr. Koehler.

6     THE COURT:  All right.  So it sort of looks like it's

7 a hybrid, would I be correct?  Even though Dr. Koehler signs

8 it, but someone else --

9     MR. CALKINS:  Sounds right.

10     THE COURT:  All right.  Proceed.  All right.  Again,

11 something else that obviously could be somewhat confusing to

12 someone who may already be looking at the whole situation in a

13 skeptical manner.  All right.  Proceed.  Go ahead.  Go ahead,

14 Miss McCurry.  I have the document.

15     MS. McCURRY:  So -- okay.  So basically is Dr.

16 Koehler gave his original prognosis or my physical that he

17 gave.

18     THE COURT:  Right.

19     MS. McCURRY:  The Hartford came -- The Hartford came

20 back to him and said that that wasn't what they asked him for.

21 They asked him for my -- for a physical, a physical evaluation.

22 And they made him change his mind and send them back --

23     THE COURT:  Wait.  Wait.  Wait.  Wait.  Wait.  Wait.

24 Where are you coming from with all of that, ma'am?  I'm sorry.

25 I saw the letter at the Exhibit 11.  And how do you say that

1  The Hartford came back to him and made him change his mind?

2  Where are you, where are you getting that from?

3      MS. McCURRY:  Down where the No. 1 is at the bottom.

4      THE COURT:  On document 11?  On Exhibit 11?

5      MS. McCURRY:  Yes, on Exhibit 11.

6      THE COURT:  Okay.  Hold on.

7      MS. McCURRY:  Look at the paragraph that begins

8  with --

9      THE COURT:  All right.  Ma'am, I'm looking.  Give me

10 one second, Miss McCurry.  One second.  So I'm on Exhibit 11,

11 and you want to look at the first -- on the first page of

12 Exhibit 11?  And it has here, To be noted, Dr. Koehler is

13 assessing limitations of part-time function in the workplace.

14 And then there is italicized I guess the explanation they're

15 asking him for in italics.  And then after that Dr. Koehler

16 answers.  Would that be correctly putting forth what's on that

17 document?

18     MS. McCURRY:  Yes.

19     THE COURT:  So from, from the company -- from MCN --

20 excuse me.  Excuse me.  Is there somebody else on the line,

21 ma'am?  You can only talk to me.

22     MS. McCURRY:  That's not me, Your Honor.

23     THE COURT:  That's not you?

24     MS. McCURRY:  That wasn't me.  No, that's --

25     THE COURT:  All right.  Somebody -- everybody's --

1   wait.  Let me check here.  Is everybody muted here?  There
2   should be no other conversation.  All right.  We just got --
3   somebody muted.  It might have been just the public listening
4   in.
5           All right.  So on subsection 1, which is the three
6   small paragraphs before the sticker that says Exhibit 11, is
7   that where you were directing the Court?
8           MS. McCURRY:  Yes.
9           THE COURT:  All right.  And what's your argument
10  about that?  The italicized part is a request for information,
11  and then after that it's written -- I think it's the response
12  from Dr. Koehler, correct?
13          MS. McCURRY:  Yes.
14          THE COURT:  All right.  So what are you saying he was
15  made to do?
16          MS. McCURRY:  If you, if you see, it says Dr. Koehler
17  indicates the primary diagnosis are depression, psychomotor
18  retardation.  Secondary diagnoses are arthralgia, chronic pain,
19  and morbid obesity.
20          THE COURT:  Wait a minute.  Wait a minute.  Wait a
21  minute.  Where -- you jumped on the questioning.  So I am --
22  the paragraph that I see on Exhibit 11 that you've made
23  reference to, again, it's a MCN document.  I'm assuming that's
24  the group that he works under that provides him to the
25  insurance company.  And there is the letters in response to

1    your request for clarification regarding the independent

2    medical evaluation performed on April 11th.  And then it goes

3    on.  It talks about the -- indicates the primary diagnosis.

4    This is all in italics.  And --

5            MS. McCURRY:  Yes, that's his initial -- Dr. Koehler

6    indicates that is his initial diagnosis.

7            THE COURT:  Right.  And then they go along and say,

8    but we requested a review of physical functionality, not mental

9    health functionality.  You see that?

10            MS. McCURRY:  Yes.  But how do you separate the two,

11    Your Honor?

12            THE COURT:  Well -- well, first of all, they asked --

13    well, I think there is a separate diagnosis for mental health

14    versus physical health.  I mean, I don't have to be an expert

15    to know that.

16            MS. McCURRY:  But he didn't do any physical tests

17    that -- on me to show that I, I was able or capable of working

18    20 hours a week.  That did not happen.

19            THE COURT:  Okay.  That's your argument, that he did

20    not do a physical medical exam of you, correct?

21            MS. McCURRY:  Correct.

22            THE COURT:  All right.  Anything else that you'd like

23    to state?

24            MS. McCURRY:  Yes, Your Honor.

25            THE COURT:  Proceed.

1        MS. McCURRY:  And also back to the ERISA that they

2   were complaining about.  Dr. Koehler participated in a

3   conspiracy, knowing or not knowing, with Kenco and The

4   Hartford.  Because you can under 1981 and 1985 individual --

5   you can bring names individually under that, under that rule.

