

FILED

6/21/2021

SH

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EDITH MCCURRY

        PLAINTIFF,

V S .                            1 : 1 9 C V 0 4 0 6 7

                                       Judge: Sharon Johnson Coleman

MARS, INC., KENCO LOGISTICS        Magistrate Judge: Gabriel A. Fuentes

SERVICES, LLC., HARTFORD LIFE,

THE REED GROUP AND DR. KOEHLER

        DEFENDANTS,

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT AND SANCTIONS

Plaintiff, Edith McCurry, pursuant to Federal Rules of Civil Procedure 26, 33, 34, 37, their relevant subsections respectfully and the Local Rule(s) submit the following Motion to Compel complete discovery production from Defendant in compliance with the Court's order of April 23, 2021 in regards to Requests for Production #'s 22, 34, 55 & 71 and to Deem Facts as Admitted relative to the revisions #'s 19, 42 & 55, as well as, sanctions.

## INTRODUCTION

Plaintiff previously filed a motion to compel discovery from Defendant on April 20, 2021. A hearing on the motion was held on Friday, April 23, 2021-Document #129. The Honorable Court painstakingly and meticulously reviewed each of Plaintiff's discovery requests and made its ruling. The Honorable Court then ordered Defendant to respond to Plaintiff's First Request For

Production relative to #'s 22, 34, 55 & 71 and the latitude to revise Facts to be Deemed as Admitted relative to #'s 19, 42 & 55.    The Honorable Court also warned that misconduct was not without consequences.    The production and revisions were to be executed by the close of business on May 7, 2021. Additionally, Defendant was ordered to provide a certificate of compliance.  On May 7, 2021, Plaintiff received the responses and certificate of compliance from Defendant Kenco. A copy of this communication is attached as *Exhibit A*. Subsequently, there has been a communication breakdown. Defendant and its numerous counselors have not been responsive to Plaintiff's telephone and email communications.

## SUMMARY OF THE ARGUMENT

## DEFENDANT WITH AN INTENTIONAL AND RECKLESS DISREGARD FOR ITS OBLIGATION FAILED TO COMPLY WITH THE COURT'S ORDER AND ITS BASIC DISCOVERY OBLIGATIONS

### STANDARD

The Federal Rules grant the district court with discretionary authority to impose appropriate sanctions for violations of discovery orders. Fed. R. Civ. P. 37(b)(2)(A); *see e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) ("[D]istrict courts have wide latitude in fashioning appropriate sanctions.") (citation omitted). The Supreme Court has explicitly stated that sanctions may be appropriate where the noncomplying party acted *either* with willfulness, bad faith *or* fault. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (per curiam). "'Bad faith,' . . . is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco v. Gen'l Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). "'Fault,' by contrast, doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually

culminated in the violation." *Id.* "Fault," however, is more than "a mere mistake or slight error in judgment;" instead, it "suggests objectively unreasonable behavior." *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000); *see e360 Insight*, 658 F.3d at 642–43 (observing that negligence is sufficient fault for imposing sanctions).

The Court also has the inherent authority to sanction a party. The court's inherent authority is based on the court's power "to control the judicial process and litigation," *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010) (citation omitted), a power which is necessary "to fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *see Barnhill*, 11 F.3d at 1367. This authority "is based on the Court's power to manage and ensure the expeditious resolution of cases on their dockets and is not limited to discovery violations." *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *8 (N.D. Ill. Aug. 18, 2005). Thus, "[j]udges have inherent authority to impose sanctions for misconduct by litigants, their lawyers, wit-nesses, and others who participate in a lawsuit over which the judge is presiding." *S.E.C. v. First Choice Mgmt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012). "The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *FOODWORKS USA, INC. v. FOODWORKS OF ARLINGTON HEIGHTS, LLC*, No. 10 C 1020 (N.D. Ill. July1, 2013).

Whether under Rule 37 or the court's inherent authority, the party seeking sanctions must demonstrate that it was prejudiced by the discovery violation. *Marrocco*, 966 F.2d at 224. In evaluating the proposed sanction, the district court must determine if "fashion[ing] a lesser sanction . . . would adequately protect the interests of the [requesting party] while permitting [the

noncomplying party] an opportunity to present its defense." *Marrocco*, 966 F.2d at 224. To

determine an appropriate sanction, the court must "look to the entire procedural history of the case."

*Long*, 213 F.3d at 986. "In other words, we weigh not only the straw that finally broke the camel's

[Rule 37] back, **but all the straws that the recalcitrant party piled on over the course of the**

**lawsuit."**); *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000).

Moreover, the inherent power of federal courts "to manage their own affairs so as to achieve

the orderly and expeditious disposition of cases" encompasses "the ability to fashion an appropriate

sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 43–45. While a

district court's choice of sanction for discovery violations is reviewed for abuse of discretion, when

default judgment is contemplated, the court must be guided by a measure of restraint. *Barnhill v.*

*United States*, 11 F.3d 1360, 1366 (7th Cir. 1993). "[W]hen a court enters a default judgment as a

discovery violation, the court must find that the party against whom sanctions are imposed displayed

willfulness, bad faith or fault." *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 909

(7th Cir. 2003). Further, when contemplating a default judgment sanction, the court should "consider

the egregiousness of the conduct in question in relation to all aspects of the judicial process."

*Barnhill*, 11 F.3d at 1367–68. Thus, while a default judgment is considered "draconian," it is

warranted "when there is a clear record of delay or contumacious conduct, or when other, less drastic

sanctions have proven unavailing." *Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003); *see*

*Marrocco*, 966 F.2d at 224 (Default judgment "should usually be employed only in extreme

situations, where there is clear record of delay or *contumacious conduct*, or when other less drastic

sanctions have proven unavailable.") (citation omitted) (emphasis in original).

ARGUMENT

DEFENDANT INTENTIONALLY AND RECKLESSLY DISREGARDED ITS OBLIGATION
TO COMPLY WITH THE COURT'S ORDER AND DISCHARGE ITS SELF OF ITS BURDEN TO
THE FEDERAL RULES OF DISCOVERY:

On May 7, 2021, by certificate of compliance, Defendant represented to Plaintiff that it had

once again produced all relevant documents to Requests for Production #'s 22, 34, 55 & 71.  See

*Exhibit A*

After a careful review of the responses, Plaintiff contacted Defendant and told them that she

was not in agreement with their production, as there were a number of documents missing.  Plaintiff

used as an example, the fact, that Defendant had not produced the policy associated with the

disability plan that it stated that it had previously produced.  Plaintiff went on to point to the plan

that was produced as referencing the policy, indicating that the policy and the plan were not one in

the same or synonymous.  Plaintiff specifically pointed to the plan discussing the policy and its

incorporation of the plan thereof in various aspects; reiterating that the plan and policy were not the

same as outlined in Document #1 pg. 86 ¶'1 & 2 and pg. 87 §2, ¶'s 8 & 10.

There was quite a pursuit and debate about the matter, finally Defendant produced

additional documents for the first time on May 24, 2021.   A copy of this communication is

attached as *Exhibit B*.   These newly produced documents did not include the policy.

The plan states in relevant part about its financial composition and its records that are

kept on a "policy year basis." Document #1 pg. 87 ¶ 10 Therefore, at minimum there are yearly

policies from 2013 to date, accompanied by records, that can include but may not be limited to

renewal notices, amendments, changes to the policy (within and outside of the policy year), loss run

activity (claim activity), premium notices, declaration pages, coverages, deductible, terms of agreement/insuring agreements (contract), policy limits, definitions, exclusions, conditions, etc..., to which Defendant has yet to produce.

Plaintiff questioned Defendant about the May 24, 2021 production of documents and its non-compliance. Furthermore, the documents produced by Defendant on May 24, 2021 along with any other outstanding documents that were not produced, including the policy, should have been produced upon Plaintiff's initial request of December of 2020, but no later than May 7, 2021 according to the Court's order of April 23, 2021. Furthermore, it is patently unreasonable and dilatory for a Billion[1] dollar company or anyone heretofore to not know the difference between a policy and plan or simply know that one cannot define a thing with the definition of itself. i.e. a plan cannot incorporate itself into itself. Therefore, the inference that should be made and noted is that the documents being withheld by Defendant are/were favorable to Plaintiff in that they support the contention that Defendant participated in every aspect of its disability plan(s) including, but not limited to: decision making, administration, plan and financial management of its disability plan(s).

Their conduct was intentionally deceitful, dilatory and in bad faith as evidenced by its actions of May 24, 2021, when it produced, for the first time subsequent documents that it had in its possession that it refused to produce as required under Rule 26. Additionally, Defendant failed to produce other documents such as company policies (Request to Produce #22) relative to Hartford as referenced in its comprehensive appendix of policies; hereto attached as *Exhibit C*-Kenco Bate Stamp 001359 entitled Hartford PHA form. Accordingly each and every form of Defendant's has a corresponding policy in compliance with Defendant's company policies and

---

[1] Dun and Brad street reported the Kenco Group's 2021 revenue at 1.36Billion dollars

best practices to industry standards and public policy.  What is additionally reprehensible is Defendant's conduct of making disingenuous claims.  Defendant made a willful material misrepresentation of its compliance by certification on May 7, 2021 that it had produced all the documents requested and Court ordered; satisfying its obligation(s).   Such a disingenuous claim indicates willfulness and weighs in favor of severe sanctions, such as a default judgement.

## FURTHER DILATORY AND EGREGIOUS LITIGATION MISCONDUCT

To date, Defendant has not responded to Plaintiff's additional telephone and email communications to resolve the outstanding discovery issues.   Defendant's failure to reply to Plaintiff's communications is unprofessional, dilatory, dismissive and in bad faith.  Defendant's continual refusal to produce the policy and other documents[2] as requested and ordered by the court is inherently apart of Defendant's pattern, practice and history to mislead, contort, misrepresent, scheme, conspire and contrive to their betterment and to the detriment of others including Plaintiff.   Furthermore, there is no way to determine, at this juncture, what other documents might be found or withheld that the Defendant was required to produce much earlier but still has not turned over that may have foreclosed Plaintiff to other discovery opportunities.

Also, Defendant failed to comply with Rule 26 disclosures. i.e. 1) failing to timely disclose after the Rule 16 conference; 2) issuing discovery requests to Plaintiff prior to issuing its Rule 26 disclosures;  3) failing to disclose etc...  See attached compiled list of Rule 26 and other violations-*Exhibit D*.

DEFENDANT'S CONDUCT IS IN DIRECT CONTRAVENTION TO THE FEDERAL RULES OF CIVIL PROCEDURE AND THE EFFICACY OF THE COURT.

---

[2] Plaintiff believes that Defendant also has documents between Defendant and the Hartford that concern Plaintiff. This would include documents to the benefits department, including but not limited to Susan Moore and Cathy Phillips among others based upon a document produced by Defendant.

The stated goals of the Federal Rules of Civil Procedure are "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1

Defendant's tactics of delay, hindrance and disingenuous claims are willful, defiant and egregiously undermining as evidence of Defendant's conduct of a blatant disregard and disrespect of the Federal Rules of Civil Procedure, this Honorable Court and the judicial process and its integrity. This behaviour should be viewed as prejudicial to Plaintiff, the judicial process and as a sanctionable intentional discovery failure and as egregious litigation misconduct.

In further support of Plaintiff's contentions regarding Defendant and its conduct, Plaintiff also believes that Defendant is also withholding documents relative to the Reed Group (Request to Produce #34). The Reed Group has stated that Defendant has records relative to the request being made of them through subpoena. Additionally, The Hartford has stated that they did not send the attending physician statement via the Reed Group. They went on to state the Reed group was a different company and that usually this type of statement comes from the employer at the initiation of a period of disability. See Document #1 pg. 135 ¶ 2. The Hartford's statement is further supported by the fact that the physician statement clearly identifies Defendant as the employer seeking information about Plaintiff. (See Document #1 pg. 125 §2) Consequently, Plaintiff contends that Defendant also has documents relative to the Reed Group that it refuses to produce as requested and ordered; which is another dilatory act of blatant intentional and willful disregard of Defendant's obligation to comply its basic discovery obligations and with the Court's order. Plaintiff contends that Defendant's refusal to produce underscores the validity of Plaintiff's allegations waged against Defendant and an inference to that should be made by the court. As well as, the fact that Defendant's conduct underscores a continuing saga of dilatory conduct that satisfies the threshold for entering a default judgment under Rule 37.

In further support of Plaintiff's contentions regarding Defendant and its contemptuous conduct, Plaintiff also believes that Defendant is also withholding documents relative to US Administration. As referenced in Plaintiff's April 20, 2021 motion to compel on page 10 ¶ 2 and Exhibit I US Administration stated that ***Defendant made decisions*** that affected Plaintiff's benefits. Therefore, it stands to reason that there was communication between Defendant and US Administration regarding Plaintiff, to which Defendant has again refused to produce upon request and Court order; again, another prime example of Defendant's blatant, intentional and willful disregard of the judicial processes, this Court and Defendant's obligation to comply with the Court's order.

Withholding and/or destroying relevant documents in a lawsuit means that the documents will never be considered by opposing litigants, their counsel or the Court. This conduct necessarily and fundamentally compromises federal court proceedings and further supports an order of default judgment. Wade v. Soo Line R.R. Corp., 500 F.3d 559, 564 (7th Cir.2007); Maynard v. Nygren, 332 F.3d 462, 467 (7th Cir.2003)

## DEFENDANT'S CONDUCT OF DISINGENUOUS CLAIMS AND INTENTIONAL MISLEADING IS CORRUPT

Defendant's responses to the Request to Admits are equally troubling and misleading. Each answer is a partial truth and a misrepresentation of the truth. For example, #42 states that Len Szplett does limited invoicing. Contrarily, Defendant's job posting for Office Manager to which Szplett performed the duties of states that Szplett's is ***responsible for all invoicing***. A copy of this communication is attached as *Exhibit D pg. 2§2 ¶7*. Defendant maintains through various communications that Szplett indeed was the Office Manager see *Exhibit D pg. 4-15*. Consequently, it can be easily inferred that Defendant has made this misleading misrepresentation

for some impermissible, pretextual and/or unlawful reason(s).  Especially, in view of the fact that immediately prior to this precise and detailed representation of Szplett's limited invoicing, Defendant's immediate past response contended that the request was and remained ambiguous even after clarification was provided. (Plaintiff's Motion to Compel-pg. 31 ¶42)

Another not so seamless example of an untruthful response is Request to Admit #55, Defendant suggests that *only* the disability records are maintained for seven (7) years.  To the contrary, Defendant's written policy states that ***all records*** are maintained for seven (7) years.  *See Exhibit E* pg. 3 § 3.4 and is also referenced again in § 3.6.2.  It also outlines that Defendant has a site coordinator for each site that maintains all the records for the site as outlined ISO-QE-4.2.4.001 in compliance to the codified standards of Food Safety and Modernization Act. Additionally, the VP of Defendant's operation also noted Defendant's policy of a seven (7) year retention policy.  *See Exhibit E pg.7*

Given that Defendant is mandated to have each and every policy, procedure, protocol, best practice and form documented in accordance 21 CFR Chapter I Subchapter A Part 1 General Enforcement Regulations Subpart M, Defendant's failure to follow its own written policies by misrepresenting its policies is an easy and logical inference that gives rise to the fact that Defendant is hiding something and their reasons are pretextual (*Rudin v. Lincoln Land Community College*, 420 F.3d 712 (7th Cir. 2005) at 727 and is a part of a broader pattern of intransigence and misrepresentation.

DEFENDANT'S RESPONSES ARE MORE THAN ANOMALIES THEY ARE PRETEXTUAL

Plaintiff contends that these inconsistencies and conflicts within Defendant's own policies are pretextual; *Patterson v. McLean Credit Union,* 491 U.S. 164, 187-88, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)  And are in lockstep with Defendant's pattern and practice of contrived schemes to commit fraud on the court, dupe the judicial system, continually violate Plaintiff's protected rights and intentionally inflict further emotional, physical and economic distresses upon Plaintiff.  Plaintiff's discrediting of employer's explanation is entitled to considerable weight, such that Plaintiff should not be routinely required to submit evidence over and above proof of pretext. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Additionally, the Court has "construed the sanctioning power conveyed by Rule 37 to extend to instances of a party hiding evidence and lying..." *Negrete v. Nat'l R.R. Passenger Corp.,* 547 F.3d 721, 723-24 (7th Cir. 2008).

## DEFENDANT'S CONDUCT IS CONTUMACIOUS TO THE JUDICIAL PROCESS AND ITS INTEGRITY
DEFENDANT HAS A HISTORY OF IMPEDING JUSTICE AND ITS ADMINISTRATION

Defendant has engaged in a number of tactics to hinder, delay, confuse and mislead the courts over and beyond the aforementioned instances.

### *SAME DEFENDANT SAME LEGAL COUNSEL*

For example, Defendant's 12(b)(6) motion to dismiss before this court (Document #17) alleged that Plaintiff was attempting to re-litigate a matter that already had been adjudicated in violation of FRCP 11; when in fact the issues before this court had not even occurred prior to the dismissal of the previous litigation.  Defendant knew this to be true, but still willfully and intentionally made patently false and misleading statements in an improper motion before this

court. Defendant knew these statements were false and misleading, so much so, that it did not raise this affirmative defense of Res Judicata when they responded to the EEOC in its position statement in 2018. It is unreasonable to contemplate and assert that the same Defendant and its same legal counsel were unable to draw an inference or a nexus in a meaningful way to support these assertions on the administrative level prior to reaching this Honorable Court. Furthermore, if those contentions were found to be true we would not be here today.

Next Defendant also raised issues of overlapping cases with the DOL. Defendant is fully aware that the governing statute for the claims filed at the DOL is governed by the Food Safety and Modernization Act and requires an administrative prerequisite to which they engaged in with OSHA. Furthermore, if Plaintiff, a lay person, unastute in and not well versed in the law, was able to interpret and reason that there were two (2) separate and distinct processes and statutes relative to claims being filed under Title VII and FSMA, Defendant should have concluded that as well. Consequently, it is unfathomable that Defendant and their legal counsel could not make these deduction(s) using the literal and ordinary meanings of the words enacted by Congress to arrive at the conclusion that they are different codified standards independent of one another. Plaintiff contends that this was just another tactic to prejudice Plaintiff and impede justice and its administration.

Defendant also knew that Hartford did not manage, administer or was the administrator for the Defendant relative to benefits that were at issue before the District Court in Urbana-16-cv-2273, but knowingly purported this misnomer.

Defendant and its agent knew that it in September of 2020 that it was misrepresenting to this Court that Plaintiff was still receiving benefits, when in fact Plaintiff has once again without merit been repeatedly delayed and denied benefits, due and owing Plaintiff, since April of 2020.

Likewise, Plaintiff contends that there is a nexus between the interruption of Plaintiff's benefits and her protected activities.

Plaintiff also contends that Defendant is the financial manager of the benefits at issue here before the court according to Docket #1 pg. 109. In further support of this contention, Plaintiff noticed on the portal used to grant access to information about Plaintiff's claims identifies Defendant's portal used to manage the benefit programs and pay bills refer to Exhibit F Defendant continued and continues to have access to Plaintiff's detailed claims summary well after it alleged that it had discharged itself of its obligation to Plaintiff. Docket #1 pgs. 106-110

Defendant also knew that it represented that Len Szplett was the HR Manager, when it was convenient for them to prevail on previous claims. i.e. Defendant's Motion for Summary Judgment *McCurry v. Kenco et al.... 16 CV 2273-Doc.# 113 pg. 3 ¶ 7*, Seventh Circuit Case No. 18-3206, IDHR/EEOC matters 2014CF0475/21BA32440 among other instances. However, in contrast, same Defendant ~same legal counsel, in defending claims against Szplett[3] stated that he was just the Office Manager and he had never been the HR Manager; therefore, he did not have a demotion, reduction in job duties and pay etc...And the caveat to this all was employment decisions regarding Szplett were not based on his performance. See Exhibit D pg. 11 ¶ 4 §2; also see pg. 6 (Job equivalencies Accounting/HR Manager -Office Manager); Also see *Exhibit G*. Plaintiff also asks the Court to take judicial notice of these accounts[4].

DEFENDANT'S CONTUMACIOUS CONDUCT SPOILED THE BARREL

---

[3] When Szplett failed to act in complicity with Defendant, who is a self-admitted discriminator against African – Americans *(Brown v. Kenco-3:10-CV-0668),* he was demoted and replaced by Lori Varvel. *See Szplett v. Mars, et al... 1:19 CV 02500*)

[4] Additionally, there are numerous other fact based occurrences that have transpired to support Plaintiff's contentions about Defendant's contumacious and egregious conduct. These and other instances can be further identified, explained and supported in greater detail upon request**.**

Defendant's insidious conduct of being first to "court," in this matter, to make patently false statements and allegations of Res Judicata, violations of FRCP 11 and other claims became the quintessential basis for a domino or snowball effect. Prompting other Defendants, who were not previously ripe for any legal action, to jump on Defendant's bandwagon of raising these same defense(s) without legitimacy or merit before this court. Arguendo, say the other Defendants, i.e. the Reed Group, were correct in their affirmative defense because of privity to Defendant; Defendant's current position on the Reed Group becomes another disingenuous claim.

DEFENDANT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant is aware of and has been placed on notice of Plaintiff's medical conditions that were a proximate result of Defendant's previous conduct that preempted Plaintiff's acute and long term illnesses. Additionally, Defendant's egregious and dilatory conduct under any circumstance would be stressful, but under these circumstances it is causing further irreparable harms and is deliberate and unconscionable.

**Accountability**

Plaintiff seeks to hold Defendant accountable for its irreparable prejudicial harms and egregious misconduct(s) that include willfully failing to produce documents, its disingenuous claims and less than truthful response(s) to Plaintiff's discovery requests and its blatant disregard to its discovery obligations, justice and its administration, as well as, Defendant's dilatory conduct that has dragged this court and Plaintiff, a pro se litigant, through a pattern of prolonged and vexatious discovery hindrances and obstructions.

Considering that Defendant outright poo-pooed on Plaintiff's discovery request, its obligations to the judicial process and subsequently on this Honorable Court's order, Plaintiff is at the mercy of this Honorable Court; seeking the full force of this Honorable Court, as the

gatekeeper to justice for all who quest for justice, to right these egregious wrong(s) and to sufficiently deter such future maniacal behaviours from Defendant and others that continue to foster and contribute to systematic discrimination and racism within our society.

**RELIEF**

Plaintiff seeks all relief that is available to her under these circumstances. Including, but not limited to a default judgment based upon Rule 37 and the violations previously cited. As well as, an order drawing the inference that Defendant's failure to comply to its basic discovery obligations and the court's order is because the documents are/were favorable to Plaintiff in that they support the contention that Defendant actively participated in every aspect of its disability plan(s) including, but not limited to: decision making, benefit and other administrations, plan and financial management of its disability plan(s), as it related to Plaintiff and her claims.

Additionally, Plaintiff seeks to have the Request to Admits fully admitted with respect to #'s 19, 42 & 55. Plaintiff also seeks to have Defendant produce documents and or correspondence relative to the Reed Group, the DOL-OSHA, US Administration relative to Plaintiff's claims as referenced in Plaintiff's complaint. As well as, anything else this Court may deem proper.

Plaintiff requests an order awarding fees to be given to the Hibbler Legal Aid Clinic, the Court and the Clerk or any such other sanction(s) as this Court deems just and appropriate.

***WHEREFORE and In conclusion***, for all of the above stated reasons, Plaintiff respectfully requests this Court to issue an order granting the aforementioned relief and grant such other relief as this Court deems just and proper.

DATED: June 21, 2021

Edith McCurry (pro se)
6239 South 13110 East Road
Pembroke Township, IL 60958

**CERTIFICATE OF SERVICE**

The undersigned, Edith McCurry, hereby certifies that on this 21th day of June, 2021 she caused a copy of the foregoing **PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT AND SANCTIONS** to be filed with the Northern District of Illinois Eastern Division in the foregoing matter of Case No. 19-cv-04067 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system.

Casey Leech
Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Julia.Argentieri@jacksonlewis.com;
Jody.Moran@jacksonlewis.com

Edith McCurry (pro se)
6239 South 13110 East Road
Pembroke Township, IL 60958

## **CERTIFICATE OF COMPLIANCE**

The undersigned, Edith McCurry, hereby certifies pursuant to local rule 37.2 that she complied with the local rule by telephoning Defendant's counsel on several occassions including May 21, 2021 and as recent as June 17, 2021 to discuss the outstanding discovery issues. In particular, but not limited to the policy that Defendant once again refernced in the documents that it submitted on May 24, 2021, after it alleged to have complied with the court's ordered deadline of May 7, 2021 by certification. Additionally, Plaintiff has emailed Defendant's counsel with these same concerns. Defendant's counsel stopped communicating with Plaintiff after May 28, 2021 and did not return any of her calls. Plaintiff did not become aware that her motion was improper until June 17, 2021 and at that time once again reached out to Defendant's counsel before refiling and up until the time of this filing Plaintiff is unaware that Defendant's counsel returned her calls or attempted to produce the discovery that is at controversy.

Casey Leech
Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Julia.Argentieri@jacksonlewis.com;
Jody.Moran@jacksonlewis.com

Edith McCurry (pro se)
6239 South 13110 East Road
Pembroke Township, IL 60958

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**DEFENDANT KENCO LOGISTIC SERVICES, LLC'S
CERTIFICATE OF COMPLIANCE**

Pursuant to Magistrate Judge Fuentes' April 23, 2021 Minute Entry (ECF No. 129),
Defendant Kenco Logistic Services, LLC ("Kenco") hereby certifies that no additional documents
responsive to Plaintiff's Requests for Production Nos. 22, 34, 55, and 71 are known to be in
Kenco's possession, other than the documents already produced by Kenco. Kenco makes this
certification after a reasonable search.

Dated: May 7, 2021                                         Respectfully submitted,

By:     **KENCO LOGISTIC SERVICES, LLC**

*/s/ Jody Wilner Moran*
Jody Wilner Moran
Julia Pierce Argentieri
J. Casey Leech
Jackson Lewis P.C.
150 North Michigan Avenue #2500
Chicago, IL 60601
(312) 787-4949
Jody.Moran@jacksonlewis.com
Julia.Argentieri@jacksonlewis.com
Casey.Leech@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy of the foregoing **DEFENDANT KENCO LOGISTIC SERVICES, LLC'S CERTIFICATE OF COMPLIANCE** to be served by email and first class mail delivery to:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com


By: */s/ Jody Wilner Moran*

**IN THE UNITED STATEDS DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**DEFENDANT KENCO LOGISTIC SERVICES, LLC'S REVISED RESPONSES TO
FOUR OF PLAINTIFF'S PRODUCTION REQUESTS**

Pursuant Magistrate Judge Fuentes' April 23 ruling, Defendant, Kenco Logistic Services,

LLC, improperly named as Kenco Logistics Services, ("Kenco" or "Defendant"), responds to

Plaintiff's Requests for Production of Documents 22, 34, 55 and 71 as follows:

22.     Any and all Company policies or other Company documents provided agreed upon

between Defendant and Hartford or obtained during your business relationship with Hartford.

**RESPONSE:**          Any and all policies and documents between Kenco and the Hartford

that relate to Plaintiff have been produced.

34.     Any and all documents provided by you to the:1) Hartford, 2) The reed Group, 3)

U.S. Administration, 4) Department of Labor-OSHA and EBSA, 5) Tennessee Department of

Insurance, 6) and any other party and or agent and or subcontractor of Defendant in this action.

**RESPONSE:**          There are no documents that relate to Plaintiff, other than what Kenco

already has produced, which are responsive to this request.

55.     Any and all written agreements and addendums between Defendants Kenco and

Hartford from 2013 to present.

  **RESPONSE:**  All documents between Kenco and The Hartford that relate to Plaintiff have been produced.

  71. All memos, emails, letters, correspondence, communications, applications and disbursements to and from Kenco and the Hartford, including but not limited to: its agents and or employees, as well as, any other person or entity relative to McCurry.

  **RESPONSE:**  All documents between Kenco and The Hartford that relate to Plaintiff have been produced.

Dated: May 7, 2021       Respectfully submitted,

          By: **KENCO LOGISTIC SERVICES, LLC**

            */s/ Jody Wilner Moran*
            Jody Wilner Moran
            Jackson Lewis P.C.
            150 North Michigan Avenue #2500
            Chicago, IL 60601
            (312) 787-4949
            Jody.Moran@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy of the foregoing ***DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S PRODUCTION REQUESTS 22, 34, 55 & 71*** to be served by email and U.S. mail, postage prepaid to the following non-ECF participant:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com

By:  */s/ Jody Wilner Moran*

**IN THE UNITED STATEDS DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | | |

**DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S
REQUESTS TO ADMIT 19, 42 and 55**

Defendant KENCO LOGISTIC SERVICES, LLC, ("KENCO"), pursuant to Magistrate Judge Fuentes April 23 rulings, responds to Plaintiff's Requests to Admit 19, 42 and 55 as follows:

19.     Kenco was the plan administrator for disability benefits.

**RESPONSE:** Denied. Responding further, Kenco admits only that it was the Plan Administrator of the Group Long Term Disability Plan for employees of KENCO (the "Plan") as ERISA defines that term, and thus was responsible for certain Plan functions. Kenco denies, however, that it retained any responsibility for making benefits decisions under the Plan because it delegated exclusive discretionary authority to make those decisions to The Hartford under Policy No. GLT-674076 issued by The Hartford to Kenco.

42.     Leonard Szplett did invoicing monthly.

**RESPONSE:** Kenco admits that Leonard Szplett prepared or sent out certain invoices to third parties generally monthly.

55.     Defendant Kenco was to maintain its records for seven (7) years.

**RESPONSE:** Kenco admits that it maintains documents regarding benefits for seven (7) years.

Dated: May 7, 2021                          Respectfully submitted,

                                    By:  **KENCO LOGISTIC SERVICES, LLC**

                                         */s/ Jody Wilner Moran*
                                         Jody Wilner Moran
                                         Jackson Lewis P.C.
                                         150 North Michigan Avenue #2500
                                         Chicago, IL 60601
                                         (312) 787-4949
                                         Jody.Moran@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy of the foregoing ***DEFENDANT KENCO'S LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT 19, 42 & 55*** to be served by email and first class mail delivery to:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com

By: */s/ Jody Wilner Moran*

# YOUR
# BENEFIT
# PLAN

KENCO

**Short Term Disability**

KENCO 001536

KENCO 001537

## Questions or Complaints about Your Coverage

**In the event You have questions or complaints regarding any aspect of Your coverage, You should contact Your Employee Benefits Manager or You may write to us at:**

The Hartford
Group Benefits Division, Customer Service
P.O. Box 2999
Hartford, CT 06104-2999

**Or call Us at:** 1-800-523-2233

When calling, please give Us the following information:
1) the policy number; and
2) the name of the policyholder (employer or organization), as shown in Your Certificate of Insurance.

**Or You may contact Our Sales Office:**
Hartford Life and Accident Insurance Company
Group Sales Department
1125 Sanctuary Parkway
Suite 450
Alpharetta, GA 30009
TOLL FREE: 888-560-9632
FAX: 770-475-1404

**If you have a complaint, and contacts between you and the insurer or an agent or other representative of the insurer have failed to produce a satisfactory solution to the problem, the following states require we provide you with additional contact information:**

| For residents of: | Write | Telephone |
|---|---|---|
| **Arkansas** | Arkansas Insurance Department<br>Consumer Services Division<br>1200 West Third Street<br>Little Rock, AR 72201-1904 | 1(800) 852-5494<br>1(501) 371-2640 (in the Little Rock area) |
| **California** | State of California Insurance Department<br>Consumer Communications Bureau<br>300 South Spring Street, South Tower<br>Los Angeles, CA 90013 | 1(800) 927-HELP |
| **Idaho** | Idaho Department of Insurance<br>Consumer Affairs<br>700 W State Street, 3rd Floor<br>PO Box 83720<br>Boise, ID 83720-0043 | 1-800-721-3272 or www.DOI.Idaho.gov |
| **Illinois** | Illinois Department of Insurance<br>Consumer Services Station<br>Springfield, Illinois 62767 | Consumer Assistance: 1(866) 445-5364<br>Officer of Consumer Health Insurance:<br>1(877) 527-9431 |
| **Indiana** | Public Information/Market Conduct<br>Indiana Department of Insurance<br>311 W. Washington St. Suite 300<br>Indianapolis, IN 46204-2787 | Consumer Hotline: 1(800) 622-4461<br>1(317) 232-2395 (in the Indianapolis Area) |
| **Virginia** | Life and Health Division<br>Bureau of Insurance<br>P.O. Box 1157<br>Richmond, VA 23209 | 1(804) 371-9741 (inside Virginia)<br>1(800) 552-7945 (outside Virginia) |
| **Wisconsin** | Office of the Commissioner of Insurance<br>Complaints Department<br>P.O. Box 7873 | 1(800) 236-8517 (outside of Madison)<br>1(608) 266-0103 (in Madison)<br>to request a complaint form. |

KENCO 001538

Madison, WI 53707-7873

**The following states require that We provide these notices to You about Your coverage:**

**For residents of:**

| | |
|---|---|
| **Arizona** | This certificate of insurance may not provide all benefits and protections provided by law in Arizona. Please read This certificate carefully. |
| **Florida** | The benefits of the policy providing you coverage are governed primarily by the laws of a state other than Florida. |

## STATE OF DELAWARE
### The Civil Union and Equality Act of 2011
### Effective January 1, 2012

In accordance with Delaware law, insurers are required to provide the following notice to applicants of insurance policies issued in Delaware.

The Civil Union and Equality Act of 2011 ("the Act") creates a legal relationship between two persons of the same sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Delaware to spouses in a legal marriage. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Delaware law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of same sex civil unions or marriages legally entered into in other jurisdictions.

For more information regarding the Act, refer to Chapter 2 of Title 13 of the Delaware Code or the State of Delaware website at www.delaware.gov/CivilUnions.

#### Georgia
The laws of the state of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family abuse.

## STATE OF ILLINOIS
### The Religious Freedom Protection and Civil Union Act
### Effective June 1, 2011

In accordance with Illinois law, insurers are required to provide the following notice to applicants of insurance policies issued in Illinois.

The Religious Freedom Protection and Civil Union Act ("the Act") creates a legal relationship between two persons of the same or opposite sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Illinois to spouses. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Illinois law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of civil unions or same sex civil unions or marriages legally entered into in other jurisdictions.

KENCO 001539

For more information regarding the Act, refer to 750 ILCS 75/1 *et seq*. Examples of the interaction between the Act and existing law can be found in the Illinois Insurance Facts, Civil Unions and Insurance Benefits document available on the Illinois Department of Insurance's website at www.insurance.illinois.gov.

## Maine

1.  The benefits under this policy are subject to reduction due to other sources of income.

    This means that your benefits will be reduced by the amount of any other benefits for loss of time provided to you or for which you are eligible as a result of the same period of disability for which you claim benefits under this policy.

