FILED

JG

7/19/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDITH MCCURRY | |
| PLAINTIFF, | |
| VS. | 1:19 CV 04067 |
| | Judge: Sharon Johnson Coleman |
| MARS, INC., KENCO LOGISTICS | Magistrate Judge: Gabriel A. Fuentes |
| SERVICES, LLC., HARTFORD LIFE, | |
| THE REED GROUP AND DR. KOEHLER | |
| DEFENDANTS, | |

**PLAINTIFF'S REBUTTAL TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Edith McCurry, pursuant to Federal Rules of Civil Procedure 26, 33, 34, 36, 37 and their relevant subsections respectfully submit the following rebuttal to Defendant's response to Plaintiff's Motion to Compel and states as follows that:

Plaintiff's Untimely Motion to Compel was not intentional

Plaintiff was not aware that an order had been entered addressing a time frame to file a Motion to Compel until Defendant raised the issue in its response last week. It was not Plaintiff's intention to disregard and or disobey the court's directive.

Plaintiff admits that she was in error and falls on her sword; asking the court for mercy and to accept her motion as filed. Plaintiff has tried with all due diligence to be in keeping with the rules, dates and other obligations. Plaintiff respectfully asks this Honorable Court to accept this request to file her motion and cure any deficiencies that may have occurred as a result of her unintentional error.

<u>Plaintiff rejects Defendant's mere conjecture that Plaintiff seeks a nonexistent document.</u>

Defendant has made conflicting statements in regards to the policies.
In sum:

    a. Defendant says the policy does not exist.

    b. Defendant says that they do not have it if it does exist.

1. Defendant's argument is unsupported to their contentions.

Defendant's statement is less than credible as they have not provided any evidence to support this or any theory. The Seventh Circuit held in *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir.2002) that ("[I]t is universally known that statements of attorneys are not evidence."), as well as, unsupported statements, whether in oral argument, *In re: Payne,* 431 F.3d 1055, 1060 (7th Cir.2005), or in briefs do not count." *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004 (N.D. Ill. 2009)

Additionally, the declaration of Cathy Phillips provided by Defendant is deficient, it has conclusory and unsupported statements and fails to address the issue(s) relative to the policy; making no specific mention of the policy or her knowledge thereof of a policy, in particular as a plan document or otherwise. Also, Phillips statement runs counter to Defendant's assertion that the plan is the policy, when Phillips states that they have no other plan documents in their

possession. Tellingly, neither Defendant nor Phillips define what the plan documents are/were nor what the plan documents consist of.

Further, Phillips-Senior Manager asserts that she is over benefits for the all the employees of the company, but fails at describing and identifying what that entails. Leaving unanswered questions like: Was Phillips the negotiator of the disability benefits or did she process requests to examine or obtain copies of the plan and its controlling and supporting documents, was she the decision maker or had the last say so or just what was the scope of the duties, roles and responsibilities? Moreover, Plaintiff was responsible for benefits at the Mars Manteno facility for all of the employees there and never saw the short and long term disability plan nor was it available at the site. The only information from Defendant regarding short and long term disability was a reference in the employee handbook. Additionally, Plaintiff asserts that the declaration was broad and loosely drafted leaving room for a lot of misinterpretation. This is in lock step and a customary behaviour of Defendant to provide ambiguous and piecemealed information. As "every judge is aware," even those who do not have a criminal record may "lie... when it is to their advantage." *Schmude v. Tricam Industries, Inc*., 556 F.3d 624, 628 (7th Cir. 2009).

Also, Defendant has never said or alleged that the policy was a plan document or that there were other plan documents associated with the plan(s) produced, as stated by Phillips. Phillips also mentioned that Defendant produced all documents to Plaintiff beginning with the year 2013. To date, Defendant has not produced any plans except for the year 2015; therefore, Phillips is mistaken and her testimony should not be counted as credible. Plaintiff does not have plans for 2013, 2014-to date to correspond with the disability benefits that Plaintiff has been

receiving. Or likewise, in the alternative, Defendant has withheld those documents for those years as well.

Consequently, it cannot be reasonably asserted that Cathy Phillips has any personal knowledge of the policy or policies at issue and how and if the policy or policies relate to the plans produced or that her statement is credible. Therefore, her declaration should not be given consideration. "This is not to say that the Declarations are not a form of proof. They are. But, it is fundamental that there is no rule of law that requires that the statements in a Declaration must be deemed true." *See Harvey v. Office of Banks and Real Estate,* 377 F.3d 698, 712 (7th Cir. 2004). *Therefore, Defendant's unsupported statements should not be considered.*

2. Documents produced beyond Defendant's allege certification of compliance on May 24, 2021 repeatedly reference an insurance policy.

In example, Defendants document entitled Your Benefit Plan regarding LTD references a Policy in numerous ways:

1. That the policy was issued to the Policyholder-Defendant Kenco

2. That the policy alone is the only contract under which payment will be made

3. That the policy is incorporated into the Plan

4. That the policy may be inspected at the office of the Policyholder; among other recitations throughout the document.

In short, Policy is referenced at least 193 times in this particular document alone. Defendant also defined "The Policy" to mean "the policy which We issued to the Policyholder und the Policy Number shown on the face page." Defendant's production Kenco 0001555 hereto attached as Exhibit A. Also there are numerous other documents that reference "The

Policy" hereto attached as Group Exhibit B. Within the same document, Plan is referenced on 132 separate occasions. Furthermore, these terms are not interchangeable within this document and as defined by the Plan.

Additionally, according to 29 U. S. C. §§ 1002(21)(A)(i)—(iii), "plan," is defined as (3) The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

The court in *Pegram v. Herdrich*, 530 U.S. 211, 120 S. Ct. 2143, 147, 222-223 L. Ed. 2d 164 (2000) reasoned:

> ERISA's definition of an employee welfare benefit plan is ultimately circular: "any plan, fund, or program . . . to the extent that such plan, fund, or program was established . . . for the purpose of providing . . . through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits." § 1002(1)(A). One is thus left to the common understanding of the word "plan" as referring to a scheme decided upon in advance, see Webster's New International Dictionary 1879 (2d ed. 1957); Jacobson & Pomfret, Form, Function, and Managed Care Torts: Achieving Fairness and Equity in ERISA Jurisprudence, 35 Houston L. Rev. 985, 1050 (1998). Here the scheme comprises a set of rules that define the rights of a beneficiary and provide for their enforcement. Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan.

