# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**FILED** CRL

9/1/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EDITH MCCURRY

        PLAINTIFF,

VS.

    1:19 CV 04067

    Judge: Sharon Johnson Coleman

MARS, INC., KENCO LOGISTICS

SERVICES, LLC., HARTFORD LIFE,

    Magistrate Judge: Gabriel A. Fuentes

THE REED GROUP AND DR. KOEHLER

        DEFENDANTS,

## MOTION FOR SANCTIONS

Plaintiff, Edith McCurry, pursuant to Federal Rules of Civil Procedure 11, 26, 34, 37 and their relevant subsections respectfully submit the following:

### SUMMARY OF THE ARGUMENT

Defendant represented to this court by certification that it did not have a "Policy" from the Hartford. However, by declaration Defendant made representations to the Department of Labour making recitations from and references to the "Policy" that it certified that it did not have.

## FACTUAL BACKGROUND

1.   In December of 2020, Plaintiff requested under FRCP 34 that Defendant produce documents; including the "Policy" at issue from the Hartford.

2.   On January 27, 2021, Defendant objected to Plaintiff's request and refused to produce the "Policy" on the basis that it was not relevant to the issues at hand.

3.   From January 2021 through March of 2021, Plaintiff and Defendant made numerous exchanges regarding the "Policy" to which Defendant refused to produce.

4.   In April of 2021, Plaintiff filed a motion to compel regarding the "Policy" and other issues.

5.   On April 23, 2021, the Court ordered Defendant to produce the outstanding discovery, including the "Policy" and to respond to Plaintiff's Request to Admit relative to No.'s 19, 42 & 55. *Dkt #132 pg.22*

6.   By Certification on May 7, 2021, Defendant's stated that it did not have any more documents to produce. *Dkt # 132 pg. 17*

7.   Defendant now claims not to have a "Policy." This is contrary to Defendant's initial stance of having it but it not being relevant.

8.   Further exchanges between Plaintiff and Defendant lead to Defendant producing additional documents on May 24, 2021; which was beyond the Court's order production date of May 7, 2021.

9.   Further exchanges and additional Motions to Compel filed by Plaintiff, lead Defendant to file additional responses, documents and a declaration to the District Court in support and further alleging that it did not have a "Policy" from the Hartford.

10.  On July 14, 2021, Defendant filed a response to the Court in support of its contention of not having a "Policy" from the Hartford and in support of this contention Defendant proffered

a Declarant, Cathy Phillips, who corroborated Defendant's contention of not having a "Policy" from the Hartford.  *Dkt # 148*

11. Only July 16, 2021, Defendant filed a response to U.S. Department of Labour in another impending matter with Plaintiff.

12. Each declaration was used in two (2) separate impending legal matters; supporting two (2) opposite contentions and claims about the same "Policy" at issue.

13. Defendant's Declarant, Cathy Phillips, made both declarations on the same day, July 12, 2021.

14. Hereto is attached as Exhibit A Cathy Phillip's declaration to the District Court.

15. Hereto is attached as Exhibit B is a true and correct copy of Cathy Phillip's declaration to Department of Labour.

16. Defendant and its Declarant's position in its response to the U.S. Department of Labour were in opposition to the contentions it made to this Court regarding not having a "Policy."

17. Defendant's Declarant made a number of recitations and references to the "Policy" from the Hartford; a "Policy," that just as recent as days before on July 14, 2021, Defendant stated did not exist.

18. Defendant corroborated its Declarant's position that a policy exists in its July 16, 2021 Supplemental Memorandum, as an undisputed material fact.  A true and correct copy of that communication is attached as Exhibit C see pg. 3 ¶ 2.


ARGUMENT


I.      DEFENDANT COMMITTED FRAUD ON THE COURT

DEFENDANT AND ITS DECLARANT PLAYED BY THEIR OWN RULES

"The Federal Rules of Civil Procedure, as well as local rules of court, give ample notice to litigants of how to properly conduct themselves." *Hal Commodity Cycles Management v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir.1987)

Defendant and its Declarant conduct, of providing materially false and misleading statements by certification and under oath, to this Honorable Court and the Department of Labour, regarding the existence and nonexistence of Hartford "Policy" within days of one another was willful and in bad faith and contumacious. *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015); *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir.2009); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 48-49 (1991); *Greviskes v. Universities Research Ass'n*, 417 F.3d 752, 758-59 (7th Cir.2005).

It is in comprehensible that Defendant and its same counsel could make such patently false and misleading claims about the existence and non-existence of the "Policy" at the same time regarding the same issue after more than six months of exchanges regarding the exact "Policy," the Court's April 23, 2021 Order for its production, its May 7, 2021 Certification, its Declarant's July 12, 2021 multiple inconsistent declarations and its July 14 and July 16, 2021 contentions without Defendant's behaviour and conduct being rooted in intentional and willful bad faith, judicial misconduct, and a blatant disregard for the judicial system and its process.

Plaintiff further contends that Defendant and its Declarant's behaviour was corrupt and malicious and it was done to intentionally and willfully prejudice Plaintiff and to mislead the Court(s) to obtain relief based upon information that it knew to be false.

Litigants are presumed to know that contumacious conduct of this sort is absolutely unacceptable. *Quela v. Payco-General Amer. Credits, Inc.*, 2000 WL 656681, at *6 (N.D.Ill. May

18, 2000) Therefore, there is no excuse, reason or rationale available to counter Defendant and its

Declarant's intentional misconduct.

## II.    DEFENDANT ABUSED THE JUDICIAL PROCESS

DEFENDANT FURTHER COMMITTED FRAUD ON THE COURT WHEN IT ABUSED THE JUDICIAL PROCESS

Defendant gamed the system by tampering with the integrity of the judicial system, lying to

the court, or engaging in other deceptive or abusive practices are absolutely unacceptable regardless

of the absence of a specific court order to the contrary. *Lightspeed Media Corp. v. Smith*, 2015 WL

3545253, *5 (S.D. Ill. 2015)

Defendant and its Declarant abused the judicial process when it improperly filed misleading

papers that contained patently false statements that were in contradiction to certified statements that

it had previously filed with the Court in regards to the "Policy" from the Hartford.

Defendant and its Declarant's conduct was brazen and embolden of reprisal or punishment

from either forum in that within days of each other they filed papers in two (2) different judicial

forums that contradicted one another.  (See Exhibits A, B, C & D)  Defendant and its Declarant

intentionally and willfully in bad faith modified its position and these documents to fit the

exigencies of the moment of the various litigation(s).  *In re Knight-Celotex, LLC*, 695 F.3d 714

(7th Cir. 2012).  Effectively Defendant and its Declarant committed perjury pursuant to 28 U.S.C.

§ 1746.

The Courts have reasoned that '[P]erjury strikes at the heart of the integrity of the judicial

system....'" *United States v. Stokes*, 211 F.3d 1039, 1046 (7th Cir.2000) and that "lying cannot be

condoned in any formal proceeding." *See ABF Freight System, Inc. v. N.L.R.B.*, 510 U.S. 317, 323

(1994)("False testimony in a formal proceeding is intolerable.")  It "undermines the function and

province of the law and threatens the integrity of judgments" *United States v. Alvarez*, 132 S.Ct. 2537, 2540 (2012) and "poisons the life blood of the administration of justice."

Thus, "[p]arties who wish to use the judicial system to settle disputes have certain obligations and responsibilities" and "[o]ne of those responsibilities is to tell the truth" (*quoting Rodriguez v. M & M/Mars*, 1997 WL 349989, *2 (N.D. Ill. June 23, 1997), to which Respondent and its declarant Cathy Phillips have not discharged themselves of the responsibility of telling the truth.

Furthermore, Plaintiff agrees, asserts and contends that the courts generally have an interest in both punishing a party's dishonesty and deterring similar misconduct. *Secrease* at 402 (7th Cir. 2015); *Greviskes* at758-59 (7th Cir.2005).

As a direct result of this consensus, Plaintiff contends that Defendant and its Declarant be punished.

## III.     FEDERAL RULES OF CIVIL PROCEDURE  VIOLATIONS

The Court of  *COLIDA v. PANASONIC CORP.*, No. 09 C 1786 (N.D. Ill. May 24, 2011) citing *Quela*, 2000 WL 656681 reasoned that it was proper to enter a default judgment as a sanction after Defendants offered false testimony.

DEFENDANT VIOLATED FRCP 11, 26, 34 & 37.

### RULE 11 VIOLATIONS

Defendant filed certifications, papers and declarations that were baseless to avoid discovery compliance and when convenient averring the existence and non-existence of the "Policy" among other assertions.  Defendant's filings contained contradicting, misleading and patently false statements to various tribunals including this Honorable Court seeking relief based upon information that it knew was false.  Plaintiff contends that Defendant violated Rule 11.

Defendant repeatedly asserted to this Honorable Court by certification and filings since May of 2021 through July 14, 2021 that it did not have a "Policy." However, within days of its last assertion to this Honorable Court on July 14, 2021 that it did not have a "Policy," Defendant made a representation to the Department of Labour on July 16, 2021 that it had a "Policy" from the Hartford. See Exhibit C pg. 3 ¶ 2. Its Declarant, under oath, made recitations from the "Policy" to support its legal theories and contentions before the Department of Labour. A copy of that communication is attached as *Exhibit B. See ¶ 7*

More specifically, Defendant's Declarant on July 12, 2021 makes specific recitations of specific provisions from a "Policy" that was referenced to be in affect from 2013 to 2015. Likewise on the same day, the Declarant makes other assertions that do not support the existence of the "Policy" that it vividly avers to in another Declaration made on the same day July 12, 2021. *Refer to Exhibit A*

Consequently, these inconsistent statements give rise to the fact that Defendant made patently false statements to this Honorable Court to prejudice Plaintiff and to derive a benefit that it was not entitled too based upon information it knew was false.

SAME LEGAL COUNSEL

Furthermore, it is established that a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer according to Rule 3. 1 and Rule 3.3 of the Model Rules of Professional Conduct respectively. As of to date, no corrections have been made relative to the presentment of erroneous information to either tribunal.

Plaintiff also contends Rule 11 of the Federal Rule of Civil Procedure imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any

papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose. Plaintiff contends that this did not occur or that counsel ignored these inconsistencies based upon the July 14, 2021 filing with this Honorable Court and the July 16, 2021 filing with the Department of Labour. *Exhibit C & Exhibit D*

Contrarily, Defendant intentionally filed the certifications and filings for improper purposes in violation of Rule 11.

RULE 26 & 34 VIOLATIONS

Plaintiff also contends that Defendant violated Rules 26 and 34 when Defendant failed to disclose and produce the "Policy" it referenced, averred to and recited from in its July 16, 2021 filing to the Department of Labour. *See Exhibit B ¶ 7 & Exhibit* C pg. 3 ¶ 2.

It is well established that any engagement in deceitful discovery is a clear violation of Rule 26 and that this misrepresentation, misconduct or fraudulent behavior by an officer of the court is a constitution of fraud on the court.

Additionally, Plaintiff also contends that Defendant also violated Rules 26 and 34 when Defendant violated the Court's April 23, 2021 order to produce the "Policy" and other documents. Consequently, Rule 26 & 34 violations give rise to Rule 37 violations

RULE 37 VIOLATION

Plaintiff also contends that Defendant's violations of Rule 26 & 34 also give rise to Rule 37 violations when it failed to make disclosures and cooperate in discovery, as well as, when Defendant intentionally and willfully presented patently false information to this Honorable Court, with the intent to deceive and commit fraud upon the court.

*The Court of Quela*, 2000 WL 656681 at *6 says that the Court "can properly consider the sanctions available under Rule 37" when a litigant has acted contumacious when they have tampered with the integrity of the judicial system, lied to the court, or engaged in other deceptive or abusive practices.