6        THE COURT:  Again, this is just your interpretation?

7   This is your interpretation, ma'am?

8        MS. McCURRY:  Yes.  From what, from what I was

9   reading about 1981 and 1985, yes, they are violating my rights

10  under -- under that, under that -- the 1981 and 1985.

11       THE COURT:  And you're speaking of Dr. Koehler?

12       MS. McCURRY:  Yes.  And they do -- and Kenco and

13  Hartford reversed Dr. Koehler's decision, and -- they

14  reversed -- they reversed his decision, and there was no

15  further medical or any other type of information given.  That's

16  all I had to say about that one.

17       THE COURT:  All right.

18       MS. McCURRY:  But I want to -- wait.  I want to --

19  I'm sorry.  I would like to bring your attention to Exhibit 7

20  in, in my complaint.

21       THE COURT:  For what reason, ma'am?  The time is

22  getting short here.  I mean, long actually.  I have a

23  3:00 o'clock case, and I have given you --

24       MS. McCURRY:  Okay.  I just --

25       THE COURT:  -- all quite a bit of attention.

1    MS. McCURRY:  Yes, Your Honor.  You, you definitely

2  have.  But please look at Exhibit 7 where they, where --

3    THE COURT:  What reason are you directing me?  What

4  reason am I looking at Exhibit 7?

5    MS. McCURRY:  This -- where, where Kenco has -- where

6  Kenco has a view of, of -- of my file.  Of the, the Hartford

7  file.  These companies are interchangeable.  These companies

8  are connected.  They're doing these -- look at -- look at the,

9  the dollar amount in Exhibit 7.

10    THE COURT:  Yes.

11    MS. McCURRY:  They should --

12    THE COURT:  I'm sorry.  I can't hear you.

13    MS. McCURRY:  They should -- if The Hartford is

14  making the decision by themselves, why can, why can Kenco see

15  this?  Why?

16    THE COURT:  I, I -- I'm really at a loss for what

17  you're saying to me.  You have insurance through your company,

18  right?  And then --

19    MS. McCURRY:  They were self insured.

20    THE COURT:  Right.  You have the insurance through

21  the company.  And then you have a list of payments -- claims

22  and payments.  And you're asking me why can they see that?  Is

23  that what you're asking me?  And if that's what you're asking

24  me, what does that have to do with the lawsuit?

25    MS. McCURRY:  No.  No.  I'm not asking.  I'm, I'm

1    actually having you look at this to say -- for you to say why,

2    why can they see this.

3            THE COURT:  So you want me to focus -- when I'm

4    making my decision, one of the things you want me to focus on

5    is, is actually just to be really clear --

6            MS. McCURRY:  Yes.

7            THE COURT:  -- is document 1, page 106 dated

8    July 24th, 2017, is that correct?  Exhibit 7 is the sticker at

9    the bottom.

10           MS. McCURRY:  Yes.  Yes.  I would like you --

11           THE COURT:  All right.  You want me to take that into

12   consideration?

13           MS. McCURRY:  Yes.  I would like -- I would like you

14   to look at that and see that self insured Kenco can see the,

15   the -- has a view, an employer view of The Hartford my

16   information.  And they -- and The Hartford is supposed to be

17   the plan administrator.

18           THE COURT:  All right.  I understand your argument,

19   and I understand --

20           MS. McCURRY:  And Kenco the -- and Kenco the plan

21   administrator.

22           THE COURT:  All right.  I under --

23           MS. McCURRY:  I mean, I, I -- you understand what I'm

24   trying to say?

25           THE COURT:  I understand your argument, and I

1  understand your direction for me to review as part of my

2  consideration this document number -- Exhibit 7 on your

3  document No. 1 of your complaint.  And the Court will take that

4  into --

5          MS. McCURRY:  Yes.  Thank you.

6          THE COURT:  I will take that into consideration.  Mr.

7  Calkins, you have nothing else, do you?

8          MR. CALKINS:  I do not, Your Honor.  Thank you for

9  your time.

10         THE COURT:  All right.  If there's nothing else

11  that's presented by any of the movants, so the matter is taken

12  under advisement.  The Court appreciates everyone's thorough

13  work on this, including you, Miss McCurry.  It's quite an

14  undertaking by somebody who's acting pro se, and the Court

15  takes that also into consideration.  And the matter will be

16  taken under advisement and ruled as expeditiously as I can.

17  All right.  Thank you all very much for your time.  Everybody

18  be safe.

19         MS. McCURRY:  Thank you, Your Honor.

20         MR. DAVIES:  Thank you.

21         MR. von SCHLEICHER:  Thank you, Your Honor.

22         MS. MATTHIS:  Thank you, Your Honor.

23         MS. ARGENTIERI:  Thank you so much.

24

25

1                              CERTIFICATE

2              I HEREBY CERTIFY that the foregoing is a true,

3    correct and complete transcript of the proceedings had at the

4    hearing of the aforementioned cause on the day and date hereof.

5

6    /s/TRACEY D. McCULLOUGH                    November 21, 2020

7    Official Court Reporter                          Date
     United States District Court
8    Northern District of Illinois
     Eastern Division
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25