    Other sources of income are plans or arrangements of coverage that provide disability-related benefits such as Worker's Compensation or other similar governmental programs or laws, or disability-related benefits received from your employer or as the result of your employment, membership or association with any group, union, association or other organization. Other sources of income include disability-related benefits under the United States Social Security Act or an alternate governmental plan, the Railroad Retirement Act, and other similar plans or acts. Other sources of income may also include certain disability-related or retirement benefits that you receive because of your retirement unless you were receiving them prior to becoming disabled.

    What comprises other sources of income under this policy is determined by the nature of the policyholder. Therefore, we strongly urge you to **Read Your Certificate Carefully.** A full description of the plans and types of plans considered to be other sources of income under this policy will be found in the definition of "Other Income Benefits" located in the Definitions section of your certificate.

2.  The laws of the State of Maine require notification of the right to designate a third party to receive notice of cancellation, to change the designation and, policy reinstatement if the insured suffers from organic brain disease and the ground for cancellation was the insured's nonpayment of premium or other lapse or default on the part of the insured.

    Within 10 days after a request by an insured, a Third Party Notice Request Form shall be mailed or personally delivered to the insured.

## Maryland

**The group insurance policy providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.**

## Montana

Conformity with Montana statutes: The provisions of this certificate conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the insured resides on or after the effective date of this certificate.

## North Carolina

UNDER NORTH CAROLINA GENERAL STATUTE SECTION 58-50-40, NO PERSON, EMPLOYER, FINANCIAL AGENT, TRUSTEE, OR THIRD PARTY ADMINISTRATOR, WHO IS RESPONSIBLE FOR THE PAYMENT OF GROUP LIFE INSURANCE, GROUP HEALTH OR GROUP HEALTH PLAN PREMIUMS, SHALL:
1)  CAUSE THE CANCELLATION OR NONRENEWAL OF GROUP LIFE INSURANCE, GROUP HEALTH INSURANCE, HOSPITAL, MEDICAL, OR DENTAL SERVICE CORPORATION PLAN, MULTIPLE EMPLOYER WELFARE ARRANGEMENT, OR GROUP HEALTH PLAN COVERAGES AND THE CONSEQUENTIAL LOSS OF THE COVERAGES OF THE PERSON INSURED, BY WILLFULLY FAILING TO PAY THOSE PREMIUMS IN ACCORDANCE WITH THE TERMS OF THE INSURANCE OR PLAN CONTRACT; AND
2)  WILLFULLY FAIL TO DELIVER, AT LEAST 45 DAYS BEFORE THE TERMINATION OF THOSE COVERAGES, TO ALL PERSONS COVERED BY THE GROUP POLICY WRITTEN NOTICE OF THE PERSON'S INTENTION TO STOP PAYMENT OF PREMIUMS. VIOLATION OF THIS LAW IS A FELONY. ANY PERSON VIOLATING THIS LAW IS ALSO SUBJECT TO A COURT ORDER REQUIRING THE PERSON TO COMPENSATE PERSONS INSURED FOR EXPENSES OR LOSSES INCURRED AS A RESULT OF THE TERMINATION OF THE INSURANCE.

**IMPORTANT TERMINATION**
**INFORMATION**

**YOUR INSURANCE MAY BE CANCELLED BY THE COMPANY. PLEASE READ THE TERMINATION PROVISION IN THIS CERTIFICATE.**

**THIS CERTIFICATE OF INSURANCE PROVIDES COVERAGE UNDER A GROUP MASTER POLICY. THIS CERTIFICATE PROVIDES ALL OF THE BENEFITS MANDATED BY THE NORTH CAROLINA INSURANCE CODE, BUT YOU MAY NOT RECEIVE ALL OF THE PROTECTIONS PROVIDED BY A POLICY ISSUED IN NORTH CAROLINA AND GOVERNED BY ALL OF THE LAWS OF NORTH CAROLINA.**

**PRE-EXISTING LIMITATION**
**READ CAREFULLY**
**NO BENEFITS WILL BE PAYABLE UNDER THIS PLAN FOR PRE-EXISTING CONDITIONS WHICH ARE NOT COVERED UNDER THE PRIOR PLAN. PLEASE READ THE LIMITATIONS IN THIS CERTIFICATE.**

**READ YOUR CERTIFICATE CAREFULLY.**

**Texas**

| | |
|---|---|
| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call The Hartford's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de The Hartford para informacion o para someter una queja al: |
| 1-800-523-2233 | 1-800-523-2233 |
| You may also write to The Hartford at:<br>P.O. Box 2999<br>Hartford, CT 06104-2999 | Usted tambien puede escribir a The Hartford:<br>P.O. Box 2999<br>Hartford, CT 06104-2999 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| 1-800-252-3439 | 1-800-252-3439 |
| You may write the Texas Department of Insurance at:<br>P.O. Box 149104<br>Austin, TX 78714-9410<br>Fax # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us | Puede escribir al Departamento de Seguros de Texas:<br>P.O. Box 149104<br>Austin, TX 78714-9410<br>Fax # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:**<br>Should you have a dispute concerning your premium or about a claim you should contact the agent or The Hartford first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:**<br>Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o The Hartford primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:**<br>This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:**<br>Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

KENCO 001541

**Group Disability Income Insurance**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
**200 Hopmeadow Street
Simsbury, Connecticut 06089
(A stock insurance company)**

### CERTIFICATE OF INSURANCE

**Policyholder:** KENCO
**Policy Number:** GRH-674076
**Policy Effective Date:** June 1, 2001
**Policy Anniversary Date:** January 1, 2015

We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under The Policy. The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.

Signed for the Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

---

*A note on capitalization in this certificate:*

Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

Form GBD-1200 (10/08)                                                      (674076) 4.09

KENCO 001542

# TABLE OF CONTENTS

SCHEDULE OF INSURANCE ...........................................................................................................9
   Cost of Coverage .................................................................................................................9
   Eligible Class(es) for Coverage ...........................................................................................9
   Eligibility Waiting Period for Coverage ................................................................................9
   Weekly Benefit ....................................................................................................................9
ELIGIBILITY AND ENROLLMENT .................................................................................................9
   Eligible Persons ..................................................................................................................9
   Eligibility for Coverage ........................................................................................................9
   Enrollment ...........................................................................................................................9
PERIOD OF COVERAGE .............................................................................................................10
   Effective Date ...................................................................................................................10
   Deferred Effective Date ....................................................................................................10
   Termination ......................................................................................................................10
   Continuation Provisions ...................................................................................................10
BENEFITS ...................................................................................................................................11
   Disability Benefit ...............................................................................................................11
   Disabled and Working Benefit ..........................................................................................11
   Termination of Payment ...................................................................................................12
   Rehabilitative Employment Benefit ...................................................................................12
EXCLUSIONS AND LIMITATIONS ..............................................................................................12
   Pre-existing Condition Limitation ......................................................................................13
GENERAL PROVISIONS .............................................................................................................13
DEFINITIONS ..............................................................................................................................17
AMENDATORY RIDER .................................................................................................................21
ERISA ..........................................................................................................................................27

KENCO 001543

## SCHEDULE OF INSURANCE

The Policy of short term Disability insurance provides You with short term income protection if You become Disabled from a covered Injury, Sickness, or pregnancy.

**The benefits described herein are those in effect as of January 1, 2015.**

**Cost of Coverage:**
You do not contribute toward the cost of coverage.

**Eligible Class(es) For Coverage:**
All Full-time Active Employees who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees.

> Full-time Employment:  at least 30 hours weekly

**Eligibility Waiting Period for Coverage:**
1) None - if You are working for the Employer on the Policy Effective Date; or
2) 90 day(s) - if You start working for the Employer after the Policy Effective Date.

The time period(s) referenced above are continuous.

**Benefits Commence:**
1) for Disability caused by Injury: on the 15th day of Total Disability or Disabled and Working;
2) for Disability caused by Sickness: on the 15th day of Total Disability or Disabled and Working.

**Weekly Benefit:**
The lesser of:
1) 60% of Your Pre-disability Earnings; or
2) $1,000;
reduced by Other Income Benefits.

**Maximum Duration of Benefits Payable:**
1) if Your Disability is the result of a Pre-existing Condition: no benefit payable; otherwise
2) 26 week(s) if caused by Injury; or
3) 26 week(s) if caused by Sickness.

### Additional Benefits:

**Disabled and Working Benefit**
see benefit

**Rehabilitative Employment Benefit**
see benefit

## ELIGIBILITY AND ENROLLMENT

**Eligible Persons:**  *Who is eligible for coverage?*
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**Eligibility for Coverage:**  *When will I become eligible?*
You will become eligible for coverage on the later of:
1) the Policy Effective Date; or
2) the date on which You complete the Eligibility Waiting Period for Coverage shown in the Schedule of Insurance, if applicable.

**Enrollment:**  *How do I enroll for coverage?*
All eligible Active Employees will be enrolled automatically by the Employer.

KENCO 001544

# PERIOD OF COVERAGE

**Effective Date:** *When does my coverage start?*
Your coverage will start on the date You become eligible.

**Deferred Effective Date:** *When will my effective date for coverage or a change in my coverage be deferred?*
If You are absent from work due to:
1) accidental bodily injury;
2) Sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy;

on the date Your insurance, or increase in coverage, would otherwise have become effective, Your insurance, or increase in coverage will not become effective until You are Actively at Work one full day.

**Continuity From A Prior Policy:** *Is there continuity of coverage from a Prior Policy?*
If You were:
1) insured under the Prior Policy; and
2) not eligible to receive benefits under the Prior Policy;

on the day before the Policy Effective Date, the Deferred Effective Date provision will not apply.

**Termination:** *When will my coverage end?*
Your coverage will end on the earliest of the following:
1) the date The Policy terminates;
2) the date The Policy no longer insures Your class;
3) the date premium payment is due but not paid;
4) the last day of the period for which You make any required premium contribution;
5) the date Your Employer terminates Your employment; or
6) the date You cease to be a Full-time Active Employee in an eligible class for any reason;

unless continued in accordance with any of the Continuation Provisions.

**Continuation Provisions:** *Can my coverage be continued beyond the date it would otherwise terminate?*
Coverage can be continued by Your Employer beyond a date shown in the Termination provision, if Your Employer provides a plan of continuation which applies to all employees the same way. Continued coverage:
1) is subject to any reductions in The Policy;
2) is subject to payment of premium by the Employer; and
3) terminates if:
   a) The Policy terminates; or
   b) coverage for Your class terminates.

In any event, Your benefit level, or the amount of earnings upon which Your benefits may be based, will be that in effect on the day before Your coverage was continued. Coverage may be continued in accordance with the above restrictions and as described below:

<u>Leave of Absence:</u> If You are on a documented leave of absence, other than Family and Medical Leave, Your coverage may be continued until the last day of the month following the month in which the leave of absence commenced. If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

<u>Layoff:</u> If You are temporarily laid off by the Employer due to lack of work, Your coverage may be continued until the last day of the month following the month in which the layoff commenced. If the layoff becomes permanent, this continuation will cease immediately.

<u>Family and Medical Leave:</u> If You are granted a leave of absence, in writing, according to the Family and Medical Leave Act of 1993, or other applicable state or local law, Your coverage may be continued for up to 12 weeks, or 26 weeks if You qualify for Family Military Leave, or longer if required by other applicable law, following the date Your leave commenced. If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

KENCO 001545

**Coverage while Disabled:** *Does my insurance continue while I am Disabled and no longer an Active Employee?*
If You are Disabled and You cease to be an Active Employee, Your insurance will be continued:
    1)   while You remain Disabled; and
    2)   until the end of the period for which You are entitled to receive short term Disability Benefits;
provided premiums for Your coverage continued to be paid.

After short term Disability Benefit payments have ceased, Your insurance will be reinstated, provided:
    1)   You return to work for one full day as a Full-time Active Employee in an eligible class;
    2)   The Policy remains in force; and
    3)   the premiums for You were paid during Your Disability, and continue to be paid.

**Extension of Benefits for Disability:** *Do my benefits continue if The Policy terminates?*
If You are entitled to benefits while Disabled and The Policy terminates, benefits:
    1)   will continue as long as You remain Disabled by the same Disability; but
    2)   will not be provided beyond the date We would have ceased to pay benefits had the insurance remained in force.
Termination of The Policy for any reason will have no effect on Our liability under this provision.


# BENEFITS

**Disability Benefit:** *What are my Disability Benefits under The Policy?*
If, while covered under this Benefit, You:
    1)   become Disabled;
    2)   remain Disabled; and
    3)   submit Proof of Loss to Us;
We will pay the Weekly Benefit.

The amount of any Weekly Benefit payable will be reduced by:
    1)   the total amount of all Other Income Benefits, including any amount for which You could collect but did not apply; and
    2)   any income received from the Employer for the period You are Disabled.

**Partial Week Payment:** *How is a benefit calculated for a period of less than a week?*
If a Weekly Benefit is payable for less than a week, We will pay 1/5 of the Weekly Benefit for each day You were Disabled.

**Disabled and Working Benefits:** *How are benefits paid when I am Disabled and Working?*
If, while covered under this benefit, You are Disabled and Working, as defined, We will use the following calculation to determine Your Weekly Benefit:

$$\text{Weekly Benefit} = \frac{(A - B)}{A} \times C$$

$$\underline{Where}$$

**A** = Your Weekly Pre-disability Earnings.
**B** = Your Current Weekly Earnings.
**C** = The Weekly Benefit payable if You were Totally Disabled.

If You are participating in a program of Rehabilitative Employment approved by Us, We will determine Your Weekly Benefit by the Rehabilitative Employment Benefit.

Days which You are Disabled and Working may be used to satisfy the Benefits Commence Period.

**Partial Week Payment:** *How is a benefit calculated for a period of less than a week?*
If a Weekly Benefit is payable for less than a week, We will pay 1/5 of the Weekly Benefit for each day You were Disabled.

**Recurrent Disability:** *What happens to my benefits if I return to work as an Active Employee and then become Disabled again?*
When Your return to work as an Active Employee is followed by a Disability, and such Disability is:

KENCO 001546

1)  due to the same cause; or
2)  due to a related cause; and
3)  within 15 consecutive calendar days of the return to work;

the Period of Disability prior to Your return to work and the recurrent Disability will be considered one Period of Disability, provided The Policy remains in force.

If You return to work as an Active Employee for 15 consecutive calendar days or more, any recurrence of a Disability will be treated as a new Disability.

**Period of Disability** means a continuous length of time during which You are Disabled under The Policy.

**Multiple Causes:** *How long will benefits be paid if a period of Disability is extended by another cause?*
If a period of Disability is extended by a new cause while Weekly Benefits are payable, Weekly Benefits will continue while You remain Disabled, subject to the following:
1)  Weekly Benefits will not continue beyond the end of the original Maximum Duration of Benefits; and
2)  any Exclusions and Pre-existing Conditions Limitations will apply to the new cause of Disability.

**Termination of Payment:** *When will my benefit payments end?*
Benefit payments will stop on the earliest of:
1)  the date You are no longer Disabled;
2)  the date You fail to furnish Proof of Loss;
3)  the date You are no longer under the Regular Care of a Physician;
4)  the date You refuse Our request that You submit to an examination by a Physician or other qualified medical professional;
5)  the date of Your death;
6)  the date You refuse to receive recommended treatment that is generally acknowledged by Physicians to cure, correct or limit the disabling condition;
7)  the last day benefits are payable according to the Maximum Duration of Benefits;
8)  the date Your Current Weekly Earnings are equal to or greater than 80% of Your Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation; or
9)  the date no further benefits are payable under any provision in The Policy that limits benefit duration.

**Rehabilitative Employment Benefit:** *What happens to my benefits if I accept Rehabilitative Employment?*
If, while You are Totally Disabled or Disabled and Working, You accept Rehabilitative Employment, We will continue to pay a Weekly Benefit.

The Weekly Benefit We will pay will be equal to Your Total Disability Weekly Benefit, less 50% of any income received from the Rehabilitative Employment.

The sum of the Weekly Benefit and total income received from Rehabilitative Employment may not exceed 100% of Your Pre-disability Earnings. If this sum exceeds the Pre-disability Earnings, the Weekly Benefit paid by Us will be reduced by the excess amount.

We reserve the right to review any Rehabilitative Employment You participate in while benefits are being paid under The Policy.

If You remain Totally Disabled or Disabled and Working after a period of Rehabilitative Employment, You may continue to receive benefits under the Total Disability Benefit or Disabled and Working Benefit, subject to the Maximum Payment Period for such benefit.


# EXCLUSIONS AND LIMITATIONS

**Exclusions:** *What Disabilities are not covered?*
The Policy does not cover, and We will not pay a benefit for, any Disability:
1)  unless You are under the Regular Care of a Physician;
2)  that is caused or contributed to by war or act of war, whether declared or not;
3)  caused by Your commission of or attempt to commit a felony;
4)  caused or contributed to by Your being engaged in an illegal occupation;

KENCO 001547

5) caused or contributed to by an intentionally self-inflicted Injury;
6) for which Workers' Compensation benefits are paid, or may be paid, if duly claimed; or
7) sustained as a result of doing any work for pay or profit for another employer, including self-employment.

If You are receiving or are eligible for benefits for a Disability under a prior disability plan that:
1) was sponsored by Your Employer; and
2) was terminated before the Effective Date of The Policy;
no benefits will be payable for the Disability under The Policy.

**Pre-existing Condition Limitation:** *Are benefits limited for Pre-existing Conditions?*
We will not pay any benefit, or any increase in benefits, under The Policy for any Disability that results from, or is caused or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled:
1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under The Policy; or
2) You have been continuously insured under The Policy for 12 consecutive month(s).

**Pre-existing Condition** means:
1) any Injury, Sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
2) any manifestations, symptoms, findings, or aggravations related to or resulting from such Injury, Sickness, Mental Illness, pregnancy, or Substance Abuse;
for which You received Medical Care during the 3 consecutive month(s) period that ends the day before:
1) Your effective date of coverage; or
2) the effective date of a Change in Coverage.

**Medical Care** is received when a Physician or other health care provider:
1) is consulted or gives medical advice; or
2) recommends, prescribes, or provides Treatment.

**Treatment** includes but is not limited to:
1) medical examinations, tests, attendance or observation; and
2) use of drugs, medicines, medical services, supplies or equipment.

# GENERAL PROVISIONS

**Notice of Claim:** *When should I notify the Company of a claim?*
You must give Us written notice of a claim within 30 days after Disability occurs. Failure to give notice within such time shall not invalidate or reduce any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. Such notice must include Your name, Your address and the Policy Number.

**Claim Forms:** *Are special forms required to file a claim?*
We will send forms to You to provide Proof of Loss, within 15 days of receiving a Notice of Claim. If We do not send the forms within 15 days, You may submit any other written proof which fully describes the nature and extent of Your claim.

**Proof of Loss:** *What is Proof of Loss?*
Proof of Loss may include but is not limited to the following:
1) documentation of:
   a) the date Your Disability began;
   b) the cause of Your Disability;
   c) the prognosis of Your Disability;
   d) Your Pre-disability Earnings, Current Weekly Earnings or any income, including but not limited to copies of Your filed and signed federal and state tax returns; and
   e) evidence that You are under the Regular Care of a Physician;
2) any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;
3) the names and addresses of all:
   a) Physicians or other qualified medical professionals You have consulted;
   b) hospitals or other medical facilities in which You have been treated; and

13

KENCO 001548

      c)   pharmacies which have filled Your prescriptions within the past three years;
4)   Your signed authorization for Us to obtain and release:
      a)   medical, employment and financial information; and
      b)   any other information We may reasonably require;
5)   Your signed statement identifying all Other Income Benefits; and
6)   proof that You and Your dependents have applied for all Other Income Benefits which are available.

You will not be required to claim any retirement benefits which You may only get on a reduced basis. All proof submitted must be satisfactory to Us.

**Additional Proof of Loss:** *What Additional Proof of Loss is the Company entitled to?*
To assist Us in determining if You are Disabled, or to determine if You meet any other term or condition of The Policy, We have the right to require You to:
1)   meet and interview with Our representative; and
2)   be examined by a Physician, vocational expert, functional expert, or other medical or vocational professional of Our choice.

Any such interview, meeting or examination will be:
1)   at Our expense; and
2)   as reasonably required by Us.

Your Additional Proof of Loss must be satisfactory to Us. Unless We determine You have a valid reason for refusal, We may deny, suspend or terminate Your benefits if You refuse to be examined or meet to be interviewed by Our representative.

**Sending Proof of Loss:** *When must Proof of Loss be given?*
Written Proof of Loss must be sent to Us within 90 days following the completion of the Benefits Commence period. If proof is not given by the time it is due, it will not affect the claim if:
1)   it was not reasonably possible to give proof within the required time; and
2)   proof is given as soon as reasonably possible; but
3)   not later than 1 year after it is due, unless You are not legally competent.

We may request Proof of Loss throughout Your Disability, as reasonably required. In such cases, We must receive the proof within 30 day(s) of the request.

**Claim Payment:** *When are benefit payments issued?*
When We determine that You;
1)   are Disabled; and
2)   eligible to receive benefits;

We will pay accrued benefits at the end of each week that You are Disabled. We may, at Our option, make an advance benefit payment based on Our estimated duration of Your Disability. If any payment is due after a claim is terminated, it will be paid as soon as Proof of Loss satisfactory to Us is received.

Benefits may be subject to interest payments as required by applicable law.

**Claims to be Paid:** *To whom will benefits for my claim be paid?*
All payments are payable to You. Any payments owed at Your death may be paid to Your estate. If any payment is owed to:
1)   Your estate;
2)   a person who is a minor; or
3)   a person who is not legally competent;

then We may pay up to $1,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.

**Claim Denial:** *What notification will I receive if my claim is denied?*
If a claim for benefits is wholly or partly denied, You will be furnished with written notification of the decision. This written notification will:
1)   give the specific reason(s) for the denial;
2)   make specific reference to The Policy provisions on which the denial is based;
3)   provide a description of any additional information necessary to perfect a claim and an explanation of why it is necessary; and
4)   provide an explanation of the review procedure.

**Claim Appeal:** *What recourse do I have if my claim is denied?*

KENCO 001549

On any claim, You or Your representative may appeal to Us for a full and fair review. To do so, You:
1) must request a review upon written application within:
   a) 180 days of receipt of claim denial if the claim requires Us to make a determination of disability; or
   b) 60 days of receipt of claim denial if the claim does not require Us to make a determination of disability; and
2) may request copies of all documents, records, and other information relevant to Your claim; and
3) may submit written comments, documents, records and other information relating to Your claim.

We will respond to You in writing with Our final decision on the claim.

**Social Security:** *When must I apply for Social Security Benefits?*
You must apply for Social Security disability benefits when the length of Your Disability meets the minimum duration required to apply for such benefits. You must apply within 45 days from the date of Our request. If the Social Security Administration denies Your eligibility for benefits, You will be required:
1) to follow the process established by the Social Security Administration to reconsider the denial; and
2) if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**Benefit Estimates:** *How does the Company estimate Disability benefits under the United States Social Security Act?*
We reserve the right to reduce Your Weekly Benefit by estimating the Social Security disability benefits You or Your spouse and children may be eligible to receive.

When We determine that You or Your dependent may be eligible for benefits, We may estimate the amount of these benefits. We may reduce Your Weekly Benefit by the estimated amount.
Your Weekly Benefit will not be reduced by estimated Social Security disability benefits if:
1) You apply for Social Security disability benefits and pursue all required appeals in accordance with the Social Security provision; and
2) You have signed a form authorizing the Social Security Administration to release information about awards directly to Us; and
3) You have signed and returned Our reimbursement agreement, which confirms that You agree to repay all overpayments.

If We have reduced Your Weekly Benefit by an estimated amount and:
1) You or Your dependent are later awarded Social Security disability benefits, We will adjust Your Weekly Benefit when We receive proof of the amount awarded, and determine if it was higher or lower than Our estimate; or
2) Your application for Social Security disability benefits has been denied, We will adjust Your Weekly Benefit when You provide Us proof of final denial from which You cannot appeal from an Administrative Law Judge of the Office of Hearing and Appeals.

If Your Social Security benefits were lower than We estimated, and We owe You a refund, We will make such refund in a lump sum. If Your Social Security Benefits were higher than We estimated, and if Your Weekly Benefit has been overpaid, You must make a lump sum refund to Us equal to all overpayments, in accordance with the Overpayment Recovery provision.

**Overpayment:** *When does an overpayment occur?*
An overpayment occurs:
1) when We determine that the total amount We have paid in benefits is more than the amount that was due to You under The Policy; or
2) when payment is made by Us that should have been made under another group policy.

This includes, but is not limited to, overpayments resulting from:
1) retroactive awards received from sources listed in the Other Income Benefits definition;
2) failure to report, or late notification to Us of any Other Income Benefit(s) or earned income;
3) misstatement;
4) fraud; or
5) any error We may make.

**Overpayment Recovery:** *How does the Company exercise the right to recover overpayments?*
We have the right to recover from You any amount that We determine to be an overpayment. You have the obligation to refund to Us any such amount. Our rights and Your obligations in this regard may also be set forth in the reimbursement agreement You will be required to sign when You become eligible for benefits under The Policy.

KENCO 001550

If benefits are overpaid on any claim, You must reimburse Us within 30 days.

If reimbursement is not made in a timely manner, We have the right to:
1) recover such overpayments from:
   a) You;
   b) any other organization;
   c) any other insurance company;
   d) any other person to or for whom payment was made; and
   e) Your estate;
2) reduce or offset against any future benefits payable to You or Your survivors, until full reimbursement is made. Payments may continue when the overpayment has been recovered;
3) refer Your unpaid balance to a collection agency; and
4) pursue and enforce all legal and equitable rights in court.

**Subrogation:** *What are the Company's subrogation rights?*
If You:
1) suffer a Disability because of the act or omission of a Third Party;
2) become entitled to and are paid benefits under The Policy in compensation for lost wages; and
3) do not initiate legal action for the recovery of such benefits from the Third Party in a reasonable period of time;
then We will be subrogated to any rights You may have against the Third Party and may, at Our option, bring legal action against the Third Party to recover any payments made by Us in connection with the Disability.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Reimbursement:** *What are the Company's Reimbursement Rights?*
We have the right to request to be reimbursed for any benefit payments made or required to be made under The Policy for a Disability for which You recover payment from a Third Party.

If You recover payment from a Third Party as:
   a) a legal judgment;
   b) an arbitration award; or
   c) a settlement or otherwise;
You must reimburse Us for the lesser of:
   a) the amount of payment made or required to be made by Us; or
   b) the amount recovered from the Third Party less any reasonable legal fees associated with the recovery.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Legal Actions:** *When can legal action be taken against Us?*
Legal action cannot be taken against Us:
1) sooner than 60 days after the date Proof of Loss is given; or
2) more than 3 years after the date Proof of Loss is required to be given according to the terms of The Policy.

**Insurance Fraud:** *How does the Company deal with fraud?*
Insurance Fraud occurs when You and/or Your Employer provide Us with false information or file a claim for benefits that contains any false, incomplete or misleading information with the intent to injure, defraud or deceive Us. It is a crime if You and/or Your Employer commit Insurance Fraud. We will use all means available to Us to detect, investigate, deter and prosecute those who commit Insurance Fraud. We will pursue all available legal remedies if You and/or Your Employer perpetrate Insurance Fraud.

**Misstatements:** *What happens if facts are misstated?*
If material facts about You were not stated accurately:
1) Your premium may be adjusted; and
2) the true facts will be used to determine if, and for what amount, coverage should have been in force.

No statement, except fraudulent misstatements, made by You relating to Your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during Your lifetime. In order to be used, the statement must be in writing and signed by You.

16

KENCO 001551

All statements made by the Policyholder, the Employer or You under The Policy will be deemed representations and not warranties. No statement made to affect this insurance will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary or Your representative.

**Policy Interpretation:** *Who interprets the terms and conditions of The Policy?*
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy. This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

**Physical Examinations and Autopsy:** *Will I be examined during the course of my claim?*
While a claim is pending We have the right at Our expense:
1) to have the person who has a loss examined by a Physician when and as often as reasonably necessary; and
2) to make an autopsy in case of death where it is not forbidden by law.

# DEFINITIONS

**Actively at Work** means at work with the Employer on a day that is one of the Employer's scheduled workdays. On that day, You must be performing for wage or profit all of the regular duties of Your Occupation:
1) in the usual way; and
2) for Your usual number of hours.

We will consider You Actively at Work on a day that is not a scheduled work day only if You were Actively at Work on the preceding scheduled work day.

**Active Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. This must be at least the number of hours shown in the Schedule of Insurance.

**Current Weekly Earnings** means weekly earnings You receive from:
1) Your Employer; and
2) other employment;
while You are Disabled and eligible for the Disabled and Working Benefit.

However, if the other employment is a job You held in addition to Your job with Your Employer, then during any period that You are entitled to benefits for being Disabled from Your Occupation, only the portion of Your earnings that exceeds Your average earnings from the other employer over the 6 month period just before You became Disabled will count as Current Weekly Earnings.

Current Weekly Earnings also includes the pay You could have received for another job or a modified job if:
1) such job was offered to You by Your Employer, or another employer, and You refused the offer; and
2) the requirements of the position were consistent with:
a) Your education, training and experience; and
b) Your capabilities as medically substantiated by Your Physician.

**Disabled and Working** means that You are prevented by:
1) Injury;
2) Sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy;
from performing some, but not all of the Essential Duties of Your Occupation, are working on a part-time or limited duty basis, and as a result, Your Current Weekly Earnings are more than 20%, but are less than 80% of Your Pre-disability Earnings.

**Disability or Disabled** means Total Disability or Disabled and Working Disability.

**Employer** means the Policyholder.

17

KENCO 001552

**Essential Duty** means a duty that:
1) is substantial, not incidental;
2) is fundamental or inherent to the occupation; and
3) cannot be reasonably omitted or changed.

Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty.

**Injury** means bodily injury resulting:
1) directly from accident; and
2) independently of all other causes;

which occurs while You are covered under The Policy. However, an Injury will be considered a Sickness if Your Disability begins more than 30 days after the date of the accident.

**Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:
1) Mental Retardation;
2) Pervasive Developmental Disorders;
3) Motor Skills Disorder;
4) Substance-Related Disorders;
5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; or
6) Narcolepsy and Sleep Disorders related to a General Medical Condition.

**Other Income Benefits** means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits that are paid to You or Your family, or to a third party on Your behalf, pursuant to any:
1) temporary, permanent disability, or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
2) governmental law or program that provides disability or unemployment benefits as a result of Your job with Your Employer;
3) plan or arrangement of coverage, whether insured or not, which is received from Your Employer as a result of employment by or association with Your Employer or which is the result of membership in or association with any group, association, union or other organization;
4) mandatory "no-fault" automobile insurance plan;
5) disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act;
   that You, Your spouse and/or children, are eligible to receive because of Your Disability; or
6) disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
   a) that begins after You become Disabled; or
   b) that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

Other Income Benefits also means any payments that are made to You or to Your family, or to a third party on Your behalf, pursuant to any:
1) disability benefit under Your Employer's Retirement plan;
2) temporary, permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
3) portion of a judgment or settlement, minus associated costs, of a claim or lawsuit that represents or compensates for Your loss of earnings; or
4) retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
   a) You were receiving it prior to becoming Disabled; or
   b) You immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement;

KENCO 001553

(Other Income Benefits will not include the portion, if any, of such retirement benefit that was funded by Your after-tax contributions.).

The amount of any increase in Other Income Benefits will not be included as Other Income Benefits if such increase:
1) takes effect after the date benefits become payable under The Policy; and
2) is a general increase which applies to all persons who are entitled to such benefits.

**Physician** means a person who is:
1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
2) licensed to practice in the jurisdiction where care is being given;
3) practicing within the scope of that license; and
4) not You or Related to You by blood or marriage.

**Pre-disability Earnings** means Your regular weekly rate of pay not counting bonuses, commissions and tips and tokens, overtime pay or any other fringe benefits or extra compensation, in effect on the last day You were Actively at Work before You became Disabled.

**Prior Policy** means the short term disability insurance carried by the Employer on the day before the Policy Effective Date.

**Regular Care of a Physician** means that You are being treated by a Physician:
1) whose medical training and clinical experience are suitable to treat Your disabling condition; and
2) whose treatment is:
   a) consistent with the diagnosis of the disabling condition;
   b) according to guidelines established by medical, research, and rehabilitative organizations; and
   c) administered as often as needed;
   to achieve the maximum medical improvement.

**Rehabilitative Employment** means employment or service which:
1) prepares a Disabled person to resume gainful work; and
2) is approved, in writing, by Us.

**Related** means Your spouse, or other adult living with You, or Your sibling, parent, step-parent, grandparent, aunt, uncle, niece, nephew, son, daughter, or grandchild.

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for Your retirement and which is not funded wholly by Your contributions. It does not include:
1) a profit sharing plan;
2) thrift, savings or stock ownership plans;
3) a non-qualified deferred compensation plan; or
4) an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan, 403(b) plan or 457 deferred compensation arrangement.

**Sickness** means a Disability which is:
1) caused or contributed to by:
   a) any condition, illness, disease or disorder of the body;
   b) any infection, except a pus-forming infection of an accidental cut or wound or bacterial infection resulting from an accidental ingestion of a contaminated substance;
   c) hernia of any type unless it is the immediate result of an accidental Injury covered by The Policy; or
   d) pregnancy;
2) caused or contributed to by any medical or surgical treatment for a condition shown in item 1) above.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1) impairments in social and/or occupational functioning;
2) debilitating physical condition;
3) inability to abstain from or reduce consumption of the substance; or
4) the need for daily substance use to maintain adequate functioning.

19

KENCO 001554

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**The Policy** means the policy which We issued to the Policyholder under the Policy Number shown on the face page.

**Total Disability or Totally Disabled** means that You are prevented by:
1) Injury;
2) Sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy;

from performing the Essential Duties of Your Occupation, and as a result, You are earning 20% or less of Your Pre-disability Earnings.

If You are in an occupation that requires You to maintain a license, Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation alone, does not mean that You are disabled from Your Occupation.

**We, Our, or Us** means the insurance company named on the face page of The Policy.

**Weekly Benefit** means a weekly sum payable to You while You are Disabled, subject to the terms of The Policy.

**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

**You or Your** means the person to whom this certificate is issued.

KENCO 001555

**Amendatory Rider**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
### 200 Hopmeadow Street
### Simsbury, Connecticut 06089
### (A stock insurance company)

This rider is attached to a certificate given in connection with The Policy.

This rider becomes effective on the certificate effective date.

This rider is intended to amend Your certificate, as indicated below, to comply with the laws of Your state of residence. Only those references to benefits, provisions or terms actually included in Your certificate will affect Your coverage. However, if Your policy is governed under the laws of Maryland, any of the benefits, provisions or terms that apply to the state you reside in as shown below will apply only to the extent that such state requirements are more beneficial to You.

For <u>Alaska</u> residents:
1) The provision titled **Policy Interpretation** is deleted in its entirety.
2) The following provision is added to the **General Provisions** section of Your certificate:
   **Eligibility Determination**:  How will We determine Your eligibility for benefits?
   We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your eligibility or Your Spouse's or Your beneficiaries for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy.  We will:
   1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits.  We may obtain this information from Your or Your Spouse's Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending.  In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice.  You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;
   2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;
   3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;
   4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.
   In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us.  If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**.  If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

For <u>Arkansas</u> residents:
   The provision titled **Policy Interpretation** is deleted in its entirety.