## The Policy and the plan are not the same

The court's further reasoned in Ruiz v. Continental Cas. Co., 400 F.3d, 986, 991 (7th Cir. 2005) that:

"In *Wallace,* this court noted that "*Pegram* [*v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)] concluded that a contract of insurance sold to a plan is not itself `the plan' ...." *Wallace,* 318 F.3d at 724."

The Seventh Circuit further reasoned in Ruiz to "have considered an insurance policy a plan document citing *Postma v. Paul Revere Life Insurance Co.,* 223 F.3d 533, 537-40 (7th Cir.2000)." And using the same rationale conceded that a "Certificate of Insurance was also a plan document." *Ibid*

Defendant produced a Certificate of Insurance

In 2017 and again on May 24, 2021, Defendant produced Certificates of Insurance in connection with its short and long term disability plans a copy of those communications are attached as Exhibit C.

According to the Hartford a certificate of insurance hereafter (COI) is **a document from an insurer to show you have business insurance**. This is also called a certificate of liability insurance or proof of insurance. https://www.thehartford.com/business-insurance/certificate-of-insurance-coi (See Attached Exhibit D)(A certificate of insurance is a document provided by an insurance company, agent, or broker to prove the existence of an insurance contract between the insurer and the insured.) https://www.insuranceopedia.com/definition/1152/certificate-of-insurance; https://www.investopedia.com/terms/c/certificate_of_insurance.asp

Also, it should be noted that Defendant's document references: "A note on capitalization in this certificate: Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein."

## Defendant's COI is a nexus to Defendant's insurance policy

Insurance policies typically begin with a basic grant of coverage—a section explaining the losses that the insurer will cover— followed by an itemization of exclusions, limitations on the insurer's liability, conditions, and (sometimes) exceptions to exclusions. *Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020).

The Seventh Circuit has also reasoned that "[a] n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies.'" Westfield Ins. Co. v. Vandenberg, 796 F.3d 773 (7th Cir. 2015).

The Hartford defines in its amendment to Group Policy GL/GLT/GRH-674076 in relevant parts the:

**Entire Contract**

The contract between the parties to consists of:

1)The Policy;
2)any Certificate(s) of Insurance incorporated and made a part of The Policy;
3)any riders issued in connection with such Certificate(s) of Insurance;
4)the Policyholder's application, if any, a copy of which is attached to and made a part of The Policy when issued; and
5)any individual application submitted by the Employee and accepted by The Company in connection with The Policy.
It also goes on to say in the document that:

**Certificate(s) of Insurance**

The Company will give individual Certificate(s) of Insurance to:

1)the Policyholder; or
2)any other person according to a mutual agreement among the other person, the Policyholder, and The Company; for delivery to persons covered under The Policy and which will explain the important features of The Policy.

**Data To Be Furnished**

The Policyholder, or any other person designated by the Policyholder, will give The Company all information The Company needs regarding matters pertaining to the insurance. At any reasonable time while The Policy is in force and for 12 months after that, The Company may inspect any of the Policyholder's documents, books, or records which may affect the insurance or premiums of The Policy.

The Policyholder will, upon our request, give The Company:

1)the names of all persons initially eligible for coverage;
2)the names of all additional persons who become eligible for coverage;
3)the names of all persons whose amount of insurance is to be changed;
4)the names of all persons whose eligibility or insurance is terminated; and
5)any data necessary to administer the insurance provided by The Policy.

As well as, in relevant part that Defendant pays a monthly premium. A copy of the communication is attached as Exhibit E.

Defendant also stated in its production in relevant parts that Plan participants had a right to receive information about the plan including all documents covering the plan, including insurance contract(s), etc... Exhibit F.

The courts have also reasoned that "with insurance-based plans ...... '[I]dentifying `the plan' is not always a clear-cut task." We sometimes equate the ERISA "plan" with the insurance policy." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 912 (7th Cir. 2013) citing Raybourne v. Cigna Life Ins. Co. of N.Y., 576 F.3d 444, 448 (7th Cir.2009) The Seventh Circuit further reasoned that they commonly "refer to an insurance policy as a 'plan document' that *implements* the plan." *Ibid*

## The insurance policy provides the basis for the plan

Defendant drafted the plan documents.

Since Defendant is the drafter of the document there is no way to vet or authenticate its accuracy. Further, Defendant never disclosed or made available any of the documents relative to its benefit plans, including the short and long term disability plans, as required. Plaintiff can make this assertion with certainty, as the custodian of Defendant's policies, records and other HR related documents; it was a part of Plaintiff's job function to be the responsible for the receipt and dissemination of Defendant's policies relative to the employees, as well as, their benefits.

Plaintiff was not provided a copy of this and other employee benefits plans, with the exception of the Health Plans, at any time during her employment while Defendant was managing the Mars Manteno facility

Additionally, Defendant has several versions of the same document(s) that it has produced. The documents produced on May 24, 2021 differ from the documents that Defendant produced in 2017 for the same time period. Therefore, it can be easily and reasonably inferred that there are inconsistencies within the various documents that are circulating. For example, the Defendant's May 24, 2021 production Kenco 001637-001639 states that they are the Plan Administrator and that the Plan Administrator administers the plan. This is in contradiction to their assertion about the Hartford managing the plan and making the decision. This also undermines their supposition that they did not have anything to do with the dissemination of Plaintiff's benefits. A copy of the communication is hereto attached as Exhibit G.

Defendant pays a monthly payment on the premium, there ae amendments to the policy (see Exhibit E), as well as, it is established in their production that the: policy was issued to the Policyholder; the Policy is on file and it is a plan participants right to examine and or obtain copies of such evidences.

Consequently, for the aforementioned reasons and others, it is an incredulous and patently false statement or inference that Defendant is making that they are not aware of a policy and or that if it exists they do not have it. Defendant's conduct is egregious. Defendant is intentionally withholding the policies and other relevant documents. Defendant is also willfully acting in bad faith and in contempt of this court's order and in a blatant disregard of the judicial system at large.

*Rule 37 Violation-Spoliation*

Likewise even if Defendant theoretically does not have that information any longer, it is in direct contradiction to their duty to preserve evidence under the Federal Rules of Civil Procedure and in breach of one of the terms of their business agreement with Mars, Inc.

Beginning in 2013 to date, Defendant Kenco has been engaged in litigation.[1] It was at that time Defendant began its duty to preserve evidence that it controlled and which it reasonably knew or could foresee would be material (and thus relevant) to a potential legal action. *Jones v. BREMEN HIGH SCHOOL DISTRICT 228*, No. 08 C 3548 (N.D. Ill. May 25, 2010); *Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008).