IV.     SANCTIONS

Plaintiff contends that Defendant's contumacious, brazen and embolden behaviours is ripe for sanctioning.

RULES 11 & 37

RULE 11 VIOLATIONS ARE SANCTIONABLE UNDER 11(C).

In relevant parts Plaintiff contends that Defendant violated FRCP 11(b) when it presented to this Honorable Court its filings and certifications relevant to its denial of not having the "Policy" from the Hartford, but in actuality had the "Policy" to which it referenced, averred and recited from on July 12, 2021 by Declaration and July 16, 2021 in filing with the Department of Labour.

Plaintiff also contends that Defendant and its Declarant's conduct was willful and intentional, due in part to the fact that both declarations were executed on the same date of July 12, 202.  There were internal inconsistencies between the declarations and its memorandums.  Each declaration supported opposite positions of the Defendant relative to the existence of the "Policy" in two (2) separate judicial forums to obtain relief for which it was not entitled to.

RULE 37 SANCTIONS

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate

sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 776 (7th Cir. 2016) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46-50 (1991)). *Accord Montano v. City of Chicago,* 535 F.3d 558, 563 (7th Cir. 2008) ("A district court has inherent authority to sanction conduct that abuses the judicial process.") (citations omitted).

## V. DEFENDANT HAS SHOWN A LACK OF RESPECT FOR THE COURT PROCEEDINGS

"Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *Northwestern National Insurance Co. v. Baltes,* 15 F.3d 660, 663 (7th Cir.1994).

### DEFAULT JUDGMENT

"Dismissal may be appropriate when a party has shown a lack of respect for the court or proceedings." *White v. Williams,* 423 Fed. Appx. 645, 647 (7th Cir. 2011); *Petito v. Brewster,* 562 F.3d 761, 762-63 (5th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 841 (10th Cir. 2005). Defendant failed to respect Rule 37 and failed to comply with court-ordered discovery. Additionally, Defendant was warned by the Court on April 23, 2021 that there would be consequences for misconduct.

### CONSEQUENCES

ON APRIL 23, 2021 THIS HONORABLE COURT WARNED DEFENDANT OF CONSEQUENCES OF IMPROPER BEHAVIOUR

Plaintiff further agrees with the court of *Ramirez* at 778-779 (7th Cir. 2016) in that:

> Nothing about the nature of sanctions in a civil case places one party or the other in a unique position: either party may be sanctioned for its misconduct, and either might lose the right to present its case if the court decides to enter an adverse judgment as a sanction, as occurred here. (Rule 37(b)(2)(A) (v)

and (vi) authorizes both the dismissal of the action and the entry of a default judgment against the offending plaintiff or defendant; and the court's inherent power to sanction misconduct is likewise symmetrical, *see Secrease,* 800 F.3d at 401.)

Plaintiff also contends that "the sanction imposed should be proportionate to the gravity of the offense." *Montano v. City of Chicago,* 535 F.3d 558, 563 (7th Cir. 2008) (citing *Allen v. Chi. Transit Auth.,* 317 F.3d 696, 703 (7th Cir. 2003).

And, Plaintiff further contends that the gravity of Defendant's conduct and actions were brazenly willful and egregious; therefore, a default judgment is appropriate as: 1) Defendant repeatedly (lied) made patently false statements to this Honorable Court from April 2021 to date about not having a "Policy" or any knowledge thereof of a "Policy." 2) Defendant admitted that it had a "Policy" to the Department of Labour, when it made filings of declarations and other papers that referenced and recited specific portions of the "Policy" to the Department of Labour. 3) Defendant abused the judicial process when Defendant tampered with the integrity of the judicial system, lied to the court, or engaged in other deceptive and/or abusive practices, including but not limited to: violating FRCP Rules 11, 26, 34, & 37. *National Hockey League* v. *Metropolitan Hockey Club,* 427 U. S. 639 (1976) (*per curiam*), as well as; 4) committing fraud on the court. See Exhibits A & B & C & D

Therefore, as evidenced by Defendant and its Declarant's conduct, it is clearly convincing that Defendant willfully abused the judicial process and conducted the litigation in bad faith to prejudice Plaintiff, defraud the court and obtain a benefit to which it was not entitled; and Defendant Kenco is worthy of a default judgment being entered against them. *Ramirez* at 779 (7th Cir. 2016)

Additionally, Defendant's conduct is reminiscent of its immediate past behaviours of intentionally misleading tribunals and deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine,* 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)

## VI. DEFENDANT'S PATTERN AND PRACTICE OF JUDICIAL ABUSE

Plaintiff asserts that Defendant's unlawful and unethical actions are in continuum of its immediate past bevhiours relative to Plaintiff and others with regards to upholding and abiding by the law. Plaintiff believes that both Defendant and their counsel in particular have a reckless disregard, disrespect and disdain for the judicial system, in which they are officers of the court.

DEFENDANT'S COUNSEL'S CONDUCT IS UNBECOMING OF A MEMBER OF THE BAR.

Clearly no reasonable person feels empowered and embolden to blatantly lie, undermine, usurp and defraud the very institution and platform that allows it to practice its craft. Additionally, it seems as though they believe or it has been understood that there are or would be no reprisals or repercussions for their actions because of their repeated brazen and uncanny conduct that blatantly defies lawful, ethical and professional conduct, acumen and fortitude, as evidenced by Defendant's conduct in *McCurry vs. Mars, et al...19 CV 04067 {Defendant originally stated in January of 2021 that the policy was not relevant to the matter at hand and thereby refused to produce it. Defendant later stated by certification on May 7, 2021 that it did not have a policy issued from the Hartford. (DKT# 132 pg. 17 hereto attached as Exhibit E); which also is internally inconsistent with Defendant's May 7, 2021 court ordered response(s) that stated that the Hartford issued a*

*policy to Defendant, as well as, stating that it retained its records relative to benefits for seven (7) years. (Refer to Exhibit E-Dkt.# 132 pg. 22 ¶ 19); And is also in stark contrast to Defendant's position in McCurry* vs. Kenco ARB 2021-0009, No. 2019-FDA-00015, OSHA Case No. 5-1260-18-107; *whereby Defendant and its declarant makes specific recitations from the "Policy" under oath that it stated to not have under oath to this Honorable District Court on May 7, 2021, and again on July 14, 2021. See Exhibit D-* Dkt. #148 Page 6 of 10 Page ID #2373 § B ¶ 1

To further support Plaintiff's contention of Defendant's pattern and practice of judicial abuse in McCurry vs. Kenco et al...16 CV 2273 (Dkt. #113 pg.3 ¶ 7 & pg.7 §A ¶ 1), in Seventh Circuit Case No. 18-3206 and other matters before the Illinois Department of Human Rights and Equal Employment Opportunity Commission Defendant stated that Szplett was the HR Manager see Group Exhibit F. Contrarily Defendant in defending themselves against Szplett vehemently denied that Szplett was never the HR Manager see Group Exhibit G (e.g. IDHR# 2015CA3083/EEOC#21BA51536 & Szplett vs. Kenco et al...1:19 CV 02500 Dkt. # 55).

This is another clear example and evidence that underscores Defendant's egregious and unlawful misconduct through intentionally providing misleading and patently false statements to the Court(s) based upon exigencies of the moment of the various litigation(s) that helped them prevail and abuse the judicial system. This is the quintessential posterchild for misconduct and this is what has happened here. In re Lightfoot, 217 F.3d 914 at 917 (7th Cir. 2000) citing: In re Cook, 49 F.3d 263 (7th Cir.1995); Pearson v. First NH Mortgage Corp., 200 F.3d 30 (1st Cir.1999); United States v. Shaffer Equipment Co., 11 F.3d 450, 453-61 (4th Cir.1993); Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1540-41, 1544-46 (11th Cir.1993).

Other instances include *Morrison vs. Kenco OSHA Complaint No. 897188/Inspection # 985037 and Henry vs. Kenco et al... 15 CV 10961* among other administrative and judicial matters; whereby Defendant repeatedly made misleading or patently false statements or presented fictitious and or erroneous documents, policies, procedures, protocols or best practices to  support their current theories or contentions of the present moment.

Defendant's egregious and embolden conduct cannot go unchecked and unpunished, as it causes irreparable harms, stress and financial burdens to Plaintiff, others and society, as well as, and more importantly the judicial system.  The mechanism and matrix that is set in place that is *supposed* to bring equity and justice to parties when they are aggrieved, but instead has been used to further burden and oppress society through inherent bias's, lack of access to adequate legal representation and a host of other political constructs.

Furthermore, such behavior cannot be upheld as it undermines, usurps and minimalizes the integrity of the judicial system and the alleged unbiased platform it is to have for litigants.  Additionally, this kind of egregious misconduct creates a societal burden that lays a foundation of deceit, subjugation, and continued moral decay of our society; that ultimately fosters a divisive hostile and an animus society, as evidenced in our current societal construct.

Plaintiff asserts that Defendant's conduct underscores and is line with the Supreme Court's stance and definition of "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice," *In re Lightfoot*, 217 F.3d 914 at 916 (7th Cir. 2000) citing: In re Snyder, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985), conduct unbecoming within the meaning of Rule 46(c) has generally been understood to involve significant elements of aggravation, such as deliberately misleading the court or

displaying egregious misjudgment. Cleveland Hair Clinic v. Puig, 200 F.3d 1063, 1069-70 (7th Cir.2000); Mays v. Chicago Sun-Times, 865 F.2d 134, 140 (7th Cir.1989); In re Jafree, 759 F.2d 604 (7th Cir.1985) (per curiam).

Moreover, Plaintiff urges this court, as the gatekeeper to uphold and enforce the sanctions of the Rules and keep in line with the sentiments the of United Supreme and Seventh Circuit Courts.

**WHEREFORE,** in lockstep, Plaintiff prays that the Court will bring equity, justice and honor to this Court, the judicial system, Plaintiff and society by using this opportunity to deter Defendant, its Declarant, Cathy Phillips, Defendant's counselor(s) and others from engaging in similar conduct by holding them squarely accountable for this unconscionable and egregious misconduct and behaviour through entering an order of Default Judgment against Defendant; or in the alternative enter an order: 1) of adverse inference against Defendant relative to the "Policy/Plan" at issue regarding the disability benefits and; 2) that the "Policy/Plan" be permanently barred from these proceedings and; 3) permanently barring Cathy Phillip's as a declarant or witness in these proceedings and; 4) disqualifying Defendant's legal counsel from these proceedings, as well as, any other sanctions fashioned and or deemed appropriate, including monetizing the Hibbler for its services.

DATED: September 1, 2021

*Edith McCurry*

Edith McCurry (pro se)
6239 South 13110 East Road
Pembroke Township, IL 60958
815.735.4281

**CERTIFICATE OF SERVICE**

Please take notice that on September 1, 2021, I, EDITH MCCURRY, hereby, certify that I did file a

MOTION FOR SANCTIONS with the Northern District of Illinois Eastern Division in the foregoing

matter of Case No. 19-cv-04067 and have served the persons identified on the docket's service list

through Notice of Electronic Filing generated by the Court's CM/ECF system.

_____

Pro Se

EDITH MCCURRY

6239 South 13110 East Rd.
Pembroke Township, IL 60958
815-735-4281

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Edith McCurry, | |
| Plaintiff | |
| v. | Case No. 19-CV-04067 |
| Mars, Kenco Logistics Services, LLC, The Hartford Financial Services Group, Inc., The Reed Group and Dr. Koehler, | Judge Sharon Johnson Coleman<br>Magistrate Judge Gabriel A. Fuentes |
| Defendants. | |

**DECLARATION OF CATHY PHILLIPS**

I, Cathy Phillips, am over the age of 18 years and am otherwise competent to give sworn testimony regarding the matters contained in this Declaration. I attest as follows based on my personal knowledge and after conducting a diligent inquiry:

1.      I am a Senior Benefits Manager for Kenco Management Services LLC, a corporate affiliate of Kenco Logistic Services, LLC (collectively, "Kenco").