KENCO 001556

For Colorado residents:
The **Change in Family Status** provision is amended to read as follows:
**Change in Family Status:** *What constitutes a Change in Family Status?*
1) You get married or enter a civil union or You execute a domestic partner affidavit;
2) You or Your spouse or divorce or terminate a civil union or You terminate a domestic partnership;
3) Your child is born or You adopt or become the legal guardian of a child;
4) Your spouse or party to a civil union or domestic partner dies;
5) Your child is emancipated or dies;
6) Your spouse or party to a civil union or domestic partner is no longer employed, which results in a loss of group insurance; or
7) You have a change in classification from part-time to full-time or from full-time to part-time.

For Indiana residents, the following sentence is added to the **Policy Interpretation** provision:
This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

For Louisiana residents, the following provision is added:
**Reinstatement after Military Service**: *Can my coverage be reinstated after return from active military service?*
If Your coverage terminates because You enter active military service, coverage for You may be reinstated, provided You request such reinstatement upon Your return to work from active military service.

The reinstated coverage will:
1) be the same coverage amounts in force on the date coverage terminated; and
2) not be subject to any Waiting Period for Coverage, Evidence of Insurability or Pre-existing Conditions Limitations; and be subject to all the terms and provisions of The Policy Reference.

For Massachusetts residents, the following is added to the **Continuation Provisions**:
In accordance with Massachusetts state law, if Your insurance terminates because Your employment terminates or You cease to be a member of an eligible class, Your insurance will automatically be continued until the end of a 31 day period from the date Your insurance terminates or the date You become eligible for similar benefits under another group plan, whichever occurs first.

Additionally, if Your insurance terminates because Your employment is terminated as a result of a plant closing or covered partial closing, Your insurance may be continued. You must elect in writing to continue insurance and pay the required premium for continued coverage. Coverage will cease on the earliest to occur of the following dates:
1) 90 days from the date You were no longer eligible for coverage as a Full-time Active Employee;
2) the date You become eligible for similar benefits under another group plan;
3) the last day of the period for which required premium is made;
4) the date the group insurance policy terminates; or
5) the date Your Employer ceases to be a Participant Employer, if applicable.
Continued coverage is subject to all other applicable terms and conditions of The Policy.

For Maine residents, the following provision is added:
**Reinstatement:** *Can my coverage be reinstated after it ends?*
We will reinstate The Policy upon receipt of all current and late premiums if:
1) You, any person authorized to act on Your behalf, or any of Your dependents may request reinstatement of The Policy within 90 days following cancellation of The Policy for nonpayment of premium provided You suffered from cognitive impairment or functional incapacity at the time the contract cancelled; and
2) all current and late premium payments are received within 15 days of Our request.

We may request a medical demonstration, at Your expense, that You suffered from cognitive impairment or functional incapacity at the time of cancellation of The Policy.

For Minnesota residents:
1) the definition of **Any Occupation** is amended by the addition of the phrase "or may reasonably become qualified" to the first line;
2) The first two paragraphs of the **Pre-Existing Conditions Limitation** provision are deleted and replaced by the following:
No benefit will be payable under The Policy for any Disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability or loss is incurred:

22

KENCO 001557

1) After the lesser of the last day of:
   a)  the number of days stated in Your certificate; or
   b)  730 consecutive days;
   while insured, during which you receive no medical care for the Pre-Existing Condition; or
2) After the lesser of the last day of:
   a)  the number of days stated in Your certificate; or
   b)  730 consecutive days;
   during which you have been continuously insured under The Policy.

The amount of a benefit increase, which results from a change in benefit options, a change of class or a change in The Policy, will not be paid for any disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability begins:

1) After the lesser of the last day of :
   a)  the number of days stated in Your certificate; or
   b)  730 consecutive days;
   while insured for the increased benefit amount during which you receive no medical care for the Pre-Existing Condition; or
2) After the lesser of the last day of :
   a)  the number of days stated in Your certificate; or
   b)  730 consecutive days;
   during which you have been continuously insured for the increased benefit amount.

3) The definition of **Pre-existing Condition** in the **Pre-Existing Conditions Limitation** provision is deleted and is replaced by the following:
**Pre-existing Condition** means any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse for which You received Medical Care during the lesser of:
   1)  the period of time stated in Your certificate; or
   2)  the 730 day period;
   that ends the day before:
   1)  Your effective date of coverage; or
   2)  the effective date of a Change in Coverage.

For <u>Missouri</u> residents, the **Exclusion** related to intentionally self-inflicted Injury is replaced by the following:
   intentionally self-inflicted Injury, suicide or attempted suicide, while sane; or

For <u>Montana</u> residents, pregnancy will be covered, the same as any other Sickness, anything in the Policy to the contrary notwithstanding.

For <u>New Hampshire</u> residents:
1) The **Policy Interpretation** provision is deleted and replaced by the following:
   Under ERISA, We are hereby designated by the plan sponsor as a claim fiduciary with discretionary authority to determine eligibility for benefits and to interpret and construe the terms and provisions of The Policy. As claim fiduciary, We have a duty to administer claims solely in the interest of the participants and beneficiaries of the employee benefit plan and in accordance with the documents and instruments governing the plan. This assignment of discretionary authority does not prohibit a participant or beneficiary from seeking judicial review of Our benefit eligibility determination after exhausting administrative remedies. The assignment of discretionary authority made under this provision may affect the standard of review that a court will use in reviewing the appropriateness of Our determination. In order to prevail, a plan participant or beneficiary may be required to prove that Our determination was arbitrary and capricious or an abuse of discretion.
2) The time periods stated in the **Claim Appeal** provision are changed to 180 days, if less than 180 days.

For all <u>North Carolina</u> residents:
1) The definition of **Other Income Benefits** is amended by the deletion of mandatory "no-fault" automobile insurance plan;
2) The following is added to the definition of **Regular Care of a Physician:**
   You are not required to be under the Regular Care of a Physician if qualified medical professionals have determined that further medical care and treatment would be of no benefit to You.
3) The exclusion regarding Workers' Compensation benefits is replaced by the following in the **Exclusions** provision:
   for which the final adjudication of a Workers' Compensation claim determines that benefits are paid, or may be paid, if duly claimed;
4) The **Subrogation** provision is deleted.

KENCO 001558

5) The **Reimbursement** provision is deleted.

For North Carolina residents covered under a policy issued to a Trust:
1) The **Misstatement** provision is amended by the deletion of the phrase except fraudulent misstatements.
2) The **Sending Proof of Loss** provision is amended as follows:
   Written Proof of Loss must be sent to Us within 180 days following the completion of the Elimination Period.
3) The **Claims to be Paid** provision is amended as follows:
   We may pay up to $3,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.
4) The **Notice of Claim** provision is amended to require the phrase or Our representative in the first sentence.

For Oregon residents, the following is added to the **Continuation Provisions** for Employers with 10 or more employees:
Jury Duty: If you are scheduled to serve or are required to serve as a juror, Your coverage may be continued until the last day of Your Jury Duty, provided You:
1) elected to have Your coverage continued; and
2) provided notice of the election to Your Employer in accordance with Your Employer's notification policy.

For Rhode Island residents:
The provision titled **Policy Interpretation** is deleted in its entirety.

For South Carolina residents:
1) The second paragraph of the **Continuity from a Prior Policy** provision is replaced by the following:
   *Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
   If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy within 30 days of being covered under The Policy, the Pre-existing Conditions Limitation will end on the earliest of:
   1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
   2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.
2) The following is added to the **Physical Examinations and Autopsy** provision: "Such autopsy must be performed during the period of contestability and must take place in the state of South Carolina."

For South Dakota residents:
1) The definition of **Physician** is deleted and replaced by the following:
   **Physician** means a person who is:
   1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
   2) licensed to practice in the jurisdiction where care is being given;
   3) practicing within the scope of that license; and
   4) not You or Your Spouse or Related to You or Your Spouse by blood or marriage, unless such physician is the only one in the area and is acting within the scope of their normal employment.
2) The definition of **Other Income Benefits** is amended by the deletion of all references to Your family, Your spouse and/or children.
3) The provision titled **Policy Interpretation** is deleted in its entirety.

For Utah residents:
1) The **Policy Interpretation** provision is replaced by the following:
   **Policy Interpretation:** *Who interprets the terms and conditions of The Policy?*
   **Benefits under this plan will be paid only if We decide in Our discretion that You are entitled to them. We also have discretion to determine eligibility for benefits and to interpret the terms of conditions of the benefit plan. Determinations made by Us pursuant to this reservation of discretion do not prohibit or prevent You from seeking judicial review in federal court of Our determinations.**

   **The reservation of discretion made under this provision only establishes the scope of review that a federal court will apply when You seek judicial review of Our determination of eligibility for benefits, the payment of benefits, or interpretation of**

24

KENCO 001559

**the terms and conditions applicable to the benefit plan.**

**We are an insurance company that provides insurance to this benefit plan and the federal court will determine the level of discretion that it will accord to Our determinations.**

2) Item 3 of the second paragraph of the **Sending Proof of Loss** provision is deleted.

For <u>Vermont</u> residents:
   **Purpose**:  Vermont law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to married persons.
   **Definitions, Terms, Conditions and Provisions**:  The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:
   1) Terms that mean or refer to a marital relationship, or that may be construed to mean or refer to a marital relationship, such as "marriage", "spouse", "husband", "wife", "dependent", "next of kin", "relative", "beneficiary", "survivor", "immediate family" and any other such terms, include the relationship created by a civil union established according to Vermont law.
   2) Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage", "divorce decree", "termination of marriage" and any other such terms include the inception or dissolution of a civil union established according to Vermont law.
   3) Terms that mean or refer to family relationships arising from a marriage, such as "family", "immediate family", "dependent", "children", "next of kin", "relative", "beneficiary", "survivor" and any other such terms include family relationships created by a civil union established according to Vermont law.
   4) "Dependent" means a spouse, a party to a civil union established according to Vermont law, and a child or children (natural, stepchild, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.
   5) "Child or covered child" means a child (natural, step-child, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.
   **CAUTION:  FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE**
   Vermont law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law.  However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union.  For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA", controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans.  Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan.  However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons.  Federal law also controls group health insurance continuation rights under COBRA for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums.  As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law.  You are advised to seek expert advice to determine your rights under this contract.

For <u>Washington</u> residents:
   1) The following is added to the **Continuation Provisions** provision:
      <u>General Work Stoppage</u> (including a strike or lockout): If Your employment terminates due to a cessation of active work as the result of a general work stoppage (including a strike or lockout), Your coverage shall be continued during the work stoppage for a period not exceeding 6 months.  If the work stoppage ends, this continuation will cease immediately.
   2) The provision titled **Policy Interpretation** is deleted in its entirety.
   3) The following provision is added to the **General Provisions** section of Your certificate:
      **Eligibility Determination**: *How will We determine Your eligibility for benefits?*
      We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your or Your Spouse's or Your beneficiaries' eligibility for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy.  We will:
      1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or

25

Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;

2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;

3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;

4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.

In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

In all other respects the certificate remains the same.


Signed for Hartford Life and Accident Insurance Company


**Terence Shields,** *Secretary*        **Michael Concannon,** *Executive Vice President*

KENCO 001561

**ERISA INFORMATION**
**THE FOLLOWING NOTICE**
**CONTAINS IMPORTANT INFORMATION**

This employee welfare benefit plan (Plan) is subject to certain requirements of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA requires that you receive a Statement of ERISA Rights, a description of Claim Procedures, and other specific information about the Plan. This document serves to meet ERISA requirements and provides important information about the Plan.

The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan. The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

A copy of the Plan is available for your review during normal working hours in the office of the Plan Administrator.

---

1. **Plan Name**

   Group Short Term Disability Plan for employees of KENCO.

---

2. **Plan Number**

   WD - 504

   WD - 505

---

3. **Employer/Plan Sponsor**

   KENCO
   2001 Riverside Drive
   Chattanooga, TN 37406

---

4. **Employer Identification Number**

   62-0799523

---

5. **Type of Plan**

   Welfare Benefit Plan providing Group Short Term Disability.

---

6. **Plan Administrator**

   KENCO
   2001 Riverside Drive
   Chattanooga, TN 37406

---

7. **Agent for Service of Legal Process**

KENCO 001562

For the Plan

KENCO
2001 Riverside Drive
Chattanooga, TN 37406

For the Policy:

Hartford Life and Accident Insurance Company
200 Hopmeadow St.
Simsbury, CT 06089

In addition to the above, Service of Legal Process may be made on a plan trustee or the plan administrator.

---

8. **Sources of Contributions**   The Employer pays the premium for the insurance, but may allocate part of the cost to the employee, or the employee may pay the entire premium.  The Employer determines the portion of the cost to be paid by the employee.  The insurance company/provider determines the cost according to the rate structure reflected in the Policy of Incorporation.

---

9. **Type of Administration**   The plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan.

---

10. The Plan and its records are kept on a Policy Year basis.

---

11. **Labor Organizations**

None

---

12. **Names and Addresses of Trustees**

None

---

13. **Plan Amendment Procedure**

The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

The Employer also reserves the right to adjust your share of the cost to continue coverage by the same procedures.

KENCO 001563

## STATEMENT OF ERISA RIGHTS

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA provides that all Plan participants shall be entitled to:

1. **Receive Information About Your Plan and Benefits**

   a) Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

   b) Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary Plan description. The administrator may make a reasonable charge for the copies.

   c) Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

2. **Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

3. **Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied and ignored, in whole or in part, you may file suit in a state or Federal court. If the Plan requires you to complete administrative appeals prior to filing in court, your right to file suit in state or Federal court may be affected if you do not complete the required appeals. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

4. **Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration (formerly known as the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## CLAIM PROCEDURES

The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

**Claim Procedures for Claims Requiring a Determination of Disability**

KENCO 001564

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 45 days after receipt of your properly filed claim. The time for decision may be extended for two additional 30 day periods provided that, prior to any extension period, the Insurance Company notifies you in writing that an extension is necessary due to matters beyond the control of the Plan, identifies those matters and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim, the time for decision may be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to our request. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

Any adverse benefit determination will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary, 4) a description of the review procedures and time limits applicable to such procedures, 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal, and 6) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the denial, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the denial and that a copy will be provided free of charge to you upon request, or (B) if denial is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial. As part of your appeal:

1. you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2. you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request.

The individual reviewing your appeal shall give no deference to the initial benefit decision and shall be an individual who is neither the individual who made the initial benefit decision, nor the subordinate of such individual. The review process provides for the identification of the medical or vocational experts whose advice was obtained in connection with an initial adverse decision, without regard to whether that advice was relied upon in making that decision. When deciding an appeal that is based in whole or part on medical judgment, we will consult with a medical professional having the appropriate training and experience in the field of medicine involved in the medical judgment and who is neither an individual consulted in connection with the initial benefit decision, nor a subordinate of such individual. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

KENCO 001565

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a statement that you have the right to bring a civil action under section 502(a) of ERISA, 4) a statement that you may request, free of charge, copies of all documents, records, and other information relevant to your claim; 5) (A) if an internal rule, guideline, protocol or other similar criterion was relied upon in making the decision on appeal, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the decision on appeal and that a copy will be provided free of charge to you upon request, or (B) if the decision on appeal is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the decision on appeal, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request, and 6) any other notice(s), statement(s) or information required by applicable law.

## Claim Procedures for Claims Not Requiring a Determination of Disability

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 90 days after receipt of your properly filed claim. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 90 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 180 days after your claim was received. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

However, any adverse benefit determination will be in writing and include: 1) specific reasons for the decision; 2) specific references to Policy provisions on which the decision is based; 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary; 4) a description of the review procedures and time limits applicable to such, and 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 60 days from the date you received your claim denial. As part of your appeal:

1. you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2. you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 60 days after it receives your timely appeal. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 60 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 120 days after your appeal was received. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision and specific references to the Policy provisions on which the decision is based, 2) a statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and

KENCO 001566

other information relevant to the claim, 3) a statement of your right to bring a civil action under section 502(a) of ERISA, and 4) any other notice(s), statement(s) or information required by applicable law.

KENCO 001567

**The Plan Described in this Booklet
is Insured by the**

Hartford Life and Accident Insurance Company
Simsbury, Connecticut
Member of The Hartford Insurance Group

KENCO 001568

KENCO 001569

# YOUR
# BENEFIT
# PLAN

KENCO

**Long Term Disability**

KENCO 001570

KENCO 001571

## Questions or Complaints about Your Coverage

**In the event You have questions or complaints regarding any aspect of Your coverage, You should contact Your Employee Benefits Manager or You may write to us at:**
The Hartford
Group Benefits Division, Customer Service
P.O. Box 2999
Hartford, CT 06104-2999

**Or call Us at:** 1-800-523-2233
When calling, please give Us the following information:
1) the policy number; and
2) the name of the policyholder (employer or organization), as shown in Your Certificate of Insurance.

**Or You may contact Our Sales Office:**
Hartford Life and Accident Insurance Company
Group Sales Department
1125 Sanctuary Parkway
Suite 450
Alpharetta, GA  30009
TOLL FREE:  888-560-9632
FAX:  770-475-1404

**If you have a complaint, and contacts between you and the insurer or an agent or other representative of the insurer have failed to produce a satisfactory solution to the problem, the following states require we provide you with additional contact information:**

| For residents of: | Write | Telephone |
|---|---|---|
| Arkansas | Arkansas Insurance Department<br>Consumer Services Division<br>1200 West Third Street<br>Little Rock, AR 72201-1904 | 1(800) 852-5494<br>1(501) 371-2640 (in the Little Rock area) |
| California | State of California Insurance Department<br>Consumer Communications Bureau<br>300 South Spring Street, South Tower<br>Los Angeles, CA 90013 | 1(800) 927-HELP |
| Idaho | Idaho Department of Insurance<br>Consumer Affairs<br>700 W State Street, 3rd Floor<br>PO Box 83720<br>Boise, ID 83720-0043 | 1-800-721-3272 or www.DOI.Idaho.gov |
| Illinois | Illinois Department of Insurance<br>Consumer Services Station<br>Springfield, Illinois 62767 | Consumer Assistance: 1(866) 445-5364<br>Officer of Consumer Health Insurance:<br>1(877) 527-9431 |
| Indiana | Public Information/Market Conduct<br>Indiana Department of Insurance<br>311 W. Washington St. Suite 300<br>Indianapolis, IN 46204-2787 | Consumer Hotline: 1(800) 622-4461<br>1(317) 232-2395 (in the Indianapolis Area) |
| Virginia | Life and Health Division<br>Bureau of Insurance<br>P.O. Box 1157<br>Richmond, VA 23209 | 1(804) 371-9741 (inside Virginia)<br>1(800) 552-7945 (outside Virginia) |
| Wisconsin | Office of the Commissioner of Insurance<br>Complaints Department<br>P.O. Box 7873 | 1(800) 236-8517 (outside of Madison)<br>1(608) 266-0103 (in Madison)<br>to request a complaint form. |

KENCO 001572

Madison, WI 53707-7873

**The following states require that We provide these notices to You about Your coverage:**

**For residents of:**

**Arizona**
This certificate of insurance may not provide all benefits and protections provided by law in Arizona. Please read This certificate carefully.

**Florida**
The benefits of the policy providing you coverage are governed primarily by the laws of a state other than Florida.

# STATE OF DELAWARE
## The Civil Union and Equality Act of 2011
## Effective January 1, 2012

In accordance with Delaware law, insurers are required to provide the following notice to applicants of insurance policies issued in Delaware.

The Civil Union and Equality Act of 2011 ("the Act") creates a legal relationship between two persons of the same sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Delaware to spouses in a legal marriage. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Delaware law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of same sex civil unions or marriages legally entered into in other jurisdictions.

For more information regarding the Act, refer to Chapter 2 of Title 13 of the Delaware Code or the State of Delaware website at www.delaware.gov/CivilUnions.

## Georgia

The laws of the state of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family abuse.

# STATE OF ILLINOIS
## The Religious Freedom Protection and Civil Union Act
## Effective June 1, 2011

In accordance with Illinois law, insurers are required to provide the following notice to applicants of insurance policies issued in Illinois.

The Religious Freedom Protection and Civil Union Act ("the Act") creates a legal relationship between two persons of the same or opposite sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Illinois to spouses. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Illinois law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of civil unions or same sex civil unions or marriages legally entered into in other jurisdictions.

KENCO 001573

For more information regarding the Act, refer to 750 ILCS 75/1 *et seq.* Examples of the interaction between the Act and existing law can be found in the Illinois Insurance Facts, Civil Unions and Insurance Benefits document available on the Illinois Department of Insurance's website at www.insurance.illinois.gov.

### Maine

1.     The benefits under this policy are subject to reduction due to other sources of income.

This means that your benefits will be reduced by the amount of any other benefits for loss of time provided to you or for which you are eligible as a result of the same period of disability for which you claim benefits under this policy.

Other sources of income are plans or arrangements of coverage that provide disability-related benefits such as Worker's Compensation or other similar governmental programs or laws, or disability-related benefits received from your employer or as the result of your employment, membership or association with any group, union, association or other organization. Other sources of income include disability-related benefits under the United States Social Security Act or an alternate governmental plan, the Railroad Retirement Act, and other similar plans or acts. Other sources of income may also include certain disability-related or retirement benefits that you receive because of your retirement unless you were receiving them prior to becoming disabled.

What comprises other sources of income under this policy is determined by the nature of the policyholder. Therefore, we strongly urge you to **Read Your Certificate Carefully.** A full description of the plans and types of plans considered to be other sources of income under this policy will be found in the definition of "Other Income Benefits" located in the Definitions section of your certificate.

2.     The laws of the State of Maine require notification of the right to designate a third party to receive notice of cancellation, to change the designation and, policy reinstatement if the insured suffers from organic brain disease and the ground for cancellation was the insured's nonpayment of premium or other lapse or default on the part of the insured.

Within 10 days after a request by an insured, a Third Party Notice Request Form shall be mailed or personally delivered to the insured.

### Maryland

**The group insurance policy providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.**

### Montana

Conformity with Montana statutes:  The provisions of this certificate conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the insured resides on or after the effective date of this certificate.

### North Carolina

UNDER NORTH CAROLINA GENERAL STATUTE SECTION 58-50-40, NO PERSON, EMPLOYER, FINANCIAL AGENT, TRUSTEE, OR THIRD PARTY ADMINISTRATOR, WHO IS RESPONSIBLE FOR THE PAYMENT OF GROUP LIFE INSURANCE, GROUP HEALTH OR GROUP HEALTH PLAN PREMIUMS, SHALL:

1)   CAUSE THE CANCELLATION OR NONRENEWAL OF GROUP LIFE INSURANCE, GROUP HEALTH INSURANCE, HOSPITAL, MEDICAL, OR DENTAL SERVICE CORPORATION PLAN, MULTIPLE EMPLOYER WELFARE ARRANGEMENT, OR GROUP HEALTH PLAN COVERAGES AND THE CONSEQUENTIAL LOSS OF THE COVERAGES OF THE PERSON INSURED, BY WILLFULLY FAILING TO PAY THOSE PREMIUMS IN ACCORDANCE WITH THE TERMS OF THE INSURANCE OR PLAN CONTRACT; AND

2)   WILLFULLY FAIL TO DELIVER, AT LEAST 45 DAYS BEFORE THE TERMINATION OF THOSE COVERAGES, TO ALL PERSONS COVERED BY THE GROUP POLICY WRITTEN NOTICE OF THE PERSON'S INTENTION TO STOP PAYMENT OF PREMIUMS. VIOLATION OF THIS LAW IS A FELONY. ANY PERSON VIOLATING THIS LAW IS ALSO SUBJECT TO A COURT ORDER REQUIRING THE PERSON TO COMPENSATE PERSONS INSURED FOR EXPENSES OR LOSSES INCURRED AS A RESULT OF THE TERMINATION OF THE INSURANCE.

**IMPORTANT TERMINATION**
**INFORMATION**

**YOUR INSURANCE MAY BE CANCELLED BY THE COMPANY. PLEASE READ THE TERMINATION PROVISION IN THIS CERTIFICATE.**

**THIS CERTIFICATE OF INSURANCE PROVIDES COVERAGE UNDER A GROUP MASTER POLICY. THIS CERTIFICATE PROVIDES ALL OF THE BENEFITS MANDATED BY THE NORTH CAROLINA INSURANCE CODE, BUT YOU MAY NOT RECEIVE ALL OF THE PROTECTIONS PROVIDED BY A POLICY ISSUED IN NORTH CAROLINA AND GOVERNED BY ALL OF THE LAWS OF NORTH CAROLINA.**

**PRE-EXISTING LIMITATION**
**READ CAREFULLY**
**NO BENEFITS WILL BE PAYABLE UNDER THIS PLAN FOR PRE-EXISTING CONDITIONS WHICH ARE NOT COVERED UNDER THE PRIOR PLAN. PLEASE READ THE LIMITATIONS IN THIS CERTIFICATE.**

**READ YOUR CERTIFICATE CAREFULLY.**

**Texas**

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call The Hartford's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de The Hartford para informacion o para someter una queja al: |
| 1-800-523-2233 | 1-800-523-2233 |
| You may also write to The Hartford at:<br>P.O. Box 2999<br>Hartford, CT 06104-2999 | Usted tambien puede escribir a The Hartford:<br>P.O. Box 2999<br>Hartford, CT 06104-2999 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| 1-800-252-3439 | 1-800-252-3439 |
| You may write the Texas Department of Insurance at:<br>P.O. Box 149104<br>Austin, TX 78714-9410<br>Fax # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us | Puede escribir al Departamento de Seguros de Texas:<br>P.O. Box 149104<br>Austin, TX 78714-9410<br>Fax # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:**<br>Should you have a dispute concerning your premium or about a claim you should contact the agent or The Hartford first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:**<br>Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o The Hartford primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:**<br>This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:**<br>Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

KENCO 001575

**Group Disability Income Insurance**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
**200 Hopmeadow Street**
**Simsbury, Connecticut 06089**
**(A stock insurance company)**

### CERTIFICATE OF INSURANCE

**Policyholder:** KENCO
**Policy Number:** GLT-674076
**Policy Effective Date:** June 1, 2001
**Policy Anniversary Date:** January 1, 2015

We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under The Policy. The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.

Signed for the Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

---

*A note on capitalization in this certificate:*
Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

Form GBD-1200 (10/08)                                                    (674076) 3.06

## TABLE OF CONTENTS

SCHEDULE OF INSURANCE ............................................................................................................9
   Cost of Coverage ..................................................................................................................9
   Eligible Class(es) For Coverage .........................................................................................9
   Eligibility Waiting Period for Coverage ................................................................................9
   Monthly Benefit ....................................................................................................................9
ELIGIBILITY AND ENROLLMENT ..............................................................................................10
   Eligible Persons .................................................................................................................10
   Eligibility for Coverage ......................................................................................................10
   Enrollment ..........................................................................................................................10
   Evidence of Insurability .....................................................................................................10
PERIOD OF COVERAGE .............................................................................................................11
   Effective Date .....................................................................................................................11
   Deferred Effective Date .....................................................................................................11
   Changes in Coverage ........................................................................................................11
   Termination .........................................................................................................................12
   Continuation Provisions .....................................................................................................12
BENEFITS .....................................................................................................................................13
   Disability Benefit .................................................................................................................13
   Mental Illness and Substance Abuse Benefits ..................................................................13
   Calculation of Monthly Benefit ...........................................................................................14
   Termination of Payment .....................................................................................................14
   Family Care Credit Benefit .................................................................................................15
   Survivor Income Benefit .....................................................................................................15
   Workplace Modification Benefit .........................................................................................16
EXCLUSIONS AND LIMITATIONS ..............................................................................................16
   Pre-existing Condition Limitation .......................................................................................16
GENERAL PROVISIONS ..............................................................................................................17
DEFINITIONS ................................................................................................................................21
AMENDATORY RIDER ..................................................................................................................25
ERISA ...........................................................................................................................................32

KENCO 001577

## SCHEDULE OF INSURANCE

The Policy of long term Disability insurance provides You with long term income protection if You become Disabled from a covered injury, sickness or pregnancy.

**The benefits described herein are those in effect as of January 1, 2015.**

**Cost of Coverage:**
You must contribute toward the cost of coverage.

**Disclosure of Fees:**
We may reduce or adjust premiums, rates, fees and/or other expenses for programs under The Policy.

**Disclosure of Services:**
In addition to the insurance coverage, We may offer noninsurance benefits and services to Active Employees.

**Eligible Class(es) For Coverage:** All Full-time Active Employees who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees.

      Full-time Employment:  at least 30 hours weekly

**Eligibility Waiting Period for Coverage:**
90 day(s)

The time period(s) referenced above are continuous.  The Eligibility Waiting Period for Coverage will be reduced by the period of time You were a Full-time Active Employee with the Employer under the Prior Policy.

**Elimination Period:** 180 day(s)

**Maximum Monthly Benefit:** $5,000

**Minimum Monthly Benefit:** The greater of:
1) $100; or
2) 10% of the benefit based on Monthly Income Loss before the deduction of Other Income Benefits.

**Benefit Percentage:**  60%

### Maximum Duration of Benefits

### <u>Maximum Duration of Benefits Table</u>

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 63 | To Normal Retirement Age or 48 months, if greater |
| Age 63 | To Normal Retirement Age or 42 months, if greater |
| Age 64 | 36 months |
| Age 65 | 30 months |
| Age 66 | 27 months |
| Age 67 | 24 months |
| Age 68 | 21 months |
| Age 69 and over | 18 months |

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act.  It is determined by Your date of birth as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 |
| 1938 | 65 + 2 months |
| 1939 | 65 + 4 months |

9

KENCO 001578

| | |
|---|---|
| 1940 | 65 + 6 months |
| 1941 | 65 + 8 months |
| 1942 | 65 + 10 months |
| 1943 thru 1954 | 66 |
| 1955 | 66 + 2 months |
| 1956 | 66 + 4 months |
| 1957 | 66 + 6 months |
| 1958 | 66 + 8 months |
| 1959 | 66 + 10 months |
| 1960 or after | 67 |

**Additional Benefit:**

**Family Care Credit Benefit**
see benefit

**Survivor Income Benefit**
see benefit

**Workplace Modification Benefit**
see benefit

# ELIGIBILITY AND ENROLLMENT

**Eligible Persons:** *Who is eligible for coverage?*
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**Eligibility for Coverage:** *When will I become eligible?*
You will become eligible for coverage on the later of:
1) the Policy Effective Date; or
2) the date on which You complete the Eligibility Waiting Period for Coverage shown in the Schedule of Insurance, if applicable.

**Enrollment:** *How do I enroll for coverage?*
To enroll for coverage You must:
1) complete and sign a group insurance enrollment form which is satisfactory to Us; and
2) deliver it to Your Employer.

If You do not enroll within 31 days after becoming eligible under The Policy, or if You were eligible to enroll under the Prior Policy and did not do so, and later choose to enroll:
1) You must give Us Evidence of Insurability satisfactory to Us; and
2) You may enroll at any time.

**Evidence of Insurability:** *What is Evidence of Insurability and what happens if Evidence of Insurability is not satisfactory to Us?*
Evidence of Insurability must be satisfactory to Us and may include, but will not be limited to:
1) a completed and signed application approved by Us;
2) a medical examination, if requested;
3) attending Physicians' statements; and
4) any additional information We may require.

All Evidence of Insurability will be furnished at Our expense. We will then determine if You are insurable under The Policy.

If Your Evidence of Insurability is not satisfactory to Us:
1) Your Monthly Benefit will equal the amount for which You were eligible without providing Evidence of Insurability, provided You enrolled within 31 days of the date You were first eligible to enroll; and

KENCO 001579

2) You will not be covered under The Policy if You enrolled more than 31 days after the date You were first eligible to enroll.

# PERIOD OF COVERAGE

**Effective Date:** *When does my coverage start?*
Your coverage will start on the earliest of:
1) the date You become eligible, if You enroll or have enrolled by then;
2) the date on which You enroll, if You do so within 31 days after the date You are eligible; or
3) the date We approve Your Evidence of Insurability, for benefit amounts requiring Evidence of Insurability.

**Deferred Effective Date:** *When will my effective date for coverage or a change in my coverage be deferred?*
If You are absent from work due to:
1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy;
on the date Your insurance, or increase in coverage, would otherwise have become effective, Your insurance, or increase in coverage will not become effective until You are Actively at Work one full day.

**Changes in Coverage:** *Can I change my benefit options?*
You may change Your benefit option at any time. You may decrease coverage, or increase coverage to a higher option. An increase in coverage will be subject to Your submission of an application that meets Our approval.

Any such increase in coverage is subject to the following provisions:
1) Deferred Effective Date; and
2) Pre-existing Conditions Limitations.

*Do coverage amounts change if there is a change in my class or my rate of pay?*
Your coverage may increase or decrease on the date there is a change in Your class or Pre-disability Earnings. However, no increase in coverage will be effective unless on that date You:
1) are an Active Employee; and
2) are not absent from work due to being Disabled. If You were so absent from work, the effective date of such increase will be deferred until You are Actively at Work for one full day.

No change in Your Pre-disability Earnings will become effective until the date We receive notice of the change.

*What happens if the Employer changes The Policy?*
Any increase or decrease in coverage because of a change in The Policy will become effective on the date of the change, subject to the following provisions:
1) the Deferred Effective Date provision; and
2) Pre-existing Conditions Limitations.

**Continuity From A Prior Policy:** *Is there continuity of coverage from a Prior Policy?*
If You were:
1) insured under the Prior Policy; and
2) not eligible to receive benefits under the Prior Policy;
on the day before the Policy Effective Date, the Deferred Effective Date provision will not apply.

*Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy on the day before the Policy Effective Date, the Pre-existing Conditions Limitation will end on the earliest of:
1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.

KENCO 001580

The amount of the Monthly Benefit payable for a Pre-existing Condition in accordance with the above paragraph will be the lesser of:
1)   the Monthly Benefit which was paid by the Prior Policy; or
2)   the Monthly Benefit provided by The Policy.

The Pre-existing Conditions Limitation will apply after the Policy Effective Date to the amount of a benefit increase which results from a change from the Prior Policy to The Policy, a change in benefit options, a change of class or a change in The Policy.

*Do I have to satisfy an Elimination Period under The Policy if I was Disabled under the Prior Policy?*
If You received monthly benefits for disability under the Prior Policy, and You returned to work as a Full-time Active Employee before the Policy Effective Date, then, if within 6 months of Your return to work:
1)   You have a recurrence of the same disability while covered under The Policy; and
2)   there are no benefits available for the recurrence under the Prior Policy;
the Elimination Period, which would otherwise apply, will be waived if the recurrence would have been covered without any further elimination period under the Prior Policy.

**Termination:**  *When will my coverage end?*
Your coverage will end on the earliest of the following:
1)   the date The Policy terminates;
2)   the date The Policy no longer insures Your class;
3)   the date premium payment is due but not paid;
4)   the last day of the period for which You make any required premium contribution;
5)   the date Your Employer terminates Your employment; or
6)   the date You cease to be a Full-time Active Employee in an eligible class for any reason;
unless continued in accordance with any of the Continuation Provisions.