Beyond Defendant's legal obligations to preserve evidence, Defendant was required by Mars, Inc. to retain records[2] for at least seven (7) years; therefore, conclusively Defendant has either violated these obligations or made a patently false and misleading statement to avoid liability and culpability.

*Rule 37 Violation-Failure to Cooperate in Discovery*

Plaintiff asserts that Defendant has intentionally been uncooperative in discovery by: Providing incomplete and evasive answers and failing to return Plaintiff's phone calls and emails[3]. Plaintiff asserts that Defendant's actions were disruptive and deliberate in that

---

[1] Defendant has been engaged in over 40 different legal entanglements in various judicial forums since 2013.

[2] Records were stored electronically at the Mars Manteno facility. Additionally, Defendant and Mars, Inc. were required under the Food Safety and Modernization Act (FSMA) to use various International Organization for Standardization-(ISO) standards to catalogue, maintain, and retain records. (21 CFR Chapter I: Subchapter B Part 117 Subpart F and Part 121 Subpart D; Subchapter A Part 1 Subpart J) FSMA also required them to have a person to oversee and be responsible for these and other processes. There was also a dedicated server to which records were stored and shared between Defendant and Mars, Inc.

[3] Plaintiff's emails to Defendant were sent to four (4) persons at Defendant's legal counsel's law firm. Casey Leech, Julia Argenteri, Jody Moran and Helen Kwaak.

Defendant knew that in not speaking with Plaintiff it would preclude the meet and confer provision necessary to trigger the filing of a motion to compel. Specifically, over almost a three (3) week period communication had ceased and it was not until Plaintiff filed several motions to compel and the court ordered a meet and confer that Defendant spoke with Plaintiff. Effectively, Defendant's gamesmanship ran the clock down and out on the window of discovery time.

Additionally, Defendant repeatedly contacted Plaintiff within a very short period of time to hours of when the joint status reports were due to be filed. Plaintiff had pointed out to Defendant's counsel, when it had contacted Plaintiff on a Saturday night, prior to the report being due on that Monday that this behaviour was unprofessional and discourteous and; it did not give Plaintiff adequate time to review and revise the document that was to be submitted. Defendant continued to engage in further unprofessionalism, when within hours of its filing time, emailed Plaintiff a proposed joint status report for review that was inaccurate and did not reflect the current state of where the discovery process was and enumerate the outstanding issues(Exhibit H) . On neither occasion did Defendant call to inform Plaintiff that it was sending over a document for review that was due immediately. On both occasions, Plaintiff reached out to Defendant's counsel prior to the due date, but to no avail, Defendant refused to respond in a timely fashion.

In addition, it is incomprehensible for any professional person to conduct themselves in such an unbecoming and unprofessional manner. Moreover, Plaintiff asserts that these actions were deliberate and contrived, in an effort to strategically force Plaintiff out of being able to participate, in providing the Court with an accurate account or disposition of where the discovery process was.

Defendant continues to engage in bullying by stereotyping.

After Plaintiff raised issues about Defendant's counsel engaging in bullying, during the court ordered meet and confer on June 24, 2021, where Ms. Argenteri presented Plaintiff with the threat and opportunity to be punished by the judge for raising issues and drawing attention to the Defendant's conduct[4]. i.e. The mischaracterization of facts, people and instances. e.g. Defendant mischaracterized Leonard Szplett on several occasions to dupe the justice system to prevail on claims brought before government agencies, the District Court and the Seventh Circuit Court of Appeals (Szplett vs. Kenco et al...19 cv 2500, McCurry v. Keno et al...16 cv 2273 (Dkt.113 pg.8) and 18-3206) among other notable instances. These and other factual instances affected Plaintiff's legal rights.

Furthermore, Defendant's counsel, who is propagating the contention that Plaintiff was on a diatribe, was not present during this exchange between Ms. Argenteri and Plaintiff. Ms. Moran is bereft of any first-hand information regarding what transpired, but instead makes accusations that are incredulous, derogatory and impugning.

Plaintiff cannot fathom the reason that Ms. Moran would interject herself into something that she has no foreknowledge about, except for the fact that Ms. Moran was a party to the conduct referenced. Plaintiff believes that these actions and the impugning of Plaintiff's character were retaliatory. Plaintiff begs to differ as to the accounts of the events. Plaintiff also rebukes and rejects the notion and contention that Plaintiff is on a diatribe, as this characterization is reminiscent of a negative stereotype of an African-American woman's demeanour of being angry.

---

[4] In 2018 Plaintiff had pointed to Defendant's egregious conduct. See attached Exhibit J

Defendant Deserves Sanctions
Defendant has a pattern and practice of intentional and willful misconduct.

Defendant once again meets expectations with regards to making patently false and misleading statements to the court and is reminiscent of Defendant's past behaviours. Where Defendant made patently false and misleading statements to obtain an advantage and benefit over Plaintiff to her detriment in Plaintiff's previous matters and now once again in this matter; once again causing Plaintiff great and irreparable harms. Furthermore, Defendant's actions are so egregious that Plaintiff does not know if she would ever be able to recover or be able to proceed without being greatly prejudice.

Defendant in its most recent response to the Court of July 14, 2021, once again, made ambiguous, misleading and false statements regarding its knowledge and possession of the policy. This statement is in direct contravention to Defendant's earlier written response to Plaintiff's request for production; whereby, Defendant indicated that it was not producing the policy because they deemed it irrelevant to the matter[5]. Additionally, Plaintiff asserts that Defendant's inconsistent responses, reasons and rationales should be viewed as pretextual.

Defendant also made a patently false statement regarding now not having the policy, as that is in contradiction to Defendant admitting that they kept records regarding benefits[6] for seven (7) years. (Exhibit I) The record keeping process for benefits supports the fact that the records in question, relative to the short and long term disability plans and their other supporting documentation, were records that were to be retained.

---

[5] Plaintiff had raised this issue previously that Defendant refused to produce the document because it deemed it irrelevant. To date, Defendant has not denied the allegation as to this fact.
[6] Defendant also made another misleading and false statement as Defendant was required to retain all records for seven (7) years, per their employment agreement with Mars, Inc.

For the aforementioned reasons, the reasons previously outlined in Plaintiff's motion to compel and other recently filed motions, Plaintiff respectfully requests this Court to grant Plaintiff's motion, as well as, award fees or other reasonable discovery sanctions, and grant such other relief as this Court deems just and proper.