2.      I have been employed by Kenco for approximately 10 years.

3.      In my role, I oversee the benefits for all Kenco employees, including employees of Kenco Logistic Services, LLC.

4.      During the time period of 2013–2015 Kenco offered short- and long-term disability benefits to its employees through its third-party benefits administrator, The Hartford.

5.      I am aware of the documents produced by Kenco to Edith McCurry in the above-referenced action, including the plan documents relative to the short- and long-term disability benefits plan in effect during McCurry's employment with Kenco Logistic Services, LLC.

6.      As of the date I executed this Declaration, Kenco does not possess any additional plan documents relative to the short- and long-term disability benefits plans in effect during

1

McCurry's employment, other than what Kenco has already produced to McCurry.

7.      Kenco has conducted a comprehensive search of the documents in its possession, it has produced all documents comprising the short- and long-term disability benefits plan in effect during McCurry's employment with Kenco, and it has complied with the Court's April 23, 2021 Order to supplement McCurry's Document Request Nos. 22, 34, 55, and 71.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: July 12, 2021

*Cathy Phillips*
CATHY PHILLIPS

2

# EXHIBIT 1

**U. S. DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| EDITH MCCURRY, | ) | OALJ Case No.: 2019-FDA-00015 |
| | ) | |
| Complainant, | ) | OSHA Case No.: 5-1260-18-107 |
| | ) | |
| v. | ) | |
| | ) | |
| KENCO LOGISTICS SERVICES, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

**DECLARATION OF CATHY PHILLIPS**

I, Cathy Phillips, am over the age of 18 years and am otherwise competent to give sworn testimony regarding the matters contained in this Declaration. I attest as follows based on my personal knowledge and after conducting a diligent inquiry:

1.      I am a Senior Benefits Manager for Kenco Management Services LLC, a corporate affiliate of Kenco Logistic Services, LLC (collectively, "Kenco").

2.      I have been employed by Kenco for approximately 10 years.

3.      In my role, I oversee the benefits for all Kenco employees, including employees of Kenco Logistic Services, LLC.

4.      I am familiar with Kenco's process for how employee disability claims are handed by our insurance company, and I am also familiar with Kenco's process for retaining records of benefits information received from the insurance company upon making a decision to grant/deny disability benefits.

5.      During the time period of 2013–2015 Kenco offered short- and long-term disability benefits to its employees through its third-party benefits administrator, The Hartford.

1

6.      A copy of the long term disability benefits policy in effect during that time period is attached as Exhibit A.[1]

7.      The policy grants the Harford sole discretion to make all determinations regarding benefits. Specifically, the policy states, "[t]he Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." *See* Ex. A at KENCO000086.

8.      Attached as Exhibit B is a true and correct copy of Kenco's Leave of Absence Policy in effect beginning on February 15, 2015. As stated in the policy, Kenco employees "are responsible for contacting The Harford to file a claim for FMLA, disability leaves, and all work related injury absences." *See* Ex. B at KENCO 000294).

9.      When The Hartford served as Kenco's third-party benefits administrator, if a Kenco employee was unable to work due to ongoing medical reasons, the employee was instructed to contact The Hartford.

10.     The Harford worked with Kenco employees and their medical providers to obtain the necessary medical information and approve time off under Family and Medical Leave Act, in addition to short- and long-term disability benefits.

11.     Kenco received notice from The Hartford when an employee filed a claim for disability benefits. Kenco also received notice regarding the status of the employee's claim, including whether it was approved or denied, and if approved, for what time period.

12.     If medical information was submitted to The Hartford by an employee or the

---

[1] All documents attached to this Declaration have previously been produced to Edith McCurry, including in the federal lawsuit between McCurry and Kenco Logistic Services, LLC, *McCurry v. Kenco Logistics Services, LLC*, Case No. 19-cv-04067, pending in the U.S. District Court for the Northern District of Illinois.

employee's medical provider in connection with the employee's claim for disability benefits, Kenco did not receive the medical information provided to The Hartford.

13.     Kenco could not, and did not, provide any input regarding The Hartford's decision regarding whether to approve or deny disability benefits.

14.     Decisions to approve or deny disability benefits were made solely by The Hartford based on information provided directly by the employee or the employee's medical provider.

15.     If The Hartford approved disability benefits for a Kenco employee, disability benefits were paid by The Hartford and Kenco was not responsible for such costs.

16.     When Kenco utilized The Hartford as its third-party benefits administrator, Kenco played no role in any decisions regarding disability benefits.

17.     Attached as Exhibit C are true and correct copies of letters Kenco received from The Hartford regarding the status of Edith McCurry's claim for disability benefits.

18.     Consistent with Kenco's standard practices, Kenco never informed The Hartford that Ms. McCurry participated in a whistleblower case involving violations of the Food Safety Modernization Act ("FSMA"), nor did Kenco inform The Hartford that Ms. McCurry otherwise engaged in any protected activity under the FSMA.

19.     Kenco did not have any involvement in any decisions related to Ms. McCurry's claims submitted to The Hartford for disability benefits.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: July **12** , 2021                               *Cathy Phillips*
                                                        CATHY PHILLIPS

3

**EXHIBBIT C**

## U. S. DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| EDITH MCCURRY, | ) | OALJ Case No.: 2019-FDA-00015 |
| | ) | |
| Complainant, | ) | OSHA Case No.: 5-1260-18-107 |
| | ) | |
| v. | ) | |
| | ) | |
| KENCO LOGISTICS SERVICES, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONDENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY DECISION

On June 16, 2021, Chief Administrative Law Judge Stephen R. Henley issued a Briefing Order on Remand, in which he ordered Respondent, Kenco Logistic Services, LLC to supplement its Motion for Summary Decision on the issue of whether Complainant Edith McCurry's protected activity was a contributing factor in the denial of her long-term disability benefits. Kenco submits the following supplemental memorandum to address this discrete issue, in further support of its request that the Office of Administrative Law Judges dismiss McCurry's Complaint with prejudice:

## INTRODUCTION

McCurry alleges whistleblower retaliation in violation of the Food Safety Modernization Act ("FSMA"), specifically, that she testified in a whistleblower case involving FSMA violations made by another Kenco employee, and that Kenco allegedly responded by denying her long-term disability benefits. *See Decision and Order Granting Respondent's Motion for Summary Decision,*

*at 1, Nov. 2, 2020.*[1]

On September 4, 2019, Kenco filed its Motion for Summary Decision, arguing, in part, that collateral estoppel barred McCurry's FSMA claim because federal courts previously ruled that Kenco did not make the decisions surrounding her long-term disability benefits and that Kenco was not a proper defendant in that federal litigation. On November 2, 2020, Judge Henley granted Kenco's Motion for Summary Decision, not based on the procedural arguments raised in Kenco's motion, but based on a finding that the evidence in the record did not create a genuine issue of material fact as to whether McCurry's alleged protected activity was or could have been a contributing factor in any adverse action. *Id*. at 9.

After McCurry appealed the grant of Kenco's Motion for Summary Decision, on April 30, 2021, the Administrative Review Board issued its Order Vacating and Remanding, finding that this tribunal should have apprised the parties of the alternate basis on which Judge Henley's decision was based. *See Briefing Order on Remand, at 3, June 16, 2021*. Now the parties have been provided the opportunity to brief the narrow issue of whether there is any evidence to support the claim that McCurry's alleged protected activity was a contributing factor in the denial of her long-term disability benefits.[2]

## UNDISPUTED MATERIAL FACTS RELATED TO MCCURRY'S LONG-TERM DISABILITY BENEFITS

1.        During the time period of 2013–2015 Kenco offered short- and long-term disability benefits to its employees through its third-party benefits administrator, The Hartford. *See Exhibit*

---

[1] Although not relevant for the purposes of this supplemental memorandum, Kenco does not concede that McCurry engaged in protected activity under the FSMA, or that she suffered an adverse action. Indeed, Kenco did not make the decisions surrounding McCurry's disability benefits and the alleged delay in her disability benefits does not qualify as an adverse action since ultimately, nothing adverse occurred.

[2] Kenco reasserts and incorporates here its arguments contained in its Motion for Summary Decision.

1, Decl. of Cathy Phillips, July 12, 2021, ¶ 5.

2.  As stated in the long-term disability benefits policy in effect when The Hartford served as Kenco's third-party benefits administrator, The Hartford was granted the **sole** discretion to make all determinations regarding benefits. *Id.* at ¶ 7. Specifically, the long-term disability benefits policy states, "[t]he Plan has designated and named **the Insurance Company** as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company **full discretion and authority** to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." *Id. (emphasis added).*

3.  Kenco's Leave of Absence Policy in effect during 2015 states that Kenco's employees "are responsible for contacting The Harford to file a claim for FMLA, disability leaves, and all work-related injury absences." *Id.* at ¶ 8. If a Kenco employee was unable to work due to ongoing medical reasons, the employee was instructed to contact The Hartford. *Id.* at ¶ 9.

4.  When The Hartford served as Kenco's third-party benefits administrator, The Harford worked with Kenco employees and their medical providers to obtain the necessary medical information and approve time off under the Family and Medical Leave Act, in addition to short- and long-term disability benefits. *Id.* at ¶ 10. When an employee filed a claim for disability benefits, Kenco received notice of the claim from The Hartford, in addition to notice regarding whether the claim was approved (and if so, for what time period). *Id.* at ¶ 11. Kenco never requested or received medical information provided to The Hartford by an employee or an employee's medical provider, in connection with a claim for disability benefits. *Id.* at ¶ 12.

5.  Kenco could not, and did not, provide any input regarding The Hartford's decision regarding whether to approve or deny any employee's claim for disability benefits. *Id.* at ¶ 13. Whether an employee's claim for disability benefits was approved or denied was a decision made

solely by The Hartford based on information provided directly by the employee or by his or her medical provider. *Id.* at ¶ 14.

6. If The Hartford approved disability benefits for a Kenco employee, disability benefits were paid by The Hartford and Kenco was not responsible for such costs. *Id.* at ¶ 15. During the time that Kenco utilized The Hartford as its third-party benefits administrator, Kenco played no role in any decisions regarding disability benefits. *Id.* at ¶ 16.

7. Kenco received several letters from The Hartford regarding the status of McCurry's claim for disability benefits. *Id.* at ¶ 17.

8. Kenco did not have any involvement in any decisions related to McCurry's claims submitted to The Hartford for disability benefits. *Id.* at ¶ 19.

9. Consistent with Kenco's standard practices, Kenco never informed The Hartford that McCurry participated in a whistleblower case involving FSMA violations, nor did Kenco inform The Hartford that McCurry otherwise engaged in any protected activity under the FSMA. *Id.* at ¶ 18.

## **ARGUMENT**

McCurry has failed to present any evidence to establish that her alleged protected activity in any way contributed to her alleged adverse employment action. All decisions related to McCurry's disability benefits were made by The Hartford, without any input from Kenco, and there is no evidence that anyone at The Hartford had knowledge that McCurry provided testimony in an FSMA retaliation proceeding or otherwise engaged in an activity protected by the FSMA.

### I.     **Summary Decision Standard**

An administrative law judge may issue a summary decision if the pleadings, affidavits, and other evidence or "matters officially noticed" show that there is no genuine issue of any material

4

fact and the moving party is entitled to prevail as a matter of law. *See In the Matter of: Robert T. Evans v. T-Mobile, USA, Inc.,* ARB. Case No. 15-037, ALJ No. 2012-SOX-036, slip. op. at 7 (ARB Feb. 27, 2017).