**Continuation Provisions:**  *Can my coverage be continued beyond the date it would otherwise terminate?*
Coverage can be continued by Your Employer beyond a date shown in the Termination provision, if Your Employer provides a plan of continuation which applies to all employees the same way.  Continued coverage:
1)   is subject to any reductions in The Policy;
2)   is subject to payment of premium by the Employer; and
3)   terminates if:
     a)   The Policy terminates; or
     b)   coverage for Your class terminates.

In any event, Your benefit level, or the amount of earnings upon which Your benefits may be based, will be that in effect on the day before Your coverage was continued.  Coverage may be continued in accordance with the above restrictions and as described below:

Leave of Absence:  If You are on a documented leave of absence, other than Family and Medical Leave, Your coverage may be continued until the last day of the month following the month in which the leave of absence commenced.  If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

Layoff:  If You are temporarily laid off by the Employer due to lack of work, Your coverage may be continued until the last day of the month following the month in which the layoff commenced.  If the layoff becomes permanent, this continuation will cease immediately.

Family and Medical Leave:  If You are granted a leave of absence, in writing, according to the Family and Medical Leave Act of 1993, or other applicable state or local law, Your coverage may be continued for up to 12 weeks, or 26 weeks if You qualify for Family Military Leave, or longer if required by other applicable law, following the date Your leave commenced.  If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

**Coverage while Disabled:**  *Does my insurance continue while I am Disabled and no longer an Active Employee?*
If You are Disabled and You cease to be an Active Employee, Your insurance will be continued:
1)   during the Elimination Period while You remain Disabled by the same Disability; and
2)   after the Elimination Period for as long as You are entitled to benefits under The Policy.

**Waiver of Premium:**  *Am I required to pay premiums while I am Disabled?*
No premium will be due for You:

KENCO 001581

1) after the Elimination Period; and
2) for as long as benefits are payable.

**Extension of Benefits for Disability:** *Do my benefits continue if The Policy terminates?*
If You are entitled to benefits while Disabled and The Policy terminates, benefits:
1) will continue as long as You remain Disabled by the same Disability; but
2) will not be provided beyond the date We would have ceased to pay benefits had the insurance remained in force.
Termination of The Policy for any reason will have no effect on Our liability under this provision.

# BENEFITS

**Disability Benefit:** *What are my Disability Benefits under The Policy?*
We will pay You a Monthly Benefit if You:
1) become Disabled while insured under The Policy;
2) are Disabled throughout the Elimination Period;
3) remain Disabled beyond the Elimination Period; and
4) submit Proof of Loss to Us.
Benefits accrue as of the first day after the Elimination Period and are paid monthly. However, benefits will not exceed the Maximum Duration of Benefits.

**Mental Illness and Substance Abuse Benefits:** *Are benefits limited for Mental Illness or Substance Abuse?*
If You are Disabled because of:
1) Mental Illness that results from any cause;
2) any condition that may result from Mental Illness;
3) alcoholism; or
4) the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance;
then, subject to all other provisions of The Policy, We will limit the Maximum Duration of Benefits.

Benefits will be payable:
1) for as long as You are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
2) if not confined, or after You are discharged and still Disabled, for a total of 24 months for all such disabilities during Your lifetime.

**Recurrent Disability:** *What happens if I Recover but become Disabled again?*
Periods of Recovery during the Elimination Period will not interrupt the Elimination Period, if the number of days You return to work as an Active Employee are less than one-half (1/2) the number of days of Your Elimination Period.

Any day within such period of Recovery, will not count toward the Elimination Period.

After the Elimination Period, if You return to work as an Active Employee and then become Disabled and such Disability is:
1) due to the same cause; or
2) due to a related cause; and
3) within 6 months of the return to work;
the Period of Disability prior to Your return to work and the recurrent Disability will be considered one Period of Disability, provided The Policy remains in force.

If You return to work as an Active Employee for 6 months or more, any recurrence of a Disability will be treated as a new Disability. The new Disability is subject to a new Elimination Period and a new Maximum Duration of Benefits.

**Period of Disability** means a continuous length of time during which You are Disabled under The Policy.

**Recover or Recovery** means that You are no longer Disabled and have returned to work with the Employer and premiums are being paid for You.

**Calculation of Monthly Benefit: Return to Work Incentive:** *How are my Disability benefits calculated?*

KENCO 001582

If You remain Disabled after the Elimination Period, but work while You are Disabled, We will determine Your Monthly Benefit for a period of up to 12 consecutive months as follows:
1) multiply Your Pre-disability Earnings by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.
The result is Your Monthly Benefit. Current Monthly Earnings will not be used to reduce Your Monthly Benefit.  However, if the sum of Your Monthly Benefit and Your Current Monthly Earnings exceeds 100% of Your Pre-disability Earnings, We will reduce Your Monthly Benefit by the amount of excess.

The 12 consecutive month period will start on the last to occur of:
1) the day You first start work; or
2) the end of the Elimination Period.

If You are Disabled and not receiving benefits under the Return to Work Incentive, We will calculate Your Monthly Benefit as follows:
1) multiply Your Monthly Income Loss by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.
The result is Your Monthly Benefit.

**Calculation of Monthly Benefit:**  *What happens if the sum of my Monthly Benefit, Current Monthly Earnings, and Other Income Benefits exceeds 100% of my Pre-disability Earnings?*
If the sum of Your Monthly Benefit, Current Monthly Earnings, and Other Income Benefits exceeds 100% of Your Pre-disability Earnings, We will reduce Your Monthly Benefit by the amount of the excess.  However, Your Monthly Benefit will not be less than the Minimum Monthly Benefit.

If an overpayment occurs, We may recover all or any portion of the overpayment, in accordance with the Overpayment Recovery provision.

**Minimum Monthly Benefit:**  *Is there a Minimum Monthly Benefit?*
Your Monthly Benefit will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

**Partial Month Payment:**  *How is the benefit calculated for a period of less than a month?*
If a Monthly Benefit is payable for a period of less than a month, We will pay 1/30 of the Monthly Benefit for each day You were Disabled.

**Termination of Payment:**  *When will my benefit payments end?*
Benefit payments will stop on the earliest of:
1) the date You are no longer Disabled;
2) the date You fail to furnish Proof of Loss;
3) the date You are no longer under the Regular Care of a Physician;
4) the date You refuse Our request that You submit to an examination by a Physician or other qualified medical professional;
5) the date of Your death;
6) the date You refuse to receive recommended treatment that is generally acknowledged by Physicians to cure, correct or limit the disabling condition;
7) the last day benefits are payable according to the Maximum Duration of Benefits Table;
8) the date Your Current Monthly Earnings:
   a) are equal to or greater than 80% of Your Indexed Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation; or
   b) are greater than the lesser of the product of Your Indexed Pre-disability Earnings and the Benefit Percentage or the Maximum Monthly Benefit if You are receiving benefits for being Disabled from Any Occupation;
9) the date no further benefits are payable under any provision in The Policy that limits benefit duration;
10) the date You refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
   a) modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
   b) adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;

14

KENCO 001583

    c) modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation; or

    d) adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation;

provided a qualified Physician or other qualified medical professional agrees that such modifications, Rehabilitation program or adaptive equipment accommodate Your medical limitation; or

11) the date You receive retirement benefits from any employer's Retirement Plan, unless:

    a) You were receiving them prior to becoming Disabled; or

    b) You immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.

**Family Care Credit Benefit:** *What if I must incur expenses for Family Care Services in order to participate in a Rehabilitation program?*

If You are working as part of a program of Rehabilitation, We will, for the purpose of calculating Your benefit, deduct the cost of Family Care from earnings received from work as a part of a program of Rehabilitation, subject to the following limitations:

1) Family Care means the care or supervision of:

    a) Your children under age 13; or

    b) a member of Your household who is mentally or physically handicapped and dependent upon You for support and maintenance;

2) the maximum monthly deduction allowed for each qualifying child or family member is:

    a) $350 during the first 12 months of Rehabilitation; and

    b) $175 thereafter;

    but in no event may the deduction exceed the amount of Your monthly earnings;

3) Family Care Credits may not exceed a total of $2,500 during a calendar year;

4) the deduction will be reduced proportionally for periods of less than a month;

5) the charges for Family Care must be documented by a receipt from the caregiver;

6) the credit will cease on the first to occur of the following:

    a) You are no longer in a Rehabilitation program; or

    b) Family Care Credits for 24 months have been deducted during Your Disability; and

7) no Family Care provided by someone Related to the family member receiving the care will be eligible as a deduction under this provision.

Your Current Monthly Earnings after the deduction of Your Family Care Credit will be used to determine Your Monthly Income Loss. In no event will You be eligible to receive a Monthly Benefit under The Policy if Your Current Monthly Earnings before the deduction of the Family Care Credit exceed 80% of Your Indexed Pre-disability Earnings.

**Survivor Income Benefit:** *Will my survivors receive a benefit if I die while receiving Disability Benefits?*

If You were receiving a Monthly Benefit at the time of Your death, We will pay a Survivor Income Benefit, when We receive proof satisfactory to Us:

1) of Your death; and

2) that the person claiming the benefit is entitled to it.

We must receive the satisfactory proof for Survivor Income Benefits within 1 year of the date of Your death.

The Survivor Income Benefit will only be paid:

1) to Your Surviving Spouse; or

2) if no Surviving Spouse, in equal shares to Your Surviving Children.

If there is no Surviving Spouse or Surviving Children, then no benefit will be paid.

However, We will first apply the Survivor Income Benefit to any overpayment which may exist on Your claim.

If a minor child is entitled to benefits, We may, at Our option, make benefit payments to the person caring for and supporting the child until a legal guardian is appointed.

The Survivor Income Benefit is calculated as 3 times the lesser of:

1) Your Monthly Income Loss multiplied by the Benefit Percentage in effect on the date of Your death; or

2) The Maximum Monthly Benefit.

KENCO 001584

**Surviving Spouse** means Your wife or husband who was not legally separated or divorced from You when You died.

**Surviving Children** means Your unmarried children, step children, legally adopted children who, on the date You die, are primarily dependent on You for support and maintenance and who are under age 24.

The term Surviving Children will also include any other children related to You by blood or marriage and who:
1) lived with You in a regular parent-child relationship; and
2) were eligible to be claimed as dependents on Your federal income tax return for the last tax year prior to Your death.

**Workplace Modification Benefit:** *Will the Rehabilitation program provide for modifications to my workplace to accommodate my return to work?*
We will reimburse Your Employer for the expense of reasonable Workplace Modifications to accommodate Your Disability and enable You to return to work as an Active Employee. You qualify for this benefit if:
1) Your Disability is covered by The Policy;
2) the Employer agrees to make modifications to the workplace in order to reasonably accommodate Your return to work and the performance of the Essential Duties of Your job; and
3) We approve, in writing, any proposed Workplace Modifications.

Benefits paid for such Workplace Modification shall not exceed the amount equal to the amount of the Maximum Monthly Benefit.

We have the right, at Our expense, to have You examined or evaluated by:
1) a Physician or other health care professional; or
2) a vocational expert or rehabilitation specialist;
of Our choice so that We may evaluate the appropriateness of any proposed modification.

We will reimburse the Employer's costs for approved Workplace Modifications after:
1) the proposed modifications made on Your behalf are complete;
2) We have been provided written proof of the expenses incurred to provide such modification; and
3) You have returned to work as an Active Employee.

**Workplace Modification** means change in Your work environment, or in the way a job is performed, to allow You to perform, while Disabled, the Essential Duties of Your job. Payment of this benefit will not reduce or deny any benefit You are eligible to receive under the terms of The Policy.


## EXCLUSIONS AND LIMITATIONS

**Exclusions:** *What Disabilities are not covered?*
The Policy does not cover, and We will not pay a benefit for, any Disability:
1) unless You are under the Regular Care of a Physician;
2) that is caused or contributed to by war or act of war, whether declared or not;
3) caused by Your commission of or attempt to commit a felony;
4) caused or contributed to by Your being engaged in an illegal occupation; or
5) caused or contributed to by an intentionally self-inflicted injury.

If You are receiving or are eligible for benefits for a Disability under a prior disability plan that:
1) was sponsored by Your Employer; and
2) was terminated before the Effective Date of The Policy;
no benefits will be payable for the Disability under The Policy.

**Pre-existing Condition Limitation:** *Are benefits limited for Pre-existing Conditions?*
We will not pay any benefit, or any increase in benefits, under The Policy for any Disability that results from, or is caused or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled:
1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under The Policy; or
2) You have been continuously insured under The Policy for 12 consecutive month(s).

16

KENCO 001585

**Pre-existing Condition** means:
1) any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
2) any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;

for which You received Medical Care during the 3 consecutive month(s) period that ends the day before:
1) Your effective date of coverage; or
2) the effective date of a Change in Coverage.

**Medical Care** is received when a Physician or other health care provider:
1) is consulted or gives medical advice; or
2) recommends, prescribes, or provides Treatment.

**Treatment** includes but is not limited to:
1) medical examinations, tests, attendance or observation; and
2) use of drugs, medicines, medical services, supplies or equipment.

## GENERAL PROVISIONS

**Notice of Claim:** *When should I notify the Company of a claim?*
You must give Us written notice of a claim within 30 days after Disability or loss occurs. Failure to give notice within such time shall not invalidate or reduce any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. Such notice must include Your name, Your address and the Policy Number.

**Claim Forms:** *Are special forms required to file a claim?*
We will send forms to You to provide Proof of Loss, within 15 days of receiving a Notice of Claim. If We do not send the forms within 15 days, You may submit any other written proof which fully describes the nature and extent of Your claim.

**Proof of Loss:** *What is Proof of Loss?*
Proof of Loss may include but is not limited to the following:
1) documentation of:
   a) the date Your Disability began;
   b) the cause of Your Disability;
   c) the prognosis of Your Disability;
   d) Your Pre-disability Earnings, Current Monthly Earnings or any income, including but not limited to copies of Your filed and signed federal and state tax returns; and
   e) evidence that You are under the Regular Care of a Physician;
2) any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;
3) the names and addresses of all:
   a) Physicians or other qualified medical professionals You have consulted;
   b) hospitals or other medical facilities in which You have been treated; and
   c) pharmacies which have filled Your prescriptions within the past three years;
4) Your signed authorization for Us to obtain and release:
   a) medical, employment and financial information; and
   b) any other information We may reasonably require;
5) Your signed statement identifying all Other Income Benefits; and
6) proof that You and Your dependents have applied for all Other Income Benefits which are available.

You will not be required to claim any retirement benefits which You may only get on a reduced basis. All proof submitted must be satisfactory to Us.

**Additional Proof of Loss:** *What Additional Proof of Loss is the Company entitled to?*
To assist Us in determining if You are Disabled, or to determine if You meet any other term or condition of The Policy, We have the right to require You to:
1) meet and interview with Our representative; and
2) be examined by a Physician, vocational expert, functional expert, or other medical or vocational professional of Our choice.

Any such interview, meeting or examination will be:

17

KENCO 001586

1) at Our expense; and
2) as reasonably required by Us.

Your Additional Proof of Loss must be satisfactory to Us.  Unless We determine You have a valid reason for refusal, We may deny, suspend or terminate Your benefits if You refuse to be examined or meet to be interviewed by Our representative.

**Sending Proof of Loss:** *When must Proof of Loss be given?*
Written Proof of Loss must be sent to Us within 90 days following the completion of the Elimination Period.  If proof is not given by the time it is due, it will not affect the claim if:
1) it was not reasonably possible to give proof within the required time; and
2) proof is given as soon as reasonably possible; but
3) not later than 1 year after it is due, unless You are not legally competent.

We may request Proof of Loss throughout Your Disability, as reasonably required.  In such cases, We must receive the proof within 30 day(s) of the request.

**Claim Payment:** *When are benefit payments issued?*
When We determine that You;
1) are Disabled; and
2) eligible to receive benefits;

We will pay accrued benefits at the end of each month that You are Disabled.  We may, at Our option, make an advance benefit payment based on Our estimated duration of Your Disability.  If any payment is due after a claim is terminated, it will be paid as soon as Proof of Loss satisfactory to Us is received.

Benefits may be subject to interest payments as required by applicable law.

**Claims to be Paid:** *To whom will benefits for my claim be paid?*
All payments are payable to You.  Any payments owed at Your death may be paid to Your estate.  If any payment is owed to:
1) Your estate;
2) a person who is a minor; or
3) a person who is not legally competent;

then We may pay up to $1,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it.  Any such payment shall fulfill Our responsibility for the amount paid.

**Claim Denial:** *What notification will I receive if my claim is denied?*
If a claim for benefits is wholly or partly denied, You will be furnished with written notification of the decision.  This written notification will:
1) give the specific reason(s) for the denial;
2) make specific reference to The Policy provisions on which the denial is based;
3) provide a description of any additional information necessary to perfect a claim and an explanation of why it is necessary; and
4) provide an explanation of the review procedure.

**Claim Appeal:** *What recourse do I have if my claim is denied?*
On any claim, You or Your representative may appeal to Us for a full and fair review.  To do so You:
1) must request a review upon written application within:
   a) 180 days of receipt of claim denial if the claim requires Us to make a determination of disability; or
   b) 60 days of receipt of claim denial if the claim does not require Us to make a determination of disability; and
2) may request copies of all documents, records, and other information relevant to Your claim; and
3) may submit written comments, documents, records and other information relating to Your claim.

We will respond to You in writing with Our final decision on the claim.

**Social Security:** *When must I apply for Social Security Benefits?*
You must apply for Social Security disability benefits when the length of Your Disability meets the minimum duration required to apply for such benefits.  You must apply within 45 days from the date of Our request.  If the Social Security Administration denies Your eligibility for benefits, You will be required:
1) to follow the process established by the Social Security Administration to reconsider the denial; and
2) if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

KENCO 001587

**Benefit Estimates:** *How does the Company estimate Disability benefits under the United States Social Security Act?*
We reserve the right to reduce Your Monthly Benefit by estimating the Social Security disability benefits You or Your spouse and children may be eligible to receive.

When We determine that You or Your dependent may be eligible for benefits, We may estimate the amount of these benefits. We may reduce Your Monthly Benefit by the estimated amount.
Your Monthly Benefit will not be reduced by estimated Social Security disability benefits if:
1) You apply for Social Security disability benefits and pursue all required appeals in accordance with the Social Security provision; and
2) You have signed a form authorizing the Social Security Administration to release information about awards directly to Us; and
3) You have signed and returned Our reimbursement agreement, which confirms that You agree to repay all overpayments.

If We have reduced Your Monthly Benefit by an estimated amount and:
1) You or Your dependent are later awarded Social Security disability benefits, We will adjust Your Monthly Benefit when We receive proof of the amount awarded, and determine if it was higher or lower than Our estimate; or
2) Your application for Social Security disability benefits has been denied, We will adjust Your Monthly Benefit when You provide Us proof of final denial from which You cannot appeal from an Administrative Law Judge of the Office of Hearing and Appeals.

If Your Social Security benefits were lower than We estimated, and We owe You a refund, We will make such refund in a lump sum. If Your Social Security benefits were higher than We estimated, and if Your Monthly Benefit has been overpaid, You must make a lump sum refund to Us equal to all overpayments, in accordance with the Overpayment Recovery provision.

**Overpayment:** *When does an overpayment occur?*
An overpayment occurs:
1) when We determine that the total amount We have paid in benefits is more than the amount that was due to You under The Policy; or
2) when payment is made by Us that should have been made under another group policy.

This includes, but is not limited to, overpayments resulting from:
1) retroactive awards received from sources listed in the Other Income Benefits definition;
2) failure to report, or late notification to Us of any Other Income Benefit(s) or earned income;
3) misstatement;
4) fraud; or
5) any error We may make.

**Overpayment Recovery:** *How does the Company exercise the right to recover overpayments?*
We have the right to recover from You any amount that We determine to be an overpayment. You have the obligation to refund to Us any such amount. Our rights and Your obligations in this regard may also be set forth in the reimbursement agreement You will be required to sign when You become eligible for benefits under The Policy.

If benefits are overpaid on any claim, You must reimburse Us within 30 days.

If reimbursement is not made in a timely manner, We have the right to:
1) recover such overpayments from:
    a) You;
    b) any other organization;
    c) any other insurance company;
    d) any other person to or for whom payment was made; and
    e) Your estate;
2) reduce or offset against any future benefits payable to You or Your survivors, including the Minimum Monthly Benefit, until full reimbursement is made. Payments may continue when the overpayment has been recovered;
3) refer Your unpaid balance to a collection agency; and
4) pursue and enforce all legal and equitable rights in court.

**Subrogation:** *What are the Company's subrogation rights?*
If You:

KENCO 001588

1)  suffer a Disability because of the act or omission of a Third Party;
2)  become entitled to and are paid benefits under The Policy in compensation for lost wages; and
3)  do not initiate legal action for the recovery of such benefits from the Third Party in a reasonable period of time;
then We will be subrogated to any rights You may have against the Third Party and may, at Our option, bring legal action against the Third Party to recover any payments made by Us in connection with the Disability.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Reimbursement:** *What are the Company's Reimbursement Rights?*
We have the right to request to be reimbursed for any benefit payments made or required to be made under The Policy for a Disability for which You recover payment from a Third Party.

If You recover payment from a Third Party as:
a)  a legal judgment;
b)  an arbitration award; or
c)  a settlement or otherwise;
You must reimburse Us for the lesser of:
a)  the amount of payment made or required to be made by Us; or
b)  the amount recovered from the Third Party less any reasonable legal fees associated with the recovery.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Legal Actions:** *When can legal action be taken against Us?*
Legal action cannot be taken against Us:
1)  sooner than 60 days after the date Proof of Loss is given; or
2)  more than 3 years after the date Proof of Loss is required to be given according to the terms of The Policy.

**Insurance Fraud:** *How does the Company deal with fraud?*
Insurance Fraud occurs when You and/or Your Employer provide Us with false information or file a claim for benefits that contains any false, incomplete or misleading information with the intent to injure, defraud or deceive Us. It is a crime if You and/or Your Employer commit Insurance Fraud. We will use all means available to Us to detect, investigate, deter and prosecute those who commit Insurance Fraud. We will pursue all available legal remedies if You and/or Your Employer perpetrate Insurance Fraud.

**Misstatements:** *What happens if facts are misstated?*
If material facts about You were not stated accurately:
1)  Your premium may be adjusted; and
2)  the true facts will be used to determine if, and for what amount, coverage should have been in force.

No statement, except fraudulent misstatements, made by You relating to Your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during Your lifetime. In order to be used, the statement must be in writing and signed by You.

All statements made by the Policyholder, the Employer or You under The Policy will be deemed representations and not warranties. No statement made to affect this insurance will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary or Your representative.

**Policy Interpretation:** *Who interprets the terms and conditions of The Policy?*
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy. This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

**Physical Examinations and Autopsy:** *Will I be examined during the course of my claim?*
While a claim is pending We have the right at Our expense:
1)  to have the person who has a loss examined by a Physician when and as often as reasonably necessary; and
2)  to make an autopsy in case of death where it is not forbidden by law.

KENCO 001589

## DEFINITIONS

**Actively at Work** means at work with the Employer on a day that is one of the Employer's scheduled workdays.  On that day, You must be performing for wage or profit all of the regular duties of Your Occupation:
1) in the usual way; and
2) for Your usual number of hours.

We will consider You Actively at Work on a day that is not a scheduled work day only if You were Actively at Work on the preceding scheduled work day.

**Active Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business.  This must be at least the number of hours shown in the Schedule of Insurance.

**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
2) the Maximum Monthly Benefit.

**Current Monthly Earnings** means monthly earnings You receive from:
1) Your Employer; and
2) other employment;
while You are Disabled.

However, if the other employment is a job You held in addition to Your job with Your Employer, then during any period that You are entitled to benefits for being Disabled from Your Occupation, only the portion of Your earnings that exceeds Your average earnings from the other employer over the 6 month period just before You became Disabled will count as Current Monthly Earnings.

Current Monthly Earnings also includes the pay You could have received for another job or a modified job if:
1) such job was offered to You by Your Employer, or another employer, and You refused the offer; and
2) the requirements of the position were consistent with:
   a) Your education, training and experience; and
   b) Your capabilities as medically substantiated by Your Physician.

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
1) Your Occupation during the Elimination Period;
2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first.  For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:
1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy.
Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

KENCO 001590

**Elimination Period** means the longer of the number of consecutive days at the beginning of any one period of Disability which must elapse before benefits are payable or the expiration of any Employer sponsored short term Disability benefits or salary continuation program, excluding benefits required by state law.

**Employer** means the Policyholder.

**Indexed Pre-disability Earnings** means Your Pre-disability Earnings adjusted annually by adding the lesser of:
1) 10%; or
2) the percentage change in the Consumer Price Index (CPI-W).

The percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W. The adjustment is made January 1st each year after You have been Disabled for 12 consecutive month(s), provided You are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, We may use another nationally published index that is comparable to the CPI-W.

**Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:
1) Mental Retardation;
2) Pervasive Developmental Disorders;
3) Motor Skills Disorder;
4) Substance-Related Disorders;
5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; or
6) Narcolepsy and Sleep Disorders related to a General Medical Condition.

**Monthly Benefit** means a monthly sum payable to You while You are Disabled, subject to the terms of The Policy.

**Monthly Income Loss** means Your Pre-disability Earnings minus Your Current Monthly Earnings.

**Other Income Benefits** means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits that are paid to You or Your family, or to a third party on Your behalf, pursuant to any:
1) temporary, permanent disability, or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
2) governmental law or program that provides disability or unemployment benefits as a result of Your job with Your Employer;
3) plan or arrangement of coverage, whether insured or not, which is received from Your Employer as a result of employment by or association with Your Employer or which is the result of membership in or association with any group, association, union or other organization;
4) mandatory "no-fault" automobile insurance plan;
5) disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act;
   that You, Your spouse and/or children, are eligible to receive because of Your Disability; or
6) disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
   a) that begins after You become Disabled; or
   b) that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

22

KENCO 001591

Other Income Benefits also means any payments that are made to You or to Your family, or to a third party on Your behalf, pursuant to any:
1) disability benefit under Your Employer's Retirement Plan;
2) temporary, permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
3) portion of a judgment or settlement, minus associated costs, of a claim or lawsuit that represents or compensates for Your loss of earnings; or
4) retirement benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act;
   that You, Your spouse and/or children receive because of Your retirement, unless You were receiving them prior to becoming Disabled.

If You are paid Other Income Benefits in a lump sum or settlement, You must provide proof satisfactory to Us of:
1) the amount attributed to loss of income; and
2) the period of time covered by the lump sum or settlement.

We will pro-rate the lump sum or settlement over this period of time.  If You cannot or do not provide this information, We will assume the entire sum to be for loss of income, and the time period to be 24 month(s).  We may make a retroactive allocation of any retroactive Other Income Benefit.  A retroactive allocation may result in an overpayment of Your claim.

The amount of any increase in Other Income Benefits will not be included as Other Income Benefits if such increase:
1) takes effect after the date benefits become payable under The Policy; and
2) is a general increase which applies to all persons who are entitled to such benefits.

**Physician** means a person who is:
1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
2) licensed to practice in the jurisdiction where care is being given;
3) practicing within the scope of that license; and
4) not You or Related to You by blood or marriage.

**Pre-disability Earnings** means Your regular monthly rate of pay from Your Employer based on Your Statement of Wages Earned and Taxes Withheld (Form W-2) for:
1) the one full tax year immediately prior to the last day You were Actively at Work before You became Disabled; or
2) the total number of calendar months You worked for Your Employer as an Active Employee, if less than the above period.

**Prior Policy** means the long term disability insurance carried by the Employer on the day before the Policy Effective Date.

**Regular Care of a Physician** means that You are being treated by a Physician:
1) whose medical training and clinical experience are suitable to treat Your disabling condition; and
2) whose treatment is:
   a) consistent with the diagnosis of the disabling condition;
   b) according to guidelines established by medical, research, and rehabilitative organizations; and
   c) administered as often as needed;
   to achieve the maximum medical improvement.

**Rehabilitation** means a process of Our working together with You in order for Us to plan, adapt, and put into use options and services to meet Your return to work needs.  A Rehabilitation program may include, when We consider it to be appropriate, any necessary and feasible:
1) vocational testing;
2) vocational training;
3) alternative treatment plans such as:
   a) support groups;
   b) physical therapy;
   c) occupational therapy; or

KENCO 001592

     d)   speech therapy;
4) work-place modification to the extent not otherwise provided;
5) job placement;
6) transitional work; and
7) similar services.

**Related** means Your spouse, or other adult living with You, or Your sibling, parent, step-parent, grandparent, aunt, uncle, niece, nephew, son, daughter, or grandchild.

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for Your retirement and which is not funded wholly by Your contributions. It does not include:
1) a profit sharing plan;
2) thrift, savings or stock ownership plans;
3) a non-qualified deferred compensation plan; or
4) an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan, 403(b) plan or 457 deferred compensation arrangement.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1) impairments in social and/or occupational functioning;
2) debilitating physical condition;
3) inability to abstain from or reduce consumption of the substance; or
4) the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**The Policy** means the policy which We issued to the Policyholder under the Policy Number shown on the face page.

**We, Our, or Us** means the insurance company named on the face page of The Policy.

**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

**You or Your** means the person to whom this certificate is issued.

24

KENCO 001593

**Amendatory Rider**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
### 200 Hopmeadow Street
### Simsbury, Connecticut 06089
### (A stock insurance company)

This rider is attached to a certificate given in connection with The Policy.

This rider becomes effective on the certificate effective date.

This rider is intended to amend Your certificate, as indicated below, to comply with the laws of Your state of residence. Only those references to benefits, provisions or terms actually included in Your certificate will affect Your coverage. However, if Your policy is governed under the laws of Maryland, any of the benefits, provisions or terms that apply to the state you reside in as shown below will apply only to the extent that such state requirements are more beneficial to You.

For <u>Alaska</u> residents:
1) The provision titled **Policy Interpretation** is deleted in its entirety.
2) The following provision is added to the **General Provisions** section of Your certificate:
   **Eligibility Determination**: How will We determine Your eligibility for benefits?
   We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your eligibility or Your Spouse's or Your beneficiaries for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy. We will:
   1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;
   2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;
   3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;
   4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.
   In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

For <u>Arkansas</u> residents:
   The provision titled **Policy Interpretation** is deleted in its entirety.

KENCO 001594

For <u>Colorado</u> residents:
1) The **Change in Family Status** provision is amended to read as follows:
    **Change in Family Status:** *What constitutes a Change in Family Status?*
        1) You get married or enter a civil union or You execute a domestic partner affidavit;
        2) You or Your spouse divorce or terminate a civil union or You terminate a domestic partnership;
        3) Your child is born or You adopt or become the legal guardian of a child;
        4) Your spouse or party to a civil union or domestic partner dies;
        5) Your child is emancipated or dies;
        6) Your spouse or party to a civil union or domestic partner is no longer employed, which results in a loss of group insurance; or
        7) You have a change in classification from part-time to full-time or from full-time to part-time.
2) The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
    **Surviving Spouse** means Your wife or husband who was not legally separated or divorced from You when You died. Spouse will include Your partner in a civil union.
    "Spouse" will include Your domestic partner provided You:
        1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy: or
        2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
    You will continue to be considered domestic partners provided You continue to meet the requirements described in the domestic partner affidavit or required by law.
3) The definition of **Surviving Children** in the **Survivor Income Benefit** is amended to read as follows:
    **Surviving Children** means Your unmarried children, step children, legally adopted children who, on the date You die, are primarily dependent on You for support and maintenance and who are:
        1) under age 19; or
        2) between the ages of age 19 and 23, inclusive, and in full-time attendance at an institution of learning.
    The term Surviving Children will also include any other children related to You by blood or marriage or civil union or domestic partnership and who:
        1) lived with You in a regular parent-child relationship; and
        2) were eligible to be claimed as dependents on Your federal income tax return for the last tax year prior to Your death.

For <u>Delaware</u> residents:
The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
**Surviving Spouse** means Your spouse who was not legally separated or divorced from You when You died.
"Spouse" will include Your domestic partner provided You:
    1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
    2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit or required by law.

For <u>Indiana</u> residents, the following sentence is added to the **Policy Interpretation** provision:
    This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

For <u>Louisiana</u> residents, the following provision is added:
    **Reinstatement after Military Service**: *Can my coverage be reinstated after return from active military service?*
    If Your coverage terminates because You enter active military service, coverage for You may be reinstated, provided You request such reinstatement upon Your return to work from active military service.

    The reinstated coverage will:
        1) be the same coverage amounts in force on the date coverage terminated; and
        2) not be subject to any Waiting Period for Coverage, Evidence of Insurability or Pre-existing Conditions Limitations; and be subject to all the terms and provisions of The Policy Reference.

For <u>Massachusetts</u> residents,
1) The following is added to the **Continuation Provisions**:

26

KENCO 001595

In accordance with Massachusetts state law, if Your insurance terminates because Your employment terminates or You cease to be a member of an eligible class, Your insurance will automatically be continued until the end of a 31 day period from the date Your insurance terminates or the date You become eligible for similar benefits under another group plan, whichever occurs first.

Additionally, if Your insurance terminates because Your employment is terminated as a result of a plant closing or covered partial closing, Your insurance may be continued. You must elect in writing to continue insurance and pay the required premium for continued coverage. Coverage will cease on the earliest to occur of the following dates:
1) 90 days from the date You were no longer eligible for coverage as a Full-time Active Employee;
2) the date You become eligible for similar benefits under another group plan;
3) the last day of the period for which required premium is made;
4) the date the group insurance policy terminates; or
5) the date Your Employer ceases to be a Participant Employer, if applicable.
Continued coverage is subject to all other applicable terms and conditions of The Policy.
2) The **Surviving Children** definition in the **Survivor Income Benefit** will also include a child in the process of adoption.

For Maine residents, the following provision is added:
**Reinstatement:** *Can my coverage be reinstated after it ends?*
We will reinstate The Policy upon receipt of all current and late premiums if:
1) You, any person authorized to act on Your behalf, or any of Your dependents may request reinstatement of The Policy within 90 days following cancellation of The Policy for nonpayment of premium provided You suffered from cognitive impairment or functional incapacity at the time the contract cancelled; and
2) all current and late premium payments are received within 15 days of Our request.

We may request a medical demonstration, at Your expense, that You suffered from cognitive impairment or functional incapacity at the time of cancellation of The Policy.