DATED: July 19, 2021

Edith McCurry (pro se)
6239 South 13110 East Road
Pembroke Township, IL 60958

**CERTIFICATE OF SERVICE**

The undersigned, Edith McCurry, hereby certifies that on this 19th day of July, 2021 she caused

a copy of the foregoing **PLAINTIFF'S REBUTTAL TO DEFENDANT'S RESPONSE TO PLAINTIFF'S**

**MOTION TO COMPEL** of the Northern District of Illinois Eastern Division in the foregoing matter of

Case No. 19-cv-04067 and have served the persons identified on the docket's service list through

Notice of Electronic Filing generated by the Court's CM/ECF system.


Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Julia.Argentieri@jacksonlewis.com;
Jody.Moran@jacksonlewis.com


Edith McCurry (pro se)
6239 South 13110 East Road
Pembroke Township, IL 60958

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**The Policy** means the policy which We issued to the Policyholder under the Policy Number shown on the face page.

**Total Disability or Totally Disabled** means that You are prevented by:
1) Injury;
2) Sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy;

from performing the Essential Duties of Your Occupation, and as a result, You are earning 20% or less of Your Pre-disability Earnings.

If You are in an occupation that requires You to maintain a license, Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation alone, does not mean that You are disabled from Your Occupation.

**We, Our, or Us** means the insurance company named on the face page of The Policy.

**Weekly Benefit** means a weekly sum payable to You while You are Disabled, subject to the terms of The Policy.

**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

**You or Your** means the person to whom this certificate is issued.

KENCO 001555

**Exhibit B**



**THE HARTFORD**

February 4, 2019

Melissa Lovelace
Illinois Department of Insurance
320 West Washington St.
Springfield IL 62767

| | |
|---|---|
| File Number: | IL19-00179-02 |
| Complainant: | Jordan Hoffman |
| Claimant: | Edith McCurry |
| Policy Number: | GLT-674076 (the "Policy") |
| Policyholder: | Kenco |
| Insured ID: | 9004534048 |
| Writing Company: | Hartford Life and Accident Insurance Company ("The Hartford") |
| NAIC: | 70815 |
| Line of Business: | Group Long Term Disability |
| Type of Policy: | Fully Insured |
| Situs State: | Tennessee |

Dear Ms. Lovelace:

I am writing in response to the complaint filed by attorney Jordan Hoffman regarding Ms. McCurry's claim for Long Term Disability (LTD) benefits which is currently under appeal review.

The Policy for Kenco is sitused in Tennessee. As such, the Tennessee Department of Insurance has jurisdiction.

If you have any additional questions, you may contact me by phone at 1-860-547-3848, or contact Consumer Affairs by fax at 860-723-4289, or by email at lawcustomerrelations@thehartford.com. You may also write to Consumer Affairs at The Hartford, One Hartford Plaza, HO-1-19-3, Hartford, CT 06155.

Sincerely,

Maria L. Valencia, Compliance Consultant
Hartford Life and Accident Insurance Company

Edith McCurry
Case: Kenco

**Insured ID: 9004534048**


**THE HARTFORD**

### Current Lien / Amount Paid To Date = $ 92,465.03 *

*Short Term Disability (STD) - Policy GRH674076 - Claim Event ID 15068016*

| Check # | Issue Date | Payment Period From - Thru | | Benefit Amount |
|---|---|---|---|---|
| EFT | 01/23/15 | 01/19/15 | 01/25/15 | $ 394.62 |
| EFT | 01/30/15 | 01/26/15 | 02/01/15 | $ 394.62 |
| EFT | 02/25/15 | 02/02/15 | 03/01/15 | $ 1,578.48 |
| EFT | 03/06/15 | 03/02/15 | 03/08/15 | $ 394.62 |
| EFT | 03/13/15 | 03/09/15 | 03/15/15 | $ 394.62 |
| EFT | 03/20/15 | 03/16/15 | 03/22/15 | $ 394.62 |
| EFT | 03/27/15 | 03/23/15 | 03/28/15 | $ 394.62 |
| EFT | 04/14/15 | 03/29/15 | 04/19/15 | $ 1,183.86 |
| EFT | 04/24/15 | 04/20/15 | 04/26/15 | $ 394.62 |
| EFT | 04/30/15 | 04/27/15 | 04/30/15 | $ 315.70 |
| | | Total STD Benefits Paid: | | $ 5,840.38 |

*Long Term Disability (LTD) - Policy GLT674076 - Claim Event ID 15209161*

| Check # | Issue Date | Payment Period From - Thru | | Benefit Amount | Policy Minimum Monthly Benefit | |
|---|---|---|---|---|---|---|
| EFT | 07/13/16 | 07/20/16 | 07/31/16 | $ 18,930.83 | $ (3,224.78) | |
| EFT | 08/17/16 | 08/01/16 | 08/31/16 | $ 1,526.68 | $ (255.26) | |
| EFT | 09/16/16 | 09/01/16 | 09/30/16 | $ 1,526.68 | $ (255.26) | |
| EFT | 10/18/16 | 10/01/16 | 10/31/16 | $ 1,526.68 | $ (255.26) | |
| EFT | 11/16/16 | 11/01/16 | 11/30/16 | $ 1,526.68 | $ (255.26) | |
| EFT | 12/16/16 | 12/01/16 | 12/31/16 | $ 1,526.68 | $ (255.26) | |
| EFT | 01/18/17 | 01/01/17 | 01/31/17 | $ 1,526.68 | $ (255.26) | |
| EFT | 02/16/17 | 02/01/17 | 02/28/17 | $ 1,526.68 | $ (255.26) | |
| EFT | 03/16/17 | 03/01/17 | 03/31/17 | $ 1,526.68 | $ (255.26) | |
| EFT | 04/18/17 | 04/01/17 | 04/30/17 | $ 1,526.68 | $ (255.26) | |
| EFT | 05/17/17 | 05/01/17 | 05/31/17 | $ 1,526.68 | $ (255.26) | |
| EFT | 06/16/17 | 06/01/17 | 06/30/17 | $ 1,526.68 | $ (255.26) | |
| EFT | 07/18/17 | 07/01/17 | 07/19/17 | $ 966.89 | $ (161.66) | |
| EFT | 02/15/19 | 07/20/17 | 02/28/19 | $ 53,656.07 | $ (1,880.42) | *Includes Adjustment* |
| EFT | 03/18/19 | 03/01/19 | 03/31/19 | $ 980.61 | $ (255.26) | |
| EFT | 04/17/19 | 04/01/19 | 04/30/19 | $ 980.61 | $ (255.26) | |
| EFT | 05/16/19 | 05/01/19 | 05/31/19 | $ 980.61 | $ (255.26) | |
| EFT | 06/18/19 | 06/01/19 | 06/30/19 | $ 980.61 | $ (255.26) | |
| | | Subtotal LTD Benefits Paid, Page 1: | | $ 94,269.71 | $ (9,095.76) | |



**KENCO**

## 2013 EMPLOYEE BENEFITS

## Life Insurance
### The Hartford - 800-549-6514

Kenco provides, **at no cost to you**, a Base Life Plan for eligible employees.