**II.     McCurry's Retaliation Claim Fails Because Kenco Did Not Make Any Decisions Surrounding Her Disability Benefits and Did Not Inform The Hartford that McCurry Engaged in Any Protected Activity.**

To state a *prima facie* case for retaliation under the Food Safety Modernization Act, McCurry must establish that: (1) she engaged in protected activity under the FSMA; (2) Kenco was aware she engaged in a protected activity; (3) Kenco took an adverse action, or an action that would dissuade a reasonable worker from exercising rights, against her; and (4) the protected activity was a contributing factor in the adverse action. *Patricia Hindsman v. Delta Air Lines, Inc.,* ARB Case No. 09-023, ALJ Case No. 2008-AIR-013, slip. op. 9 (ARB. June 30, 2010); *Chase v. Bros. Int'l Food Corp.*, 3 F. Supp. 3d 49, **9 (W.D.N.Y. 2014) (discussing elements in context of an FSMA claim). A determination that a violation has occurred may be made only if the complainant has demonstrated by a preponderance of the evidence that the protected activity was a contributing factor in the adverse action alleged in the complaint. 29 C.F.R. § 1987.109(a). Further, even if that burden is satisfied, relief may not be ordered if the respondent demonstrates by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected activity. 29 C.F.R. § 1987.109(b).

McCurry cannot establish a claim of retaliation under the FSMA because there is no evidence that her alleged protected activity was a contributing factor in The Hartford's temporary denial of her long-term disability benefits (which were subsequently approved in full). All factual evidence in the record demonstrates that The Hartford administered Kenco's employee disability benefits and that The Hartford, without any input from Kenco, made all decisions related to McCurry's disability benefits claims.

McCurry must prove by a preponderance of evidence that her protected activity was a "contributing factor" in the denial of her claim for long term disability benefits. *See Horton Elaine v. Crossmark, Inc.*, No. 2014-FDA-00004 (ALJ June 8, 2015). "[A] contributing factor is any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Id. (citations and internal quotation marks omitted).* McCurry relies on nothing but pure speculation to support her claim that her alleged protected activity caused her alleged adverse action. Because she is unable to rely on evidence in the record to support the causation element of her retaliation claim, her claim fails. *See Walter Abbs v. Con-Way Freight, Inc.,* ARB. No. 2012-016, ALJ No. 2007-STA-037, slip. op. at 5-6 (ARB. Oct. 17, 2012) (affirming grant of summary decision based on lack of causation where evidentiary record established no evidence of a link between protected activity and adverse action); *Budri v. Firstfleet, Inc.,* ARB. No. 2018-025, ALJ No. 2017-STA-086, slip. op. 2-3 (ARB. June 19, 2018) (summarily affirming ALJ grant of summary decision where the complainant could not satisfy element of causation because he failed to show that protected activities contributed to the adverse action).

It is settled law that any inference of a causal link between a complainant's protected activity and her subsequent adverse action may be broken by an intervening event or, alternatively, by lack of knowledge of the protected activity by the decision-maker. For example, in a case factually analogous to this one, *Durham v. Tennessee Valley Auth*., the complainant was denied disability retirement by the Tennessee Valley Authority Retirement System ("TVARS"), a "a legal entity separate and distinct from" complainant's employer, Tennessee Valley Authority ("TVA"). *Durham v. Tennessee Valley Auth*., 2006-CAA-3, at 5 (ALJ Feb. 13, 2006). The complainant alleged that she was denied disability retirement in retaliation for engaging in protected activity under several statutes. In granting TVA's motion for summary decision, the OALJ found that

"none of the TVARS Board members that participated in the decision knew of Complainant or of his asserted protected activity" and that therefore, TVA "did not subject Complainant to the alleged adverse action." *Id*.

Similarly, in *Michael Ben Graves v. MV Transportation, Inc.*, the complainant alleged that he was denied workers' compensation benefits in retaliation for engaging in protected activity under the National Transit Systems Security Act. *Michael Ben Graves v. MV Transportation, Inc., et al*., Case No. 2014-NTS-00001 (ALJ Sept. 10, 2014). In dismissing the complainant's retaliation claim, the OALJ found that the workers' compensation administrator had no knowledge of the complainant's protected activity and that there was no evidence that the workers' compensation administrator and the respondent colluded to deny the complainant's benefits. *Id.* at 11–12. In *Laverne B. Kelly-Lusk v. Delta Airlines, Inc*., Case No. 2014-TSC-00003 (Feb. 17, 2016), the complainant alleged that a delay in the issuance of her retirement checks was in retaliation for her making complaints to her employer, Delta Airlines, about accidentally drinking methanol at work. In granting Delta's motion for summary decision, the OALJ found there was no evidence as to how the pension administration or "anyone involved in issuing her pension checks would have any knowledge about any of her communications about the ice tea incident" and that therefore, the adverse action had "no nexus to any protected activity." *Id*. at 8–9. *See also Dominick Valenti v. Shintech, Inc*., Case No. 2010-CAA-00008, (March 14, 2011) (dismissing whistleblower claims where there was no evidence that the person who made the decision to terminate the complainant's employment had any knowledge of the complainant's complaints of environmental concerns).

McCurry claims that she was retaliated against, based on a decision by The Hartford to reduce her disability benefits, due to The Hartford's finding that she was capable of working 20

hours per week.[3]

McCurry has acknowledged that The Harford was the administrator for her disability benefits. *See Complainant's Response Opposing Respondent's Motion for Summary Decision, Sep. 30, 2020.* Her claim is doomed because she cannot cite to any evidence that Kenco was involved in the decisions surrounding her long-term disability benefits, and all undisputed evidence in the record demonstrates that such a decision was made solely by The Hartford. Indeed, the record evidence reflects that (1) Kenco did not provide any input into The Hartford's decision whether to approve or deny any employee's claim for disability benefits, including McCurry's; (2) the decision to approve or deny disability benefits is made solely by The Hartford based on information provided directly by the employee or his or her medical provider, and (3) Kenco did not have any involvement in any decisions related to McCurry's claims submitted to The Hartford for disability benefits. *Exhibit 1 at ¶¶ 7, 13–16, 19.* The evidence demonstrates that Kenco never informed The Hartford that McCurry participated in a whistleblower case involving FSMA violations, nor did Kenco inform The Hartford that McCurry otherwise engaged in any protected activity under the FSMA. *Id.* at ¶ 18.

McCurry's own unsupported assertions that she *believes* Kenco influenced the decisions surrounding her disability benefits are insufficient to establish causation, particularly in the face of all evidence to the contrary demonstrating that the decision came solely from The Hartford. *See Boegh v. Energy Solutions, Inc.*, (W.D.Ky. May 3, 2012) (case below ALJ No. 2006-ERA-26) (the complainant "presented no evidence, other than speculations and conspiratorial … theories, to show that [the individual making the adverse action decision] knew of [the] protected activities or

---

[3] The Hartford later reversed this determination, and McCurry was retroactively paid all benefits at an adjusted rate to compensate for any prior underpayments. (*See Order Granting Summary Decision at p.4).*

was influenced by others with knowledge of his protected activities"); *Hasan v. Enercon Services, Inc.*, 2003-ERA-31 (ARB May 18, 2005) (managers swore they had no knowledge of the complainant's previous whistleblower activities when they made the decision not to hire him and complainant's only response to the motion was speculation that the respondent had not hired him because "some background check" must have disclosed his earlier whistleblower activities or that the affiants must have committed perjury).

There no evidence that Kenco influenced or had any role in The Hartford's decisions regarding McCurry's disability benefits, and there is no evidence that Kenco informed The Hartford about McCurry's participation in the other FSMA case. Because it is impossible for Kenco to have retaliated against McCurry since it did not influence The Hartford's decisions regarding McCurry's disability claims—and since it is likewise impossible for The Hartford to have retaliated against McCurry since it had no knowledge of her alleged protected activity— McCurry's alleged protected activity could not have been a contributing factor in the denial of her long-term disability benefits.

## CONCLUSION

For all the reasons stated herein (and in Kenco's Motion for Summary Decision), Kenco requests that its motion for a summary decision in accordance with 29 CFR §18.72 be granted, that Kenco be awarded attorneys' fees for having to respond to McCurry's frivolous claim, and that this matter be dismissed with prejudice.


Dated: July 16, 2021                    Respectfully submitted,

                                        **KENCO LOGISTIC SERVICES, LLC**

                                        */s/ Jody Wilner Moran*
                                        One of its Attorneys

Jody Wilner Moran
Julia Pearce Argentieri
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Facsimile: (312)787-4995
jody.moran@jacksonlewis.com
julia.argentieri@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney, hereby certifies that on July 16, 2021, she caused to be submitted a copy of the foregoing ***Respondent Kenco Logistic Services, LLC's Supplemental Memorandum in Support of Its Motion for a Summary Decision*** via email to:

> U.S. Department of Labor, Office of Administrative Law Judges
> Attention: Administrative Law Judge Stephen R. Henley
> OALJ-Headquarters-DC@dol.gov

A copy was also sent via email and U.S. mail to:

> Edith McCurry
> 6239 South 13110 East Road
> Pembroke Township, IL  60958
> emccurry1@gmail.com

By: */s/ Jody Wilner Moran*
One of Respondent's Attorneys

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Edith McCurry, | |
| Plaintiff | |
| v. | Case No. 19-CV-04067 |
| Mars, Kenco Logistics Services, LLC, The Hartford Financial Services Group, Inc., The Reed Group and Dr. Koehler, | Judge Sharon Johnson Coleman<br>Magistrate Judge Gabriel A. Fuentes |
| Defendants. | |

## DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant, Kenco Logistic Services, LLC ("Kenco"), submits this response in opposition to Plaintiff's Renewed Motion to Compel from Defendant and Sanctions (ECF No. 142) and states as follows:

### INTRODUCTION

McCurry's lawsuit against her former employer, Kenco, consists of a dispute over whether Kenco discriminated against her, or violated the Employee Retirement Income Security Act ("ERISA"), through decisions surrounding her receipt of disability benefits. But Kenco's employee disability benefits were fully-insured and administered by Kenco's insurer, The Hartford -- and all such decisions regarding McCurry's disability claims were made by The Hartford, without any input from Kenco. The documents attached to McCurry's own Complaint state as much: "The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy". *ECF No. 1 at 86.*

Kenco has produced copies of the pertinent disability insurance policy, Kenco's leave of absence policy, McCurry's personnel documents, and all correspondence received from The Hartford regarding the status of McCurry's disability claim. Apparently unsatisfied with this production, McCurry has brought several motions to compel against Kenco, despite Kenco's counsel repeatedly informing McCurry that it is not in possession of any additional documents relevant to this matter and  a providing her with a written certification to that effect.

Most recently, on July 1, 2021, McCurry filed an untimely motion to compel, which was in violation of the Court's April 23, 2021 Order that any motions to compel were to be filed by 5:00 p.m. on June 4, 2021 absent leave of Court (*ECF No. 130*),  realleging her baseless contentions that there exists a long-term disability "policy" that Kenco refuses to produce. In previous correspondence and meet and confer teleconferences, counsel for Kenco has informed McCurry that there is no separate long-term disability policy that stands alone from the long-term disability plan documents that have already been produced.

McCurry cannot bludgeon Kenco through baseless motions into producing a document which it does not possess, nor can she will into existence a document which does not exist. To be clear, Kenco has produced all policies and plan documents in its possession related to the long-term disability plan at issue in this matter and Kenco is not aware of any other documents that would aid the Parties, or the Court, in its resolution of the issues in this case. Moreover, Kenco repudiates McCurry's baseless allegations that Kenco and its counsel have been "corrupt."  Indeed, Kenco has acted reasonably in responding to McCurry's voluminous (and, in many cases, irrelevant) discovery requests throughout this litigation, and McCurry has absolutely no basis for the name calling in which she engages. For all the reasons stated herein, McCurry's Motion to Compel, and her request for sanctions, should be denied.