For Minnesota residents:
1) the definition of **Any Occupation** is amended by the addition of the phrase "or may reasonably become qualified" to the first line;
2) The first two paragraphs of the **Pre-Existing Conditions Limitation** provision are deleted and replaced by the following:
No benefit will be payable under The Policy for any Disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability or loss is incurred:
1) After the lesser of the last day of:
a) the number of days stated in Your certificate; or
b) 730 consecutive days;
while insured, during which you receive no medical care for the Pre-Existing Condition; or
2) After the lesser of the last day of:
a) the number of days stated in Your certificate; or
b) 730 consecutive days;
during which you have been continuously insured under The Policy.
The amount of a benefit increase, which results from a change in benefit options, a change of class or a change in The Policy, will not be paid for any disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability begins:
1) After the lesser of the last day of :
a) the number of days stated in Your certificate; or
b) 730 consecutive days;
while insured for the increased benefit amount during which you receive no medical care for the Pre-Existing Condition; or
2) After the lesser of the last day of :
a) the number of days stated in Your certificate; or
b) 730 consecutive days;
during which you have been continuously insured for the increased benefit amount.
3) The definition of **Pre-existing Condition** in the **Pre-Existing Conditions Limitation** provision is deleted and is replaced by the following:
**Pre-existing Condition** means any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse for which You received Medical Care during the lesser of:

KENCO 001596

1) the period of time stated in Your certificate; or
2) the 730 day period;
that ends the day before:
1) Your effective date of coverage; or
2) the effective date of a Change in Coverage.

For <u>Missouri</u> residents, the **Exclusion** related to intentionally self-inflicted Injury is replaced by the following:
intentionally self-inflicted Injury, suicide or attempted suicide, while sane; or

For <u>Montana</u> residents, pregnancy will be covered, the same as any other Sickness, anything in the Policy to the contrary notwithstanding.

For <u>New Hampshire</u> residents:
1) The **Policy Interpretation** provision is deleted and replaced by the following:
Under ERISA, We are hereby designated by the plan sponsor as a claim fiduciary with discretionary authority to determine eligibility for benefits and to interpret and construe the terms and provisions of The Policy. As claim fiduciary, We have a duty to administer claims solely in the interest of the participants and beneficiaries of the employee benefit plan and in accordance with the documents and instruments governing the plan. This assignment of discretionary authority does not prohibit a participant or beneficiary from seeking judicial review of Our benefit eligibility determination after exhausting administrative remedies. The assignment of discretionary authority made under this provision may affect the standard of review that a court will use in reviewing the appropriateness of Our determination. In order to prevail, a plan participant or beneficiary may be required to prove that Our determination was arbitrary and capricious or an abuse of discretion.
2) The time periods stated in the **Claim Appeal** provision are changed to 180 days, if less than 180 days.

For <u>New York</u> residents, the definition of **Surviving Spouse** in the **Survivor Income Benefit** deleted and replaced by the following:
**Surviving Spouse** means Your wife, husband or partner in a same-sex marriage who was not legally separated or divorced from You when You died. "Spouse" will include Your domestic partner, provided You have executed a Domestic Partner Affidavit acceptable to us, establishing that You and Your partner are domestic partners for purposes of The Policy. You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit.

For all <u>North Carolina</u> residents:
1) The definition of **Other Income Benefits** is amended by the deletion of mandatory "no-fault" automobile insurance plan;
2) The following is added to the definition of **Regular Care of a Physician:**
You are not required to be under the Regular Care of a Physician if qualified medical professionals have determined that further medical care and treatment would be of no benefit to You.
3) The exclusion regarding Workers' Compensation benefits is replaced by the following in the **Exclusions** provision:
for which the final adjudication of a Workers' Compensation claim determines that benefits are paid, or may be paid, if duly claimed;
4) The **Subrogation** provision is deleted.
5) The **Reimbursement** provision is deleted.

For North Carolina residents covered under a policy issued to a Trust:
1) The **Misstatement** provision is amended by the deletion of the phrase except fraudulent misstatements.
2) The **Sending Proof of Loss** provision is amended as follows:
Written Proof of Loss must be sent to Us within 180 days following the completion of the Elimination Period.
3) The **Claims to be Paid** provision is amended as follows:
We may pay up to $3,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.
4) The **Notice of Claim** provision is amended to require the phrase or Our representative in the first sentence.

For <u>Oregon</u> residents:
1) The following is added to the definition of **Surviving Spouse** in the **Survivor Income Benefit**:
Spouse will include Your domestic partner provided You have registered as domestic partners with a government agency or office where such registration is available.
2) The definition of **Surviving Children** in the **Survivor Income Benefit** is amended to include children related to

28

KENCO 001597

You by domestic partnership.
3) The following is added to the **Continuation Provisions** for Employers with 10 or more employees:
<u>Jury Duty:</u>  If You are scheduled to serve or are required to serve as a juror, Your coverage may be continued until the last day of Your Jury Duty, provided You:
1) elected to have Your coverage continued; and
2) provided notice of the election to Your Employer in accordance with Your Employer's notification policy.

For <u>Rhode Island</u> residents:
1) The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
   **Surviving Spouse** means Your spouse who was not legally separated or divorced from You when You died. "Spouse" will include Your domestic partner provided You:
   1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
   2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
   You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit or required by law.
2) The provision titled **Policy Interpretation** is deleted in its entirety.

For <u>South Carolina</u> residents:
1) The second paragraph of the **Continuity from a Prior Policy** provision is replaced by the following:
   *Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
   If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy within 30 days of being covered under The Policy, the Pre-existing Conditions Limitation will end on the earliest of:
   1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
   2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.
2) The following is added to the **Physical Examinations and Autopsy** provision: "Such autopsy must be performed during the period of contestability and must take place in the state of South Carolina."

For <u>South Dakota</u> residents:
1) The definition of **Physician** is deleted and replaced by the following:
   **Physician** means a person who is:
   1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
   2) licensed to practice in the jurisdiction where care is being given;
   3) practicing within the scope of that license; and
   4) not You or Your Spouse or Related to You or Your Spouse by blood or marriage, unless such physician is the only one in the area and is acting within the scope of their normal employment.
2) The definition of **Other Income Benefits** is amended by the deletion of all references to Your family, Your spouse and/or children.
3) The provision titled **Policy Interpretation** is deleted in its entirety.

For <u>Utah</u> residents:
1) The **Policy Interpretation** provision is replaced by the following:
   **Policy Interpretation:**  *Who interprets the terms and conditions of The Policy?*
   **Benefits under this plan will be paid only if We decide in Our discretion that You are entitled to them.  We also have discretion to determine eligibility for benefits and to interpret the terms of conditions of the benefit plan.  Determinations made by Us pursuant to this reservation of discretion do not prohibit or prevent You from seeking judicial review in federal court of Our determinations.**

   **The reservation of discretion made under this provision only establishes the scope of review that a federal court will apply when You seek judicial review of Our determination of eligibility for benefits, the payment of benefits, or interpretation of the terms and conditions applicable to the benefit plan.**

29

KENCO 001598

**We are an insurance company that provides insurance to this benefit plan and the federal court will determine the level of discretion that it will accord to Our determinations.**

2) Item 3 of the second paragraph of the **Sending Proof of Loss** provision is deleted.

For Vermont residents:

**Purpose**: Vermont law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to married persons.

**Definitions, Terms, Conditions and Provisions**: The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

1) Terms that mean or refer to a marital relationship, or that may be construed to mean or refer to a marital relationship, such as "marriage", "spouse", "husband", "wife", "dependent", "next of kin", "relative", "beneficiary", "survivor", "immediate family" and any other such terms, include the relationship created by a civil union established according to Vermont law.
2) Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage", "divorce decree", "termination of marriage" and any other such terms include the inception or dissolution of a civil union established according to Vermont law.
3) Terms that mean or refer to family relationships arising from a marriage, such as "family", "immediate family", "dependent", "children", "next of kin", "relative", "beneficiary", "survivor" and any other such terms include family relationships created by a civil union established according to Vermont law.
4) "Dependent" means a spouse, a party to a civil union established according to Vermont law, and a child or children (natural, stepchild, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.
5) "Child or covered child" means a child (natural, step-child, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.

**CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE**

Vermont law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA", controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under COBRA for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights under this contract.

For Washington residents:

1) The following is added to the **Continuation Provisions** provision:
   General Work Stoppage (including a strike or lockout): If Your employment terminates due to a cessation of active work as the result of a general work stoppage (including a strike or lockout), Your coverage shall be continued during the work stoppage for a period not exceeding 6 months. If the work stoppage ends, this continuation will cease immediately.
2) The provision titled **Policy Interpretation** is deleted in its entirety.
3) The following provision is added to the **General Provisions** section of Your certificate:
   **Eligibility Determination**: *How will We determine Your eligibility for benefits?*
   We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your or Your Spouse's or Your beneficiaries' eligibility for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy. We will:
   1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of

30

KENCO 001599

Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;

2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;

3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;

4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.

In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

In all other respects the certificate remains the same.

Signed for Hartford Life and Accident Insurance Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

KENCO 001600

**ERISA INFORMATION**
**THE FOLLOWING NOTICE**
**CONTAINS IMPORTANT INFORMATION**

This employee welfare benefit plan (Plan) is subject to certain requirements of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA requires that you receive a Statement of ERISA Rights, a description of Claim Procedures, and other specific information about the Plan. This document serves to meet ERISA requirements and provides important information about the Plan.

The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan. The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

A copy of the Plan is available for your review during normal working hours in the office of the Plan Administrator.

1. **Plan Name**

   Group Long Term Disability Plan for employees of KENCO.

2. **Plan Number**

   LTD - 504

   LTD - 505

3. **Employer/Plan Sponsor**

   KENCO
   2001 Riverside Drive
   Chattanooga, TN 37406

4. **Employer Identification Number**

   62-0799523

5. **Type of Plan**

   Welfare Benefit Plan providing Group Long Term Disability.

6. **Plan Administrator**

   KENCO
   2001 Riverside Drive
   Chattanooga, TN 37406

7. **Agent for Service of Legal Process**

32

KENCO 001601

For the Plan

KENCO
2001 Riverside Drive
Chattanooga, TN 37406

For the Policy:

Hartford Life and Accident Insurance Company
200 Hopmeadow St.
Simsbury, CT 06089

In addition to the above, Service of Legal Process may be made on a plan trustee or the plan administrator.

---

8. **Sources of Contributions**   The Employer pays the premium for the insurance, but may allocate part of the cost to the employee, or the employee may pay the entire premium.  The Employer determines the portion of the cost to be paid by the employee.  The insurance company/provider determines the cost according to the rate structure reflected in the Policy of Incorporation.

---

9. **Type of Administration**   The plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan.

---

10. The Plan and its records are kept on a Policy Year basis.

---

11. **Labor Organizations**

None

---

12. **Names and Addresses of Trustees**

None

---

13. **Plan Amendment Procedure**

The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

The Employer also reserves the right to adjust your share of the cost to continue coverage by the same procedures.

KENCO 001602

**STATEMENT OF ERISA RIGHTS**

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA provides that all Plan participants shall be entitled to:

1. **Receive Information About Your Plan and Benefits**

   a) Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

   b) Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary Plan description. The administrator may make a reasonable charge for the copies.

   c) Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

2. **Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

3. **Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied and ignored, in whole or in part, you may file suit in a state or Federal court. If the Plan requires you to complete administrative appeals prior to filing in court, your right to file suit in state and Federal court may be affected if you do not complete the required appeals. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

4. **Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration (formerly known as the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**CLAIM PROCEDURES**

The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

**Claim Procedures for Claims Requiring a Determination of Disability**

KENCO 001603

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 45 days after receipt of your properly filed claim. The time for decision may be extended for two additional 30 day periods provided that, prior to any extension period, the Insurance Company notifies you in writing that an extension is necessary due to matters beyond the control of the Plan, identifies those matters and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim, the time for decision may be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to our request. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

Any adverse benefit determination will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary, 4) a description of the review procedures and time limits applicable to such procedures, 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal, and 6) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the denial, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the denial and that a copy will be provided free of charge to you upon request, or (B) if denial is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial. As part of your appeal:

1.  you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2.  you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request.

The individual reviewing your appeal shall give no deference to the initial benefit decision and shall be an individual who is neither the individual who made the initial benefit decision, nor the subordinate of such individual. The review process provides for the identification of the medical or vocational experts whose advice was obtained in connection with an initial adverse decision, without regard to whether that advice was relied upon in making that decision. When deciding an appeal that is based in whole or part on medical judgment, we will consult with a medical professional having the appropriate training and experience in the field of medicine involved in the medical judgment and who is neither an individual consulted in connection with the initial benefit decision, nor a subordinate of such individual. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

KENCO 001604

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a statement that you have the right to bring a civil action under section 502(a) of ERISA, 4) a statement that you may request, free of charge, copies of all documents, records, and other information relevant to your claim; 5) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the decision on appeal, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the decision on appeal and that a copy will be provided free of charge to you upon request, or (B) if the decision on appeal is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the decision on appeal, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request, and 6) any other notice(s), statement(s) or information required by applicable law.

## Claim Procedures for Claims Not Requiring a Determination of Disability

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 90 days after receipt of your properly filed claim. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 90 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 180 days after your claim was received. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

However, any adverse benefit determination will be in writing and include: 1) specific reasons for the decision; 2) specific references to Policy provisions on which the decision is based; 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary; 4) a description of the review procedures and time limits applicable to such, and 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 60 days from the date you received your claim denial. As part of your appeal:

1. you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2. you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 60 days after it receives your timely appeal. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 60 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 120 days after your appeal was received. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision and specific references to the Policy provisions on which the decision is based, 2) a statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and

36

KENCO 001605

other information relevant to the claim, 3) a statement of your right to bring a civil action under section 502(a) of ERISA, and 4) any other notice(s), statement(s) or information required by applicable law.

KENCO 001606

**The Plan Described in this Booklet**
**is Insured by the**

**Hartford Life and Accident Insurance Company**
**Simsbury, Connecticut**
**Member of The Hartford Insurance Group**

KENCO 001607

**Amendatory Rider**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
**200 Hopmeadow Street**
**Simsbury, Connecticut 06089**
**(A stock Insurance company)**

This rider is attached to a certificate given in connection with Policy Number GLT-674076, issued to KENCO.

This rider becomes effective January 1, 2015.

The certificate is hereby amended in the following manner:

With respect to All Full-time Active Employees who are exempt level employees, Your certificate is amended as follows:

1) The **Cost of Coverage** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

   **Cost of Coverage:**
   You do not contribute toward the cost of coverage.

2) The **Disclosure of Fees** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate will not apply to You.

3) The **Disclosure of Services** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate will not apply to You.

4) The **Eligibility Waiting Period for Coverage** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

   **Eligibility Waiting Period for Coverage:**
   1) None - if You are working for the Employer on the Policy Effective Date; or
   2) 90 day(s) - if You start working for the Employer after the Policy Effective Date.

   The time period(s) referenced above are continuous.

5) The **Maximum Monthly Benefit** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

   **Maximum Monthly Benefit:** $7,500

7) The **Maximum Duration of Benefits** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

### Maximum Duration of Benefits

#### Maximum Duration of Benefits Table

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 63 | To Normal Retirement Age or 42 months, if greater |
| Age 63 | To Normal Retirement Age or 36 months, if greater |
| Age 64 | 30 months |

Form PA-9394 (10/08)                    1                    (674076) 17.02

KENCO 001608

| | |
|---|---|
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by Your date of birth as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 |
| 1938 | 65 + 2 months |
| 1939 | 65 + 4 months |
| 1940 | 65 + 6 months |
| 1941 | 65 + 8 months |
| 1942 | 65 + 10 months |
| 1943 thru 1954 | 66 |
| 1955 | 66 + 2 months |
| 1956 | 66 + 4 months |
| 1957 | 66 + 6 months |
| 1958 | 66 + 8 months |
| 1959 | 66 + 10 months |
| 1960 or after | 67 |

8) The **Additional Benefit** provision shown in the **Schedule of Insurance** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

**Additional Benefit:**

**Family Care Credit Benefit**
see benefit

**Survivor Income Benefit**
see benefit

**Workplace Modification Benefit**
see benefit

**Ability Plus Benefit**
see benefit

9) The **Enrollment** provision shown in the **Eligibility and Enrollment** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

**Enrollment:** *How do I enroll for coverage?*
All eligible Active Employees will be enrolled automatically by the Employer.

10) The **Evidence of Insurability** provision shown in the **Eligibility and Enrollment** section of the **Long Term Disability** portion of Your certificate will not apply to You.

11) The **Effective Date** provision shown in the **Period of Coverage** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

**Effective Date:** *When does my coverage start?*
Your coverage will start on the date You become eligible.

12) The **Changes in Coverage** provision shown in the **Period of Coverage** section of the **Long Term Disability** portion of Your certificate will not apply to You.

KENCO 001609

13) The **Termination of Payment** provision shown in the **Benefits** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

**Termination of Payment:** *When will my benefit payments end?*
Benefit payments will stop on the earliest of:
1) the date You are no longer Disabled;
2) the date You fail to furnish Proof of Loss;
3) the date You are no longer under the Regular Care of a Physician;
4) the date You refuse Our request that You submit to an examination by a Physician or other qualified medical professional;
5) the date of Your death;
6) the date You refuse to receive recommended treatment that is generally acknowledged by Physicians to cure, correct or limit the disabling condition;
7) the last day benefits are payable according to the Maximum Duration of Benefits Table;
8) the date Your Current Monthly Earnings are equal to or greater than 80% of Your Indexed Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation;
9) the date no further benefits are payable under any provision in The Policy that limits benefit duration;
10) the date You refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
    a) modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
    b) adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
    c) modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation; or
    d) adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation;
    provided a qualified Physician or other qualified medical professional agrees that such modifications, Rehabilitation program or adaptive equipment accommodate Your medical limitation; or
11) the date You receive retirement benefits from any employer's Retirement Plan, unless:
    a) You were receiving them prior to becoming Disabled; or
    b) You immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.

14) The following **Ability Plus Benefit** provision shall be included in the **Benefits** section of the **Long Term Disability** portion of Your certificate:

**Ability Plus Benefit:** *What is the Ability Plus Benefit?*
We will pay You the Ability Plus Benefit if:
1) a Monthly Benefit is payable;
2) You become Cognitively Impaired or unable to perform two or more Activities of Daily Living (ADLs) for which You cannot be reasonably accommodated by adaptive equipment:
    a) during or after the Elimination Period, and
    b) for at least 30 consecutive days; and
3) the Disability and such impairment or inability begins while You are covered under this benefit.

The Ability Plus Benefit will be 20% of Your Pre-disability Earnings, but not greater than the lesser of:
1) $7,500; or
2) the Maximum Monthly Benefit.

We will pay the benefit to You monthly. For periods of less than one month, We will pay 1/30th of the Ability Plus Benefit for each day of covered loss. The Ability Plus Benefit is payable in addition to the Monthly Benefit payable under the Disability Benefit.

The Ability Plus Benefit will not:
1) be reduced by Other Income Benefits; or
2) increase or reduce other benefits under The Policy.
You are not restricted in any way as to Your use of this Ability Plus Benefit.

We will stop paying You the Ability Plus Benefit on the date:

3

      1)   Your Monthly Benefit terminates; or
      2)   You are not Cognitively Impaired and You are able to perform five or more ADLs.

**Cognitively Impaired** means You suffer severe deterioration, or loss of:
      1)   memory;
      2)   orientation; or
      3)   the ability to understand or reason;
so that You are unable to perform common tasks such as, but not limited to, medication management, money management and using the telephone. The impairment in intellectual capacity must be measurable by standardized tests.

**Activities of Daily Living (ADLs)** means the following functions performed with or without equipment or adaptive devices:
      1)   bathing Yourself by being able to either:
           a)   wash Yourself in a tub or shower devices; or
           b)   give Yourself a sponge bath;
      2)   dressing Yourself by putting on and taking off needed garments and any braces or artificial limbs necessary for You to wear;
      3)   using the toilet by being able to get to and from, and on and off the toilet, and performing the associated hygienic tasks; or
      4)   transferring from bed to chair or wheelchair; or
      5)   bladder and bowel control by being able to either:
           a)   voluntarily control bowel and bladder function; or
           b)   maintain a reasonable level of personal hygiene, if You are not so able; and
      6)   feeding Yourself, once the food has been prepared and made available to You.

15) The **Disability or Disabled** definition shown in the **Definitions** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
      1)   Your Occupation during the Elimination Period; and
      2)   Your Occupation following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings.

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:
      1)   accidental bodily injury;
      2)   sickness;
      3)   Mental Illness;
      4)   Substance Abuse; or
      5)   pregnancy.
Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

16) The **Pre-disability Earnings** definition shown in the **Definitions** section of the **Long Term Disability** portion of Your certificate is amended to read as follows:

**Pre-disability Earnings** means Your monthly average of earnings from Your Employer based on Your Statement of Wages Earned and Taxes Withheld (Form W-2) for:
      1)   the two full tax year immediately prior to the last day You were Actively at Work before You became Disabled; or
      2)   the total number of calendar months You worked for Your Employer as an Active Employee, if less than the above period.

4

KENCO 001611

In all other respects the certificate remains the same.

Signed for Hartford Life and Accident Insurance Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

5

KENCO 001612

# GROUP
# BENEFIT
# PLAN

## KENCO GROUP, INC.

**Short Term Disability**

KENCO 001613

KENCO 001614

## TABLE OF CONTENTS

**Group Short Term Disability Benefits**

PAGE

CERTIFICATE OF INSURANCE .................................................................. 2
SCHEDULE OF INSURANCE ..................................................................... 3
    Must you contribute toward the cost of coverage? .................................. 3
    Who is eligible for coverage? ................................................................ 3
    When will You become eligible? (Eligibility Waiting Period) ................. 4
ELIGIBILITY AND ENROLLMENT ........................................................... 4
    When does your coverage start? ............................................................ 4
    When will coverage become effective if a disabling condition causes
    you to be absent from work on the date it is to start? ............................ 5
BENEFITS ................................................................................................ 6
    How do benefits become payable for Total Disability? ........................... 6
    How are benefits paid for Residual Disability? ...................................... 6
    When will benefit payments cease? ....................................................... 7
    What is Vocational Rehabilitation? ........................................................ 8
EXCLUSIONS .......................................................................................... 9
    What disabilities are not covered? ......................................................... 9
TERMINATION ...................................................................................... 10
    When does your insurance terminate? .................................................. 10
    Does your insurance coverage continue while you are Disabled and
    no longer an Active Full-time Employee? ............................................ 11
GENERAL PROVISIONS ........................................................................ 11
DEFINITIONS ........................................................................................ 15
TATUTORYPROVISIONS ...................................................................... 19
ERISA ................................................................................................... 23

A note on capitalization in this benefits booklet:

Capitalization of the first letter of a word or phrase not normally capitalized according to the rules of standard punctuation (Weekly Earnings, for example) indicates a word or phrase that is defined in the DEFINITIONS section, or that refers back to an item found in the Schedule of Benefits.

PS-M-73

KENCO 001615

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford, Connecticut
(Herein called Hartford Life)

---

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy**
**as of the Effective Date**
Issued by
**HARTFORD LIFE**
to
**The Policyholder**

---

This is to certify that Hartford Life has issued and delivered the Group Insurance Policy to The Policyholder.

The Group Insurance Policy insures the employees of the Policyholder who:
- are eligible for the insurance;
- become insured; and
- continue to be insured;

according to the terms of the Policy.

The terms of the Group Insurance Policy which affect an employee's insurance are contained in the following pages. This Certificate of Insurance and the following pages will become your Booklet-certificate. The Booklet-certificate is a part of the Group Insurance Policy.

This Booklet-certificate replaces any other which Hartford Life may have issued to the Policyholder to give to you under the Group Insurance Policy specified herein.

Christine Hayer Repasy, *Secretary*          Thomas M. Marra, *President*

Z-STD(C003)

2

KENCO 001616

## SCHEDULE OF INSURANCE

Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office.

| | |
|---|---|
| Policyholder: | KENCO GROUP, INC. |
| Group Insurance Policy: | GRH-674076 |
| Plan Effective Date: | June 1, 2001 |

This plan of Short Term Disability Insurance provides you with short term income protection if you become Disabled from a covered accident, sickness or pregnancy.

**Must you contribute toward the cost of coverage**?
You do not contribute toward the cost of coverage.

**Who is eligible for coverage**?
Eligible Class(es):                                        All Active Full-time Employees excluding Athena Warehouse, Eightco, Camden, Waynesboro & Seaford Employees who are U.S. citizens or U.S. residents, excluding temporary and seasonal employees

Full-time Employees:                                     30 hours weekly

The **Weekly Benefit** will be the lesser of:
- 60% of your Weekly Earnings; or
- $500,

reduced by Other Income Benefits.

3                                   674076(GRH)1

KENCO 001617

The **Maximum Duration of Benefits** for a Disability is:
- 26 week(s) if caused by Accident;
- 26 week(s) if caused by Sickness.

**Benefits Commence** for Disability caused by:
- Accident: on the 15th day of Disability
- Sickness: on the 15th day of Disability

**When will You become eligible? (Eligibility Waiting Period)**
You will be eligible for coverage on the date on which You complete a waiting period of 90 days of continuous service.

The waiting period will be reduced by the period of time you were an Active Full-time Employee with the Employer under the Prior Plan.

## ELIGIBILITY AND ENROLLMENT

**Who are Eligible Persons?**
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**When will you become eligible?**
You will become eligible for coverage on either:
1. the Plan Effective Date, if you have completed the Eligibility Waiting Period; or if not
2. the date on which you complete the Eligibility Waiting Period.

See the Schedule of Insurance for the Eligibility Waiting Period.

**How do you enroll?**
Eligible Persons will be enrolled automatically by the Employer.

## WHEN COVERAGE STARTS

**When does your coverage start?**
If you are not required to contribute toward the plan's cost, your coverage will start on the date you become eligible.

4

KENCO 001618

## DEFERRED EFFECTIVE DATE

**Will coverage become effective if a disabling condition causes you to be absent from work on the date it is to start?**
If you are absent from work due to your:
1.  accidental bodily injury;
2.  sickness;
3.  pregnancy;
4.  Mental Illness; or
5.  Substance Abuse,

on the date your insurance or increase in coverage would otherwise have become effective, the effective date of the coverage or increase in coverage will be deferred until you have been Actively at Work for one full work-day.

## CHANGES IN COVERAGE

**Do coverage amounts change if there is a change in your class or your rate of pay?**
Your coverage may increase or decrease on the date there is a change in your class or Weekly Earnings. However, no increase in coverage will be effective unless on that date you:
1.  are an Active Full-time Employee; and
2.  are not absent from work due to your being Disabled.

If you were so absent from work, the effective date of such increase will be deferred until you are Actively at Work for one full day.

No change in your Weekly Earnings will become effective until the date we receive notice of the change.

**What happens if the Employer changes the Plan?**
Any increase or decrease in coverage because of a change in the Schedule of Insurance will become effective on the date of the change, except that the limitations on increases stated in the Deferred Effective Date provision will apply.

5

KENCO 001619

## BENEFITS

**How do benefits become payable for Total Disability?**
If, while covered under this Benefit, you become Totally Disabled, and furnish proof to us that you remain Totally Disabled, we will pay the Weekly Benefit shown in the Schedule of Insurance.

The amount of any Weekly Benefit payable shall be reduced by the total amount of all Other Income Benefits, including any amount for which you could collect but did not apply.

See the Schedule of Insurance for the Weekly Benefit, the Maximum Duration of Benefits, and when Benefits Commence.

No benefits will be payable unless you are under the care of a Physician other than yourself.

## RESIDUAL DISABILITY BENEFITS

**How are benefits paid for Residual Disability?**
If while covered under this benefit, you become Disabled and work on a Part-time or limited duty basis because you are Residually Disabled, the following calculation is used to determine your Weekly Benefit:

$$\text{Weekly Benefit} = ((A - B) / A) \times C$$

Where

**A** = Your pre-disability Weekly Earnings.
**B** = Your Current Weekly Earnings.
**C** = The Weekly Benefit payable if you were Totally Disabled.

If you are participating in a program of Rehabilitative Employment approved by us, your Weekly Benefit will be determined by the Rehabilitative Employment Benefit.

6

KENCO 001620

**How is a benefit calculated for a period of less than a week?**
If a Weekly Benefit is payable for less than a week, we will pay 1/5 of the
Weekly Benefit for each day you were Disabled.

**When will benefit payments cease?**
Benefit payments will stop on the first to occur of:
1. the date you are no longer Disabled;
2. the date you fail to furnish proof that you continue to be Disabled;
3. the date you refuse to be examined, if we require an examination;
4. the last day benefits are payable according to the Maximum Duration of
   Benefits shown in the Schedule of Insurance; or
5. the date you die.

### RECURRENT DISABILITY

**What happens to your benefits if you return to work as an Active Full-
time Employee and then become Disabled again?**
If you return to work as an Active Full-time Employee for 15 consecutive
days or more, any recurrence of a disability will be treated as a new
Disability with respect to when Benefits Commence and the Maximum
Duration of Benefits, as shown in the Schedule of Insurance.

If recurrent periods of Disability are:
1. due to the same or a related cause; and
2. separated by less than 15 consecutive days of work as an Active Full-
   time Employee,

they will be considered to be the same period of Disability.

KENCO 001621

## MULTIPLE CAUSES

**How long will benefits be paid if a period of Disability is extended by another cause?**

If a period of Disability is extended by a new cause while weekly benefits are payable, weekly benefits will continue while you remain Disabled, subject to the following:

1.  weekly benefits will not continue beyond the end of the original Maximum Duration of Benefits; and
2.  the Exclusions will apply to the new cause of Disability.

## VOCATIONAL REHABILITATION

**What is Vocational Rehabilitation?**

**Vocational Rehabilitation** means employment or services that prepare you, if Disabled, to resume gainful work.

Our Vocational Rehabilitative Services include, when appropriate, any necessary and feasible:

1.  vocational testing;
2.  vocational training;
3.  work-place modification;
4.  prosthesis; or
5.  job placement.

## REHABILITATIVE EMPLOYMENT

**Rehabilitative Employment** means employment that is part of a program of Vocational Rehabilitation. Any program of Rehabilitative Employment must be approved, in writing, by us.

8

KENCO 001622

**Do earnings from Rehabilitative Employment affect the Weekly Benefit?**

If you are Disabled and are engaged in an approved program of Rehabilitative Employment, your Weekly Benefit will be:

1. the amount calculated for Total Disability; but
2. reduced by 0% of the income received from each week of such Rehabilitative Employment.

The sum of your Weekly Benefit and total income received under this provision may not exceed 100% of your pre-disability Weekly Earnings. If this sum exceeds your pre-disability Weekly Earnings, the Weekly Benefit paid by us will be reduced proportionately.

<h3 style="text-align:center">EXCLUSIONS</h3>

**What Disabilities are not covered?**

The plan does not cover, and no benefit shall be paid for, any:

1. injury, sickness, Mental Illness, Substance Abuse, or pregnancy not being treated by a Physician or surgeon;
2. Disability caused or contributed to by war or act of war (declared or not);
3. Disability caused by your commission of or attempt to commit a felony, or to which a contributing cause was your being engaged in an illegal occupation;
4. Disability caused or contributed to by an intentionally self-inflicted injury;
5. sickness or injury for which workers' compensation benefits are paid, or may be paid, if duly claimed; or
6. injury sustained as a result of doing any work for pay or profit for another employer.

If you are receiving, or are eligible to receive, benefits for a Disability under a prior plan of disability benefits that:

1. was sponsored by the Employer; and
2. was terminated on the day before the Effective Date of this plan,

then no benefits will be payable for the Disability under this plan.

KENCO 001623

## TERMINATION

**When does your insurance terminate?**
Your insurance will terminate on the earliest of:
1.   the date the Group Insurance Policy terminates;
2.   the date the Group Insurance Policy no longer insures your class;
3.   the date premium payment is due but not paid by the Employer;
4.   the last day of the period for which you make any required premium contribution, if you fail to make any further required contribution;
5.   the date on which you cease to be an Active Full-time Employee in an eligible class, including:
      a)   temporary layoff;
      b)   leave of absence; or
      c)   work stoppage (including a strike or lockout); or
      d)   the date your Employer ceases to be a Participant Employer, if applicable.

**May coverage be continued during a family or medical leave?**
If you are granted a leave of absence according to the Family and Medical Leave Act of 1993, your Employer may continue your insurance for up to 12 weeks, or longer if required by state law, following the date your coverage would have terminated, subject to the following:
1.   the leave authorization must be in writing;
2.   the required premium for you must be paid;
3.   your benefit level, or the amount of earnings upon which your benefit may be based, will be that in effect on the day before said leave commenced; and
4.   such continuation will cease immediately if one of the following events should occur:
      a)   the leave terminates prior to the agreed upon date;
      b)   the termination of the Group Insurance Policy;
      c)   non-payment of premium when due by the Policyholder or you;
      d)   the Group Insurance Policy no longer insures your class; or
      e)   the date your Employer ceases to be a Participant Employer, if applicable.

10

KENCO 001624

**Does your insurance continue while you are Disabled and no longer an Active Full-time Employee?**

If you are no longer an Active Full-time Employee because you are Disabled, your Short Term Disability Insurance will be continued:

1.  while you remain Disabled;
2.  without payment of premium after the date we receive written notice of claim; and
3.  until the end of the period for which you are entitled to receive Short Term Disability Benefits.

After Short Term Disability benefit payments have ceased, your insurance will be reinstated, provided:

1.  you return to work for one full day as an Active Full-time Employee in an eligible class;
2.  the Group Insurance Policy remains in force; and
3.  the required premium is paid.

**Do benefits continue if the Group Insurance Policy terminates?**

If you are entitled to benefits while Disabled and the Group Insurance Policy terminates, benefits:

1.  will continue as long as you remain Disabled by the same disabling condition; but
2.  will not be provided beyond the date we would have ceased to pay benefits had the insurance remained in force.

Termination for any reason of the Group Insurance Policy will have no affect on our liability under this provision.

### GENERAL PROVISIONS

**What happens if facts are misstated?**

If material facts about you were not stated accurately:

1.  your premium may be adjusted; and
2.  the true facts will be used to determine if, and for what amount, coverage should have been in force.

KENCO 001625

No statement made by you relating to your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during your lifetime. In order to be used, the statement must be in writing and signed by you.

**When should we be notified of a claim?**
You must give us written notice of a claim within 30 days after Disability starts. If notice cannot be given within that time, it must be given as soon as reasonably possible. Such notice must include your name, your address and the Group Insurance Policy number.

**Are special forms required to file a claim?**
When we receive a notice of claim, you will be sent forms for providing us with proof of loss. We will send these forms within 15 days after receiving a notice of claim. If we do not send the forms within 15 days, you may submit any other written proof which fully describes the nature and extent of your claim.

**When must proof of loss be given?**
Written proof of your Disability must be sent to us within 90 days after the start of the period for which we owe payment. After that, we may require further written proof that you are still Disabled. If proof is not given by the time it is due, it will not affect the claim if:
1. it was not possible to give proof within the required time; and
2. proof is given as soon as reasonably possible; but
3. not later than 1 year after it is due, unless you are not legally competent.

We have the right to require, as part of the proof of loss:
1. your signed statement identifying all Other Income Benefits; and
2. proof satisfactory to us that you and your dependents have duly applied for all Other Income Benefits which are available.

**May additional proof be required?**
We may have you examined to determine if you are Disabled. Any such examination will be:
1. at our expense; and
2. as reasonably required by us.

We reserve the right to determine if your proof of loss is satisfactory.