- Each Employee has coverage in the amount of **1 times your annual earnings,** max $300,000

Kenco provides, **at no cost to you**, a Dependent Life Plan for eligible employees. This is a plan with a $2,000 benefit for spouse and each enrolled dependent child.

## Optional Life
### The Hartford - 800-549-6514

You have the opportunity through payroll deduction, to purchase Term Life insurance that can supplement the employer paid Base Life coverage. The cost is based on your age and tobacco usage.

Benefit Amounts: Each eligible **employee** may elect coverage up to $500,000 or 5x annual salary in $10,000 increments. Your **spouse** may elect coverage in $10,000 increments, not to exceed 50% of the employee's coverage amount, max $250,000. Guaranteed Issue Amount for employee is $150,000 and their spouse is $50,000 if applied for when first eligible. Supplemental life insurance is also available for dependent children.

## Short Term Disability
### The Hartford - 800-549-6514

Kenco provides **at no cost to you**, a Short Term Disability policy. This plan will provide you with 60% of your basic monthly earnings to a maximum benefit of $500 per week.

- Benefits are paid for a period of 26 weeks or until no longer disabled
- Elimination Period* is 14 days for injury and 14 days for illness
- Maternity leave is covered as any other illness

## Long Term Disability
### The Hartford - 800-549-6514

Kenco offers a Long Term Disability plan. This plan will provide you with 60% of your basic monthly earnings to a maximum benefit of $5,000 per month.

- Benefits are payable to Social Security retirement age or until you are no longer disabled
- Elimination Period* is 90 days
- Partial disabilities are covered
- Refer to your booklet for "Other Income Benefits" that may reduce your monthly benefit, but in no event will the monthly benefit be less than $100
- Refer to your booklet for pre-existing exclusions

*Elimination period—a period of continuous disability which must be satisfied before an employee is eligible to receive benefits*

This Guide is only intended to offer an outline of benefits. All details and contract obligations of plans are stated in the group contract/insurance documents, including any disclosures (whether regarding "grandfathering" of plans or others) required by the new health reform law, the Patient Protection and Affordable Care Act (PPACA). In the event of conflict between this guide and the group contract/insurance documents, the group contract/insurance documents will prevail. Please contact your Human Resources Department for further information.

**Group Disability Income Insurance**

**Exhibit C**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
**200 Hopmeadow Street
Simsbury, Connecticut 06089
(A stock insurance company)**

### CERTIFICATE OF INSURANCE

**Policyholder:** KENCO
**Policy Number:** GRH-674076
**Policy Effective Date:** June 1, 2001
**Policy Anniversary Date:** January 1, 2015

We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under The Policy. The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.

Signed for the Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

---

*A note on capitalization in this certificate:*

Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

**Group Disability Income Insurance**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
### 200 Hopmeadow Street
### Simsbury, Connecticut 06089
### (A stock insurance company)

### CERTIFICATE OF INSURANCE

**Policyholder:** KENCO
**Policy Number:** GLT-674076
**Policy Effective Date:** June 1, 2001
**Policy Anniversary Date:** January 1, 2015

We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under The Policy. The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.

Signed for the Company

**Terence Shields,** *Secretary*        **Michael Concannon,** *Executive Vice President*

---

*A note on capitalization in this certificate:*

Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

Form GBD-1200 (10/08)        (674076) 3.06

KENCO 001576

**Exhibit D**



Case: 1:19-cv-04067 Document #: 28-2 Filed: 07/09/19 Page 23 of 43 PageID #:2414

**Exhibit E**

# Exhibit B

AMENDMENT TO GROUP POLICY GL/GLT/GRH-674076 ON AUGUST 25, 2014. ANY CHANGES BETWEEN THIS POLICY AND THE PREVIOUSLY ISSUED POLICY ARE EFFECTIVE JUNE 1, 2014. ALL OTHER TERMS, CONDITIONS AND DATES REMAIN UNCHANGED.



## THE HARTFORD

### HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

200 Hopmeadow Street, Simsbury, Connecticut 06089
(A stock insurance company, herein called The Company)
will pay benefits according to the terms and conditions of The Policy.

---

**Name of Policyholder:** KENCO

---

**Policy Number:**
GL/GLT/GRH-674076

**Policy Effective Date:**
June 1, 2001

**Place of Delivery:**
Tennessee

**Anniversary Date:**
January 1 of each year, beginning in 2015

**Premium Due Dates:**
Monthly, on the first day of each policy month

Signed for The Company:

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

### THIRTY DAY RIGHT TO EXAMINE POLICY

The Company urges you to examine this Policy closely. If you are not satisfied with it, you may send it back to The Company for any reason within 30 days after the date you receive it. If so returned, your insurance will be canceled, and any premium paid will be refunded in full.

Countersigned by.......................................................................................
Licensed Resident Agent or Registrar

### Table of Contents

Schedule of Insurance***TOC_POI*** 2
Premiums***TOC_POI*** 3
Policy Provisions***TOC_POI*** 5
Incorporation Provision***TOC_POI*** 7

Form GBD-1000 A (10/08)

## SCHEDULE OF INSURANCE

The Schedule(s) of Insurance for The Policy benefits listed below are shown in the Certificate(s) of Insurance, as incorporated into The Policy.

1) Basic Life Insurance
2) Supplemental Life Insurance
3) Dependent Life Insurance
4) Short Term Disability Insurance
5) Long Term Disability Insurance

The Schedule(s) of Insurance will address the:

1) benefit amounts and maximum limits;
2) eligibility and effective date requirements; and
3) other schedule amounts and limits;

which apply to the employees of the Policyholder.

# PREMIUM PROVISIONS

**Initial Monthly Premium Rates**

The initial monthly premium rates to be charged for employee coverage and/or child/spouse coverage, if applicable, are shown on the following page(s).