## FACTUAL BACKGROUND

McCurry served Requests to Admit, Interrogatories, and Requests for Production on Kenco in December of 2020, and Kenco provided written responses to all discovery in January of 2021. McCurry additionally served supplemental discovery requests on Kenco in March of 2021, to which Kenco served its responses in April of 2021.

On April 21, 2021, McCurry filed a Motion to Compel Discovery from Defendant and to Deem Facts as Admitted. ECF No. 124. On April 23, 2021, the Parties appeared before Judge Fuentes for a telephonic hearing on McCurry's Motion to Compel; the Court granted it in part and denied it in part, and directed Kenco to serve any supplemental discovery on McCurry by May 7, 2021. *ECF No. 129*. The Court also directed Kenco to serve McCurry with a certificate of compliance stating that no further responsive documents are known to be in Kenco's possession after a reasonable search, in the event Kenco possessed no additional documents other than what it had already produced. Further, the Court extended the fact discovery cutoff to June 23, 2021 for the limited purposes of: (1) following up on subpoenas McCurry had already served; and (2) following up on the supplemental discovery which Kenco was ordered to serve by May 7, 2021. ECF No. 130. Per the Court's order, any motions to compel discovery were to be filed no later than 5:00 p.m. on June 4, 2021, absent leave of Court.

On May 7, 2021, Kenco served its supplemental discovery responses on McCurry, along with a Certificate of Compliance stating that no additional documents responsive to McCurry's Requests for Production Nos. 22, 34, 55, and 71 are known to be in Kenco's possession, other than the documents already produced by Kenco. *Exhibit A*. Kenco further stated that it made this certification after a reasonable search. McCurry responded to Kenco's production by stating that she was "*of the opinion* that [Kenco] did not discharge [itself] of [its] burden relative to the

production of documents from the Hartford." *Exhibit B (emphasis added).* Jody Moran, counsel for Kenco, then wrote to McCurry on May 13, 2021: "Kenco has provided all documents that relate to your claims against Kenco, consistent with the Court's Order. If there are particular documents you believe have been withheld, please let us know." *Exhibit C at 3.* McCurry responded simply: "I did the information from the Hartford." *Id.* After being asked what she meant by this, McCurry asserted that she believes there exists a "policy from the Hartford" that Kenco had not produced. After Attorney Moran assured McCurry, "We have double-checked with Kenco's Senior Manager of Benefits [Cathy Phillips] and are confirming that we have sent you everything pertaining to the Hartford plans that you have requested," McCurry replied, "I disagree the plan is not the policy and the plan references the policy." *Id. at 1–2.* After then triple-checking with Kenco about whether any additional documents exist which had not yet been produced to McCurry (there were none), on May 24, 2021, Kenco re-produced to McCurry copies of the short-term and long-term disability policies that Kenco had with The Hartford during McCurry's employment with Kenco, bates-labeled as *KENCO001536 – KENCO001646.*[1]

On June 7, 2021, McCurry filed yet another Motion to Compel Discovery from Defendant and Sanctions. *ECF No. 132.* The Court denied McCurry's Motion to Compel for failure to comply with Local Rule 37.2, ordered strict compliance with Local Rule 37.2 going forward, and encouraged the parties to discuss, during any future Local Rule 37.2 conference, McCurry's "characterizations of the conduct of defense counsel and defendants in this case, including the allegations that defendants have been 'corrupt.'" *ECF No. 133.* "Language of that force will be explored at any subsequent motion hearing, and the party making such allegations will be required

---

[1] Kenco previously produced these documents to McCurry as KENCO000022 – KENCO000097 and KENCO000105 – KENCO000138, and McCurry attached the long-term disability plan to her Complaint (see ECF No. 1 at 55–91).

to back them up." *Id.*

McCurry did not, however, comply with Local Rule 37.2 or the Court's previous orders: on June 21, 2021, McCurry filed yet another Motion to Compel (*ECF No. 137*), and Judge Fuentes denied that motion the same day for again failing to comply with Local Rule 37.2 (*ECF No. 138*).

On June 24, 2021, counsel for Kenco, Julia Argentieri and Casey Leech, participated in a Local Rule 37.2 teleconference with McCurry to discuss the discovery which McCurry claims is outstanding. Again, McCurry alleged that Kenco was withholding a "policy," though she could not articulate what specific document had not been produced. Attorneys Argentieri and Leech reiterated to McCurry that they had spoken to Kenco numerous times about this issue, that Kenco has produced all documents relevant to the short- and long-term disability plans in effect during her employment with Kenco, that Kenco is not aware of any additional documents other than what had already been produced. McCurry stated only one basis for her belief that Kenco was withholding documents: because the plan references "the policy."

After discussing the allegedly unproduced "policy" during the Parties' June 24, 2021 Local Rule 37.2 teleconference, Attorneys Argentieri and Leech invited McCurry to elaborate on her accusations that Kenco and its counsel have been "corrupt." McCurry refused to explain the basis for her allegations of misconduct, so counsel for Kenco referenced the Court's June 8, 2021 Order (*ECF No. 133*) encouraging the parties to discuss such allegations. Again, McCurry refused to provide any support for her allegations of misconduct.

## ARGUMENT

### A. McCurry's Motion to Compel Is Untimely.

As an initial matter, McCurry's Motion to Compel should be denied because it was not filed by 5:00 p.m. on June 4, 2021, and thus was in violation of the Court's April 23, 2021 Order.

*See Minute Entry, April 23, 2021, ECF No. 130* ("Any motions to compel discovery must be filed by no later than 5:00 p.m. on 6/4/21 absent leave of court.").

McCurry never sought leave from the Court to file her June 7, 2021 Motion to Compel (ECF No. 132), her June 21, 2021 Motion to Compel (*ECF No. 137*), or her currently-pending Motion to Compel filed on July 7, 2021 (*ECF No. 142*). McCurry's status as a *pro se* litigant does not excuse her from abiding by the Federal Rules of Civil Procedure or the Court's deadlines. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("Although civil litigants who represent themselves ('pro se') benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant . . . pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines."); *McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012) ("As we often have reminded litigants, even those who are pro se must follow court rules and directives.").

For failing to comply with this Court's deadline to file any motions to compel by 5:00 p.m. on June 4, 2021, McCurry's Motion to Compel should be denied.

**B.      Kenco Does Not Possess Any Additional "Policy" Relating to The Hartford's Long-Term Disability Plan.**

Aside from the fact that McCurry's Motion to Compel was untimely filed, her Motion should be denied because she seeks to compel a document which does not exist (or if it does exist, Kenco does not possess it).

McCurry seeks to compel an unknown "policy" relating to her long-term disability benefits, and her claim that such a document exists appears to be based solely on the long-term disability benefits plan's reference that "[t]he benefits described in your booklet-certificate

6

(Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan." *ECF No. 1 at 86.* As stated in the attached declaration prepared by Cathy Phillips (Kenco's Senior Benefits Manager), Kenco does not possess any additional plan documents relative to the short- and long-term disability benefits plans in effect during McCurry's employment, other than what Kenco has already produced. *Exhibit D, Decl. of Cathy Phillips, July 12, 2021, ¶ 6.* Kenco has conducted a comprehensive search of the documents in its possession, it has produced all documents comprising the short- and long-term disability benefits plan, and it has complied with the Court's April 23, 2021 Order to supplement Document Request Nos. 22, 34, 55, and 71. *Id.* at ¶ 7. Indeed, The Hartford long-term disability policy that McCurry attached to her Complaint is the only plan document relevant to her ERISA claim, and it is not uncommon for a plan document to constitute a long-term disability policy issued by the insurance carrier (here, The Hartford) to the plan sponsor (here, Kenco).

Simply put, there are no additional documents to produce, and McCurry's ongoing fishing expedition for additional documents which do not exist is improper and outside of the reasonable discovery boundaries.

### C.     McCurry Is Not Entitled to Sanctions.

As part of her Motion to Compel, McCurry requests that the Court grant sanctions. In apparent support of her request for sanctions, McCurry accuses Kenco and its counsel of engaging in misconduct. In part, she refers to their actions as "corrupt," "egregiously improper, sordid and unethical," and she further alleges that "their actions were a sheer mockery of the judicial system." *Pl.'s Mot. to Compel at 3–4.* Further, she grossly mischaracterizes the June 24, 2021 meet and

confer teleconference by claiming that Attorneys Leech and Argentieri used "scare tactics and bullying, with the threat or promise of being punished, if Plaintiff continued to raise issues about Defendant's actions." *Id. at 4.*

McCurry dedicates a paragraph in her Motion to Compel citing to dictionary definitions of the term "corrupt," but she provides no facts to support her baseless and frankly, outrageous allegations that Kenco or its counsel have engaged in conduct which fits these definitions. Throughout this litigation, Kenco and its counsel have worked diligently to resolve McCurry's discovery disputes and to act courteously towards McCurry, even in the face of her repeated accusations of impropriety. Moreover, Attorneys Argentieri and Leech never threatened, bullied, or otherwise acted unprofessionally during their June 24, 2021 meet and confer teleconference with McCurry. Rather, they provided McCurry an opportunity to explain the basis for her allegations that they engaged in misconduct pursuant to Judge Fuentes' June 8, 2021 Order but McCurry refused. McCurry's diatribe against Kenco and its counsel, and her request for sanctions, are thus completely unwarranted and Kenco requests that McCurry be ordered to cease engaging in such inappropriate conduct.

**CONCLUSION**

WHEREFORE, for all these reasons, Defendant Kenco Logistic Services, LLC requests that the Court deny McCurry's Motion to Compel and grant such additional relief as the Court deems proper.

8

Dated: July 14, 2021                         Respectfully submitted,

                                             **KENCO LOGISTIC SERVICES, LLC**

                                             */s/ Jody Wilner Moran*
                                             One of Its Attorneys

                                             Jody Wilner Moran
                                             Julia Pearce Argentieri
                                             J. Casey Leech
                                             Jackson Lewis P.C.
                                             150 North Michigan Avenue, Suite 2500
                                             Chicago, Illinois 60601
                                             Telephone: (312) 787-4949
                                             Facsimile: (312)787-4995
                                             jody.moran@jacksonlewis.com
                                             julia.argentieri@jacksonlewis.com
                                             casey.leech@jacksonlewis.com

9

**Exhibit A**

**EXHIBIT E**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

## DEFENDANT KENCO LOGISTIC SERVICES, LLC'S
## CERTIFICATE OF COMPLIANCE

Pursuant to Magistrate Judge Fuentes' April 23, 2021 Minute Entry (ECF No. 129), Defendant Kenco Logistic Services, LLC ("Kenco") hereby certifies that no additional documents responsive to Plaintiff's Requests for Production Nos. 22, 34, 55, and 71 are known to be in Kenco's possession, other than the documents already produced by Kenco. Kenco makes this certification after a reasonable search.