12

KENCO 001626

**Who gets the benefit payments?**
All payments are payable to you. Any payments owed at your death may be paid to your estate. If any payment is owed to your estate, we may pay up to $1,000 to any of your relatives who is entitled to it in our opinion. Any such payment shall fulfill our responsibility for the amount paid.

**When are payment checks issued?**
If written proof of loss is furnished, accrued benefits will be paid at the end of each week that you are Disabled. If payment is due at the end of a claim, it will be paid as soon as the written proof of loss is received.

**What notification will you receive if your claim is denied?**
If a claim for benefits is wholly or partly denied, you will be furnished with written notification of the decision. This written decision will:
1.  give the specific reason(s) for the denial;
2.  make specific reference to the policy provisions on which the denial is based;
3.  provide a description of any additional information necessary to prepare a claim and an explanation of why it is necessary; and
4.  provide an explanation of the review procedure.

**What recourse do you have if your claim is denied?**
On any claim, you or your representative may appeal to us for a full and fair review. You may:
1.  request a review upon written application within 180 days of the claim denial;
2.  request copies of all documents, records, and other information relevant to your claim; and
3.  submit written comments, documents, records and other information relating to your claim.

We will make a decision no more than 45 days after we receive your appeal unless we determine special circumstances exist that require an extension of time to process the appeal. If your appeal requires extension, we will make our decision no more than 90 days after we receive your appeal. The written decision will include specific references to the Policy provisions on which the decision is based.

13

KENCO 001627

**When can legal action be started?**

Legal action cannot be taken against us:

1. sooner than 60 days after due proof of loss has been furnished; or
2. later than the expiration of:
   a) 3 years; or if longer
   b) the period of time stated in the applicable Statute of Limitations,

   after the time written proof of loss is required to be furnished according to the terms of the Group Insurance Policy.

**What are our subrogation rights?**

If you:

1. suffer a Disability because of the act or omission of a third party;
2. become entitled to and are paid benefits under the Group Insurance Policy in compensation for lost wages; and
3. do not initiate legal action for the recovery of such benefits from the third party in a reasonable period of time,

then we will be subrogated to any rights you may have against the third party and may, at our option, bring legal action to recover any payments made by us in connection with the Disability.

**Must you apply for Social Security Disability Benefits?**

We may require that you apply for Social Security Disability Benefits if it appears that your Disability may meet the minimum duration required to qualify for such benefits. If the Social Security Administration denies your eligibility for any such benefits, you will be required to follow the process established by the Social Security Administration to reconsider the denial and, if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**Who interprets policy terms and conditions?**

We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

14

KENCO 001628

## DEFINITIONS

The terms listed will have these meanings:

**Active Full-time Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. Such employee must work the number of hours in the Employer's normal work week. This must be at least the number of hours for Full-time Employment shown in the Schedule of Insurance.

**Actively at Work**
You will be considered to be actively at work with the Employer on a day which is one of the Employer's scheduled work days if you are performing, in the usual way, all of the regular duties of your job on a Full-time basis on that day. You will be deemed to be actively at work on a day which is not one of the Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

**Current Weekly Earnings** means the Weekly Earnings you receive from any employer or for any work while Disabled and eligible for Residual Disability benefits under this plan.

**Disability** means Total or Residual Disability.

**Disabled** means Totally or Residually Disabled.

**Employer** means the Policyholder.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations or psychological, behavioral or emotional disorders, but excluding demonstrable structural brain damage.

KENCO 001629

**Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible, or that are paid to you, your family, or to a third party on your behalf. This includes the amount of any benefit for loss of income from:

1. the United States Social Security Act, the Civil Service Retirement System, the Railroad Retirement Act, the Jones Act, the Canada Pension Plan, the Quebec Pension Plan or similar plan or act that you, your spouse, or your children are eligible to receive because of your Disability;
2. any plan or arrangement of coverage, whether insured or not, as a result of employment by or association with the Employer, or as a result of membership in or association with any group, association, union or other organization;
3. the Veteran's Administration or any other foreign or domestic governmental agency for the same Disability;
4. any governmental law or program that provides disability or unemployment benefits as a result of your job with the Employer;
5. any temporary or permanent disability benefits under a workers' compensation law, occupational disease law, or similar law; or
6. individual insurance policy where the premium is wholly or partially paid by the Employer.

Other Income Benefits will also include the amount of any benefits for loss of income from:

1. the portion of a settlement or judgement, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings; or
2. compulsory "no-fault" automobile insurance.

Any general increase in benefits required by law that you are entitled to receive under any Federal Law will not reduce the Short Term Disability Benefit payable for a period of Total Disability that began prior to the date of such increase.

If you are paid Other Income Benefits in a lump sum, we will pro-rate the lump sum:

1. over the period of time it would have been paid if not paid in a lump sum; or
2. if such period of time cannot be determined, over a period of 260 weeks.

KENCO 001630

**Physician** means a practitioner of a healing art, which we are required by law to recognize, who is properly licensed, and practicing within the scope of that license.

**Prior Plan** means the short term disability plan carried by the Employer on the day before the Plan Effective Date.

**Residual Disability or Residually Disabled** means that you are prevented by:
1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy,

from performing some, but not all, of the essential duties of your or any occupation, and as a result, your Current Weekly Earnings are more than 20% but no more than 80% of your pre-disability Weekly Earnings.

**Sickness vs. Accident**
A Disability shall be deemed to be caused by sickness, and not by accident, if:
1. it is caused or contributed to by:
    a) any condition, disease or disorder of the body or mind;
    b) any infection, except a pus-forming infection of an accidental cut or wound;
    c) hernia of any type unless it is the immediate result of an accidental injury covered by this plan;
    d) any disease of the heart;
    e) Mental Illness;
    f) Substance Abuse;
    g) pregnancy;
    h) any medical treatment for items (a) through (g) above; or
2. it is caused directly or indirectly by accident, but commences more than 30 days after the date of the accident.

17

KENCO 001631

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1.  impairments in social and/or occupational functioning;
2.  debilitating physical condition;
3.  inability to abstain from or reduce consumption of the substance; or
4.  the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**Total Disability or Totally Disabled** means that you are prevented by:
1.  accidental bodily injury;
2.  sickness;
3.  Mental Illness;
4.  Substance Abuse; or
5.  pregnancy,

from performing the essential duties of your occupation, and as a result, you are earning less than 20% of your pre-disability Weekly Earnings.

**We**, **us** or **our** means the Hartford Life and Accident Insurance Company.

**Weekly Earnings** means your usual weekly rate of pay from the Employer, not counting:
1.  commissions;
2.  bonuses;
3.  overtime pay; or
4.  any other fringe benefit or extra compensation.

If you become Disabled, your Weekly Earnings will be the rate in effect on your last day as an Active Full-time Employee before becoming Totally Disabled.

**You** or **your** means the insured person to whom this Booklet-certificate is issued.

18

KENCO 001632

**STATUTORY PROVISIONS** TATUTORYPROVISIONS

**Short Term Disability Statutory Provisions:**

## Alabama

The following provision is applicable to residents of Alabama and is included to bring your Booklet-certificate into conformity with Alabama state law.

**Subrogation**

The subrogation provision appearing in your Booklet-certificate is deleted and replaced with the following.

**What are our subrogation rights?**

If you:

1.  suffer a Disability because of the act or omission of a third party;
2.  become entitled to and are paid benefits under the Group Insurance Policy in compensation for lost wages; and
3.  do not initiate legal action for the recovery of such benefits from the third party in a reasonable period of time,

then we will be subrogated to any rights you may have against the third party and may, at our option, bring legal action to recover any payments made by us in connection with the Disability. Such right may be exercised only if you have been, or will be, fully compensated for the lost wages.

## North Carolina

The following provisions are applicable to residents of North Carolina and are included to bring this Booklet-certificate into conformity with North Carolina state law.

KENCO 001633

**1. Total Disability Benefits**

The following statements are added to the provision entitled "How do benefits become payable for Total Disability?"

No benefits will be payable unless you are under the care of a Physician other than yourself or a member of your immediate family. A member of your immediate family is your spouse, father, mother, brother, sister, son or daughter.

Regular care by a Physician will cease to be required if, in the opinion of qualified medical professionals, further medical care and treatment would be of no value to you.

**2. Subrogation**

The provision entitled "What are our subrogation rights?" is deleted and does not apply to you.

## Pennsylvania

The following provision is applicable to residents of Pennsylvania and is included to bring your Booklet-certificate into conformity with Pennsylvania state law.

**Other Income Benefits Definition Amended**

The item in the second paragraph of the definition of Other Income Benefits which reads we will offset with a "no-fault" automobile insurance plan does not apply to you.

## Texas

The following provisions are applicable to residents of Texas and are included to bring your Booklet-certificate into conformity with Texas state law.

**1. Workers' Compensation Notice**

KENCO 001634

THE INSURANCE POLICY UNDER WHICH THIS CERTIFICATE IS ISSUED IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. YOU SHOULD CONSULT YOUR EMPLOYER TO DETERMINE WHETHER YOUR EMPLOYER IS A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM.

**2. Insurer Information Notice**

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|
| **To obtain information or make a Complaint:** | **Para Obtener Informacion O Para Someter Una Queja:** |
| You may call Hartford Life's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de Hartford's para informacion o para de someter una queja al: |
| **1-800-752-9713 if about a claim** | **1-800-752-9713 ascerca de un reclamo** |
| **1-800-428-5711 if not about a claim** | **1-800-428-5711 para una queja** |
| You may also write to<br>Hartford Life<br>P.O. Box 2999<br>Hartford, CT 06104-2999 | Usted tambien puede escribir a<br>Hartford<br>P.O. Box 2999<br>Hartford, CT 06104-2999 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the<br>Texas Department of Insurance<br>P.O. Box 149104<br>Austin, TX 78714-9104 | Puede escribir al<br>Departamento de Seguros de Texas<br>P.O. Box 149104<br>Austin, TX 78714-9104 |

21

KENCO 001635

FAX # (512)475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact Hartford Life first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document

FAX # (512)475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo debe comunicarse con el (la compania) Hartford primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

22

KENCO 001636

**ERISA**

**The Following Important Notice
is Provided by Your Employer
for your Information Only.**

**Conforming Instrument**

For the purpose of meeting certain requirements of the Employee Retirement Income Security Act of 1974, the following information and the attached Claim Procedures and Statement of ERISA Rights are provided for use with your booklet-certificate to form the Summary Plan Description.

The benefits described in your booklet are provided under a group plan by the Insurance Company and are subject to the terms and conditions of that plan.

A copy of this plan is available for your review during normal working hours in the office of the Plan Administrator.

1. **Plan Name**

   Group Short Term Disability Plan for employees of KENCO GROUP, INC.

2. **Plan Number**

   505

3. **Employer/Plan Sponsor**

   KENCO GROUP, INC.
   3126 Alton Park Boulevard
   Chattanooga, TN 37401-1607

23

KENCO 001637

4. **Employer Identification Number**

   62-0799523

5. **Type of Plan**

   Welfare Benefit Plan providing Group Short Term Disability.

6. **Plan Administrator**

   KENCO GROUP, INC.
   3126 Alton Park Boulevard
   Chattanooga, TN 37401-1607

7. **Agent for Service of Legal Process**

   For the Plan:

   KENCO GROUP, INC.
   3126 Alton Park Boulevard
   Chattanooga, TN 37401-1607

   For the Policy:

   Hartford Life And Accident Insurance Company
   200 Hopmeadow St.
   Simsbury, CT 06089

   In addition to the above, Service of Legal Process may be made on a
   plan trustee or the plan administrator.

24

KENCO 001638

8.  **Sources of Contributions** -- The Employer pays the premium for the insurance, but may allocate part of the cost to the employee. The Employer determines the portion of the cost to be paid by the employee.

9.  **Type of Administration** -- The plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan.

10. The Plan and its records are kept on a Policy Year basis.

11. **Labor Organizations**

    None

12. **Names and Addresses of Trustees**

    None

13. **Plan Amendment Procedure**

    The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

    The Employer also reserves the right to adjust your share of the cost to continue coverage by the same procedures.

25

KENCO 001639

**Statement of ERISA Rights**

You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA).  ERISA provides that all plan participants shall be entitled to:

1.  Receive Information About Your Plan and Benefits:

    a)  Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.
    b)  Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.
    c)  Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

2.  Prudent Actions by Plan Fiduciaries:

    In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

KENCO 001640

3.  Enforce Your Rights:

    If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

    Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

4.  Assistance with Your Questions:

    If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

27

KENCO 001641

**Claim Procedures for Disability Income Insurance Plans**

1. Claims for Benefits:

    If you would like to present a claim for benefits for yourself or your insured dependents, you should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) should be completed by (1) you, (2) the Employer or Administrator and (3) the Attending Physician or hospital.

    Following completion, the claim form(s) must be forwarded to the individual authorized to evaluate claims (Administrator or Insurance Company's Claim Representative). The individual authorized to evaluate claims will determine if benefits are payable and, if due, issue payment(s) to you.

    The Insurance Company will make a decision no more than 45 days after receipt of your claim. The time for decision may be extended for two additional 30 day periods provided that, prior to any extension period, the Insurance Company notifies you in writing that an extension is necessary due to matters beyond the control of the plan, identifies those matters and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to our request.

KENCO 001642

The written decision will include: 1) specific reasons for the decision, 2) specific references to the plan provisions on which the decision is based, 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary, 4) a description of the review procedures and time limits applicable to such procedures, 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal, and, 6)(A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the denial, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the denial and that a copy will be provided free of charge to you upon request, or (B) if denial is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request.

KENCO 001643

2. Appealing Denial of Claims:

On any wholly or partially denied claim, you or your representative may appeal to us for a full and fair review.  You may:

1.  request a review upon written application within 180 days of the claim denial;

2.  request, free of charge, copies of all documents, records, and other information relevant to your claim; and

3.  submit written comments, documents, records and other information relating to your claim.

The Insurance Company will make a decision no more than 45 days after we receive your appeal.  The time for decision may be extended for one additional 45 day period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request. The written decision will include specific references to the plan provisions on which the decision is based and any other notice(s), statement(s) or information required by applicable law.

KENCO 001644

KENCO 001645

**The Plan Described in this Booklet**

**is Insured by the**

**Hartford Life and Accident Insurance Company**
Hartford, Connecticut

**Member of The Hartford Insurance Group**



**674076(GRH)I**                          Printed in U.S.A. 1-'02

KENCO 001646

# Exhibit C



| Document Number:<br>**ISO-QE-4.2.4.001** | Title:<br>**Control of Records** | Effective Date:<br>**03/01/10** |
|---|---|---|
| Procedure Owner: **Manager, Kenco Management Services – Quality Engineering** | | |
| Created Date: **04/07/06** | | **Page 1 of 5** |

| Approval: **QC, Kenco Management Services – Quality Engineering** | Approval: **Director, Kenco Management Services – Quality Engineering** |
|---|---|

## 1.0 PURPOSE/SCOPE

The primary objective of the record control system defined in this procedure is to standardize the identification, use, and maintenance (storage) of all records that provide evidence of conformity to requirements and the effective operation of our Kenco Quality Management System (KQMS).

This document identifies and sets minimum record-keeping requirements for Kenco facilities. Record control also plays a critical role in providing data used to monitor, measure and analyze customer satisfaction, process effectiveness and operational efficiency.

This procedure applies to all Kenco functions and operations and encompasses all records used to demonstrate conformance to regulatory and quality system requirements including those specified in Control Procedures and Standard Operating Procedures.

## 2.0 ROLES AND RESPONSIBILITIES

**Kenco Management Services (KMS) - Quality Engineering** - has overall responsibility for the record control system, including the issuance and maintenance of this procedure and minimum record-keeping requirements. All proposed changes and other suggestions for improvement of this procedure can be submitted online via the "kencoconnection.com" Quality Page.

**Site Quality Coordinator** - controls and monitors recordkeeping systems at the site in accordance with this procedure. This includes *Index of Quality Records*, a comprehensive list of all hard copy and electronic records kept at the site which are necessary to demonstrate conformance to requirements.

**Site Managers**- responsible to ensure records are kept in accordance with this procedure

**Identified Record Holders** – Those listed as Record Holders on the site Index of Quality Records must read and understand this policy; are responsible to follow the general record keeping guidelines set forth in this policy and the more specific requirements listed in the site's *Index of Quality Records*.

## 3.0 POLICY/PROCEDURES

**Process Summary**

The Site Quality Coordinator controls and maintains all Kenco forms and record formats used to create quality records in accordance with provisions contained in *ISO-QE-4.2.3.001 Control of Documents.* All employees are responsible for creating legible and accurate records using the forms or other record formats prescribed by the controlling document governing the process they are performing, such as a Control Procedure or Standard Operating Procedure.

Record holders are responsible for complying with established record storage, retention, and disposition instructions identified in the site *Index of Quality Records*.



| Document Number:<br>**ISO-QE-4.2.4.001** | Title:<br>**Control of Records** | Effective Date:<br>03/01/10 |
|---|---|---|
| Procedure Owner: **Manager, Kenco Management Services – Quality Engineering** | | |
| Created Date: **04/07/06** | | **Page 2 of 5** |

### 3.1 Identification

Records are identifiable to the product, person, or event to which they pertain. Records are grouped to facilitate their retrieval.

#### 3.1.1 General Record Completion Rules:

- All entries must be made in ink and must be legible.
- Documents and forms used to create records should be completed fully, entering all required information. If a given item does not apply, enter "N/A" in the space provided.
- Documents requiring a signature should be signed with the first and last name of the person authorized to sign the form. If necessary, the first initial and complete last name may be used. All signatures should be dated.
- All Kenco Sites that meet the requirements of the Food and Drug Administration (FDA) must have handwritten dates with all handwritten signatures.

#### 3.1.2 General record error-correction rules:

- Errors or corrections are to be made by drawing a single line through the error. Write the correct information next to the error.
- The individual making the correction must initial and date the change.
- The use of opaque correction fluid ("white out") or similar methods obscuring the changed area are prohibited.

### 3.2 Identification of Key Records

#### 3.2.1 Key records are defined at multiple levels and will differ among Kenco sites because of differences in the scope of work at the site. Some of the sources that affect record-keeping are:

- **Regulatory requirements:** (OSHA, DOT, EEOC, FDA, DEA) Examples include personnel files, driver qualification files, safety training files, pest control records.
- **Kenco Quality Management System and ISO 9001:2000 requirements:** Examples include Document Change Notices (DCN), Management Review Outputs, Material Deficiency Reports (MDR), Corrective Preventive Action Request (CPAR)
- **Control Procedures:** Examples include Employee Qualification and Training records, Safety Training Metrics
- **Site SOPs and processes:** Examples include Bill of Lading, Purchase Orders, Equipment inspections, EIP observations, etc.
- **Customer Requirements:** Examples include Proof of Delivery, Purchasing Documents (for Pass-Through)

#### 3.2.2 The Quality Coordinator must ensure that records that are required from these sources are entered into the master list of record-keeping, the site *Index of Quality Records.* The Quality Coordinator, with input from all responsible managers, is responsible for keeping the site *Index of Quality Records* current.

### 3.3 Storage requirements

- Records are normally stored by the same department that initially established the record.
- Records are stored in a dry and clean environment.
- Cabinets containing records are clearly labelled to display their contents. Also a numbering system should be developed for the files.
- Confidential records may be stored in labelled and locked file locations (file cabinets, file rooms) however; records and other quality documents may not be stored in private desk drawers or other obscure locations that are not generally known.
- Records are retained by record holders in either their active location or their final storage locations as identified in the site *Index of Quality Records.*

- Records must be filed, stored, and retained such that they are readily retrievable.



| Document Number:<br>**ISO-QE-4.2.4.001** | Title:<br>**Control of Records** | Effective Date:<br>03/01/10 |
|---|---|---|
| Procedure Owner: **Manager, Kenco Management Services – Quality Engineering** | | |
| Created Date: **04/07/06** | | **Page 3 of 5** |

### 3.4 Document Retention

- Recent records are kept active (filed) in a clearly marked storage location and then put into long term storage until expiration of the retention period.
- All records are retained for a minimum of seven years, unless otherwise prescribed by the document governing the process or product to which they relate.
- The Site Manager is responsible for records in long term storage.
- Product verification records are available to the customer or the customer's representative for evaluation upon request for the life of the record.

### 3.5 Disposal

- Records retained beyond their specified retention period must be clearly marked "historical or obsolete records" and placed in the archive location.
- Records not retained must be destroyed (i.e. shredded or deleted) as soon as practical after the retention period has lapsed.

### 3.6 Creation of the Index of Quality Records

**3.6.1** Quality Coordinator downloads the ***ISO-QE-4.2.4.001-1 Index of Quality Records*** form.
*Note: The first five entries of the form are completed as examples.*

**3.6.2** The Quality Coordinator will complete the site *Index of Quality Records* by:

a. Typing in the name of the Site and removing the document control number and date from the bottom. Change the "Last Updated" field to the current date.
b. Identifying all records actually being kept, and who(by title) is responsible
c. Reviewing regulatory requirements with appropriate management (Check for Gaps in actual)
d. Reviewing Control Procedures and Site SOPs for other record requirements (Check for Gaps in actual)
e. Organizing record location structure (it is advised that sites letter each file cabinet and number the drawers, for example they can denote "File E3- Shipping Office"" and "File C1 Supervisors Office" as a clear indication of record location.
f. Completing all columns of the form. Notice that the form is broken into the following columns:

- **Record Name-** Enter the name of the collection of forms that are attached and filed together (an example could be "Outbound Paperwork" which consists of outbound manifest, pick list, seal paperwork stapled together).
- **Form Number-** Use this column to list any Form numbers that make up a record (or enter "free format" if there is no form, such as minutes from a meeting, etc.). Remember that a collection of multiple forms could make up a record**.**
- **Record Holder-** Enter the person (by job title) who is responsible for the filing and upkeep of that record.
- **Controlling Document-** Enter the Document or Cause for the record to be kept. (An example "SOP-7.5.1.009" would signify that the "Outbound Paperwork" record is filed as a result of that SOP.)
- **Active Location-**Enter the current location in which newly created records are placed. This could be "*File D4 – front office*".
- **Archive Location-** Enter the long term storage location for aging records. Typically, locations may store these in a rack location or records retention area.

- **Retention Time-** Enter how long a record is to be kept. Records must be kept long enough to ensure compliance over time. The standard retention length should be



| Document Number: **ISO-QE-4.2.4.001** | Title: **Control of Records** | Effective Date: **03/01/10** |
|---|---|---|
| Procedure Owner: **Manager, Kenco Management Services – Quality Engineering** | | |
| Created Date: **04/07/06** | | **Page 4 of 5** |

seven years, unless otherwise denoted in the controlling document.

**3.6.3** The site *Index of Quality Records* is kept up to date by the Quality Coordinator for the site and master copy is contained in the Site Quality Manual as a master list located behind the Site Quality Plan. Post controlled copies of the Index of Quality Records in record storage locations.

**3.6.4** Each Record Holder identified on the *Index of Quality Records* must receive documented training on this procedure, their specific recordkeeping responsibilities, and the location and use of the site *Index of Quality Records*.

**3.7   Assessment of Recordkeeping Effectiveness**

The Quality Coordinator assesses the effectiveness/efficiency of the record control system through self assessment and/or as a result of internal audits conducted per *ISO-QE-8.2.2.001 Internal Audit*, and initiates appropriate corrective/preventive actions per *ISO-QE-8.5.1.001 Continual Improvement*.

## 4.0 REPORTS/METRICS

*ISO-QE-4.2.4.001-1 Index of Quality Records Form*
*ISO-QE-8.2.2.001 Internal Audit*
*ISO-QE-8.5.1.001 Continual Improvement*



| Document Number: **ISO-QE-4.2.4.001** | Title: **Control of Records** | Effective Date: **03/01/10** |
|---|---|---|
| Procedure Owner: **Manager, Kenco Management Services – Quality Engineering** | | |
| Created Date: **04/07/06** | | **Page 5 of 5** |

**Please ensure that all associates at your site listed in Roles and Responsibilities (Section 2.0) sign and date this log indicating they have read and understand the current content of this procedure.**

| PRINT NAME | SIGNATURE | DATE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Trainer:**_____**Signature:**_____**Date:**_____

**Trainer:**_____**Signature:**_____**Date:**_____

**A training file is to be kept at each site containing copies of all training records for Control Procedures. These training logs are completed and retained for all newly released and revised procedures. All current employees must be trained prior to the effective date as procedure changes occur. Affected new employees will sign off on the logs within 60 days of hire. These records are to be filed by procedure, and are maintained by the Quality Coordinator.**

**Note: You may print additional copies of this page for additional space to record training.**

*Proprietary Information – Kenco*

## RE: SOW Requirements as it relates to Warehouse Standards and Quality

Madison, Mary

**Sent:** Thursday, June 13, 2013 11:46 AM
**To:**    Hise, Paula

Thank you kindly,

Mary Madison
Quality Engineer
_____
Kenco/Mars
1125 West Sycamore Road
Manteno, IL 60950
815.468.4448
www.Kencogroup.com

This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, notify the sender immediately by return email and delete the message and any attachments from your system.

**From:** Hise, Paula
**Sent:** Thursday, June 13, 2013 11:02 AM
**To:** Walsh, Kelvin; Madison, Mary
**Subject:** SOW Requirements as it relates to Warehouse Standards and Quality

Kelvin and Mary – per our conversation, here are the contractual requirements in the areas of Warehouse Standards and Quality.  I'll send you an entire Statement of Work once it is signed.

Warehouse Standards:
- Records must be kept in compliance with local, state, and Federal legislation.
- Contractor shall maintain documented procedures that describe how they will meet the standards below:
  - Contractor shall perform tracing hold and release by receiving a request by an authorized Mars representative via Phone (live voice, no voicemail messages), Fax, Internet, E – Mail, EDI 24 hours/day, 7 days/week.
  - Contractor shall perform tracing hold and release by receiving a request with any of the following: Batch code, serial shipping container code, best-before date, bill of lading, pallet license plate[SS1] number[JC2] .
  - The Mars WMS is capable of maintaining multiple hold status independent of volumes.
  - Contractor shall trace Goods within a 4-hour period upon the request of an authorized Mars representative.
  - Contractor shall be able to trace 24 hours a day / 7 days a week.
  - For those warehouses that do not operate 24/7, there must be a tracing procedure in place (names, contact hierarchy, email address, and telephone numbers (celland/or home) for all incidents outside normal opening time.
  - Contractor shall identify full dispatch details, address, date of dispatch, quantitiescases, carrier, and trailer number[SS3] [JC4] .
- Contractor is responsible for arranging facility maintenance, pest control and sanitation.  Contractor will

*C a page 45*

RE: SOW Requirements as it ⎯ates to Warehouse Standards and Qual⎯                Page 2 of 2

ensure that the facility is serviced by a licensed pest control operator.
- Contractor is responsible for monitoring facility temperatures with Mars provided equipment to ensure all products are stored according to the Mars supplied quality agreement.
- Contractor will adhere to security requirements as provided by Mars.

Quality:
- Contractor will comply with the Mars North American Quality Agreement as set forth in Appendix 1 to Exhibit B. Mars will notify Contractor when any material charges are made to this Appendix.
- Contractor will ensure that the facility is registered with the US Food and Drug Administration.
- Contractor will maintain training records, sanitation logs and temperature charts for seven (7) years.

[SS1]Robert, do you know the answer to this?
[JC2]Can MARC supply this data and is it applicable to Contractor's WES WMS
[SS3]Robert, do you know the answer to this?
[JC4]Can MARC supply this data and is it required for the Contractor WMS

**Paula Hise, CSCP**
Vice President, Operations

**Kenco Logistic Services**
2001 Riverside Drive
Chattanooga, TN 37406
Cell: 423-290-3749
Email: Paula.Hise@Kencogroup.com



VOTE
KENCO
A TOP 3PL

CC page 46

KENCO 001095

# Top T

Forms included on this appendix are not required to be

| SQP INDEX | DOCUMENT TITLE |
|---|---|
| **1.0 Scope** | |
| 1.1 General | |
| 1.2 Application | |
| **2. Normative Reference** | |
| **3. Terms and Definitions** | |
| **4. Quality Management System** | |
| 4.1 General Requirements | |
| 4.2 Documentation Requirements (Title Only) | |
| 4.2.1 General | QMS Documentation |
| 4.2.1 General | Exception Form |
| 4.2.2 Quality Manual | |
| 4.2.3 Control of Documents | Control of Documents |
| 4.2.3 Control of Documents | DCN Form and Log |
| 4.2.3 Control of Documents | Controlled Copy Distribution Form |
| 4.2.4 Control of Records | Control of Records |
| 4.2.4 Control of Records | Index of Quality Records |
| 4.2.4 Control of Records | Central Safety/Security File Policy |
| 4.2.4 Control of Records | OSHA Recordkeeping Policy and Procedure |
| **5. Management Responsibilities** | |
| 5.1 Management Commitment | |
| 5.2 Customer Focus | |
| 5.3 Quality Policy | |
| 5.4 Planning (Title Only) | |
| 5.4.1 Quality Objectives | |

| | |
|---|---|
| 5.4.2 Quality Management System Planning | |
| 5.5 Responsibility, Authority and Communciation (Title Only) | |
| 5.5.1 Responsibility and Authority | IT Kenco Power User |
| 5.5.1 Responsibility and Authority | Lean Champion |
| 5.5.1 Responsibility and Authority | Quality Coordinator |
| 5.5.1 Responsibility and Authority | Quality Coordinator Training Record |
| 5.5.1 Responsibility and Authority | EIP Coordinator |
| 5.5.1 Responsibility and Authority | EIP Coordinator Training Record |
| 5.5.1 Responsibility and Authority | KFMS Coordinator |
| 5.5.1 Responsibility and Authority | KFMS Coordinator Training Record |
| 5.5.1 Responsibility and Authority | CMV Site Fleet Safety Coordinator Responsibilities |
| 5.5.1 Responsibility and Authority | Site Fleet Safety Coordinator Training Record |
| 5.5.1 Responsibility and Authority | Site Fleet Safety Coordinator Job Posting |
| 5.5.1 Responsibility and Authority | Safety-Security Advocate Policy |
| 5.5.1 Responsibility and Authority | Security Equipment Inspection Checklist |
| 5.5.1 Responsibility and Authority | Safety-Security Advocate Job Training Record |
| 5.5.1 Responsibility and Authority | Regional Safety-Security Advocate Policy |
| 5.5.1 Responsibility and Authority | Monthly Call in Summary Report |
| 5.5.1 Responsibility and Authority | Regional Safety-Security Advocate Job Training Record |
| 5.5.1 Responsibility and Authority | Senior Regional Safety-Security Advocate Job Training Record |
| 5.5.1 Responsibility and Authority | Requirements for Kenco Managed Security Officers |
| 5.5.1 Responsibility and Authority | Security Officer Shift Report |
| 5.5.2 Management Representative | |
| 5.5.3 Internal Communication | Communication SIte Advocate Responsibilities |
| 5.5.3 Internal Communication | Staff Sign-off Log and Completion Form |

KENCO 001358

| | |
|---|---|
| 5.6 Management Review (Title Only) | |
| 5.6.1 General | |
| 5.6.2 Review Input (Internal Performance Review) | |
| 5.6.3 Review Output (Action Plan) | |
| **6. Resource Management** | |
| 6.1 Provision of Resources | Termination Process |
| 6.1 Provision of Resources | Termination Change Form |
| 6.1 Provision of Resources | Termination Checklist |
| 6.1 Provision of Resources | 401(k) Notice of Termination |
| 6.1 Provision of Resources | Open Enrollment |
| 6.1 Provision of Resources | Open Enrollment Acknowledgement |
| 6.1 Provision of Resources | Medical Support Court Orders |
| 6.1 Provision of Resources | Payroll Verification Procedures |
| 6.2 Human Resources | General Employment Policy |
| 6.2 Human Resources | Prohibited Conduct Policy |
| 6.2 Human Resources | Workplace Violence Policy |
| 6.2 Human Resources | Anti-Harassment Policy |
| 6.2 Human Resources | Solicitation & Distribution Policy |
| 6.2 Human Resources | Drug Free Workplace Policy |
| 6.2 Human Resources | Workers' Compensation |
| 6.2 Human Resources | Authorization for Treatment |
| 6.2 Human Resources | Assossiate Written Report of Injury |
| 6.2 Human Resources | Witness Statement |
| 6.2 Human Resources | Assossiate Duties After Injury |
| 6.2 Human Resources | Refusal of Medical Treatment |
| 6.2 Human Resources | Incident Investigation and Reporting |
| 6.2.1 General | Personal Leave Form |
| 6.2.1 General | Benefit Changes |
| 6.2.1 General | Benefit Change Form |
| 6.2.1 General | Hartford PHA Form |
| 6.2.1 General | COBRA Administration |
| 6.2.1 General | Background Investigation Program |
| 6.2.1 General | Background Release Form |
| 6.2.1 General | Compensation or Job Change Procedure |
| 6.2.1 General | Intra-Company Employee Transfers |
| 6.2.1 General | Non Exempt Overtime Pay Policy |
| 6.2.1 General | 401k Processes |
| 6.2.1 General | All 401k Forms |
| 6.2.1 General | Exempt Work Week Policy |
| 6.2.1 General | Solicitation & Distribution Policy |
| 6.2.1 General | EEOC Complaint Procedure |
| 6.2.1 General | Non-Exempt Paid Time Off (PTO) Policy |
| 6.2.1 General | PTO Cash-Out Request Form |
| 6.2.1 General | HIPAA Privacy Policy |
| 6.2.1 General | Non-Exempt Travel Time Pay Policy |
| 6.2.1 General | CMV Driver DOT Physical Examination |