The first premium is due and payable on the effective date of The Policy. Subject to The Policy's grace period provision, all premiums after the first must be paid when or before they are due.

For Long Term Disability Benefits, the amount of an employee's Pre-disability Earnings which is disregarded in determining his or her Monthly Benefit because of the Maximum Monthly Benefit limitation will also be disregarded in determining the amount of the total insured payroll.

The Initial Monthly Premium Rates may be converted as follows:

| To Convert Rates to: | Use a Conversion Factor of: |
| --- | --- |
| -- annual rates | 11.8227 |
| -- semi-annual rates | 5.9557 |
| -- quarterly rates | 2.9852 |

**Grace Period**

The Company will allow the Policyholder a 60 day grace period for the payment of all premiums after the first. During this 60 day period, The Policy will stay in force. If the owed premium is not paid by the 60th day, The Policy will automatically terminate. If the Policyholder gives The Company written advance notice of an earlier cancellation date, The Policy will terminate on the earlier date. Premium is due for each day The Policy is in force.

**Monthly Premium Rate Guarantee**

Initial Monthly Premium rates are guaranteed as follows:

| Benefit | Rate Guarantee Period |
| --- | --- |
| Short Term Disability Benefits | until June 1, 2002 |
| Long Term Disability Benefits | until June 1, 2003 |
| Basic Life Insurance | until June 1, 2004 |
| Supplemental Life Insurance | until June 1, 2004 |
| Basic Dependent Life Insurance | until June 1, 2004 |
| Supplemental Dependent Life Insurance | until June 1, 2004 |

Subject to the Rate Guarantee Period shown above, The Company has the right to change premium rates on any premium due date if:
1) written notice is delivered to the Policyholder's last address on record; and
2) the change is effective at least 31 days after the date of notice.

The Rate Guarantee Period supersedes only those provisions appearing elsewhere in this Policy which give The Company the right to change the premium rates, and then, only for the period of time for which the rates are guaranteed. However, The Company may change the premium rates during the Rate Guarantee Period if there is a change in The Policy, or if there is a 10% increase or decrease in the number of insured Employees, or if the Policyholder adds or deletes a subsidiary or affiliated business entity. The Company may also change the premium rates during the Rate Guarantee Period if there has been a material misstatement in the reported experience during the pre-sale process. The Rate Guarantee Period in no way affects, amends or supersedes any other provision in The Policy.

# PREMIUM PROVISIONS

### Calculation

Premiums may be calculated by multiplying the rate times the applicable number of units of coverage.

If any insurance is added, increased or becomes effective after The Policy is in force, the premium charges will begin on:
1) the day the coverage is effective, if it is also the first day of a policy month; or
2) the first day of the next policy month.

For insurance which is terminated, premium charges will stop as of the first day of the next policy month.

With respect to Dependent Life Insurance only, the premium rate per Dependent unit or per $1,000 of insurance, whichever is applicable, will be based on actuarial assumptions, due to the difficulty in obtaining the ages of all Dependents who are covered under this benefit. The actuarial assumptions will produce, in the opinion of The Company, the same total amount of premium as would be obtained by the use of the actual ages of the Dependents covered.

Premiums may be calculated by any other method which both The Company and the Policyholder agree to in writing.

### Premium Payments

Premium payments are due and payable in full to a place designated by The Company or, with respect to the initial premium payment, premium payments may be made to an authorized agent of The Company. The pre-payment of premiums for a particular period by the Policyholder is not a guarantee that The Policy will remain in force.

All premiums due under The Policy shall be remitted by the Policyholder or the Policyholder's designee to The Company on or before the due date.

# POLICY PROVISIONS

**Entire Contract**
The contract between the parties consists of:
1) The Policy;
2) any Certificate(s) of Insurance incorporated and made a part of The Policy;
3) any riders issued in connection with such Certificate(s) of Insurance;
4) the Policyholder's application, if any, a copy of which is attached to and made a part of The Policy when issued; and
5) any individual application submitted by the Employee and accepted by The Company in connection with The Policy.

All statements made by the Policyholder or persons insured under The Policy will be deemed representations and not warranties. No statement made to affect this insurance will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary or personal representative.

**Incontestability**
Except for non-payment of premium, the insurance provided by The Policy cannot be contested after such insurance has been in effect for a period of 2 years.

**Changes**
The Company reserves the right to make changes in The Policy, after The Policy has been in force for 12 months. The Company will give the Policyholder 31 days advance written notice of any change. No agent has authority to change or waive any part of The Policy. To be valid, any change or waiver must be in writing, approved by one of our officers and made a part of The Policy.

**Clerical Error**
Clerical error (whether by the Policyholder, the Plan Administrator, or The Company) in keeping the records having to do with The Policy, or delays in making entries on the records, will not void the insurance of any person if that insurance would otherwise have been in effect. A clerical error will not extend the insurance of any person if that insurance would otherwise have ended or been reduced as provided by The Policy. When a clerical error is found, premiums and benefits will be adjusted based on the true facts and The Policy.

**Conformity with Law**
If any provision of The Policy is contrary to the law of the jurisdiction in which it is delivered, such provision is hereby amended to conform to that law. If any change to state or federal law, including but not limited to the Federal Social Security Act, affects The Company's liability under The Policy, The Company may change The Policy, the premiums or both. Such change:
1) will be effective as of the date of the change to the state or federal law; and
2) will not be made until The Company gives the Policyholder 31 days notice.

**Termination of Policy**
The Company may terminate The Policy for the following reasons by giving the Policyholder 31 days written notice:
1) the Policyholder fails to furnish any information which The Company may reasonably require;
2) the Policyholder fails to perform any of its other obligations pertaining to this Policy;
3) Less than 100% of the persons eligible for coverage on a Non-contributory basis are insured;
4) Less than 25% of the persons eligible for coverage on a Contributory basis are insured; or
5) Fewer than 10 persons are insured.

In addition, The Company may terminate this Policy on any premium due date after The Policy has been in force for 12 months by providing 31 days written notice. If The Policy is terminated, the Policyholder is responsible for providing notice to insureds of their right to convert under The Policy.

The Company reserves the right to terminate Dependent Life Insurance Benefits on any premium due date on which:
1) there are fewer than 10 persons insured for Dependent coverage; or
2) less than 25% of the persons eligible for Dependent coverage on a Contributory basis are insured.

The Company shall give the Policyholder 31 days notice of its intent to terminate the Dependent Life Insurance Benefit.