Dated: May 7, 2021                    Respectfully submitted,

By:    **KENCO LOGISTIC SERVICES, LLC**

*/s/ Jody Wilner Moran*
Jody Wilner Moran
Julia Pierce Argentieri
J. Casey Leech
Jackson Lewis P.C.
150 North Michigan Avenue #2500
Chicago, IL 60601
(312) 787-4949
Jody.Moran@jacksonlewis.com
Julia.Argentieri@jacksonlewis.com
Casey.Leech@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy

of the foregoing **DEFENDANT KENCO LOGISTIC SERVICES, LLC'S CERTIFICATE OF**

**COMPLIANCE** to be served by email and first class mail delivery to:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com

By: <u> /s/ Jody Wilner Moran </u>

## IN THE UNITED STATEDS DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

## DEFENDANT KENCO LOGISTIC SERVICES, LLC'S REVISED RESPONSES TO
## FOUR OF PLAINTIFF'S PRODUCTION REQUESTS

Pursuant Magistrate Judge Fuentes' April 23 ruling, Defendant, Kenco Logistic Services,

LLC, improperly named as Kenco Logistics Services, ("Kenco" or "Defendant"), responds to

Plaintiff's Requests for Production of Documents 22, 34, 55 and 71 as follows:

22.     Any and all Company policies or other Company documents provided agreed upon

between Defendant and Hartford or obtained during your business relationship with Hartford.

**RESPONSE:**          Any and all policies and documents between Kenco and the Hartford
that relate to Plaintiff have been produced.

34.     Any and all documents provided by you to the:1) Hartford, 2) The reed Group, 3)

U.S. Administration, 4) Department of Labor-OSHA and EBSA, 5) Tennessee Department of

Insurance, 6) and any other party and or agent and or subcontractor of Defendant in this action.

**RESPONSE:**          There are no documents that relate to Plaintiff, other than what Kenco
already has produced, which are responsive to this request.

55.     Any and all written agreements and addendums between Defendants Kenco and

Hartford from 2013 to present.

**RESPONSE:** All documents between Kenco and The Hartford that relate to Plaintiff have been produced.

71. All memos, emails, letters, correspondence, communications, applications and disbursements to and from Kenco and the Hartford, including but not limited to: its agents and or employees, as well as, any other person or entity relative to McCurry.

**RESPONSE:** All documents between Kenco and The Hartford that relate to Plaintiff have been produced.

Dated: May 7, 2021          Respectfully submitted,

By: **KENCO LOGISTIC SERVICES, LLC**

*/s/ Jody Wilner Moran*
Jody Wilner Moran
Jackson Lewis P.C.
150 North Michigan Avenue #2500
Chicago, IL 60601
(312) 787-4949
Jody.Moran@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy of the foregoing ***DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S PRODUCTION REQUESTS 22, 34, 55 & 71*** to be served by email and U.S. mail, postage prepaid to the following non-ECF participant:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com

By:  */s/ Jody Wilner Moran*

# IN THE UNITED STATEDS DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EDITH MCCURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-04067 |
| | ) | |
| MARS, KENCO LOGISTICS SERVICES, | ) | Hon. Judge Sharon Johnson |
| LLC, THE HARTFORD FINANCIAL | ) | Coleman |
| SERVICES GROUP, INC., THE REED | ) | |
| GROUP, and DR. KOEHLER, | ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | | |

## DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT 19, 42 and 55

Defendant KENCO LOGISTIC SERVICES, LLC, ("KENCO"), pursuant to Magistrate Judge Fuentes April 23 rulings, responds to Plaintiff's Requests to Admit 19, 42 and 55 as follows:

19.     Kenco was the plan administrator for disability benefits.

**RESPONSE:** Denied. Responding further, Kenco admits only that it was the Plan Administrator of the Group Long Term Disability Plan for employees of KENCO (the "Plan") as ERISA defines that term, and thus was responsible for certain Plan functions. Kenco denies, however, that it retained any responsibility for making benefits decisions under the Plan because it delegated exclusive discretionary authority to make those decisions to The Hartford under Policy No. GLT-674076 issued by The Hartford to Kenco.

42.     Leonard Szplett did invoicing monthly.

**RESPONSE:** Kenco admits that Leonard Szplett prepared or sent out certain invoices to third parties generally monthly.

55.     Defendant Kenco was to maintain its records for seven (7) years.

**RESPONSE:** Kenco admits that it maintains documents regarding benefits for seven (7) years.

Dated: May 7, 2021                               Respectfully submitted,

                            By:   **KENCO LOGISTIC SERVICES, LLC**

                                  */s/ Jody Wilner Moran*
                                  Jody Wilner Moran
                                  Jackson Lewis P.C.
                                  150 North Michigan Avenue #2500
                                  Chicago, IL 60601
                                  (312) 787-4949
                                  Jody.Moran@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 7, 2021, she caused a true and correct copy of the foregoing ***DEFENDANT KENCO'S LOGISTIC SERVICES, LLC'S RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT 19, 42 & 55*** to be served by email and first class mail delivery to:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL  60958
EMcCurry1@gmail.com

By: *<u>/s/ Jody Wilner Moran</u>*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney, hereby certifies that on July 14, 2021, she electronically caused to be filed a copy of the foregoing **DEFENDANT KENCO LOGISTIC SERVICES, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to those registered on the Court's CM/ECF system, and that a copy was also sent via email and U.S. mail to:

Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL 60958
emccurry1@gmail.com


By: */s/ Jody Wilner Moran*
One of Defendant's Attorneys

**EXHIBIT F**

*(Ex. B, Declaration of Jay Elliott at ¶ 9.)* McCurry did not supervise any employees at Kenco *(McCurry Dep. 98:3-10.)*

5.      McCurry was the only employee in the role of HR Clerk *(McCurry Dep. 63:19-23.)*

6.      As an HR Clerk, McCurry's duties included: handling payroll, generating reports, assisting with employee relations, and other related duties as assigned *(McCurry Dep. 67:22-68:2.)*

7.      McCurry received her performance reviews from Leonard Szplett, a manager in Human Resources who also handled accounting *(McCurry Dep. 64:7-22.)* She also at times received directives from the warehouse General Manager, Kelvin Walsh *(McCurry Dep. 68:1-7.)*

8.      Kenco hired McCurry at a similar pay to what she had been earning at the predecessor logistics company at the Mars Manteno plant, 4T's Management. Leonard Szplett earned more than McCurry and was also hired at a similar rate of pay to his prior salary *(McCurry Dep. 112:2-10.)*

9.      On October 17, 2014, Kenco hired Lori Varvel as a Human Resources Manager. Varvel started working for Kenco on November 10, 2014 and became McCurry's supervisor *(Ex. B, Declaration of Jay Elliott at ¶ 13)* Varvel is 38 years old (DOB: X/XX/1980; *Id. at ¶ 12.)*

10.     McCurry did not apply for the Human Resources Manager position which Lori Varvel was hired to fill *(McCurry Dep. 100:4-10; 11-15.)*

11.     Prior to being hired by Kenco, Varvel worked as an HR Manager for Sears Logistics Services (earning $73,600) where she oversaw policies, supervised HR generalists, investigated complaints of harassment and discrimination *(Ex. B, Declaration of Jay Elliott at ¶ 12.)*

12.     After being hired at Kenco, Varvel supervised other employees in addition to McCurry, including Valerie Lillie *(McCurry Dep. 83:14-23.)* Varvel approved McCurry's request for overtime when necessary *(McCurry Dep. 69:10-12.)*

3

## IV.    ARGUMENT.

### A.  McCurry Has No Evidence of Discriminatory Pay.

McCurry claims without evidentiary support that Kenco engaged in gender discrimination, or race discrimination, by paying her less than the white, male Human Resources manager, Leonard Szplett.[2] This argument must fail, because McCurry was the only employee in her role and she was not a manager. She has no basis for arguing that she should have been paid equal to her manager *(SOF ¶¶ 5, 7.)* McCurry earned $16.44 per hour, plus overtime, and regularly worked overtime *(SOF ¶ 24.)* As an exempt HR Manager, Szplett earned a salary, the equivalent of $32.68 per hour *(Id.)* McCurry has no evidence that this pay differential was made for any reason related to gender or race. First, McCurry acknowledges that Szplett was paid more than her by the predecessor logistics company, 4T's Management, and that Kenco thus hired the employees on at similar rates of pay to what they had been earning at 4T's *(SOF ¶ 8.)* It is well settled that paying McCurry and Szplett consistent with their prior rates of pay is a nondiscriminatory reason for their pay differential. *Leong v. SAP Am., Inc.,* 67 F. Supp. 3d 972, 985 (N.D. Ill. 2014) (granting summary judgment and noting that plaintiff ignored undisputed differences in the two jobs including the number of direct reports.)

Second, and perhaps more importantly, Szplett was not similarly situated to McCurry because *he was her manager* up until the time Lori Varvel was hired (and Szplett went on a leave of absence, as reflected on his pay records) *(SOF ¶¶ 7, 24.)* While both employees worked in

---

[2] McCurry brings race discrimination claims under both Title VII and Section 1981. She alleges that race discrimination occurred because she was paid less than Szplett (her non-African American manager), and when she received a write-up. Defendants will not analyze these legal claims separately, because McCurry's §1981 race discrimination claims fail for the same reasons that the Title VII race discrimination claims fail. Furthermore, as to the §1981 race discrimination and §1985(3) federal conspiracy claims, Defendants will not include a separate analysis regarding the claims against each individually-named defendant, because the defenses for all defendants are the same and those claims fail as a matter of law for the same reasons as the claims against Kenco.



ILLINOIS DEPARTMENT OF
**Human Rights**

Bruce Rauner, Governor
Rocco J. Claps, Director

## <u>LEONARD A. SZPLETT V. KENCO LOGISTIC SERVICES</u>
## <u>IDHR CHARGE NO.: 2016CA0418</u>

Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.

YOLANDA G. GODWIN
FREEDOM OF INFORMATION OFFICER

**DATE:** 7/7/16

**SUBSCRIBED and SWORN to before me**

**THIS** 7th **DAY of** July , 2016.

**NOTARY PUBLIC**

> OFFICIAL SEAL
> DONNA M EVANS
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:06/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

November 22, 2013
Page 12

does not produce any notes or other documentation pertaining to the alleged meeting. Ms. McCurry is an HR Clerk employed at the Mars facility;[12] she reports to Len Szplett, Office/HR Manager at the facility. Ms. McCurry does not remember a specific date, but she confirms that Ms. Madison spoke to her on one occasion about some frustrations she was having. In particular, Ms. Madison told Ms. McCurry that she was concerned about her ability to convey to Mr. Walsh what she needed in order to do her job. She also stated that she would ask for certain things to be done by various people and that she was not getting the results she was looking for. Pointedly, Ms. Madison never said she felt she was being discriminated against on any basis, and she specifically told Ms. McCurry that she did not want her to do anything. Thus, Ms. McCurry never told anyone at Kenco about her conversation with Ms. Madison, including Mr. Walsh, Ms. Hise, or Ms. Fowler.

Based on the above, Kenco denies that Ms. Madison engaged in protected activity. While she apparently spoke with Ms. McCurry about some workplace issues she felt she was having, she never claimed discrimination and she never stated that she felt she was having these issues because she was Black or female.

Even if Ms. Madison's conversation with Ms. McCurry could be viewed as protected activity, however, Mr. Walsh, Ms. Hise, and Ms. Fowler – the three individuals involved in the decision to place Ms. Madison on a PIP and/or to ultimately terminate her employment – were completely unaware of the conversation. It is axiomatic that there can be no retaliation if the decision makers were unaware of the alleged protected activity. Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) ("The key inquiry in determining whether there is a causal connection . . . is whether [the decision maker] was aware of the allegations of discrimination at the time of her decisions to place [plaintiff] on a PIP and terminate her employment; absent such knowledge, there can be no causal link between the two."); Tomanovich, 457 F.3d at 668 (plaintiff's claim of retaliation failed where there was no evidence that company was aware of complaints); Miller, 203 F.3d at 1008 ("an employer cannot retaliate when it is unaware of any complaints"). Further, it is not sufficient that a decision maker could have or should have had knowledge of an alleged complaint; only actual knowledge will suffice. Luckie, 389 F.3d at 715; Tomanovich, 457 F.3d at 668.