KENCO 001359

| | |
|---|---|
| 6.2.1 General | DOT Medical Authorization Form |
| 6.2.1 General | Non-Exempt Attendance Policy |
| 6.2.2 Competence, Awareness and Training | Tuition Reimbursement |
| 6.2.2 Competence, Awareness and Training | Tuition Reimbursement Application |
| 6.2.2 Competence, Awareness and Training | Performance Management Process for Hourly Employees |
| 6.2.2 Competence, Awareness and Training | Hourly Performance Appraisal Forms |
| 6.2.2 Competence, Awareness and Training | Performance Management for Exempt Employees Policy |
| 6.2.2 Competence, Awareness and Training | Performance Evaluation Forms |
| 6.2.2 Competence, Awareness and Training | Performance Evaluation Form - Corporate Manager |
| 6.2.2 Competence, Awareness and Training | Non-Exempt Job Posting Procedure |
| 6.2.2 Competence, Awareness and Training | Non-Exempt Hiring Requisition Form |
| 6.2.2 Competence, Awareness and Training | Non-Exempt Interview Process |
| 6.2.2 Competence, Awareness and Training | Non-Exempt Interview Forms |
| 6.2.2 Competence, Awareness and Training | Exempt Hiring Procedure |
| 6.2.2 Competence, Awareness and Training | Exempt Job Posting Requisition Form |
| 6.2.2 Competence, Awareness and Training | Kenco Non Driver Application |
| 6.2.2 Competence, Awareness and Training | Exempt Candidate Evaluation Form |
| 6.2.2 Competence, Awareness and Training | Offer Letter Summary Form |
| 6.2.2 Competence, Awareness and Training | Relocation Allowance Policy |
| 6.2.2 Competence, Awareness and Training | Opportunity for Improvement Procedure (Non-Exempt) |
| 6.2.2 Competence, Awareness and Training | Opportunity for Improvement Form |
| 6.2.2 Competence, Awareness and Training | Job Training & Certification Program |
| 6.2.2 Competence, Awareness and Training | Job Certification Forms |
| 6.2.2 Competence, Awareness and Training | Powered Industrial Truck Program |
| 6.2.2 Competence, Awareness and Training | PIT Forms |

| | |
|---|---|
| 6.2.2 Competence, Awareness and Training | Safety Metrics Training Tracking Policy |
| 6.2.2 Competence, Awareness and Training | Monthly Safety Metrics Report |
| 6.2.2 Competence, Awareness and Training | CMV Fleet Safety Driver Training and Metrics Policy |
| 6.2.2 Competence, Awareness and Training | CMV Driver Safety Training Metrics Report |
| 6.2.2 Competence, Awareness and Training | CMV Driver DOT Drug and Alcohol Policies and Procedures |
| 6.2.2 Competence, Awareness and Training | Reasonable Suspicion Form |
| 6.2.2 Competence, Awareness and Training | Letter of Disqualification |
| 6.2.2 Competence, Awareness and Training | CMV Hours of Service Policy and Procedures |
| 6.2.2 Competence, Awareness and Training | Hours of Service 100 Air-Mile Radius Summary |
| 6.2.2 Competence, Awareness and Training | Driver's HOS Log/vehicle Inspection Certification |
| 6.3 Infrastructure | Fixed Asset Policy And Procedures |
| 6.3 Infrastructure | Fixed Asset Forms |
| 6.3 Infrastructure | User Access Request |
| 6.3 Infrastructure | Kenco Cell Phone Hardware and Plan Policy |
| 6.3 Infrastructure | KMS-IT Installation Policy |
| 6.3 Infrastructure | KMS-IT Help Desk Procedures |
| 6.3 Infrastructure | IT Security Policy |
| 6.3 Infrastructure | Acceptable Use and Security Policy |
| 6.3 Infrastructure | Remote Access Policy |
| 6.3 Infrastructure | IT Equipment Purchase & Move Request |
| 6.3 Infrastructure | Modification-Feature Request Procedures |
| 6.3 Infrastructure | CMV Vehicle Inspection, Repair and Maintenance |
| 6.3 Infrastructure | CMV Preventive Maintenance Schedule |
| 6.3 Infrastructure | Commercial Motor Vehicle (CMV) Fleet Safety Program Policy |
| 6.3 Infrastructure | CMV Fleet Safety Program Checklist |
| 6.4 Work Environment | Drug Screen Procedure |
| 6.4 Work Environment | Safety And Health Philosophy Procedure |
| 6.4 Work Environment | Safety and Health Philosophy (Signed) |
| 6.4 Work Environment | Employee Acknowledgement (Safety and Health Philosophy) |
| 6.4 Work Environment | General Safety Rules |
| 6.4 Work Environment | Employee Acknowledgement (General Safety Rules) |
| 6.4 Work Environment | Hazard Communication Plan |
| 6.4 Work Environment | Chemical Inventory Form |
| 6.4 Work Environment | Fire Prevention Plan |
| 6.4 Work Environment | Bloodborne Pathogens Exposure Control Plan |

| | |
|---|---|
| 6.4 Work Environment | Fire Impairment Program |
| 6.4 Work Environment | Bloodborne Pathogens Forms |
| 6.4 Work Environment | Control of Hazardous Energy Lockout/Tagout |
| 6.4 Work Environment | Control of Hazardous Energy for Affected Employees PowerPoint |
| 6.4 Work Environment | Control of Hazardous Energy for Affected Employees Quiz |
| 6.4 Work Environment | Control of Hazardous Energy for Authorized Employees PowerPoint |
| 6.4 Work Environment | CFR 1910, 147 Review Certification |
| 6.4 Work Environment | Control of Hazardous Energy Test for Authorized Employees |
| 6.4 Work Environment | Personal Protective Equipment |
| 6.4 Work Environment | PPE Hazard Assessment Certification |
| 6.4 Work Environment | Job Hazard Analysis |
| 6.4 Work Environment | Medical and First Aid Program |
| 6.4 Work Environment | Hot Work Procedure |
| 6.4 Work Environment | Hot Work Warning/Permit |
| 6.4 Work Environment | Cellular Phone/Electronic Use Policy |
| 6.4 Work Environment | Cellular Phone/Electronic Use Policy Acknowledgement |
| 6.4 Work Environment | Contractor and Vendor Safety Procedures |
| 6.4 Work Environment | Contractor and Vendor Safety Rules |
| 6.4 Work Environment | Contractor Pre-Qualification Evaluation |
| 6.4 Work Environment | Emergency Response Plan |
| 6.4 Work Environment | Dock Safety Policy |
| 6.4 Work Environment | Trailer/Container Inspection Worksheet |
| 6.4 Work Environment | Dock Area Visual Inspection Worksheet |
| 6.4 Work Environment | Security Incident Reporting Requirements |
| 6.4 Work Environment | Security-Suspicious Activity Report Forms |
| 6.4 Work Environment | Supplemental Security Reporting |
| 6.4 Work Environment | Loss Prevention and Security - General Rules and Training Requirements |
| 6.4 Work Environment | Security Orientation PowerPoint |
| 6.4 Work Environment | Security Orientation Quiz |
| 6.4 Work Environment | Security Orientation Answer Key |
| 6.4 Work Environment | Ethics and Honesty Code of Conduct |
| 6.4 Work Environment | Property Removal Form |
| 6.4 Work Environment | Loss Prevention and Security - Cargo and Inventory Policy |
| 6.4 Work Environment | Suspicious Mail/Packages & Bomb Threats |
| 6.4 Work Environment | Suspicious Mail PowerPoint |
| 6.4 Work Environment | Telephone Bomb Threat Checklist |
| 6.4 Work Environment | Site Physical Security Requirements (Non-System) |
| 6.4 Work Environment | Physical Security Forms |
| 6.4 Work Environment | CMV Federal Motor Carrier Safety Regulation Compliance and Kenco Responsibilities |
| 6.4 Work Environment | CMV Driver List and Expiration Request Form |

KENCO 001362

| | |
|---|---|
| 6.4 Work Environment | CMV Driver Qualifications and Hiring Policies and Procedures |
| 6.4 Work Environment | Packet 1-CMV Driver Application/Employment GAP |
| 6.4 Work Environment | Packet 2- Background and Screening |
| 6.4 Work Environment | Packet 3- Orientation and Training |
| 6.4 Work Environment | CMV Security Requirements |
| 6.4 Work Environment | CMV Security Requirements PowerPoint |
| 6.4 Work Environment | CMV Security Requirements Quiz |
| 7. Product/Service Realization | |
| 7.1 Planning of Product/Service Realization | |
| 7.2 Customer Related Processes (Title Only) | |
| 7.2.1 Determination of Requirements Related to the Product/Service | Bankruptcy Procedures |
| 7.2.1 Determination of Requirements Related to the Product/Service | Collections Procedures |
| 7.2.2 Review of Requirements Related to the Product/Service | Margin Review |
| 7.2.2 Review of Requirements Related to the Product/Service | Margin Review Templates |
| 7.2.3 Customer Communication | |
| 7.3 Design and Development (Title Only) | |
| 7.3.1 Design and Development Planning | |
| 7.3.2 Design and Development Inputs | |
| 7.3.3 Design and Development Outputs | |
| 7.3.4 Design and Development Review | |
| 7.3.5 Design and Development Verification | |
| 7.3.6 Design and Development Validation | |
| 7.3.7 Control of Design and Development Changes | |
| 7.4 Purchasing (Title Only) | |
| 7.4.1 Purchasing Process | Gift/Incentive Card Procedures |
| 7.4.1 Purchasing Process | Gift/Incentive Card Request Form |
| 7.4.1 Purchasing Process | Gift/Incentive Card Distribution Form |
| 7.4.1 Purchasing Process | Purchase Orders |
| 7.4.2 Purchasing Information | |

KENCO 001363

| | |
|---|---|
| 7.4.3 Verification of Purchased Product | |
| 7.5 Product and Service Provision (Title Only) | |
| 7.5.1 Control of Product and Service Provision | Cut-off and Monthly Reporting |
| 7.5.1 Control of Product and Service Provision | Month End Closing Checklist |
| 7.5.1 Control of Product and Service Provision | Purchasing and Accounts Payable Procedures |
| 7.5.1 Control of Product and Service Provision | Kenco Authorized Bank Account Policy |
| 7.5.1 Control of Product and Service Provision | Petty Cash Procedures |
| 7.5.1 Control of Product and Service Provision | Petty Cash Forms |
| 7.5.1 Control of Product and Service Provision | Customer Billing Procedures |
| 7.5.1 Control of Product and Service Provision | Management Fee Reconciliation Form |
| 7.5.1 Control of Product and Service Provision | Accounts Receivable Procedures |
| 7.5.1 Control of Product and Service Provision | Signed Rate Quotes Procedures |
| 7.5.1 Control of Product and Service Provision | Physical Warehouse Receipts Procedures |
| 7.5.1 Control of Product and Service Provision | Warehouse Receipts Exception Form |
| 7.5.1 Control of Product and Service Provision | Travel and Expense Policy |
| 7.5.1 Control of Product and Service Provision | Other Site Income |
| 7.5.1 Control of Product and Service Provision | Other Site Income Disclosure Form |
| 7.5.1 Control of Product and Service Provision | CMV Accident Policies and Procedures |
| 7.5.1 Control of Product and Service Provision | CMV Accident Forms |
| 7.5.1 Control of Product and Service Provision | Kenco Appeal Request Form |
| 7.5.1 Control of Product and Service Provision | Letter of Notification |
| 7.5.1 Control of Product and Service Provision | CMV Mileage-Accident Register |
| 7.5.2 Validation of Processes for Production and Service Provision | |
| 7.5.3 Identification and Traceability | |

KENCO 001364

| | |
|---|---|
| 7.5.4 Customer Property | Procedure for Inventory Control |
| 7.5.5 Preservation of Product | |
| 7.6 Control of Monitoring and Measuring Devices | |
| 8. Measurement, Analysis and Improvement | |
| 8.1 General | |
| 8.2 Monitoring and Measurement (Title Only) | |
| 8.2.1 Customer Satisfaction | |
| 8.2.2 Internal Audit | Benefit Invoice Audit Processing |
| 8.2.2 Internal Audit | Internal Audit |
| 8.2.2 Internal Audit | Internal Audit Forms |
| 8.2.2 Internal Audit | Best Practices Audit/Assessment Exception Request |
| 8.2.2 Internal Audit | Best Practices Audit/Assessment Exception Request Form |
| 8.2.2 Internal Audit | Facility Self Audit |
| 8.2.2 Internal Audit | Facility Self Audit Form |
| 8.2.2 Internal Audit | Emergency Inspection Forms |
| 8.2.3 Monitoring and Measurement of Processes | Kenco Lean Operations System Policy |
| 8.2.3 Monitoring and Measurement of Processes | Takt Boards and Schedule Attainment |
| 8.2.3 Monitoring and Measurement of Processes | Gemba Walks |
| 8.2.3 Monitoring and Measurement of Processes | 6S |
| 8.2.3 Monitoring and Measurement of Processes | Employee Suggestion Process |
| 8.2.3 Monitoring and Measurement of Processes | Kaizen Events |
| 8.2.3 Monitoring and Measurement of Processes | Kaizen Training |
| 8.2.3 Monitoring and Measurement of Processes | Kaizen Newspapers |
| 8.2.3 Monitoring and Measurement of Processes | Lean Monthly Reporting |
| 8.2.3 Monitoring and Measurement of Processes | Baseline Data/Site Financial Measurement |
| 8.2.3 Monitoring and Measurement of Processes | Margin Audit Procedure |
| 8.2.3 Monitoring and Measurement of Processes | Margin Audit Template |
| 8.2.3 Monitoring and Measurement of Processes | Efficiency Improvement Program (EIP) Policy |
| 8.2.3 Monitoring and Measurement of Processes | EIP Observation Process |

KENCO 001365

| | |
|---|---|
| 8.2.3 Monitoring and Measurement of Processes | EIP Observation Forms |
| 8.2.3 Monitoring and Measurement of Processes | EIP Process Development and Evaluation |
| 8.2.3 Monitoring and Measurement of Processes | EIP Work Standards |
| 8.2.3 Monitoring and Measurement of Processes | EIP Data Collection and Entry |
| 8.2.3 Monitoring and Measurement of Processes | EIP Project Management and Organization |
| 8.2.3 Monitoring and Measurement of Processes | EIP Assessment |
| 8.2.3 Monitoring and Measurement of Processes | KFMS Policy |
| 8.2.3 Monitoring and Measurement of Processes | KFMS Assessment |
| 8.2.3 Monitoring and Measurement of Processes | Departmental Clocking Policy and Procedure |
| 8.2.3 Monitoring and Measurement of Processes | KFMS Index-Profile Measurement |
| 8.2.3 Monitoring and Measurement of Processes | KFMS Cost Management Reporting |
| 8.2.3 Monitoring and Measurement of Processes | Risk Management Watch List Program |
| 8.2.3 Monitoring and Measurement of Processes | Watch List Program Requirement Tracker |
| 8.2.3 Monitoring and Measurement of Processes | KFMS Activity Based Costing |
| 8.2.3 Monitoring and Measurement of Processes | OSHA Inspection Procedures |
| 8.2.4 Monitoring and Measurement of Product | |
| 8.3 Control of nonconforming Product | Control of Non Conforming Product |
| 8.3 Control of nonconforming Product | MDR Form and LOG |
| 8.4 Analysis of Data | EIP Reporting System |
| 8.5 Improvement | |
| 8.5.1 Continual Improvement | Business Improvement Plan (BIP) |
| 8.5.1 Continual Improvement | BIP Template |
| 8.5.1 Continual Improvement | Continual Improvement |
| 8.5.1 Continual Improvement | CPAR/A3 Form and Log |
| 8.5.2 Corrective Action | |
| 8.5.3 Preventive Action | |
| | |

KENCO 001366

# ier Documents (Appendix F)

printed in this manual. Forms are printed from www.kencoconnection.com as

Content last updated: 5/15/13

| DOCUMENT TYPE | DOCUMENT NUMBER | EFFECTIVE | DEPARTMENT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Control Procedure | CP-BP-4.2.1.001 | 8/1/2012 | Best Practices |
| Form | CP-BP-4.2.1.001-2 | 8/1/2012 | Best Practices |
| | | | Best Practices |
| ISO Procedure | ISO-BP-4.2.3.001 | 8/1/2012 | Best Practices |
| Form | ISO-BP-4.2.3.001-1 thru 2 | 8/1/2012 | Best Practices |
| Form | ISO-BP-4.2.3.001-3 | 8/1/2012 | Best Practices |
| ISO Procedure | ISO-QE-4.2.4.001 | 3/1/2010 | Best Practices |
| Form | ISO-QE-4.2.4.001-1 | 6/1/2008 | Best Practices |
| Control Procedure | CP-RM-4.2.4.100 | 1/1/2013 | Risk Management |
| Control Procedure | CP-RM-4.2.4.101 | 6/1/2009 | Risk Management |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| | | | |
| Control Procedure | CP-IT-5.5.1.001 | 4/1/2008 | Information Technology |
| Control Procedure | CP-LE-5.5.1.001 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-QE-5.5.1.001 | 10/1/2011 | Best Practices |
| Form | CP-QE-5.5.1.001-1 | 8/1/2011 | Best Practices |
| Control Procedure | CP-QE-5.5.1.002 | 9/1/2010 | Best Practices |
| Form | CP-QE-5.5.1.002-1 | 1/1/2011 | Best Practices |
| Control Procedure | CP-QE-5.5.1.003 | 5/1/2011 | Best Practices |
| Form | CP-QE-5.5.1.003-1 | 5/1/2011 | Best Practices |
| Control Procedure | CP-RM-5.5.1.001 | 12/1/2012 | Risk Management |
| Form | CP-RM-5.5.1.001-1 | 12/1/2012 | Risk Management |
| Form | CP-RM-5.5.1.001-2 | 4/1/2008 | Risk Management |
| Control Procedure | CP-RM-5.5.1.100 | 10/1/2012 | Risk Management |
| Form | CP-RM-5.5.1.100-1 | 1/1/2009 | Risk Management |
| Form | CP-RM-5.5.1.100-2 | 9/1/2010 | Risk Management |
| Control Procedure | CP-RM-5.5.1.101 | 9/1/2010 | Risk Management |
| Form | CP-RM-5.5.1.101-1 | 3/1/2013 | Risk Management |
| Form | CP-RM-5.5.1.101-3 | 9/1/2010 | Risk Management |
| Form | CP-RM-5.5.1.101-4 | 5/1/2009 | Risk Management |
| Control Procedure | CP-RM-5.5.1.200 | 12/1/2010 | Risk Management |
| Form | CP-RM-5.5.1.200-1 | 12/1/2010 | Risk Management |
| Control Procedure | CP-IC-5.5.3.015 | 4/1/2008 | Internal Communications |
| Form | CP-IC-5.5.3.015-1,2 | 3/1/2011 | Internal Communications |

KENCO 001368

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| Control Procedure | CP-HR-6.1.002 | 9/1/2011 | Human Resources |
| Form | CP-HR-6.1.002-1 | 4/1/2008 | Human Resources |
| Form | CP-HR-6.1.002-2 | 9/1/2011 | Human Resources |
| Form | CP-HR-6.1.002-3 | 8/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.1.003 | 4/1/2008 | Human Resources |
| Form | CP-HR-6.1.003-1 | 4/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.1.004 | 4/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.1.006 | 11/1/2010 | Human Resources |
| Policy | POL-HR-6.2.001 | 5/1/2013 | Human Resources |
| Policy | POL-HR-6.2.002 | 5/1/2013 | Human Resources |
| Policy | POL-HR-6.2.003 | 6/1/2013 | Human Resources |
| Policy | POL-HR-6.2.004 | 5/1/2013 | Human Resources |
| Policy | POL-HR-6.2.005 | 6/1/2013 | Human Resources |
| Policy | POL-HR-6.2.006 | 5/1/2013 | Human Resources |
| Control Procedure | CP-RM-6.2.100 | 3/1/2013 | Risk Management |
| Form | CP-RM-6.2.100-1 | 3/1/2013 | Risk Management |
| Form | CP-RM-6.2.100-2 | 3/1/2013 | Risk Management |
| Form | CP-RM-6.2.100-3 | 3/1/2013 | Risk Management |
| Form | CP-RM-6.2.100-4 | 3/1/2013 | Risk Management |
| Form | CP-RM-6.2.100-5 | 3/1/2013 | Risk Management |
| Control Procedure | CP-RM-6.2.101 | 3/1/2013 | Risk Management |
| Form | CP-HR-6.2.1.002-1 | 4/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.1.003 | 4/1/2008 | Human Resources |
| Form | CP-HR-6.2.1.003-1 | 2/1/2010 | Human Resources |
| Form | CP-HR-6.2.1.003-3 | 4/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.1.004 | 4/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.1.005 | 3/1/2010 | Human Resources |
| Form | CP-HR-6.2.1.005-1 | 11/1/2011 | Human Resources |
| Control Procedure | CP-HR-6.2.1.006 | 8/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.1.007 | 7/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.1.009 | 10/1/2010 | Human Resources |
| Control Procedure | CP-HR-6.2.1.010 | 1/1/2011 | Human Resources |
| Form | CP-HR-6.2.1.010-1 to 7 | 11/1/2011 | Human Resources |
| Control Procedure | CP-HR-6.2.1.012 | 8/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.1.015 | 6/1/2010 | Human Resources |
| Control Procedure | CP-HR-6.2.1.016 | 08/01/09 | Human Resources |
| Control Procedure | CP-HR-6.2.1.017 | 10/1/2010 | Human Resources |
| Form | CP-HR-6.2.1.017-1 | 10/1/2010 | Human Resources |
| Control Procedure | CP-HR-6.2.1.022 | 12/1/2010 | Human Resources |
| Control Procedure | CP-HR-6.2.1.031 | 08/01/09 | Human Resources |
| Control Procedure | CP-RM-6.2.1.301 | 12/1/2012 | Risk Management |

| | | | |
|---|---|---|---|
| Form | CP-RM-6.2.1.301-1 | 12/1/2012 | Risk Management |
| Policy | POL-HR-6.2.1.001 | 5/1/2013 | Human Resources |
| Control Procedure | CP-HR-6.2.2.001 | 3/1/2011 | Human Resources |
| Form | CP-HR-6.2.2.001-1 | 3/1/2011 | Human Resources |
| Control Procedure | CP-HR-6.2.2.005 | 12/1/2011 | Human Resources |
| Form | CP-HR-6.2.2.005-1 and 2 | 1/1/2009 | Human Resources |
| Control Procedure | CP-HR-6.2.2.009 | 3/1/2012 | Human Resources |
| Form | CP-HR-6.2.2.009-1 thru 4 and 6 | 3/1/2012 | Human Resources |
| Form | CP-HR-6.2.2.009-7 | 03/01/09 | Human Resources |
| Control Procedure | CP-HR-6.2.2.011 | 6/1/2008 | Human Resources |
| Form | CP-HR-6.2.2.011-1 | 6/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.2.012 | 6/1/2008 | Human Resources |
| Form | CP-HR-6.2.2.012-1 thru 3 | 6/1/2008 | Human Resources |
| Control Procedure | CP-HR-6.2.2.013 | 3/1/2012 | Human Resources |
| Form | CP-HR-6.2.2.013-1 | 8/1/2009 | Human Resources |
| Form | CP-HR-6.2.2.013-2 | 11/1/2011 | Human Resources |
| Form | CP-HR-6.2.2.013-3 | 8/1/2009 | Human Resources |
| Form | CP-HR-6.2.2.013-4 | 3/1/2010 | Human Resources |
| Control Procedure | CP-HR-6.2.2.014 | 3/1/2010 | Human Resources |
| Control Procedure | CP-HR-6.2.2.015 | 4/1/2010 | Human Resources |
| Form | CP-HR-6.2.2.015-1 | 4/1/2010 | Human Resources |
| Control Procedure | CP-QE-6.2.2.001 | 8/1/2010 | Best Practices |
| Form | CP-QE-6.2.2.001-1 thru 3 | 3/1/2011 | Best Practices |
| Control Procedure | CP-RM-6.2.2.100 | 5/1/2010 | Risk Management |
| Form | CP-RM-6.2.2.100-1 thru 4 | 8/1/2008 | Risk Management |

KENCO 001370

| | | | |
|---|---|---|---|
| Control Procedure | CP-RM-6.2.2.102 | 6/1/2009 | Risk Management |
| Form | CP-RM-6.2.2.102-1 | 1/1/2013 | Risk Management |
| Control Procedure | CP-RM-6.2.2.305 | 12/1/2010 | Risk Management |
| Form | CP-RM-6.2.2.305-1 | 12/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.2.2.310 | 12/1/2012 | Risk Management |
| Form | CP-RM-6.2.2.310-1 | 3/1/2010 | Risk Management |
| Form | CP-RM-6.2.2.310-2 | 3/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.2.2.315 | 7/1/2010 | Risk Management |
| Form | CP-RM-6.2.2.315-1 | 12/1/2009 | Risk Management |
| Form | CP-RM-6.2.2.315-2 | 7/1/2010 | Risk Management |
| Control Procedure | CP-FN-6.3.001 | 9/1/2012 | Finance |
| Form | CP-FN-6.3.001-1,2,2a,2b | 9/1/2012 | Finance |
| Control Procedure | CP-IT-6.3.005 | 7/1/2009 | Information Technology |
| Control Procedure | CP-IT-6.3.006 | 9/1/2012 | Information Technology |
| Control Procedure | CP-IT-6.3.007 | 9/1/2009 | Information Technology |
| Control Procedure | CP-IT-6.3.008 | 12/1/2011 | Information Technology |
| Control Procedure | CP-IT-6.3.009 | 12/1/2009 | Information Technology |
| Control Procedure | CP-IT-6.3.011 | 9/1/2011 | Information Technology |
| Control Procedure | CP-IT-6.3.012 | 3/1/2009 | Information Technology |
| Control Procedure | CP-IT-6.3.014 | 07/01/09 | Information Technology |
| Control Procedure | CP-IT-6.3.019 | 3/1/2011 | Information Technology |
| Control Procedure | CP-RM-6.3.300 | 11/1/2011 | Risk Management |
| Form | CP-RM-6.3.300-1 | 4/1/2008 | Risk Management |
| Control Procedure | CP-RM-6.3.301 | 12/1/2009 | Risk Management |
| Form | CP-RM-6.3.301-1 | 12/1/2009 | Risk Management |
| Control Procedure | CP-HR-6.4.001 | 4/1/2008 | Human Resources |
| Control Procedure | CP-RM-6.4.100 | 4/1/2008 | Risk Management |
| Form | CP-RM-6.4.100-1 | 1/1/2013 | Risk Management |
| Form | CP-RM-6.4.100-2 | 6/1/2008 | Risk Management |
| Policy | POL-RM-6.4.102 | 1/1/2013 | Risk Management |
| Form | CP-RM-6.4.102-1 | 4/1/2008 | Risk Management |
| Control Procedure | CP-RM-6.4.103 | 5/1/2013 | Risk Management |
| Form | CP-RM-6.4.103-1 | 5/1/2013 | Risk Management |
| Control Procedure | CP-RM-6.4.104 | 1/1/2013 | Risk Management |
| Control Procedure | CP-RM-6.4.106 | 10/1/2012 | Risk Management |

KENCO 001371

| Control Procedure | CP-RM-6.4.105 | 5/1/2013 | Risk Management |
|---|---|---|---|
| Form | CP-RM-6.4.106-1 thru 6 | 10/1/2012 | Risk Management |
| Control Procedure | CP-RM-6.4.107 | 3/1/2011 | Risk Management |
| Form | CP-RM-6.4.107-1 | 3/1/2011 | Risk Management |
| Form | CP-RM-6.4.107-2 | 3/1/2011 | Risk Management |
| Form | CP-RM-6.4.107-3 | 3/1/2011 | Risk Management |
| Form | CP-RM-6.4.107-4 | 3/1/2011 | Risk Management |
| Form | CP-RM-6.4.107-5 | 3/1/2011 | Risk Management |
| Control Procedure | CP-RM-6.4.108 | 10/1/2012 | Risk Management |
| Form | CP-RM-6.4.108-1 | 4/1/2008 | Risk Management |
| Form | CP-RM-6.4.108-2 | 11/1/2012 | Risk Management |
| Control Procedure | CP-RM-6.4.109 | 10/1/2012 | Risk Management |
| Control Procedure | CP-RM-6.4.111 | 10/1/2012 | Risk Management |
| Form | CP-RM-6.4.111-1 and 2 | 10/1/2012 | Risk Management |
| Control Procedure | CP-RM-6.4.112 | 1/1/2011 | Risk Management |
| Form | CP-RM-6.4.112-1 | 4/1/2011 | Risk Management |
| Control Procedure | CP-RM-6.4.114 | 5/1/2013 | Risk Management |
| Form | CP-Rm-6.4.114-1 | 5/1/2013 | Risk Management |
| Form | CP-RM-6.4.114-2 | 5/1/2013 | Risk Management |
| Control Procedure | CP-RM-6.4.115 | 1/1/2012 | Risk Management |
| Control Procedure | CP-RM-6.4.117 | 12/1/2010 | Risk Management |
| Form | CP-RM-6.4.117-1 | 10/1/2011 | Risk Management |
| Form | CP-RM-6.4.117-2 | 12/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.4.120 | 8/1/2011 | Risk Management |
| Form | CP-RM-6.4.120-1 and 2 | 01/01/09 | Risk Management |
| Form | CP-RM-6.4.120-3 | 6/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.4.121 | 7/1/2010 | Risk Management |
| Form | CP-RM-6.4.121-1 | 3/1/2010 | Risk Management |
| Form | CP-RM-6.4.121-2 | 3/1/2010 | Risk Management |
| Form | CP-RM-6.4.121-3 | 3/1/2010 | Risk Management |
| Form | CP-RM-6.4.121-4 | 3/1/2010 | Risk Management |
| Form | CP-RM-6.4.121-5 | 7/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.4.122 | 9/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.4.123 | 1/1/2011 | Risk Management |
| Form | CP-RM-6.4.123-1 | 11/1/2010 | Risk Management |
| Form | CP-RM-6.4.123-2 | 11/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.4.124 | 4/1/2010 | Risk Management |
| Form | CP-RM-6.4.124-1 and 2 | 4/1/2010 | Risk Management |
| Control Procedure | CP-RM-6.4.300 | 11/1/2011 | Risk Management |
| Form | CP-RM-6.4.300-1 | 11/1/2010 | Risk Management |

KENCO 001372

| Control Procedure | CP-RM-6.4.301 | 10/1/2011 | Risk Management |
|---|---|---|---|
| Form | CP-RM-6.4.301-1 | 11/1/2010 | Risk Management |
| Form | CP-RM-6.4.301-2 | 12/1/2012 | Risk Management |
| Form | CP-RM-6.4.301-3 | 12/1/2012 | Risk Management |
| Control Procedure | CP-RM-6.4.302 | 11/1/2010 | Risk Management |
| Form | CP-RM-6.4.302-1 | 11/1/2010 | Risk Management |
| Form | CP-RM-6.4.302-2 | 11/1/2010 | Risk Management |
| | | | |
| | | | |
| Control Procedure | CP-FN-7.2.1.001 | 1/1/2012 | Finance |
| Control Procedure | CP-FN-7.2.1.002 | 1/1/2012 | Finance |
| Control Procedure | CP-OP-7.2.2.001 | 6/1/2008 | KLS- Operations |
| Form | CP-OP-7.2.2.001-1 | 1/1/2008 | KLS- Operations |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Control Procedure | CP-FN-7.4.1.001 | 7/1/2012 | Finance |
| Form | CP-FN-7.4.1.001-1 | 7/1/2012 | Finance |
| Form | CP-FN-7.4.1.001-2 | 7/1/2012 | Finance |
| Control Procedure | CP-OP-7.4.1.001 | 8/1/2012 | KLS- Operations |

KENCO 001373

| | | | |
|---|---|---|---|
| | | | |
| Control Procedure | CP-FN-7.5.1.002 | 8/1/2011 | Finance |
| Form | CP-FN-7.5.1.002-1 | 8/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.003 | 7/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.004 | 8/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.005 | 7/1/2011 | Finance |
| Form | CP-FN-7.5.1.005-1 & 2 | 11/1/2009 | Finance |
| Control Procedure | CP-FN-7.5.1.006 | 8/1/2011 | Finance |
| Form | CP-FN-7.5.1.006-1 | 8/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.007 | 8/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.008 | 7/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.009 | 8/1/2011 | Finance |
| Form | CP-FN-7.5.1.009-1 | 8/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.010 | 10/1/2011 | Finance |
| Control Procedure | CP-FN-7.5.1.011 | 4/1/2008 | Finance |
| Form | CP-FN-7.5.1.011-1 | 4/1/2008 | Finance |
| Control Procedure | CP-RM-7.5.1.302 | 12/1/2012 | Risk Management |
| Form | CP-RM-7.5.1.302-1 and 2 | 7/1/2012 | Risk Management |
| Form | CP-RM-7.5.1.302-3 | 2/1/2012 | Risk Management |
| Form | CP-RM-7.5.1.302-4 | 2/1/2012 | Risk Management |
| Form | CP-RM-7.5.1.302-6 | 12/1/2010 | Risk Management |
| | | | |
| | | | |

| Procedure | CP-OP-7.5.4.006 | 6/1/2013 | Operations |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| Control Procedure | CP-HR-8.2.2.001 | 4/1/2008 | Human Resources |
| ISO Procedure | ISO-QE-8.2.2.001 | 2/1/2010 | Best Practices |
| Form | ISO-QE-8.2.2.001-1thru 3 | 1/1/2010 | Quality Engineering |
| Control Procedure | CP-BP-8.2.2.001 | 3/1/2013 | Best Practices |
| Form | CP-BP-8.2.2.001-1 | 3/1/2013 | Best Practices |
| Control Procedure | CP-RM-8.2.2.102 | 5/1/2013 | Risk Management |
| Form | CP-RM-8.2.2.102-1 | 5/1/2013 | Risk Management |
| Form | CP-RM-8.2.2.102-2thru7 | 5/1/2013 | Risk Management |
| Control Procedure | CP-LE-8.2.3.001 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-LE-8.2.3.002 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-LE-8.2.3.003 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-LE-8.2.3.004 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-LE-8.2.3.005 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-LE-8.2.3.006 | 5/1/2011 | Logistics Engineering |
| Form | CP-LE-8.2.3.006-1 | 5/1/2011 | Logistics Engineering |
| Form | CP-LE-8.2.3.006-2 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-LE-8.2.3.007 | 5/1/2011 | Logistics Engineering |
| Form | CP-LE-8.2.3.007-1 | 5/1/2011 | Logistics Engineering |
| Control Procedure | CP-OP-8.2.3.001 | 6/1/2008 | KLS- Operations |
| Form | CP-OP-8.2.3.001-1 | 10/1/2007 | KLS- Operations |
| Control Procedure | CP-QE-8.2.3.001 | 3/1/2010 | Best Practices |
| Control Procedure | CP-QE-8.2.3.002 | 9/1/2010 | Best Practices |

KENCO 001375

| | | | |
|---|---|---|---|
| Form | CP-QE-8.2.3.002-1 & 2 | 1/1/2011 | Best Practices |
| Control Procedure | CP-QE-8.2.3.003 | 8/1/2011 | Best Practices |
| Control Procedure | CP-QE-8.2.3.004 | 8/1/2011 | Best Practices |
| Control Procedure | CP-QE-8.2.3.005 | 11/1/2009 | Best Practices |
| Control Procedure | CP-QE-8.2.3.006 | 5/1/2009 | Best Practices |
| Form | CP-QE-8.2.3.006-1 | 10/1/2010 | Best Practices |
| Control Procedure | CP-QE-8.2.3.100 | 8/1/2010 | Best Practices |
| Form | CP-QE-8.2.3.100-1 | 8/1/2010 | Best Practices |
| Control Procedure | CP-QE-8.2.3.101 | 12/1/2010 | Best Practices |
| Control Procedure | CP-QE-8.2.3.102 | 10/1/2009 | Best Practices |
| Control Procedure | CP-QE-8.2.3.103 | 11/1/2009 | Best Practices |
| Control Procedure | CP-RM-8.2.3.103 | 10/1/2012 | Risk Management |
| Form | CP-RM-8.2.3.103-1 | 10/1/2012 | Risk Management |
| Control Procedure | CP-QE-8.2.3.104 | 8/1/2010 | Best Practices |
| Control Procedure | CP-RM-8.2.3.100 | 8/1/2008 | Risk Management |
| | | | |
| ISO Procedure | ISO-QE-8.3.001 | 4/1/2008 | Best Practices |
| Form | ISO-QE-8.3.001-1,2 | 5/1/2008 | Best Practices |
| Control Procedure | CP-QE-8.4.001 | 9/1/2010 | Best Practices |
| Control Procedure | CP-OP-8.5.1.002 | 3/1/2009 | KLS- Operations |
| Form | CP-OP-8.5.1.002-2 | 3/1/2009 | KLS- Operations |
| ISO Procedure | ISO-QE-8.5.1.001 | 8/1/2012 | Best Practices |
| Form | ISO-QE-8.5.1.001-1 thru 3 | 7/1/2012 | Best Practices |
| | | | |
| | | | |
| | | | |
| | | | |

KENCO 001376

Employee Name

s needed.

| AREA | Job Description Number | Employee Signature |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| KQMS |  |  |
| KQMS |  |  |
| KQMS |  |  |
| KQMS |  |  |
| KQMS |  |  |
| KQMS |  |  |
| KQMS |  |  |
| Safety |  |  |
| Safety |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

KENCO 001377

| | | |
|---|---|---|
| | | |
| IT | | |
| LE | | |
| KQMS | | |
| KQMS | | |
| EIP | | |
| EIP | | |
| KFMS | | |
| KFMS | | |
| DOT | | |
| DOT | | |
| DOT | | |
| Safety | | |
| Security | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Security | | |
| Security | | |
| | | |
| | | |
| | | |

KENCO 001378

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| Employment Changes | | |
| Employment Changes | | |
| Employment Changes | | |
| Employment Changes | | |
| Benefits | | |
| Benefits | | |
| Administrative | | |
| Payroll | | |
| Employee Relations | | |
| Employee Relations | | |
| Employee Relations | | |
| Employee Relations | | |
| Employee Relations | | |
| Employee Relations | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Administrative | | |
| Benefits | | |
| Benefits | | |
| Benefits | | |
| Administrative | | |
| Hiring | | |
| Hiring | | |
| Employment Changes | | |
| Employment Changes | | |
| Payroll | | |
| 401k | | |
| 401k | | |
| Payroll | | |
| Administrative | | |
| Administrative | | |
| Payroll | | |
| Payroll | | |
| Administrative | | |
| Payroll | | |
| DOT | | |

KENCO 001379

| DOT | | |
|---|---|---|
| Employee Relations | | |
| Development / Training | | |
| Development / Training | | |
| Performance Management | | |
| Performance Management | | |
| Performance Management | | |
| Performance Management | | |
| Performance Management | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Hiring | | |
| Employment Changes | | |
| Employment Changes | | |
| KQMS | | |
| KQMS | | |
| Safety | | |
| Safety | | |

KENCO 001380

| | | |
|---|---|---|
| Safety | | |
| Safety | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| Administrative | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |

| | | |
|---|---|---|
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Safety | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| Security | | |
| DOT | | |
| DOT | | |

| | | |
|---|---|---|
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| Security | | |
| Security | | |
| Security | | |
| | | |
| | | |
| Collections | | |
| Collections | | |
| Operations | | |
| Operations | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Accounting | | |
| | | |

KENCO 001383

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| Accounts Payable | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Accounts Receivable | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| DOT | | |
| | | |
| | | |

KENCO 001384

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| Benefits | | |
| KQMS | | |
| KQMS | | |
| KQMS | | |
| KQMS | | |
| Risk Management | | |
| Risk Management | | |
| Risk Management | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Lean | | |
| Operations | | |
| Operations | | |
| EIP | | |
| EIP | | |

| | | |
|---|---|---|
| EIP | | |
| EIP | | |
| EIP | | |
| EIP | | |
| EIP | | |
| EIP | | |
| KFMS | | |
| KFMS | | |
| KFMS | | |
| KFMS | | |
| KFMS | | |
| Safety | | |
| Safety | | |
| KFMS | | |
| Safety | | |
| | | |
| KQMS | | |
| KQMS | | |
| EIP | | |
| Operations | | |
| Operations | | |
| KQMS | | |
| KQMS | | |
| | | |
| | | |
| | | |
| | | |



ILLINOIS DEPARTMENT OF
# Human Rights

Bruce Rauner, Governor
Rocco J. Claps, Director

## MARY D. MADISON V. KENCO LOGISTIC SERVICES
## IDHR CHARGE NO.: 2014CF0475

Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.