# POLICY PROVISIONS

**Certificate(s) of Insurance**
The Company will give individual Certificate(s) of Insurance to:
1) the Policyholder; or
2) any other person according to a mutual agreement among the other person, the Policyholder, and The Company;
for delivery to persons covered under The Policy and which will explain the important features of The Policy.

**Data To Be Furnished**
The Policyholder, or any other person designated by the Policyholder, will give The Company all information The Company needs regarding matters pertaining to the insurance. At any reasonable time while The Policy is in force and for 12 months after that, The Company may inspect any of the Policyholder's documents, books, or records which may affect the insurance or premiums of The Policy.

The Policyholder will, upon our request, give The Company:
1) the names of all persons initially eligible for coverage;
2) the names of all additional persons who become eligible for coverage;
3) the names of all persons whose amount of insurance is to be changed;
4) the names of all persons whose eligibility or insurance is terminated; and
5) any data necessary to administer the insurance provided by The Policy.

If the Policyholder gives The Company any incorrect information, the relevant facts will be determined to establish if insurance is in effect and in what amount.

No person will be deprived of insurance to which he is otherwise entitled or have insurance to which he is not entitled, because of any misstatement of fact by the Policyholder. Any required adjustment may be made in premiums or benefits.

**Right to Audit**
The Company reserves the right to audit, once every 2 years, the Policyholder's billing records and premium accounting practices. If The Company discovers:
1) an underpayment of premium by the Policyholder, the Policyholder will be obligated to remit, in a timely manner, the underpayment amount; or
2) an overpayment of premium, The Company will return any overpayment amount in a timely manner;
for the previous 2 year period.

**Not in Lieu of Worker's Compensation**
This Policy does not satisfy any requirement for worker's compensation insurance.

**Time Period**
All periods begin and end at 12:01 A.M., standard time, at the Policyholder's address.

**Disclosure of Fees**
The Company may reduce or adjust premiums, rates, fees and/or other expenses for programs under The Policy.

**Disclosure of Services**
In addition to the insurance coverage, The Company may offer noninsurance benefits and services to Active Employees.

# INCORPORATION PROVISION

The Certificate(s) of Insurance and Rider(s) listed below are attached to, incorporated in and made a part of, The Policy.

| Certificate(s) of Insurance | | Rider(s) | |
|---|---|---|---|
| Form GBD-1100 (10/08) | (674076) 1.05 | Form PA-9394 (10/08) | (674076) 1.04 |
| | | Form PA-9394 (10/08) | (674076) 2.04 |
| | | Form PA-9394 (10/08) | (674076) 3.04 |
| | | Form PA-9394 (10/08) | (674076) 4.04 |
| | | Form PA-9394 (10/08) | (674076) 5.04 |
| | | Form PA-9394 (10/08) | (674076) 6.04 |
| Form GBD-1200 (10/08) | (674076) 2.08 | | |
| Form GBD-1100 (10/08) | (674076) 2.08 | Form PA-9394 (10/08) | (674076) 7.06 |
| Form GBD-1200 (10/08) | (674076) 3.05 | | |
| | | Form PA-9394 (10/08) | (674076) 10.04 |
| | | Form PA-9394 (10/08) | (674076) 8.04 |
| | | Form PA-9394 (10/08) | (674076) 9.04 |
| Form GBD-1200 (10/08) | (674076) 4.06 | | |
| | | Form PA-9394 (10/08) | (674076) 13.01 |
| | | Form PA-9394 (10/08) | (674076) 14.01 |
| | | Form PA-9394 (10/08) | (674076) 11.06 |
| | | Form PA-9394 (10/08) | (674076) 12.06 |

The provisions found in the Certificate(s) of Insurance will address the benefit plan, period of coverage, exclusions, claims and other general policy provisions pertaining to state insurance law requirements.

## NOTICE CONCERNING COVERAGE UNDER

### THE TENNESSEE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well–managed and financially stable.

The state law that provides for this safety–net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. On the next page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law or describe all of the conditions and limitations relating to coverage. **This summary does not in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.**

### COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, an annuity, or if they are insured under a group insurance contract issued by an insurer authorized to conduct business in Tennessee. Health Insurance includes disability and long term care policies. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

### EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guaranty Association if:

1) they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2) the insurer was not authorized to do business in this state;

3) their policy was issued by an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan which the policyholder is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does not provide coverage for:

1) any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2) any policy of reinsurance (unless an assumption certificate was issued);

3) interest rate yields that exceed an average rate;

4) dividends;

**Form PA-8228-2**      Tennessee                                        Printed in U.S.A.

5) credits given in connection with the administration of a policy by a group contractholder;

6) employers' plans to the extent they are self–funded (that is, not insured by an insurance company, even if an insurance company administers them);

7) unallocated annuity contracts (which gives the right to group contractholders, not individuals),

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Guaranty Association is obligated to pay out. The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. For any one insured life, the Guaranty Association guarantees payments up to a stated maximum no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. These aggregate limits per life are as follows:

- $300,000 for policies and contracts of all types, except as described in the next point

- $500,000 for basic hospital, medical and surgical insurance and major medical insurance issued by companies that become insolvent after January 1, 2010

Within these overall limits, the Guaranty Association cannot guarantee payment of benefit greater than the following:

- life insurance death benefits - $300,000

- life insurance cash surrender value - $100,000

- present value of annuity benefits for companies insolvent before July 1, 2009 - $100,000

- present value of annuity benefits for companies insolvent after June 30,2009 - $250,000

- health insurance benefits for companies declared insolvent before January 1, 2010 - $100,000

- health insurance benefits for companies declared insolvent on or after January 1, 2010;

  o $100,000 for limited benefits and supplemental health coverages

  o $300,000 for disability and long term care insurance

  o $500,000 for basic hospital, medical and surgical insurance or major medical insurance

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

Tennessee Life and Health Guaranty Association
1200 One Nashville Place
150 4th Avenue North
Nashville, Tennessee 37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Form PA-8228-2**   Tennessee

Printed in U.S.A.