While Ms. Madison may argue that, despite this absence of knowledge on the part of Ms. Hise, Mr. Walsh, and Ms. Fowler, she can still establish a claim using the indirect method of proof, under this method, she must still show that she engaged in protected activity, that she was satisfactorily performing the functions of her job, and that similarly situated individuals were treated differently. As set for above and in paragraphs II.B.1 and 2, Ms. Madison cannot establish any of these elements. Her claim of retaliation must, therefore, fail.

---

[12] As an HR Clerk, Ms. McCurry's position was predominately clerical in nature. She is responsible for, among other things, processing payroll, maintaining personnel files, entering new hire information into the system, administering benefit information, etc. A copy of her job description is attached hereto as Exhibit 26.

Charge No. 2014CF0475 
Page 2

ANSWER:    A position statement will be submitted setting forth Kenco's response to the
Complainant's allegations.  Individuals with direct knowledge of the allegations include:

>    Kelvin Walsh
>    General Manager
>    c/o Miller & Martin PLLC
>    Suite 1000, Volunteer Building
>    832 Georgia Avenue
>    Chattanooga, TN 37402
>    423-756-6600
>
>    Paula Hise
>    Vice President of Operations
>    c/o Miller & Martin PLLC
>    Suite 1000, Volunteer Building
>    832 Georgia Avenue
>    Chattanooga, TN 37402
>    423-756-6600
>
>    Len Szplett
>    Human Resources Representative
>    c/o Miller & Martin PLLC
>    Suite 1000, Volunteer Building
>    832 Georgia Avenue
>    Chattanooga, TN 37402
>    423-756-6600
>
>    Tammi Fowler
>    Senior Manager of Employee Relations
>    c/o Miller & Martin PLLC
>    Suite 1000, Volunteer Building
>    832 Georgia Avenue
>    Chattanooga, TN 37402
>    423-756-6600
>
>    Brian Davis
>    Director of Procurement
>    c/o Miller & Martin PLLC
>    Suite 1000, Volunteer Building
>    832 Georgia Avenue
>    Chattanooga, TN 37402
>    423-756-6600

11424849v1  05742-0254

Page: 30

Number: 1        Author: mxm186     Subject: Sticky Note        Date: 3/30/2016 2:16:16 PM
Answer from Kenco Lawyer Verified response; under penalty law

Number: 2        Author: mxm186     Subject: Sticky Note        Date: 3/30/2016 2:15:54 PM
Kenco produced Len Szplett as witness in IDHR 2014CF0475 as the Human Resource Representative

Exhibit III

# FACT FINDING CONFERENCE ATTENDANCE RECORD 

CHARGE NUMBER: 2014CF0475          CONFERENCE DATE: March 18, 2014

COMPLAINANT: Mary Madison         RESPONDENT: Kenco Logistics Services

CONFERENCE TIME: 1:00 p.m.        INVESTIGATOR: Laveppia J. Brown

(PLEASE PRINT)

ATTENDING FOR COMPLAINANT
Name: Mary D. Madison
Title:
Business Address: 9758 S Charles 60643 Chicago IL
Telephone No.: 7732979869
EEO: Female-black
Name:
Title:
Business Address:
Telephone No.:
EEO:
Name:
Title:
Business Address:
Telephone No.:
EEO:

ATTENDING FOR RESPONDENT
Name: Karen M. Smith
Title: Attorney
Business Address: 832 Georgia Ave, Ste 1000 Chattanooga TN 37405
Telephone No.: 423/785-8209
EEO: Non-black, female
Name: Melvin Walsh
Title: GM
Business Address: C/O Karen Smith
Telephone No.:
EEO: Non-black male
Name: Len Szplett
Title: HR Acctg-OFFICEMGR 
Business Address: C/O KAREN SMITH
Telephone No.:
EEO: NON-BLACK-MALE

ATTENDING FOR RESPONDENT
(continued)
Name: Tammi Fowler
Title: Sr. Mgr. of Emp. Relations
Business Address: C/O Karen Smith
Telephone No.:
EEO: Non-Black Female

Name: Edith McCurry
Title: HR Administrator 
Business Address: C/O KAREN Smith
Telephone No.:
EEO: BLACK- FEMALE

FF4/CPFORMS
rev. 0708

## Page: 31

| Number: 1 | Author: mxm186 | Subject: Sticky Note | Date: 3/30/2016 2:16:50 PM |
|---|---|---|---|
| Attendance Record for 2014CF0475 Fact Finding Conference | | | |

| Number: 2 | Author: mxm186 | Subject: Sticky Note | Date: 3/30/2016 2:18:33 PM |
|---|---|---|---|
| Len Szplett Signed in as the HR-Accounting and Office Manager | | | |

| Number: 3 | Author: mxm186 | Subject: Sticky Note | Date: 3/30/2016 2:20:40 PM |
|---|---|---|---|
| Edith McCurry who is Mr. Szplett's Administrator | | | |

Charge No.: 2014CF0475
Page 15 of 17

given an opportunity to improve upon her deficiencies in order to maintain her employment with Respondent

## Findings and Conclusion-Count F:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence does not indicate that Respondent discharged Complainant in retaliation for her opposing discrimination. The evidence shows Respondent does not have a written discharge procedure applicable to exempt-level employees at the facility where Complainant was employed. Respondent contends that it does however generally try to work with exempt employees informally through conversations and emails to correct any performance or behavioral issues. Respondent contends that if such informal guidance does not help, exempt employees are place on a performance improvement plan. Respondent contends Complainant was given an opportunity to improve upon the deficiencies that were outlined in her performance improvement plan, and when she did not, the decision was made to discharge her. Complainant admitted that she was placed on a performance improvement plan and Respondent outlined areas that it felt she were deficient in. She stated that she was not in agreement with what Respondent found to be deficiencies. There is no evidence of an animus based on retaliatory motivation. The investigation did not find nor did Complainant establish that she was discharged based on retaliatory motivation.

## Witness List:

A. Complainant                                              FFC
   9758 S. Charles Street
   Chicago, IL. 60643
   (773) 297-9569

B. Kelvin Walsh (non-black, male), General Manager          FFC
   c/o Karen M. Smith
   Miller & Martin PLLC
   Suite 1000, Volunteer Building
   832 Georgia Avenue
   Chattanooga, TN. 37402
   (423) 785-8209

C. Tammi Fowler (non-black, female), Human Resources Manager  FFC
   c/o Karen M. Smith, Attorney at Law
   Miller & Martin PLLC
   Suite 1000, Volunteer Building
   832 Georgia Avenue
   Chattanooga, TN. 37402
   (423) 785-8209

D. Len Szplett (non-black, male), HR Accounting/Office Manager  FFC
   c/o Karen M. Smith, Attorney at Law

Exhibit G

**EXHIBIT G**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

LEONARD A. SZPLETT, )
)
Plaintiff, )
)
v. )  Case No. 1:19-cv-02500
)
KENCO LOGISTIC SERVICES, LLC, a )  Judge Gary Feinerman
Tennessee Limited Liability Company, Mars, )  Magistrate Judge Young B. Kim
Inc., The Hartford, DAVID JABALEY, MARIO )
LOPEZ, TAMMI FOWLER, PAULA HISE, )
TRACE SPIER, ROBERT COFFEY, TODD )
MOORE, JAY ELLIOT. DAVID CAINES, )
MICHAEL MANZELLO, DWIGHT CRAWLEY, )
and KELVIN WALSH, )
)
Defendants. )

## DEFENDANTS' MOTION TO DISMISS SZPLETT'S SECOND AMENDED COMPLAINT (DKT. NO. 53)

DEFENDANTS, Kenco Logistics Services, LLC, Kelvin Walsh, Paula Hise, Tammi Fowler, David Jabaley, Mike Manzello, David Caines, Trace Spier, Jay Elliott and Dwight Crawley, (collectively "the Kenco Defendants") by and through their undersigned Counsel, move to dismiss Plaintiff Leonard Szplett's Amended Complaint, with prejudice, and in support thereof, state as follows:

1. On September 19, 2019 the Court dismissed Szplett's Amended Complaint, finding that "the complaint violates Civil Rule 8(a)(2) because its length and disorganization make it incoherent and unintelligible." Dkt. No. 52.

2. On October 17, 2019, Szplett filed a Second Amended Complaint against the Kenco Defendants, and other Defendants. Dkt. No. 52.

3.      Disregarding the Court's dismissal order, Szplett's Second Amended Complaint fails to cure the substantive and procedural defects that were present in his prior complaints; the complaint continues to be incoherent, and time-barred as to the Kenco Defendants.

4.      Kenco employed Leonard Szplett as an office manager at the Manteno, Illinois Mars warehouse until his termination on March 29, 2015. Szplett was terminated when Kenco lost its contract at the warehouse, and all employees at his location were terminated.

5.      More than four year after his termination, Szplett brings this employment discrimination claims against the Kenco Defendants pursuant to 42 U.S.C. §1981.

6.      Taking Szplett's allegations as true for purposes of a Motion to Dismiss, any such claims are time-barred and should be dismissed with prejudice because the four-year statute of limitations applies and therefore, the claims are untimely. 28 U.S.C. §1658.

7.      In accordance with Fed. R. Civ. Pro. 12(b)(6) the Court should dismiss a complaint where the factual allegations do not state a plausible claim for relief.  The running of the statute of limitations is an affirmative defense and may be raised on a 12(b)(6) motion to dismiss.

8.      Additionally, Szplett's Second Amended Complaint is largely incoherent and grossly violates the short, plain statement requirements of Fed. R. Civ. Pro. 8(a) and the Court's prior dismissal order.  Given that Szplett has now had an opportunity to amend, dismissal with prejudice is appropriate.

9.      The Kenco Defendants reference and incorporate all arguments contained in their Memorandum in Support of their Motion to Dismiss Szplett's Second Amended Complaint as though fully set forth herein.

WHEREFORE, for all the reasons stated herein, and in Defendants accompanying memorandum of law, DEFENDANTS, Kenco Logistic Services, LLC, Kelvin Walsh, Paula Hise, Tammi Fowler, David Jabaley, Mike Manzello, David Caines, Trace Spier, Jay Elliott and Dwight Crawley request that the Court dismiss Szplett's Second Amended Complaint with prejudice in accordance with Fed. R. Civ. Pro. 12(b)(6) and grant such additional relief as the Court deems proper.

Dated: November 4, 2019                    Respectfully submitted,

                                           **KENCO LOGISTICS SERVICES, LLC,**
                                           **KELVIN WALSH, MIKE MANZELLO,**
                                           **DAVID JABALEY, TAMMI FOWLER,**
                                           **PAULA HISE, TRACE SPIER, DAVID**
                                           **CAINES, DWIGHT CRAWLEY AND**
                                           **JAY ELLIOTT**

                                           By:/___/s/ Jody Wilner Moran_____
                                                   One of Their Attorneys

Jody Wilner Moran
Julia P. Argentieri
**Jackson Lewis P.C.**
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Facsimile: (312) 787-4995
moranj@jacksonlewis.com
julia.argentieri@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I, Julia P. Argentieri, an attorney, hereby certify that on November 4, 2019, I electronically filed a copy of the foregoing **DEFENDANTS' MOTION TO DISMISS SZPLETT'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12(b)(6)** with the Clerk of the Court using the CM/ECF system. I further certify that a copy of the foregoing has been mail and email to the following non-ECF participant:

Leonard Szplett
3421 W. 1500 NW Road
Kankakee, IL 60901
Stkbnd2000@aol.com

By: /s/ Julia P. Argentieri
One of the Attorneys for the Defendants

August 5, 2015

VIA ELECTRONIC MAIL ONLY

Investigator John Detwiler
Illinois Department of Human Rights
John.Detwiler@illinois.gov

      Re:    Leonard A. Szplett v. Kenco Logistic Services, LLC
              IDHR # 2015CA3083/EEOC # 21BA51536

Dear Investigator Detwiler:

The following is Respondent Kenco Logistic Services, LLC's ("KLS") position statement and response to the Department's questionnaire in the above-referenced matter.