YOLANDA G. GODWIN
FREEDOM OF INFORMATION OFFICER

DATE: 5/3/2016

SUBSCRIBED and SWORN to before me

THIS 3rd DAY of May , 2016.

_Donna M. Evans_
**NOTARY PUBLIC**

OFFICIAL SEAL
DONNA M EVANS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

## RULE 26, 37 and other Violations

1. Rule 11 violation Document # 17-10/2019

2. Rule 26 violation in violation of Rule 16 conference obligations (failing to make timely initial disclosures after Rule 16 conference. November 9, 2020

3. Issued discovery without issuing initial Rule 26 disclosures-November 2020

4. Issued initial Rule 26 disclosures along with Defendant's responses to Plaintiff's first set of discovery request.  January 7, 2021

5. Rule 37 violations-Incomplete and non-compliant answers to Plaintiff's first set of discovery request.  January 7, 2021

6. Rule 26 & 37 violations-Failure to amend or correct outstanding discovery issues.

7. Rule 26 & 37 violations- Defendant intentionally and recklessly disregarded its obligation to comply with the Court's order and its basic discovery obligations. May 7, 2021

    a. Failure to disclose

    b. Intentional violated court order of 4.23.21

    c. Made disingenuous claims of compliance on May 7, 2021

    d. On May 24, 2021 Defendant produced additional discovery after making disingenuous claims of compliance on May 7, 2021.

    e. Continual refuses to produce policy as referenced in Defendant's disability plans.

    f. Ceased communication with Plaintiff in regards to resolution of discovery issues.



**ILLINOIS DEPARTMENT OF**

**Human Rights**

<span style="color:blue">**Exhibit E**</span>

Bruce Rauner, Governor
Rocco J. Claps, Director

## LEONARD SZPLETT V. KENCO LOGISTIC SERVICES
## IDHR CHARGE NO.: 2015CA3083

Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.

YOLANDA G. GODWIN
FREEDOM OF INFORMATION OFFICER

DATE: 4/1/16

SUBSCRIBED and SWORN to before me

THIS 1st DAY of April, 2016.

**NOTARY PUBLIC**

OFFICIAL SEAL
DONNA M EVANS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr



## KENCO
## An Equal Opportunity Employer
## Job Posting

KENCO is a supply chain solutions provider headquartered in Chattanooga, TN. Established in 1950, the company operates more than 29 million square feet of warehouse space and employs over 3,600 people in 25 states and Canada. KENCO has served customers such as Honeywell, Whirlpool, and Electrolux for over 60 years.

### Current Position Available

**Job Title: Office Manager - Mars**
**Location: Manteno, IL**

### About the Opportunity
Serves as Office Manager for Distribution Center and is responsible for daily office duties including, but not limited to the items below. This position will report to the Corporate HR office, with dotted line responsibility to the Site GM.

### About the Position
- Assists in recruiting, interviewing, hiring/terminating, and training all new employees.
- Ensures that all office functions are performed per procedure, including, but not limited to, labor, payroll, accounts payable, accruals, personnel files, processing of new employees and employee benefits.
- Responsible for ensuring that all reports are properly completed, including but not limited to, labor, payroll, attendance, operations metrics, and KPIs.
- Enters all new hire information in designated system as well as updates applicable systems with all other required information (401K, leave of absence, vacation, terminations, status changes, etc.)
- Coordinates with the corporate accounting department all accounts payable and accounts receivable functions for the site. QuickBooks experience is a plus.
- Maintains financial data files and produces daily, monthly, and weekly reports.
- Is responsible for all customer invoicing.
- Serves as the Communication/HR Advocate for the site.
- Oversees the background check and drug screen process for all new hires; coordinates random drug testing program per corporate requirements.
- Conducts new hire orientation for all new hires.
- Interacts as necessary with office equipment, supply and temporary personnel vendors.
- Ensures that all office equipment is maintained in good working condition, all files and records are maintained properly, light office housekeeping is performed on a regular basis, and that the office is kept free of all hazardous materials.
- Responsible for ensuring that all office supplies are kept stocked.
- Other duties as assigned.

### Qualifications
- MS Office skills to include Word, Excel, Outlook, and PowerPoint as well as data entry and typing ability.
- Excellent communication skills, both verbal and written.
- Positive attitude, good people skills. Must be able to interact positively with subordinate employees, peers, and management. Interfaces with customer representatives; needs to be able to develop ad maintain good business relationships. Involved in the professional development of site personnel.
- Ability to read and interpret documents such as safety rules, operating and maintenance instructions and procedure manuals, and to write routine reports and correspondence.
- Experience with financial analysis, accounts payable and budgeting.
- Ability to speak effectively before groups of customers or employees of the organization.
- Ability to manage small project assignments as necessary.



**Education/Relevant Experience**
- B.S. or B.A. preferred, or 3-5 years office experience in a distribution center.
- Customer Service and/or Human Resource experience including payroll processing preferred.

**Physical Demands**
The physical demands described are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is regularly required to sit; use hands to handle or feel; and reach with hands and arms. The employee frequently is required to walk and talk or hear. The employee must occasionally lift and/or move up to 50 pounds. Specific vision abilities required by this job include close vision, distance vision and ability to adjust focus.

**Work Environment**
The work environment characteristics described are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

The noise level in the work environment is usually moderate.

The statements above are intended to describe the general nature and level of work being performed by people assigned to this job. Other duties may be assigned as needed.

Employees interested in applying for this position should submit their resume via the Kenco *intra*net website @ www.kencoconnection.com.

*The opportunity to apply for this position expires after seven (7) consecutive calendar days*
*5:00 p.m. ET 3/8/2013*

P.O. Box 1607
2001 Riverside Drive (37406)
Chattanooga, TN 37401

Phone 423-622-1113
Fax 423-643-3325
www.kencogroup.com



April 2, 2013

LEONARD SZPLETT
3421 W. 1500 N. Rd
Kankakee, IL 60901

Dear Leonard:

It is a pleasure to confirm our offer of employment to you. You will be employed at our KENCO Mars facility in Manteno, IL as the Office Manager working on the 1st Shift.

Below are the details of the offer:
- Your start date is April 21, 2013.
- Your starting base salary will be $2750.00, paid semi-monthly.
- You will be eligible for a bonus of up to $1,000.00 per year, based on performance to defined goals and objectives. This amount will be prorated for the remainder of 2013.
- You are eligible for a transition bonus of $1300.00, to be paid out in $433.33 increments following your 30th, 60th and 90th day of employment. If your employment ends within 90 days, the increments that the transition bonus is paid will not be paid in a prorated amount.
- For the remainder of 2013, you will have 10 vacation days available to you. Beginning in 2014, you will have 15 vacation days available to you annually.

Kenco will be paying for temporary health coverage during the first 90 days of employment through Starbridge. You will have 30 days to elect the coverage level, but regardless of when you enroll, both the coverage and the premium are retroactive to your start date. Enrollment in Starbridge will take place during your new hire orientation. Your temporary health care coverage will end on your 90th day of employment.

On your 91st day of employment you will be eligible for the following company benefits: medical, prescription drug coverage, dental, vision, short and long-term disability coverage, group life insurance, long term care coverage, employer-matched 401(k) plan. On your start date you will be eligible for vacation and paid holidays.

The offer of employment is contingent upon the completion of a pre-employment drug screen analysis and criminal background check. We reserve the right to withdraw this offer if the drug screen analysis result or the background check is unfavorable. Your employment with Kenco is at-will and either party can terminate the relationship at any time, with or without cause and with or without notice.



Leonard, we are excited about you joining us at Kenco. Please indicate your acceptance of this offer by signing at the bottom of the letter. Please retain a copy for your records.

Sincerely,

*Eddy Roguel 4-2-13*

Paula Hise
VP, Operations

Offer Accepted:

*Leonard Szplett*     4-2-13

LEONARD SZPLETT                    Date

_____     _____

Director of Recruiting and Development          Date

# Kenco/ 4T's Job Equivalences

| current Positions | Kenco Equivalent | Number of Open Positions |
|---|---|---|
| Lead Associate | Lead | 6 |
| Inventory Control Associate | Inventory Control Associate | 2 |
| Facility Equipment Maintenance | Lead (Safety / Maintenance) | 1 |
| N/A | Kenco Operating System Engineer | 1 |
| N/A | Quality Engineer | 1 |
| IT Manager | IT Power User | 2 |
| General Manager | General Manager | 1 |
| Accounting / HR Manager | Office Manager | 1 |
| Facility Maintenance | Facility Maintenance | 1 |
| Office Manager | Warehouse Admin. Supervisor | 1 |
| Operations Manager | Operations Manager | 1 |
| Raws/Packaging Lead Associate | Raws/Packaging Lead Associate | 1 |
| Accounting / HR Assistant | Clerical | 6 |
| Shipping / Receiving Assistant | Clerical | |
| Truck Builder | Clerical | |
| Spotter | Spotter | 3 With 3 back-up |
| Supervisor | Warehouse Supervisor | 3 |
| Sanitation Coordinator | Warehouse Associate | 57 |
| Temp / PeopleLink / Warehouse Associate | Warehouse Associate | |
| Temp / People Link / Warehouse Janitorial | Warehouse Associate | |
| Temp / Reserve Network / Warehouse Associate | Warehouse Associate | |
| General Warehouse Associate | Warehouse Associate | |

August 5, 2015

<u>VIA ELECTRONIC MAIL ONLY</u>

Investigator John Detwiler
Illinois Department of Human Rights
<u>John.Detwiler@illinois.gov</u>

      Re:    <u>Leonard A. Szplett v. Kenco Logistic Services, LLC</u>
                  IDHR # 2015CA3083/EEOC # 21BA51536

Dear Investigator Detwiler:

      The following is Respondent Kenco Logistic Services, LLC's ("KLS") position statement and response to the Department's questionnaire in the above-referenced matter.

      1.  Kenco Logistic Services, LLC
          1125 Sycamore Street
          Manteno, IL 60950[1]

      2.  Jay Elliott
          2001 Riverside Drive
          Chattanooga, TN 37406
          (423) 643-3398

      3.  A copy of the EEO-1 report for the above-referenced facility is attached as <u>Exhibit A</u>.

      4.  The narrative included with Mr. Szplett's charge is rambling, unfocused, and extremely hard to follow. He often repeats himself. And most of the time his attention is paid to activity that is either time-barred or had nothing to do with decisions affecting his own employment, or both. It appears that the following are the only allegations that are appropriate for his charge of discrimination:

      Mr. Szplett alleges that he was demoted when Lori Varvel (female, Caucasian, 35 years old) was hired as the new Human Resources Manager in November of 2014. Mr. Szplett was never the Human Resources Manager. He was the Office Manager (<u>see</u> a copy of his offer letter in his personnel file at <u>Exhibit B</u>). So Ms. Varvel didn't replace him. She didn't replace anyone. There was no Human Resource Manager before Ms. Varvel was hired. So there could be no demotion for Mr. Szplett. He continued as the Office Manager before, during, and after Ms. Varvel's hire, with no change in his salary or his job duties and responsibilities. It is important to note that, at the time of Ms. Varvel's hire, KLS was experiencing various problems with its customer (Mars) which could be fairly attributed to the lack of a strong Human Resource-related presence on site. Additionally, KLS was becoming the subject of more and more charges of discrimination at that time. And so, whether it was the absence of a dedicated on-site Human Resources Manager or because of Mr. Szplett's failing efforts as Office Manager to handle those Human Resource-related issues on site when they came up, KLS decided it needed a dedicated Human Resources Manager. And so it hired one – Lori Varvel.

---

[1] KLS lost the contract on the work at this site. As a result, all KLS employees were terminated effective February 28, 2015. KLS no longer has any employee working at the Manteno site.

Mr. Szplett alleges that he was paid less than Ms. Varvel. This allegation is accurate. Although Ms. Varvel was paid more than Mr. Szplett, the difference in pay was based on their different job duties and responsibilities. Mr. Szplett was responsible for the Office Manager duties (see Exhibit C for a job description). Ms. Varvel was responsible for a completely different set of duties and responsibilities – those of the Human Resources Manager (see Exhibit D for a job description). Of course, basing the difference in pay on the difference between job duties and responsibilities is absolutely permissible under the law. See Warren v. Solo Cup Co., 516 F.3d 627, 630–31 (7th Cir.2008) (outlining factors to consider when determining whether employees are similarly situated).

Mr. Szplett alleges that his office was temporarily relocated after Ms. Varvel was hired. At the time Ms. Varvel was hired, Mr. Szplett was out on an open-ended FMLA leave with no specified return date. While he was out on leave, Ms. Varvel temporarily occupied Mr. Szplett's office. Succinctly, she needed an office immediately and he wasn't coming to work at the time. Mr. Szplett's things were moved down the hall into a cubicle while he was out on leave. KLS lost the contract with Mars before Mr. Szplett returned from leave. In any event, a temporary relocation of an office is not an adverse employment action significant enough to support a discrimination claim. See Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (explaining that an adverse employment action requires something more than an annoyance or an inconvenience).

Finally, Mr. Szplett alleges he was not paid for March (2015). That allegation is accurate. Quite simply, KLS didn't pay Mr. Szplett for March of 2015 because he didn't work during that time. Instead, he was on leave. Mr. Szplett first went out for FMLA on October 22, 2014. Toward the end of January of 2015, his 12 weeks of FMLA were about to expire. At that time, KLS inquired about Mr. Szplett's intentions to return to work. Mr. Szplett's doctor represented that Mr. Szplett could not work "in any capacity," and that he would be restricted from performing his job functions for another "6-12 months." See Exhibit E for a copy of the Physician's Statement from Mr. Szplett's doctor. Instead of terminating Mr. Szplett at that time, however, KLS allowed Mr. Szplett to stay out on leave in case his condition improved. At the same time, since he wasn't working, KLS did not pay Mr. Szplett. To KLS's knowledge, Mr. Szplett's condition did not change through the date of his separation.

These decisions (hiring Ms. Varvel, setting her salary, allowing her to temporarily use Mr. Szplett's office while he was out on leave, and not paying Mr. Szplett for March of 2015) had nothing to do with Mr. Szplett's race, sex, or age. And they were not in retaliation for any complaint that Mr. Szplett made about discrimination or harassment. In fact, Mr. Szplett never made such a complaint.

Mr. Szplett alleges that KLS violated the WARN Act. First of all, the IDHR does not have jurisdiction over WARN Act complaints (state or federal). In any event, neither the federal nor the state act was triggered since only 12 employees suffered an employment loss (the federal WARN Act requires 50 employment losses, and the state WARN Act requires 25 employment losses). Assuming for purposes of argument that either WARN Act was triggered, KLS provided the required 60-day notice since it notified employees on January 26, 2015, of the loss of the contract and accompanying termination of employment on March 29, 2015.[2] More specifically, on January 26, 2015, all employees were informed of Mars's decision not to renew KLS's contract at the Manteno site. The communication was made verbally during all employee meetings to those employees who were not on leave at the time

---

[2] Employees were separated effective February 28, 2015, but those who were not on leave were paid through March 29, 2015.

(plus a notice was handed to each of those employees). For those employees who were on leave at the time (FMLA or otherwise), a notice was mailed to their home addresses. Mr. Szplett was on leave, and so his notice was mailed to him. Attached as Exhibit F is a copy of the form notice mailed to employees on leave (like Mr. Szplett). The communication that was mailed is the same as the notice handed out at all employee meetings. Therein, all employees were informed that they would be permitted the opportunity to apply for employment with the new provider (the company taking KLS's place).

To the extent Mr. Szplett alleges an FMLA violation (interference or retaliation), such claims should be dismissed since the IDHR does not have jurisdiction over such claims.

5. Mr. Szplett was hired as Office Manager on April 21, 2013. A copy of the job description for Office Manager is attached as Exhibit C. A copy of Mr. Szplett's personnel file is attached as Exhibit B.

On the Issue of Harassment:

B1. A copy of KLS's anti-harassment policy is attached as Exhibit G.

B2. The individual primarily responsible for investigating internal complaints of harassment at the Manteno facility was Tammi Fowler (Caucasian), Senior Employee Relations Manager.

B3. Mr. Szplett did not bring any complaint of harassment to anyone's attention.

B4. No other complaint of harassment has been made against anyone listed in the charge of discrimination (outside the charges of discrimination listed below).

B5. No discipline has been issued at the Manteno facility within the past twelve months for violation of KLS's anti-harassment policy.

On the Issue of Demotion:

N1-7. Not applicable. Mr. Szplett was not demoted.

Regarding the basis of RETALIATION, provide the following information:

ZZ1.    Mr. Szplett never opposed or protested allegedly discriminatory treatment.

ZZ2.    Other pending charges of discrimination filed by KLS employees at the Manteno facility:

Nathan Doss --          IDHR # 2014CF2858, dated May 7, 2014
                        IDHR # 2014CF2992, dated May 21, 2014
                        IDHR # 2014CF3057, dated May 29, 2014
                        IDHR # 2014CF3161, dated June 9, 2014
                        IDHR # 2015CF0310, dated August 12, 2014
                        IDHR # 2015CF0822, dated October 16, 2014
                        IDHR # 2015CF1145, dated November 12, 2014
                        IDHR # 2015CF1660, dated January 6, 2015
                        IDHR # 2015CF2725, dated April 16, 2015

Vernon Henry --    IDHR # 2015CF00342, dated July 9, 2014
IDHR # 2015CF0990, dated October 29, 2014
IDHR # 2015CF1315, dated December 4, 2014
IDHR # 2015CF2497, dated March 27, 2015

Arnold Brownlee --    IDHR # 2015CA1464, dated December 8, 2014

Tracy Davis --    IDHR # 2014CF3162, dated June 9, 2014

Sam Rockett --    IDHR # 2015CF0003, dated July 1, 2014

Anastasia Sandness --    IDHR # 2015CF0006, dated July 1, 2014
IDHR # 2015CF0515, dated September 4, 2014
IDHR # 2015CF0516, dated September 4, 2014
IDHR # 2015CF1655, dated January 6, 2015

Morris Tyson    IDHR # 2015CF0699, dated September 22, 2014
IDHR # 2015CA2692, dated April 24, 2015

Scott Marksteiner    IDHR # 2015CA1054, dated November 3, 2014
IDHR # 20151650, dated January 7, 2015

Mardy Ringo    IDHR # 2015CA1590, dated December 30, 2014

Edith McCurry --    IDHR # 2015CA1804, dated January 13, 2015
IDHR # 2015CA2495, dated March 27, 2015

Robert Cates    IDHR # 2015CA1354, dated November 19, 2014

Derrick Nixon    IDHR # 2015CF1828, dated February 10, 2015

Respectfully submitted,

Jay Elliott
Counsel for Kenco Logistic Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406
Jay.Elliott@KencoGroup.com
Work:  (423) 643-3398

2001 Riverside Drive
Chattanooga, TN 37406
Direct Line 423.643.3398
Fax 423.622.6866
jay.elliott@kencogroup.com
www.kencogroup.com



November 20, 2015

Mr. Gabriel A. DeFrates
Human Rights Investigator
Illinois Department of Human Rights
100 W. Randolph Street, Suite 10-100
Chicago, IL 60601

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Re:   <u>In the Matter between Edith McCurry and Kenco Logistic Services</u>
2015CA1804 and 2015CA2495

Dear Investigator DeFrates:

The following is Kenco's response to your October 30 request for additional information and documentation in the above-referenced matters:

1.  Kenco objects to request no. 1 based on the grounds that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In short, Mars has nothing to do with any of this. They are a completely independent third party. They were not Ms. McCurry's employer. There is no allegation against Mars or any Mars representative in Ms. McCurry's charge of discrimination.

2.  Kenco objects to request no. 2 based on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome. Subject to and without waiving these objections, there were three employees at the Mars site whose positions had some sort of Human Resources-related function:

    Office Manager
    Len Szplett
    68 years old

    Edith McCurry
    Clerk
    53 years old

    Lori Varvel
    Human Resources Manager
    35 years old

3.  Kenco objects to request no. 3 based on the grounds that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving

these objections, see attached Exhibits A-D. Kenco does not have written policies that cover promotions, demotions, or layoffs.

4. Kenco objects to request no. 4 based on the grounds that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see attached Exhibits E-J, respectively. The titles of the jobs for which you requested descriptions do not always match exactly with Kenco job titles. I am giving you those job descriptions which match up most closely with the descriptions you requested. You will also see that some descriptions are from Kenco sites which are not the Mars/Manteno site. However, the job descriptions from other sites would be substantially similar to the jobs with the same titles at the Mars/Manteno facility. Finally, some of the exhibits are job postings instead of job descriptions. But the description for the job is included in the posting.

5. See attached Exhibit G.

6. Kenco objects to request no. 6 based on the grounds that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, none of the employees mentioned are comparators with Ms. McCurry. None was a Clerk; none reported to Ms. Varvel; "missing a punch" is something very different than misrepresenting when you clocked out; and Ms. McCurry's OFI was for failing to follow Ms. Varvel's instruction to get permission before she worked past the end of Ms. McCurry's shift.

7. Kenco objects to request no. 7 based on the grounds that it is vague, ambiguous, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, there was no formal written communication to employees informing them of any schedule restructure on December 22, 2014.

8. Kenco objects to request no. 8 based on the grounds that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, Mr. Willis is not a comparator with Ms. McCurry. He was not a Clerk; he did not report to Ms. Varvel; and he did not apply for the Human Resources Manager position later filled by Ms. Varvel (similarly, Ms. McCurry did not apply for any position held by Mr. Willis, or any position that Mr. Willis was also applying for).

9. Kenco objects to request no. 9 based on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, none of the employees who may have been given an OFI for "missing a punch" are comparators with Ms. McCurry. None was a Clerk; none reported to Ms. Varvel; "missing a punch" is something very different than misrepresenting when you clocked out; and Ms. McCurry's OFI was for failing to follow Ms. Varvel's instruction to get permission before she worked past the end of Ms. McCurry's shift.

10. Kenco objects to request no. 10 based on the grounds that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, Mr. Baker is not a comparator with Ms. McCurry. He was not a Clerk; he did not report to Ms. Varvel; and he did not apply for the Human Resources Manager position later filled by Ms. Varvel (similarly, Ms. McCurry did not apply for any position held by Mr. Baker, or any position that Mr. Baker was also applying for).

11. <u>See</u> attached <u>Exhibit K</u>.[1]

12. Kenco objects to request no. 12 based on the grounds that it is overly broad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving those objections, all Kenco employees at the Mars facility were laid off due to the termination of the Mars contract. <u>See</u> attached <u>Exhibit L</u> for demographic information. They were all notified by letter – hand delivered or mailed, depending on whether or not they were on leave and/or absent the day the letters were hand delivered. All letters are dated January 26, 2015. Date of termination from Kenco's employment was March 29, 2015 (unless an employee was hired by the new third party logistics provider who took the Mars contract from Kenco, in which case the employee was terminated by Kenco on February 28, 2015). Attached as <u>Exhibit M</u> are copies (examples) of (1) a hand-delivered letter and (2) a letter that was mailed to someone who was absent the day the letters were hand delivered but who was not on leave. Attached as <u>Exhibit N</u> are copies of all of the letters that were mailed to employees who were out on leave on January 26, 2015 (like Ms. McCurry). Kenco is not aware of any employee who had a disability. For those employees who filed charges of discrimination against Kenco, and so are included in the "protected activity status," see Kenco's May 20, 2015, position statement in response to Ms. McCurry's 2015CA2495 charge.

Please let me know if you have any questions.

Respectfully submitted,

Jay Elliott
Counsel for Kenco

---

[1] Previously, Kenco represented that it was not able to produce a copy of the form letter it mailed to Ms. McCurry because of a mail merge computer problem. That problem has been corrected.

Charge No. 2015CA1804
Page 3 of 39

                               KK-NN.  August 2013-January 7, 2015

Charge filed:                        January 7, 2015

Charge perfected:           January 7, 2015

Amendments:                 N/A

Number of employees:      72



**Verified Response (Group Exhibit A):**

Due:                             March 23, 2015

Received:                    March 12, 2015

Timely:                       Yes

**Employment Data:**

Respondent's 2013, Equal Employment Opportunity, Employer Information Report, Individual Establishment Report – Type 4 **(Exhibit B)** indicates that Respondent's employed 72 individuals during the applicable period. The document indicates that of these, 18 (25.0%) are in Complainant's protected class, race, black; and 13 (18.1%) are in Complainant's protected class, sex, female. Respondent's age breakdown of its three (3) employees staffed in its Human Resources ("HR") Department is as follows: under 40, one (1) (33.3%); 40-45, zero (0) (0%); 46-50, zero (0) (0%); 51-55, one (1) (33.3%); 56-60, zero (0) (0%); and older than 60, one (1) (33.3%). Respondent indicated through correspondence that nine (9) (12.5%) other employees engaged in protected activities during the applicable period.

**Uncontested Facts:**

1.    Respondent is a third-party logistics company who runs and handles warehouses and order fulfillment operations for other companies.

2.    On April 21, 2013, Respondent hired Complainant as a Clerk[12]. Complainant was the only Clerk employed at Respondent's Manteno, Illinois, location. Among other requirements, Complainant's duties included processing payroll data and submitting it to Respondent's corporate office in Chattanooga, Tennessee. At Complainant's time of hire, Respondent provided Complainant copies of its Employment Policies **(Group Exhibits J, V)**.

3.    From April 21, 2013 through around November 10, 2014, one (1) of Complainant's direct reports was Leonard Szplett ("Szplett") (non-black, male, 67, PA), Office Manager. During this timeframe, Respondent paid Complainant an hourly rate of $15.81; and Respondent paid Szplett an hourly rate of approximately $34.38[13]; and Szplett evaluated Complainant's work performance **(Group Exhibits E, G, I, J, Q, U, V)**.

---

[12] In Complainant's January 7, 2015, instant charge of discrimination, Complainant incorrectly identifies the title of her position to be "HR Administrator." On March 27, 2015, Respondent provided the Department with source documentation **(Exhibit J)** indicating that the correct title of Complainant's position upon hire was "Clerk." On October 28, 2015, Complainant provided the Department with the same source documentation **(Exhibit V)** confirming that the correct title of her position upon hire was "Clerk."

[13] It is an uncontested fact, corroborated by documented evidence **(Exhibit U)** that during the applicable period Respondent paid Szplett a semi-monthly salary of $2,750, which equates to an hourly rate of approximately $34.38; based on a 40 hour work week.

**Exhibit F**



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LEONARD A. SZPLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-02500 |
| | ) | |
| KENCO LOGISTIC SERVICES, LLC, a | ) | Judge Gary Feinerman |
| Tennessee Limited Liability Company, Mars, | ) | Magistrate Judge Young B. Kim |
| Inc., The Hartford, DAVID JABALEY, MARIO | ) | |
| LOPEZ, TAMMI FOWLER, PAULA HISE, | ) | |
| TRACE SPIER, ROBERT COFFEY, TODD | ) | |
| MOORE, JAY ELLIOT. DAVID CAINES, | ) | |
| MICHAEL MANZELLO, DWIGHT CRAWLEY, | ) | |
| and KELVIN WALSH, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS SZPLETT'S SECOND AMENDED COMPLAINT (DKT. NO.  53)

DEFENDANTS, Kenco Logistics Services, LLC, Kelvin Walsh, Paula Hise, Tammi Fowler, David Jabaley, Mike Manzello, David Caines, Trace Spier, Jay Elliott and Dwight Crawley, (collectively "the Kenco Defendants") by and through their undersigned Counsel, move to dismiss Plaintiff Leonard Szplett's Amended Complaint, with prejudice, and in support thereof, state as follows:

1.     On September 19, 2019 the Court dismissed Szplett's Amended Complaint, finding that "the complaint violates Civil Rule 8(a)(2) because its length and disorganization make it incoherent and unintelligible." Dkt. No. 52.

2.     On October 17, 2019, Szplett filed a Second Amended Complaint against the Kenco Defendants, and other Defendants. Dkt. No. 52.

3.      Disregarding the Court's dismissal order, Szplett's Second Amended Complaint fails to cure the substantive and procedural defects that were present in his prior complaints; the complaint continues to be incoherent, and time-barred as to the Kenco Defendants.

4.      Kenco employed Leonard Szplett as an office manager at the Manteno, Illinois Mars warehouse until his termination on March 29, 2015. Szplett was terminated when Kenco lost its contract at the warehouse, and all employees at his location were terminated.

5.      More than four year after his termination, Szplett brings this employment discrimination claims against the Kenco Defendants pursuant to 42 U.S.C. §1981.

6.      Taking Szplett's allegations as true for purposes of a Motion to Dismiss, any such claims are time-barred and should be dismissed with prejudice because the four-year statute of limitations applies and therefore, the claims are untimely. 28 U.S.C. §1658.

7.      In accordance with Fed. R. Civ. Pro. 12(b)(6) the Court should dismiss a complaint where the factual allegations do not state a plausible claim for relief.  The running of the statute of limitations is an affirmative defense and may be raised on a 12(b)(6) motion to dismiss.

8.      Additionally, Szplett's Second Amended Complaint is largely incoherent and grossly violates the short, plain statement requirements of Fed. R. Civ. Pro. 8(a) and the Court's prior dismissal order.  Given that Szplett has now had an opportunity to amend, dismissal with prejudice is appropriate.

9.      The Kenco Defendants reference and incorporate all arguments contained in their Memorandum in Support of their Motion to Dismiss Szplett's Second Amended Complaint as though fully set forth herein.

WHEREFORE, for all the reasons stated herein, and in Defendants accompanying memorandum of law, DEFENDANTS, Kenco Logistic Services, LLC, Kelvin Walsh, Paula Hise, Tammi Fowler, David Jabaley, Mike Manzello, David Caines, Trace Spier, Jay Elliott and Dwight Crawley request that the Court dismiss Szplett's Second Amended Complaint with prejudice in accordance with Fed. R. Civ. Pro. 12(b)(6) and grant such additional relief as the Court deems proper.

Dated: November 4, 2019                  Respectfully submitted,

**KENCO LOGISTICS SERVICES, LLC, KELVIN WALSH, MIKE MANZELLO, DAVID JABALEY, TAMMI FOWLER, PAULA HISE, TRACE SPIER, DAVID CAINES, DWIGHT CRAWLEY AND JAY ELLIOTT**

By:/\_\_\_/s/ Jody Wilner Moran_____
              One of Their Attorneys

Jody Wilner Moran
Julia P. Argentieri
**Jackson Lewis P.C.**
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Facsimile: (312) 787-4995
moranj@jacksonlewis.com
julia.argentieri@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I, Julia P. Argentieri, an attorney, hereby certify that on November 4, 2019, I electronically filed a copy of the foregoing **DEFENDANTS' MOTION TO DISMISS SZPLETT'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12(b)(6)** with the Clerk of the Court using the CM/ECF system. I further certify that a copy of the foregoing has been mail and email to the following non-ECF participant:

> Leonard Szplett
> 3421 W. 1500 NW Road
> Kankakee, IL 60901
> Stkbnd2000@aol.com

> By: /s/ Julia P. Argentieri
> One of the Attorneys for the Defendants