**STATEMENT OF ERISA RIGHTS**

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA provides that all Plan participants shall be entitled to:

1. **Receive Information About Your Plan and Benefits**

   a) Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.
   b) Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary Plan description. The administrator may make a reasonable charge for the copies.
   c) Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

2. **Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

3. **Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied and ignored, in whole or in part, you may file suit in a state or Federal court. If the Plan requires you to complete administrative appeals prior to filing in court, your right to file suit in state or Federal court may be affected if you do not complete the required appeals. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

4. **Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration (formerly known as the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**CLAIM PROCEDURES**

The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

**Claim Procedures for Claims Requiring a Determination of Disability**

29

ERISA

**Exhibit G**

**The Following Important Notice
is Provided by Your Employer
for your Information Only.**

**Conforming Instrument**

For the purpose of meeting certain requirements of the Employee Retirement Income Security Act of 1974, the following information and the attached Claim Procedures and Statement of ERISA Rights are provided for use with your booklet-certificate to form the Summary Plan Description.

The benefits described in your booklet are provided under a group plan by the Insurance Company and are subject to the terms and conditions of that plan.

A copy of this plan is available for your review during normal working hours in the office of the Plan Administrator.

1. **Plan Name**

   Group Short Term Disability Plan for employees of KENCO GROUP, INC.

2. **Plan Number**

   505

3. **Employer/Plan Sponsor**

   KENCO GROUP, INC.
   3126 Alton Park Boulevard
   Chattanooga, TN 37401-1607

23

KENCO 001637

4.  **Employer Identification Number**

    62-0799523

5.  **Type of Plan**

    Welfare Benefit Plan providing Group Short Term Disability.

6.  **Plan Administrator**

    KENCO GROUP, INC.
    3126 Alton Park Boulevard
    Chattanooga, TN 37401-1607

7.  **Agent for Service of Legal Process**

    For the Plan:

    KENCO GROUP, INC.
    3126 Alton Park Boulevard
    Chattanooga, TN 37401-1607

    For the Policy:

    Hartford Life And Accident Insurance Company
    200 Hopmeadow St.
    Simsbury, CT 06089

    In addition to the above, Service of Legal Process may be made on a
    plan trustee or the plan administrator.

KENCO 001638

8. **Sources of Contributions** -- The Employer pays the premium for the insurance, but may allocate part of the cost to the employee. The Employer determines the portion of the cost to be paid by the employee.

9. **Type of Administration** -- The plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan.

10. The Plan and its records are kept on a Policy Year basis.

11. **Labor Organizations**

    None

12. **Names and Addresses of Trustees**

    None

13. **Plan Amendment Procedure**

    The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

    The Employer also reserves the right to adjust your share of the cost to continue coverage by the same procedures.

KENCO 001639

**Statement of ERISA Rights**

You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

1.  Receive Information About Your Plan and Benefits:

    a)  Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

    b)  Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

    c)  Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

2.  Prudent Actions by Plan Fiduciaries:

    In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

KENCO 001640



## McCurry v. Kenco - Joint Status Report 07.06.2021

1 message

**Leech, J. Casey (Chicago)** <Casey.Leech@jacksonlewis.com>          Tue, Jul 6, 2021 at 12:30 PM
To: Edith Mccurry <emccurry1@gmail.com>
Cc: Moran, Jody Wilner (Chicago) <Jody.Moran@jacksonlewis.com>, Argentieri, Julia P. (Chicago)
<Julia.Argentieri@jacksonlewis.com>, Kwaak, Helen M (Chicago) <Helen.Kwaak@jacksonlewis.com>

Ms. McCurry,


Per Judge Coleman's June 30, 2021 Minute Entry (ECF No. 141), we have prepared a draft joint status
report, which is due today. Please see attached and let us know if you have any proposed edits. We are
prepared to file it at the close of business today.


Thanks,
Casey


**Casey Leech**
Attorney at Law
**Jackson Lewis P.C.**
150 North Michigan Avenue
Suite 2500
Chicago, IL 60601
Direct: (312) 803-2521 | Main: (312) 787-4949
Casey.Leech@jacksonlewis.com | www.jacksonlewis.com

Visit our resource page for information and guidance on COVID-19's workplace implications

**Exhibit I**

# IN THE UNITED STATEDS DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | | |

## DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT 19, 42 and 55

Defendant KENCO LOGISTIC SERVICES, LLC, ("KENCO"), pursuant to Magistrate Judge Fuentes April 23 rulings, responds to Plaintiff's Requests to Admit 19, 42 and 55 as follows:

19.     Kenco was the plan administrator for disability benefits.

**RESPONSE:** Denied. Responding further, Kenco admits only that it was the Plan Administrator of the Group Long Term Disability Plan for employees of KENCO (the "Plan") as ERISA defines that term, and thus was responsible for certain Plan functions. Kenco denies, however, that it retained any responsibility for making benefits decisions under the Plan because it delegated exclusive discretionary authority to make those decisions to The Hartford under Policy No. GLT-674076 issued by The Hartford to Kenco.

42.     Leonard Szplett did invoicing monthly.

**RESPONSE:** Kenco admits that Leonard Szplett prepared or sent out certain invoices to third parties generally monthly.

55.     Defendant Kenco was to maintain its records for seven (7) years.

**RESPONSE:** Kenco admits that it maintains documents regarding benefits for seven (7) years.

Dated:  May 7, 2021                                     Respectfully submitted,

                                                    By:     **KENCO LOGISTIC SERVICES, LLC**

                                                            */s/ Jody Wilner Moran*
                                                            Jody Wilner Moran
                                                            Jackson Lewis P.C.
                                                            150 North Michigan Avenue #2500
                                                            Chicago, IL 60601
                                                            (312) 787-4949
                                                            Jody.Moran@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy of the foregoing ***DEFENDANT KENCO'S LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT 19, 42 & 55*** to be served by email and first class mail delivery to:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com

By: *  /s/ Jody Wilner Moran  *

Page 152

1            Did you talk to Dr. Troupe about this
2    court case?
3        A.    I must have.
4        Q.    Why did you tell him that you were
5    stressed about it?
6        A.    I mean, it is just a lot.  It's a lot of
7    everything.  It's a lot of paper, a lot of money, a
8    lot of work, a lot -- it's a lot for me and...
9        Q.    Is there money that you're paying for the
10   case right now?
11       A.    We have to pay for ink.  You pay for
12   paper.  When things are due, I have to pay for
13   postage, you know.  There's just a lot.
14       Q.    Even then it says you're stressed about
15   the lying lawyers.  Who did you think were lying to
16   you?
17       A.    I thought you were lying to me.
18       Q.    So, when do you think that you were lied
19   to?  Is there some specific thing that happened in
20   this litigation?
21       A.    It is just things you say through -- when
22   I read things that you write and trying to answer
23   the judge, and...
24       Q.    Okay.  Is there -- there's not something