1. Kenco Logistic Services, LLC
   1125 Sycamore Street
   Manteno, IL 60950[1]

2. Jay Elliott
   2001 Riverside Drive
   Chattanooga, TN 37406
   (423) 643-3398

3. A copy of the EEO-1 report for the above-referenced facility is attached as Exhibit A.

4. The narrative included with Mr. Szplett's charge is rambling, unfocused, and extremely hard to follow. He often repeats himself. And most of the time his attention is paid to activity that is either time-barred or had nothing to do with decisions affecting his own employment, or both. It appears that the following are the only allegations that are appropriate for his charge of discrimination:

Mr. Szplett alleges that he was demoted when Lori Varvel (female, Caucasian, 35 years old) was hired as the new Human Resources Manager in November of 2014. Mr. Szplett was never the Human Resources Manager. He was the Office Manager (see a copy of his offer letter in his personnel file at Exhibit B). So Ms. Varvel didn't replace him. She didn't replace anyone. There was no Human Resource Manager before Ms. Varvel was hired. So there could be no demotion for Mr. Szplett. He continued as the Office Manager before, during, and after Ms. Varvel's hire, with no change in his salary or his job duties and responsibilities. It is important to note that, at the time of Ms. Varvel's hire, KLS was experiencing various problems with its customer (Mars) which could be fairly attributed to the lack of a strong Human Resource-related presence on site. Additionally, KLS was becoming the subject of more and more charges of discrimination at that time. And so, whether it was the absence of a dedicated on-site Human Resources Manager or because of Mr. Szplett's failing efforts as Office Manager to handle those Human Resource-related issues on site when they came up, KLS decided it needed a dedicated Human Resources Manager. And so it hired one – Lori Varvel.

---

[1] KLS lost the contract on the work at this site. As a result, all KLS employees were terminated effective February 28, 2015. KLS no longer has any employee working at the Manteno site.

August 5, 2015

VIA ELECTRONIC MAIL ONLY

Investigator John Detwiler
Illinois Department of Human Rights
John.Detwiler@illinois.gov

Re:     Leonard A. Szplett v. Kenco Logistic Services, LLC
         IDHR # 2015CA3083/EEOC # 21BA51536

Dear Investigator Detwiler:

The following is Respondent Kenco Logistic Services, LLC's ("KLS") position statement and
response to the Department's questionnaire in the above-referenced matter.

1.  Kenco Logistic Services, LLC
    1125 Sycamore Street
    Manteno, IL 60950[1]

2.  Jay Elliott
    2001 Riverside Drive
    Chattanooga, TN 37406
    (423) 643-3398

3.  A copy of the EEO-1 report for the above-referenced facility is attached as Exhibit A.

4.  The narrative included with Mr. Szplett's charge is rambling, unfocused, and extremely hard
to follow. He often repeats himself. And most of the time his attention is paid to activity that is either
time-barred or had nothing to do with decisions affecting his own employment, or both. It appears that
the following are the only allegations that are appropriate for his charge of discrimination:

Mr. Szplett alleges that he was demoted when Lori Varvel (female, Caucasian, 35 years old) was
hired as the new Human Resources Manager in November of 2014. Mr. Szplett was never the Human
Resources Manager. He was the Office Manager (see a copy of his offer letter in his personnel file at
Exhibit B). So Ms. Varvel didn't replace him. She didn't replace anyone. There was no Human Resource
Manager before Ms. Varvel was hired. So there could be no demotion for Mr. Szplett. He continued as
the Office Manager before, during, and after Ms. Varvel's hire, with no change in his salary or his job
duties and responsibilities. It is important to note that, at the time of Ms. Varvel's hire, KLS was
experiencing various problems with its customer (Mars) which could be fairly attributed to the lack of a
strong Human Resource-related presence on site. Additionally, KLS was becoming the subject of more
and more charges of discrimination at that time. And so, whether it was the absence of a dedicated on-
site Human Resources Manager or because of Mr. Szplett's failing efforts as Office Manager to handle
those Human Resource-related issues on site when they came up, KLS decided it needed a dedicated
Human Resources Manager. And so it hired one – Lori Varvel.

---

[1] KLS lost the contract on the work at this site. As a result, all KLS employees were terminated effective February
28, 2015. KLS no longer has any employee working at the Manteno site.

Mr. Szplett alleges that he was paid less than Ms. Varvel. This allegation is accurate. Although Ms. Varvel was paid more than Mr. Szplett, the difference in pay was based on their different job duties and responsibilities. Mr. Szplett was responsible for the Office Manager duties (see Exhibit C for a job description). Ms. Varvel was responsible for a completely different set of duties and responsibilities – those of the Human Resources Manager (see Exhibit D for a job description). Of course, basing the difference in pay on the difference between job duties and responsibilities is absolutely permissible under the law. See Warren v. Solo Cup Co., 516 F.3d 627, 630–31 (7th Cir.2008) (outlining factors to consider when determining whether employees are similarly situated).

Mr. Szplett alleges that his office was temporarily relocated after Ms. Varvel was hired. At the time Ms. Varvel was hired, Mr. Szplett was out on an open-ended FMLA leave with no specified return date. While he was out on leave, Ms. Varvel temporarily occupied Mr. Szplett's office. Succinctly, she needed an office immediately and he wasn't coming to work at the time. Mr. Szplett's things were moved down the hall into a cubicle while he was out on leave. KLS lost the contract with Mars before Mr. Szplett returned from leave. In any event, a temporary relocation of an office is not an adverse employment action significant enough to support a discrimination claim. See Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (explaining that an adverse employment action requires something more than an annoyance or an inconvenience).

Finally, Mr. Szplett alleges he was not paid for March (2015). That allegation is accurate. Quite simply, KLS didn't pay Mr. Szplett for March of 2015 because he didn't work during that time. Instead, he was on leave. Mr. Szplett first went out for FMLA on October 22, 2014. Toward the end of January of 2015, his 12 weeks of FMLA were about to expire. At that time, KLS inquired about Mr. Szplett's intentions to return to work. Mr. Szplett's doctor represented that Mr. Szplett could not work "in any capacity," and that he would be restricted from performing his job functions for another "6-12 months." See Exhibit E for a copy of the Physician's Statement from Mr. Szplett's doctor. Instead of terminating Mr. Szplett at that time, however, KLS allowed Mr. Szplett to stay out on leave in case his condition improved. At the same time, since he wasn't working, KLS did not pay Mr. Szplett. To KLS's knowledge, Mr. Szplett's condition did not change through the date of his separation.

These decisions (hiring Ms. Varvel, setting her salary, allowing her to temporarily use Mr. Szplett's office while he was out on leave, and not paying Mr. Szplett for March of 2015) had nothing to do with Mr. Szplett's race, sex, or age. And they were not in retaliation for any complaint that Mr. Szplett made about discrimination or harassment. In fact, Mr. Szplett never made such a complaint.

Mr. Szplett alleges that KLS violated the WARN Act. First of all, the IDHR does not have jurisdiction over WARN Act complaints (state or federal). In any event, neither the federal act nor the state act was triggered since only 12 employees suffered an employment loss (the federal WARN Act requires 50 employment losses, and the state WARN Act requires 25 employment losses). Assuming for purposes of argument that either WARN Act was triggered, KLS provided the required 60-day notice since it notified employees on January 26, 2015, of the loss of the contract and accompanying termination of employment on March 29, 2015.[2] More specifically, on January 26, 2015, all employees were informed of Mars's decision not to renew KLS's contract at the Manteno site. The communication was made verbally during all employee meetings to those employees who were not on leave at the time

---

[2] Employees were separated effective February 28, 2015, but those who were not on leave were paid through March 29, 2015.

(plus a notice was handed to each of those employees). For those employees who were on leave at the time (FMLA or otherwise), a notice was mailed to their home addresses. Mr. Szplett was on leave, and so his notice was mailed to him. Attached is Exhibit F is a copy of the form notice mailed to employees on leave (like Mr. Szplett). The communication that was mailed is the same as the notice handed out at all employee meetings. Therein, all employees were informed that they would be permitted the opportunity to apply for employment with the new provider (the company taking KLS's place).

To the extent Mr. Szplett alleges an FMLA violation (interference or retaliation), such claims should be dismissed since the IDHR does not have jurisdiction over such claims.

5. Mr. Szplett was hired as Office Manager on April 21, 2013. A copy of the job description for Office Manager is attached as Exhibit C. A copy of Mr. Szplett's personnel file is attached as Exhibit B.

On the Issue of Harassment:

B1. A copy of KLS's anti-harassment policy is attached as Exhibit G.

B2. The individual primarily responsible for investigating internal complaints of harassment at the Manteno facility was Tammi Fowler (Caucasian), Senior Employee Relations Manager.

B3. Mr. Szplett did not bring any complaint of harassment to anyone's attention.

B4. No other complaint of harassment has been made against anyone listed in the charge of discrimination (outside the charges of discrimination listed below).

B5. No discipline has been issued at the Manteno facility within the past twelve months for violation of KLS's anti-harassment policy.

On the Issue of Demotion:

N1-7. Not applicable. Mr. Szplett was not demoted.

Regarding the basis of RETALIATION, provide the following information:

ZZ1. Mr. Szplett never opposed or protested allegedly discriminatory treatment.

ZZ2. Other pending charges of discrimination filed by KLS employees at the Manteno facility:

Nathan Doss --     IDHR # 2014CF2858, dated May 7, 2014
                   IDHR # 2014CF2992, dated May 21, 2014
                   IDHR # 2014CF3057, dated May 29, 2014
                   IDHR # 2014CF3161, dated June 9, 2014
                   IDHR # 2015CF0310, dated August 12, 2014
                   IDHR # 2015CF0822, dated October 16, 2014
                   IDHR # 2015CF1145, dated November 12, 2014
                   IDHR # 2015CF1660, dated January 6, 2015
                   IDHR # 2015CF2725, dated April 16, 2015

Vernon Henry --    IDHR # 2015CF00342, dated July 9, 2014
                   IDHR # 2015CF0990, dated October 29, 2014
                   IDHR # 2015CF1315, dated December 4, 2014
                   IDHR # 2015CF2497, dated March 27, 2015

Arnold Brownlee --    IDHR # 2015CA1464, dated December 8, 2014

Tracy Davis --    IDHR # 2014CF3162, dated June 9, 2014

Sam Rockett --    IDHR # 2015CF0003, dated July 1, 2014

Anastasia Sandness --    IDHR # 2015CF0006, dated July 1, 2014
                         IDHR # 2015CF0515, dated September 4, 2014
                         IDHR # 2015CF0516, dated September 4, 2014
                         IDHR # 2015CF1655, dated January 6, 2015

Morris Tyson    IDHR # 2015CF0699, dated September 22, 2014
                IDHR # 2015CA2692, dated April 24, 2015

Scott Marksteiner    IDHR # 2015CA1054, dated November 3, 2014
                     IDHR # 20151650, dated January 7, 2015

Mardy Ringo    IDHR # 2015CA1590, dated December 30, 2014

Edith McCurry --    IDHR # 2015CA1804, dated January 13, 2015
                    IDHR # 2015CA2495, dated March 27, 2015

Robert Cates    IDHR # 2015CA1354, dated November 19, 2014

Derrick Nixon    IDHR # 2015CF1828, dated February 10, 2015

Respectfully submitted,

Jay Elliott
Counsel for Kenco Logistic Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406
Jay.Elliott@KencoGroup.com
Work: (423) 643-3398